**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARIEL INVESTMENTS, LLC,<br>　　　　　　Plaintiff,<br><br>v.<br><br>ARIEL CAPITAL ADVISORS LLC,<br>　　　　　　Defendant. | )<br>)<br>)　Case Number: 1:15-cv-3717<br>)<br>)　Judge: Hon. Matthew F. Kennelly<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF**
**PERSONAL JURISDICTION, IMPROPER VENUE AND/OR TO TRANSFER**

Defendant Ariel Capital Advisors LLC ("ACA"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), respectfully moves this Court to dismiss all claims against it due to lack of personal jurisdiction and improper venue, or alternatively, move to transfer this action to the United States District Court for the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. §1404 because the Middle District of Florida is the most convenient and appropriate forum for the adjudication of this dispute.

**BACKGROUND**

Defendant ACA is a Florida limited liability company with its headquarters and principal place of business in Naples, Florida. *See* Exh. 1; Exh. 2, Decl. of Chris Bray, at ¶ 3. It is a boutique firm providing tax and estate planning, financial planning and trust administration services to individuals and families. ACA almost exclusively operates in Florida to Florida consumers.[1] Exh. 2, Decl. of C. Bray, at ¶ 3.

ACA does not have any clients in Illinois. *Id.* at ¶¶ 9-12, 20. ACA has never had any connection to Illinois. *Id.* at ¶¶ 6-22. It does not own property in Illinois, does not have an

---

[1] It also has a small branch office in Cleveland, Ohio with one employee.

office or an agent in Illinois, nor directs any business or advertising to Illinois. *Id.* at ¶¶ 11-16. None of ACA's employees have ever traveled to Illinois for any purpose related to any activity of ACA. *Id.* at ¶¶ 18, 20.

Yet on April 28, 2015, Plaintiff filed this lawsuit against ACA in the Northern District of Illinois, alleging claims of violating Illinois deceptive trade practices, violating Illinois common law, unfair competition, and trademark infringement. Dkt. 1. Defendant was served in Naples, Florida the next day.

## LEGAL STANDARD

Federal district courts may only adjudicate claims where they have jurisdiction over the defendant. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969). In trademark infringement cases, the law of Illinois determines whether the court has personal jurisdiction over a nonresident defendant. *Caterpillar, Inc. v. Miskin Scraper Works, Inc.*, 256 F. Supp. 2d 849, 851 (C.D. Ill. 2003); *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1993); Fed. R. Civ. P. 4(k)(1)(A). Plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014).

To establish this Court's personal jurisdiction over Defendant, Plaintiff must demonstrate that ACA has had sufficient minimum contacts with the State of Illinois. *Cent. States, Se. & Sw. Areas Pension Fund v. Reinemer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)).

### 1. General Personal Jurisdiction

If a plaintiff cannot demonstrate that a defendant "conducts continuous and systematic general business within the forum state[,]" there is no general personal jurisdiction. *GCIU-*

*Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The general personal jurisdiction analysis is "considerably more stringent" than that for specific personal jurisdiction. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A., et al.*, 338 F.3d 773, 787 (7th Cir. 2003). The contacts by the defendant "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair" to always require it to answer in that state's court "in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id*. (emphasis in original).

### 2. Specific Personal Jurisdiction

In contrast, specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *GCIU-Employer*, 565 F.3d at 1023. In determining whether specific personal jurisdiction exists with respect to nonresidents, this Court must consider whether the assertion of jurisdiction comports with the Illinois long-arm statute, the due-process guarantee of the U.S. Constitution, and the constraints imposed by the Illinois Constitution's due process guarantee. *Id.*; *see also Illinois v. Hemi Group LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010) (no "operative difference" between the two constitutional limits).

### a) Illinois Long-Arm Statute

The Illinois long-arm statute enumerates specific bases for the exercise of jurisdiction over a nonresident defendant. *See* 735 ILCS §§ 5/2-209(a)-(b). Subsection (a) of the long-arm statute provides fourteen different grounds on which an Illinois court may exercise jurisdiction over any person, whether or not a citizen or resident of Illinois. *See* 735 ILCS § 5/2-209(a). And subsection (b) provides five different grounds on which an Illinois court may exercise jurisdiction. *See* 735 ILCS § 5/2-209(b).

**b) Three-Step Due Process Analysis**

The specific personal jurisdiction analysis has three distinct steps: (1) identify the contacts the defendant has with Illinois; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts "sufficiently comports with fairness and justice;" and (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in this suit. *GCIU-Employer*, 565 F.3d at 1023. If by the second step a defendant does not have sufficient minimum contacts with a forum, "then [the] personal jurisdiction analysis ends without examining the plaintiff's causes of action." *Cent. States,* 230 F.3d at 944.

The "crucial inquiry" in applying this test is whether "the defendant's conduct and connection with the forum are such that [it] should reasonably anticipate being hailed into court there." *Cent. States*, 230 F.3d at 943. "To establish such a reasonable anticipation the defendant must have purposely availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws." *Id.* (citing *Burger King*, 471 U.S. at 474-75). Even if minimum contacts are shown to exist, the court must nevertheless examine other factors to determine whether the exercise of personal jurisdiction satisfies "traditional notions of fair play and substantial justice." *Cent. States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77).

**ANALYSIS**

In order to have jurisdiction over this suit, the Court must have general or specific personal jurisdiction over Defendant ACA. Neither are met because ACA has had no contacts with Illinois.

4

**A. There is No General Personal Jurisdiction Over ACA Because It Does Not Have Continuous and Systematic Contacts with Illinois**

Plaintiff failed to allege or show that ACA has "continuous and systematic" contacts with Illinois. And for good reason: ACA has no contacts to Illinois. At the onset, Plaintiff waived its right to assert that this Court has general personal jurisdiction over Defendant ACA because it failed to allege general personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1996) (finding that because plaintiff failed to allege that the defendant has "continuous and systematic" contacts with Illinois, plaintiff "waived any general jurisdiction argument"). But even if it had, ACA does not maintain any contacts with Illinois, let alone "continuous and systematic" contacts required for general jurisdiction. *See* Exh. 2, Decl. of C. Bray, at ¶¶ 6-7; *see also Purdue Res. Found.*, 338 F.3d at 787 (contacts by the defendant "must be so extensive to be tantamount to [the defendant] being constructively present in the state"). Indeed, ACA does not have any offices or addresses in Illinois. *See* Exh. 2, Decl. of C. Bray, at ¶ 14. No agents. *Id.* at ¶ 15. No employees or sales people. *Id.* at ¶ 18. Nor does it advertise or seek business in Illinois. *Id.* at ¶¶ 9-13. In short, ACA has no contacts to Illinois other than this suit. Therefore, Plaintiff has not shown that ACA is subject to general jurisdiction in this forum.

**B. ACA Does Not Have Any Contacts with Illinois and Therefore No Specific Personal Jurisdiction Exists Over ACA**

This Court also does not have specific personal jurisdiction over ACA because it has had no contacts with Illinois, nor does Plaintiff allege any. Therefore, Plaintiff has not shown that the Illinois long-arm statute and due process confer specific personal jurisdiction over ACA.

***1. The Illinois Long-Arm Statute Does Not Provide a Basis for Exercising Specific Personal Jurisdiction Over ACA***

The Illinois long-arm statute does not provide a basis for exercising specific personal jurisdiction over ACA because none of the fourteen grounds set forth in subsection (a) of the

5

Illinois long-arm statute are met.  *See* 735 ILCS § 5/2-209(a); *see also* Exh. 2, Decl. of C. Bray. Subsection (b) of the Illinois long-arm statute does not apply either.  ACA was not served in Illinois, has never been a resident of Illinois, and has never done business in Illinois, among other reasons.  *See* ILCS § 5/2-209(b); *see also* Exh. 2, Decl. of C. Bray.

### 2.  The Three-Step Due Process Analysis Also Does Not Provide a Basis for Exercising Specific Personal Jurisdiction Over ACA

None of the three-steps in the due process analysis confer specific personal jurisdiction over Defendant ACA.  The first prong in that analysis is to identify the contacts a defendant has with Illinois.  *GCIU-Employer*, 565 F.3d at 1023.  Defendant ACA has absolutely no connections with the State of Illinois.  Exh. 2, Decl. of C. Bray, at ¶¶ 6-7.  ACA has not taken any actions intended or directed at any Illinois interests.  *Id*.  In fact, beyond an allegation that Plaintiff was harmed in Illinois, Plaintiff's Complaint is devoid of any allegations that some jurisdictionally significant contact actually exists between Defendant ACA and Illinois.

The second prong analyzes whether a defendant's contacts with the state meet constitutional minimums, and whether exercising jurisdiction on the basis of these minimum contacts "sufficiently comports with fairness and justice."  *GCIU-Employer*, 565 F.3d at 1023. Because ACA has no contacts with Illinois, the inquiry ends here.

The third prong analyzes whether the minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.  *Id*.  Plaintiff has not alleged any contacts by ACA with Illinois apart from a conclusory statement that Plaintiff felt alleged harm in Illinois.  *See* Dkt. 1, at ¶6 ("Ariel Advisors is intentionally infringing [Plaintiff's] rights…and doing so knowing that its actions will be felt by [Plaintiff] in its Chicago home[,]").  Even if true, Plaintiff cannot rely on the alleged harm it suffered in Illinois as a result of ACA's alleged conduct as the basis for personal jurisdiction.  *See Merrill Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884,

890 (N.D. Ill. 2009) ("harm to the plaintiff in the forum is not enough" for personal jurisdiction); *see also Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000) ("Illinois does not acquire jurisdiction merely by the fact that plaintiff felt harm here"); *Cont'l Ill. Nat'l Bank v. Consulting Eng'g Group*, 594 F. Supp. 1500, 1502 (N.D. Ill. 1984) (Defendant's "totally out-of-Illinois conduct [is] not enough to subject [a] defendant to suit in Illinois"). Plaintiff has not alleged, nor can it show, any tortious conduct by ACA that was directed at Illinois. Nor can Plaintiff show that ACA "***purposefully*** established 'minimum contacts'" with Illinois, and nothing it has done or failed to do could cause it to "reasonably anticipate being haled into court [here]." *See Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 571 (7th Cir. 1986) (quoting *Burger King*, 471 U.S. at 474) (emphasis added); *Central States*, 230 F.3d at 943.

Accordingly, any exercise of personal jurisdiction over ACA here would fail to comport with "traditional notions of fair play and substantial justice." *Central States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77). Because this Court lacks personal jurisdiction over Defendant ACA, the Complaint should be dismissed.

## II. NORTHERN DISTRICT OF ILLINOIS IS AN IMPROPER VENUE SO THE COMPLAINT SHOULD BE DISMISSED

A complaint should be dismissed pursuant to Rule 12(b)(3) if it was not filed in a district where venue is proper. Fed. R. Civ. P. 12(b)(3). Venue is only proper in a judicial district: (1) "where any defendant resides, if all defendants reside in the same state," (2) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) where "any defendant is subject to the court's personal jurisdiction[,]" "if there is no district in which an action may otherwise be brought[.]" 28 U.S.C. § 1391(b). Like for personal jurisdiction, Plaintiff bears the burden of establishing

that venue is proper. *See Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

Northern District of Illinois is an improper venue because the § 1391 factors are not met as ACA has no connection to Illinois, nor has Plaintiff alleged any. *First*, ACA does not reside in Illinois. *See* 28 U.S.C. §1391(b)(1). *Second*, no "substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2). The causes of action all stem from alleged trademark infringement, i.e. that consumers were likely confused about the mark. But here, ACA has not advertised nor sought customers in Illinois, so no likelihood of confusion could have occurred in Illinois, let alone a "substantial" set of events to cause confusion. *See* Exh. 2, Decl. of C. Bray, at ¶ 13. Nor has Plaintiff alleged that Defendant conducts any business activities in Illinois, or maintains any property in Illinois. Indeed, each of the Complaint's substantive allegations of wrongdoing took place outside Illinois.

*Finally*, and as discussed more fully above, § 1391(b)(3) is also inapplicable because the Court does not have personal jurisdiction over ACA.

For these reasons, and the reasons stated in the motion to dismiss for lack of personal jurisdiction, venue is improper in this District and the action should be dismissed under 12(b)(3).

### III.  IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA FOR CONVENIENCE

For each of the reasons stated above, the case should be dismissed. But if this Court disagrees and finds both personal jurisdiction and venue to be proper, ACA then requests that this case be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought..." 28 U.S.C. 1404(a). Convenience and fairness are determined based on various

private and public interest factors. *See, e.g.*, *Carter v. Clark, Material Handling Co.*, No. 97-cv-4424, 1998 WL 89244, at *2 (N.D. Ill., Feb. 17, 1998). Here, these private and public interest factors overwhelmingly weigh in favor of transfer.

### A. Five of the Six Private Interest Factors, Including the Most Important Factor, Weigh Strongly in Favor of Transfer

The private interest factors are: (1) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum; (2) the cost of obtaining the attendance of the witnesses; (3) the availability of compulsory process for the attendance of unwilling witnesses; (4) the availability of evidence in each forum; (5) plaintiff's initial choice of forum; and (6) the situs of material events. *See Carter*, 1998 WL 89244, at *2. Each of these factors except plaintiff's choice of forum favors transfer.

The first factor, the convenience of the parties and its related sub-factor, the convenience of the witnesses, strongly favors Florida. Courts note that the convenience of the witnesses is given the most weight in a transfer analysis. *See, e.g., Lewis v. Grote Indus., Inc.*, No. 11-cv-7069, 2012 WL 234356, at *3 (N.D. Ill., Jan. 24, 2012) ("convenience of the witnesses is often viewed as the most important factor in the transfer balance."); *Brickett v. Ntl. R.R. Passenger Corp.*, No. 11-cv-2193, 2011 WL 3359934, at *4 (N.D. Ill., Aug. 3, 2011) (same); *FTC v. Am. Tax Relief LLC*, No. 10-cv-6123, 2011 WL 2893059, at * 6 (N.D. Ill., July 20, 2011) (same).

Not only is Florida the most convenient forum for ACA's witnesses, it is also the most convenient forum for the parties because Florida is the location of both ACA's principal office and its headquarters. In fact, all of ACA's employees, with the exception of one person, reside in Florida. None of ACA's employees and none of ACA's clients live in Illinois. Indeed, ACA's office is located 1,323 miles away from the Northern District of Illinois Eastern Division Courthouse, while it is less than 36 miles from the Middle District of Florida Fort Myers

9

Division Courthouse. *See* Exh. 3a & 3b. Transfer is proper and equitable here because requiring witnesses and the parties to travel from Florida to Illinois would subject them to great and unnecessary hardship in addition to being inconvenient for both the parties and the witnesses. *See Hinc v. Lime-O-Sol Co.*, 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002) ("It is preferable to hold a trial in the forum that will necessitate less travel for witnesses.").

The second factor, the cost of attendance of the witnesses, weighs in favor of transfer. As explained above, if this matter continued in Illinois, most (if not all) witnesses will have to travel from Florida to Illinois for the proceedings. This travel would come at a great financial expense to the parties. *See Orthoflex, Inc. v. Thermotek, Inc.*, No. 10–cv–1875, 2010 WL 5069700, at *4 (N.D. Ill., Dec 3, 2010) ("Securing the attendance of the multiple [defendant's Texas-based] employees each having specific knowledge concerning the design, manufacture, or repair of the [allegedly infringing system] comes at great cost to [defendant] should the proceedings remain in [Illinois]."). By contrast, few (if any) witnesses in this case will be forced to spend time and money traveling out-of-state if this case is transferred. As a final note, the burden is not shifted if this motion to transfer is granted because Plaintiff conducts business in Florida.

The third factor, the availability of compulsory process for the attendance of unwilling witnesses, further weighs in favor of transfer when considering this Court's limited ability to subpoena witnesses that may be unwilling to appear. Any event giving rise to this dispute – although no specific event has been alleged in the complaint – would have occurred in Florida. Consequently, the key witnesses will likely be located in Florida. In the event that a third-party witness is unwilling to appear, Florida will provide more successful and cost-effective subpoena power than Illinois. Additionally, if the witnesses do not appear because of the travel distance, proceeding in Illinois would severely prejudice ACA as there is simply no substitute for live

testimony. *See, e.g., Fluid Control Prods. Inc. v. Aeromotive, Inc*., 2011 WL 620115, at * 4 (E.D. Mo., Feb. 11, 2011) (live testimony is preferred for important witnesses over videotaped depositions); *Samsung Elec. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) ("[w]hen reasonably possible, live testimony is preferred to other means of presenting evidence"); *Laitram Corp. v. Hewlett- Packard Co.*, 120 F. Supp. 2d 607, 610 (E.D. La. 2000) ("Deposition testimony, which would be the only vehicle for [defendant] to present the testimony of these witnesses if the action were not transferred to Oregon, is a sterile, inadequate substitute for live testimony on key issues.").

The fourth and sixth factors, the availability of evidence and the situs of material events, also favor transfer. Despite Plaintiff's conclusory allegation that ACA "has committed one or more of the acts complained of in this Complaint within this judicial district," because ACA's principal place of business is Florida and targets Florida's residents, any alleged event at issue related to this matter would be connected to Florida. Thus, it is more convenient for discovery and for the other uncertainties of litigation to transfer this case to the Middle District of Florida. *Belmonte v. Examination Mgmt. Servs., Inc.*, No. 05-cv-3206, 2007 WL 551578, at *3 (N.D. Ill., Feb. 16, 2007) ("[T]he convenience of the parties is strongly in favor of the Northern District of Texas where all, or virtually all, of the proof of this claim can be found."); *Roots P'ship. v. Lands' End, Inc*., No. 90-cv-1310, 1990 WL 186776, at *4 (N.D. Ill. 1990) ("Because all of the relevant documents are apparently located in Wisconsin, it is clear that transferring this action to Wisconsin will be convenient to both parties insofar as discovery is concerned"). Because nearly all the physical evidence and key witnesses reside in Florida and because the alleged events occurred in Florida, the facts of this case heavily favor transfer to the Middle District of Florida.

11

### B. Plaintiff's Choice of Forum Should Be Disregarded

The only factor, private or public, that favors Plaintiff is its choice of forum. However, it is well established that plaintiff's choice of forum can be disregarded where, as here, it is the only factor in favor of plaintiff. *See Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (Plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff."); *see also Lewis*, 2012 WL 234356, at *2 ("The force of the plaintiff's choice is also diminished 'if the chosen forum has relatively weak connections with the operative facts giving rise to the claim.'") (citing *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D.Ill. 1995)); *Barnes v. Rollins Dedicated Carriage Serv., Inc.*, 976 F. Supp. 767, 768-69 (N.D. Ill. 1997) (granting transfer from plaintiff's choice of forum "[p]rimarily, because [the Southern District] is the situs of the events giving rise to this action.").

Here, all acts alleged by Plaintiff would have ostensibly occurred in Florida and primarily impacted Florida residents. This dispute, therefore, lacks any significant connection to this forum. *See Walter E. Heller & Co. v. James Gobe Co.*, 601 F. Supp. 319, 321 (N.D. Ill. 1984) ("[W]here the chosen forum lacks any significant connection with the underlying claim, it is of reduced importance and becomes just one of the many factors which the court may consider."). For these reasons, Plaintiff's forum selection should be ignored and ACA's motion to transfer granted if this matter is not dismissed.

### C. The Public Interest Factors Weigh in Favor of Transfer

The public factors also favor transfer to the Middle District of Florida. The public interest factors include: (1) the congestion of the respective court dockets and the prospects for earlier trial; and, (2) the relation of the community to the issue of the litigation and the

12

desirability of resolving controversies in their locale.  *Carter*, 1998 WL 89244, at \*3.  These factors support transfer of this case.

*First*, the Middle District of Florida's docket is less congested than that of the Northern District of Illinois.  *See* Exh. 4a, Administrative Office of the U.S. Courts, *2014 Annual Report of the Director: Judicial Business of the United States Courts* (2015), Table C-1 (N.D. Ill.: 11,060 pending cases; M.FL.: 7,381 pending cases).  And markedly, the Middle District of Florida's median time to trial is only 23.1 months, whereas it is 31.2 in the Northern District of Illinois.  *See* Exh. 4b, Administrative Office of the U.S. Courts, *2014 Annual Report of the Director: Judicial Business of the United States Courts* (2015), Table C-5.  Because the Middle District of Florida is less congested, and because the time to trial is significantly less, the court there would be less burdened by the litigation and the parties could resolve their dispute significantly faster.

*Second*, there is a community interest in adjudicating this case in the Middle District of Florida because Florida's citizens were allegedly the populace that was most likely to be confused by ACA's use of its name.  Because they are the consumers allegedly most impacted, Florida's jury pool has a local interest in resolving this dispute.  As the Supreme Court noted:

> [j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation…. There is a local interest in having localized controversies decided at home.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

Given these reasons, the Court should grant ACA's alternative motion to transfer if ACA's motion to dismiss is not granted because the Middle District of Florida is better situated to decide this case.

13

**CONCLUSION**

Because Defendant ACA has not done any business in Illinois and has no contacts to Illinois, Defendant ACA respectfully requests this Court to enter an order dismissing the Complaint in its entirety under Rules 12(b)(2) and 12(b)(3).  In the alternative, ACA respectfully requests that this Court transfer this action from the Northern District of Illinois to the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.

Dated:  June 10, 2015                                RESPECTFULLY SUBMITTED,


                                                     By:\_\_/s/ Brian T. Noack_____
                                                     One of the attorneys for Defendant

                                                     Brian T. Noack
                                                     Adam Wolek
                                                     WOLEK & NOACK
                                                     70 East Lake St., Suite 1220
                                                     Chicago, IL 60601
                                                     P 239.671.1103
                                                     F 708.843.0509

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on June 10, 2015, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated:  June 10, 2015                    WOLEK & NOACK


                                         By:___s/ Brian T. Noack_____
                                            Brian T. Noack