# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Plaintiff Ariel Investments' Response to
Defendant Ariel Capital's Motion to Dismiss</u>**

Dated: August 5, 2015

By: */s/ Arthur Gollwitzer III*
Arthur Gollwitzer III (6225038)
  agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
  lwdemarte@michaelbest.com
Larry L. Saret (2459337)
  llsaret@michaelbest.com
Zachary J. Watters (6310675)
  zjwatters@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Tel: (312) 222-0800
Fax: (312) 222-0818

***Attorneys for Plaintiff Ariel Investments, LLC***

Defendant Ariel Capital's motion to dismiss or transfer (Dkt. 17) is based on the erroneous proposition that it has no contacts with the State of Illinois and on a declaration of Ariel Capital's owner containing inaccuracies and omitting facts.  The facts, however, show that Ariel Capital must have known about Ariel Investments when it chose to use the ARIEL mark in its name, went ahead with a confusingly similar "Ariel" name anyway, and then repeatedly ignored Ariel Investments' demands that it stop infringing Ariel Investments' trademarks.  Ariel Capital is intentionally harming Ariel Investments by its willful trademark infringement, and Ariel Investments is feeling the effect of Ariel Capital's harm to Ariel Investments' long-standing trademark rights in its home, Chicago, Illinois.

At its core, the personal jurisdiction inquiry is about fairness.  Here, it is fair to expect Ariel Capital to defend its trademark infringement in the Northern District of Illinois when it chose to use an ARIEL mark for a nationwide financial services business despite a Chicago company's 30-year use of the same mark.  And it is fair to expect Ariel Capital to defend itself in this Court when it ignored written and oral requests from Ariel Investments' trademark counsel to cease such use.  Ariel Capital's intentional misappropriation of Ariel Investments' long-held trademark rights is exactly the kind of purposeful availment that gives rise to personal jurisdiction.

## *Legal Standard*

Ariel Investments does not contend that the Court has general personal jurisdiction over Ariel Capital.  The jurisdictional inquiry in this case focuses on specific jurisdiction and whether Ariel Capital's conduct was such that it reasonably should have anticipated being haled into court in Illinois.  *See Cent. States, SE and SW Areas Pension Fund v. Reinemer Express World*

*Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).[1]

A non-resident defendant is subject to personal jurisdiction in the forum state if it has engaged in tortious conduct that was intended to and does cause injury in the forum state. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Under the *Calder* "effects test," the defendant's conduct must be (i) intentional, (ii) expressly aimed at the forum state, and (iii) committed with the knowledge that the effects of its actions—the plaintiff's harm—would be felt in the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).

When a motion to dismiss for lack of personal jurisdiction is decided on affidavits and other documents, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. *Tamburo*, 601 F.3d at 700. The Court must "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

*Argument*

I. **Ariel Capital Targeted Ariel Investments in Chicago, Illinois When It Decided to Use The ARIEL Mark in Its Name.**

  A. **Ariel Capital Knew of Ariel Investments When It Chose Its Name.**

Plaintiff Ariel Investments is a well-known, Chicago-based financial services company that has used its ARIEL marks for more than 30 years. (Compl., Dkt. 1, ¶¶ 1, 8-19.) Today, Ariel Investments is one of the largest minority-owned financial services firms in the United States with over $10 billion in assets under management. (Declaration of Merrillyn Kosier ("Kosier Decl.") ¶ 3.)

---

[1] The Illinois long-arm statute, 735 ILCS § 5/2-209, extends personal jurisdiction to the maximum extent permitted by the Constitution's Due Process Clause. *Mobile Anesthesiologists Chi., v. Anesthesia Assocs. of Hous. Metroplex*, 623 F.3d 440, 443 (7th Cir. 2010).

Defendant Ariel Capital is the "successor company" to a financial services company called Willow Street Advisors. (Declaration of John Shoenfelt ("Shoenfelt Decl.") ¶ 6.)[2] In January 2014, the sole owner of Ariel Capital, Christopher Bray, who also is an attorney, was picking out a new name for his firm. (Ex. A, Excerpts from the Deposition of Christopher Bray on July 22, 2014, and select exhibits ("Bray Dep.") Ex. P-12.) At that time, he initially selected "Ariel Wealth Advisors." He admittedly used the Internet search engine Google to investigate the availability of that name. (Bray Dep. 75:13-25; 76:1-7.) When he encountered another firm using the name "Ariel Wealth Advisors," he decided to change his plans. Indeed, he testified, "I had better not – that's not going to be – you know, I don't want to take another firm's name." (*Id*. at 75:23-25.) Next, Mr. Bray chose the name "Ariel Capital Advisors." Again, he Googled the proposed company name. This time, he claims that he does not "recall" finding anyone else using the Ariel name. (*Id*. at 76:8-10.) When asked if he found Ariel Investments in his searching, Mr. Bray could only answer, "I would say no, but I'm not 100 percent certain." (*Id*. at 76:12-13.)

But that cannot be true. Replicating Mr. Bray's search reveals that Ariel Investments is the third result in a search for "Ariel Capital Advisors," behind two results for Ariel Capital.[3] (Declaration of Luke DeMarte Ex. LD1.) Because Ariel Capital did not exist at the time Mr.

---

[2] Mr. Bray testified that he formed Ariel Capital after he discovered an improper relationship between two of his partners at Willow Street. (Bray Dep. 60:16-18.) Ariel Capital uses the same offices that were used by Willow Street. Five of Ariel Capital's six principal employees also worked at Willow Street. (*Id.* at 60:21-25; 61:1-10.) And Ariel Capital has more than 85% of Willow Street clients. (*Id.* at 62:23-25.) As Mr. Bray told an investigator, Ariel Capital is "essentially the same company." (Shoenfelt Decl. ¶ 6.)

[3] In its Reply, Ariel Capital may attempt to explain the origins of its name by pointing to Mr. Bray's daughter's name or the name of a religious organization in which Mr. Bray is involved. Regardless of the explanation, Mr. Bray knew he was naming his firm with the name of an Illinois company well known in the financial services industry.

Bray conducted this search, Ariel Investments would have been the first result to Mr. Bray's search.

Moreover, Mr. Bray had been exposed to Ariel Investments throughout his career. Mr. Bray has worked in the financial services business since at least 1991. (Bray Dep. Ex. P-12.) He testified that he first saw an interview with Ariel Investments' founder, John Rogers, more than a decade ago. (Bray Dep. at 68:9-25; 69:1-3.) He testified that he regularly reads a trade publication called *Investment Advisor* (*Id.* at 41:20-25; 42:1-10), in which Ariel Investments has placed prominent advertisements, including full-page ads and wrapper ads like those attached as Exs. MK1 and MK2 to the Declaration of Merrillyn Kosier. Indeed, since 2008, Ariel Investments has regularly appeared in *Investment Advisor*, including in advertisements, articles, and news stories. (Kosier Decl. ¶¶ 6-9.) Mr. Bray also admitted attending several Schwab investment conferences, including a conference held in 2013, at which Ariel Investments was a major sponsor with significant display advertising. (Bray Dep. at 47:12-25; 48:1-15; Kosier Decl. ¶ 11.) Ariel Investments' presence at the annual Schwab investment conferences is substantial and typically includes a large display prominently featuring the ARIEL marks. Ariel's booth at the 2013 Schwab conference, a conference Mr. Bray admits he attended, included a prominent booth with an eye-catching, seven-foot tall turtle – Ariel Investments' well-known logo in addition to Plaintiff's ARIEL mark:



(Kosier Decl. ¶ 11, Ex. MK4.)  Mr. Bray even concedes that he may have received more than 30 emails from plaintiff Ariel Investments from 2010 to 2013, all prior to his decision to use the ARIEL mark for his company.  (Bray Dep. at 66:19-25; 67:1-6; Declaration of Roger Schmitt ("Schmitt Decl.") Ex. RS1.)  Each of these emails identified Ariel Investments as a Chicago-based company.  (Schmitt Decl. Ex. RS1.)  Ariel Investments' email records show that at least one of those messages dated January 23, 2013, was opened prior to when Mr. Bray selected the Ariel Capital name in 2014.  (Schmitt Decl. ¶¶ 6-9, Ex. RS2; Bray Dep. Ex. P-8.)

Ariel Investments promotes its services in numerous other well-read financial publications, including, among others, *Barron's*, *Business Week*, *Chicago Tribune*, *Entrepreneur*, *Fast Company*, *Financial Advisor*, *Fortune*, *Inc.*, *Money Magazine*, *Morningstar Advisor*, *Mutual Funds Magazine*, *The New York Times*, *Pensions & Investments*, *Savoy*, *SmartMoney Magazine*, *USA Today*, *The Wall Street Journal*, *Investment News*, *Kiplinger's Personal Finance*, *Chicago Sun-Times*, *Investor's Business Daily*, *Morningstar.com*, *Forbes.com*, and *CNNMoney.com*. (Dkt. 1 ¶ 15.) Ariel Investments has also been featured on well-known television programs, such as *Good Morning America* (ABC), *World News Tonight* (ABC), *In Focus* (Bloomberg TV), *Morning Call* (Bloomberg TV), *Open Exchange* (Bloomberg TV), *Morning Call* (CNBC), *Your World With Neil Cavuto* (Fox News), *Cavuto on Business* (Fox News), *Frontline* (PBS), *News Hour with Jim Lehr* (PBS). (*Id.* ¶ 16.)

In light of these facts, it defies credibility for a financial professional with at least 25 years of experience, as Mr. Bray does, to claim that he had never heard of Ariel Investments.

**B.    Ariel Capital Continued To Infringe The ARIEL Marks Even After Several Warnings From Ariel Investments.**

On August 14, 2014, Ariel Investments' Chicago-based trademark counsel, Luke DeMarte, wrote to Ariel Capital and asked it to stop using the ARIEL mark. (Bray Dep. Ex. P-10.) Mr. Bray unequivocally refused to change his company's name in his August 25 response. (Bray Dep. Ex. P-11.) At this point, Mr. Bray cannot dispute that he knew of Ariel Investments and that he knew he was using Plaintiff's ARIEL mark in his company's name. Nevertheless, Ariel Capital and Mr. Bray continued undeterred.

On October 30, 2014, Mr. DeMarte spoke with Mr. Bray by telephone. During that call, Mr. DeMarte explained who he was and whom he represents. Mr. DeMarte repeated his request that Ariel Capital stop infringing the ARIEL marks. In response, Mr. Bray said, "later, boss,"

and hung up the phone. (Dkt. 1 ¶ 6.) Ariel Capital's continued intentional disregard for Ariel Investments' trademark rights and Ariel Capital's knowledge of the company it is harming is undeniable.

Ariel Investments served its complaint in this case on Ariel Capital on April 29, 2015. (Dkt. 9.) In response, Ariel Capital has continued infringing the ARIEL marks.

### C. Ariel Capital's Intentional Conduct Is "Purposeful Availment" and Makes Exercising Personal Jurisdiction over It Fair under the Due Process Clause.

Ariel Capital's intentional actions constitute sufficient contact with this forum to sustain personal jurisdiction over it. Under the *Calder* "effects test," this Court has personal jurisdiction over a defendant that intentionally and expressly aimed its conduct at the forum state, with the knowledge that the effects of its actions—the plaintiff's harm—would be felt in the forum state. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994) (analogizing defamation involved in *Calder* to intentional trademark infringement and holding that in both cases the state in which the injury occurs is the state in which the tort occurs) (citing *Calder*, 465 U.S. 783). In the *Indianapolis Colts* case, the defendant sought to use the COLTS marks for a Canadian Football League team. In response, the NFL's Indianapolis Colts filed a trademark infringement suit in the Southern District of Indiana. The Seventh Circuit affirmed that the Indiana district court had personal jurisdiction over the defendant:

> The only activity of the team undertaken or planned so far in Indiana is the broadcast of its games nationwide on cable television. Since the Indiana statute reaches as far as the U.S. Constitution permits, . . . we need decide only whether the due process clause of the Fourteenth Amendment forbids the degree of extraterritoriality entailed by this lawsuit. We think not, and are not even certain that the broadcasts in Indiana are critical. The Indianapolis Colts use the trademarks they seek to defend in this suit mainly in Indiana. If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana. **Since there can be not tort without an injury, . . . the state**

> **in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there**. This conclusion is supported by the Supreme Court's decision in *Calder v. Jones*, . . . holding that the state in which the victim of the defendant's defamation lived had jurisdiction over the victim's defamation suit.

34 F.3d at 411-12 (emphasis added, internal citations omitted).

The facts of this case dictate a similar outcome. As explained above, Ariel Capital knew of Ariel Investments when it chose its name and knew that Ariel Investments is based in Illinois as demonstrated above. Ariel Capital's owner also admitted understanding the importance of avoiding another company's name in his deposition when he described his Google searches relating to his proposed company name and his decision to forego the name "Ariel Wealth Advisors." (Bray Dep. at 75:13-25; 76:1-7.) That is, Mr. Bray's decision to forego "Ariel Wealth Advisors" shows that he understood that a senior rights holder is materially harmed by misappropriating its trademark rights. *See Processed Plastic Co. v. Warner Comms., Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (holding that "the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods"); *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (holding that the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy").

Nevertheless, Ariel Capital decided to use the ARIEL mark in its name notwithstanding Ariel Investments' long-held rights in the ARIEL trademarks. Mr. Bray's decision to use ARIEL in his company's name imparted instant respect and credibility to a fledgling financial services company, and that decision led to a tort in Illinois. The facts of this case fit squarely with the facts of the *Indianapolis Colts* case. "By choosing a name that might be found to be confusingly

similar [to Ariel Investments' name], [Ariel Capital] assumed the risk of injuring valuable property located in [Illinois]. . . . [T]he state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in [Illinois] should . . . be amenable to suit there." *Indianapolis Colts*, 34 F.3d at 411-12.

To the extent "something more" than the intentional commission of a tort in Illinois may be needed to support personal jurisdiction, *Tamburo*, 601 F.3d at 706, Ariel Capital states that it serves customers "throughout the United States," and its primary advertising vehicle is its website which is visible in this District and throughout the United States. (Bray Dep. Ex. P-5.) Ariel Capital even points to its Illinois contacts on that website, such as Mr. Bray's past speeches in Illinois and the Midwest to promote its financial acumen. (*Id.*) Likewise, in *Indianapolis Colts*, the Seventh Circuit pointed to defendant's *potential* television broadcasts including the infringing mark into Indiana, and questioned if this evidence was even required under the *Calder* effects test. 34 F.3d at 411. If the possibility of a passive television broadcast could constitute "something more," then Ariel Capital's actual broadcast of its infringement in Illinois via its website to attract Illinois customers also constitutes "something more."

Mr. Bray's intentional targeting of Ariel Investments and knowledge of Ariel Investments' Illinois base also constitute "something more" and distinguish this case from other cases finding personal jurisdiction lacking notwithstanding the holdings of *Calder* and *Indianapolis Colts*. For example, in *Advanced Tactical Ordnance Sys. v. Real Action Paintball*, 751 F.3d 796 (7th Cir. 2014), the alleged infringement was wholly disconnected from the defendant's contacts with the forum. There, the trademark infringement was not based on the defendant's name or branding, but rather a notice the defendant posted on its website that used the plaintiff's trademark. *Id.* at 799. The defendant's contacts with the forum state, such as

limited product sales and other marketing efforts, were therefore not the basis of the cause of action. *Id.* at 803. In contrast, here, Ariel Capital is targeting Ariel Investments by using the ARIEL mark in its company name, which is marketed to potential clients in Illinois and "throughout the United States." (Bray Dep. Ex. P-5.)

Other courts in this district have affirmed that *Indianapolis Colts* remains "valid and offer[s] insight into the complex and evolving nature of the 'express aiming' test." *Telemedicine Solutions LLC v. WoundRight Techs. LLC*, 27 F. Supp. 3d 883, 894 (N.D. Ill. 2014). Indeed, the Seventh Circuit's limited application of personal jurisdiction in *Advanced Tactical Ordinance* rested on the Supreme Court's narrow decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). In *Walden*, the tortious conduct occurred completely outside of the forum state and was perpetrated against plaintiffs who were merely travelling to the forum state. Beyond those specific facts, the Supreme Court did not diminish its prior decision in *Calder* or otherwise limit the "effects test." Instead, the Court re-affirmed the Calder "effects test" where the "reputation-based 'effects' of the alleged libel connected the defendant to [the forum]." 134 S. Ct. at 1123-24. And the Seventh Circuit explained in *Indianapolis Colts* that intentional trademark infringement was analogous to the defamation complained of in *Calder*. 34 F.3d at 412.

Accordingly, this case is more akin to this Court's ruling in *Agsco Corp. v. Scheer*, where personal jurisdiction existed because the defendant "targeted a particular Illinois victim." Case No. 99-cv-4357, 1999 U.S. Dist. LEXIS 20157, at *8-9 (N.D. Ill. Dec. 27, 1999)[4]; *see also Mor-Dall Enters. v. Dark Horse Distillery, LLC*, Case No. 13-cv-915, 2015 U.S. Dist. LEXIS 12325

---

[4] Although the Court in *Agsco* found personal jurisdiction proper, the Court transferred the case to New Jersey because it found venue to be improper under 28 U.S.C. § 1391. 1999 U.S. Dist. LEXIS 20157, at *12-14. The defendant in *Agsco*, however, was an individual and therefore subject to different venue considerations than corporate defendants. For corporate defendants, such as the case here, the venue analysis is coextensive with the personal jurisdiction analysis. *See* 28 U.S.C. § 1391(c).

(W.D. Mich. Feb. 3, 2015) (finding personal jurisdiction existed in Michigan where (i) defendant was aware of the plaintiff's pre-existing trademark; (ii) plaintiff was forum state-based; and (iii) defendant demonstrated an intent to market to consumers of the forum state.) In sum, Ariel Capital's intentional tort in Illinois, against an Illinois company, coupled with its advertising of its infringing services to Illinois consumers, creates sufficient contacts with this district to confer personal jurisdiction over Ariel Capital.

## II. Mr. Bray's Declaration Is Contradicted by Independent Evidence and Ariel Capital's Own Website.

Mr. Bray submitted a declaration in support of Ariel Capital's motion to dismiss or transfer. (Dkt. 17-2.) That declaration, however, contains inaccuracies and omits facts demonstrating that Mr. Bray is not credible.

Mr. Bray swore that, "ACA has <u>never had any contacts</u> with the state of Illinois, purposeful or otherwise." (Dkt. 17-2 ¶ 6 (emphasis added).) That is not correct:

- Ariel Capital claims to serve clients "throughout the United States" on its website.[5] (Bray Dep. Ex. P-5.)

- Ariel Capital exchanged letters with Ariel Investments' counsel in Chicago, and Mr. Bray spoke with Ariel Investments' counsel in Chicago. (Dkt. 1 ¶¶ 24-26, Exs. C & D.)

- Ariel Capital exchanged emails with attorneys in the Chicago area prior to choosing counsel for this case.

Mr. Bray swore that, "ACA <u>never had any mail or wire communications</u> with the State of Illinois." (Dkt. 17-2 ¶ 8 (emphasis added).)

- Ariel Capital exchanged letters with Ariel Investments' counsel in Chicago, and Mr. Bray spoke with Ariel Investments' counsel in Chicago. (Dkt. 1 ¶¶ 24-26, Exs. C & D.)

---

[5] Mr. Bray testified that he wrote and approved of Ariel Capital's website content. (Bray Dep. at 16:11-25; 17:1-25; 18:1-8; 55:17-24; 60:2-4.)

- Ariel Capital exchanged emails with attorneys in the Chicago area prior to choosing counsel for this case.

Mr. Bray swore that, "ACA has never conducted any business in or directed at the state of Illinois." (Dkt. 17-2 ¶ 9.)

- Ariel Capital claims to serve clients "throughout the United States" on its website. (Bray Dep. Ex. P-5.)

Mr. Bray swore that, "ACA has <u>never engaged in any transaction</u> in the state of Illinois." (Dkt. 17-2 ¶ 10 (emphasis added.)

- Mr. Bray, however, conceded that Ariel Capital may have traded securities in Illinois companies, including Chicago based Illinois Tool Works, or Illinois municipalities. (Bray Dep. at 53:6-25; 54:1-6.)

Mr. Bray swore that, "ACA has never engaged in any conduct directed at Illinois." (Dkt. 17-2 ¶ 11.)

- This statement is belied by Ariel Capital's decision to use the ARIEL marks with knowledge of Ariel Investments' long-standing use of those marks.

Finally, Mr. Bray swears that Ariel Capital "has never advertised in Illinois." (Dkt. 17-2 ¶ 13.)

- Ariel Capital's website again belies this claim. In Mr. Bray's biography included on the company's current website, he touts his various qualifications, including numerous speaking engagements, such as a speaking engagement in Peoria, Illinois and other meetings "throughout the Midwest." (Bray Dep. at Ex. P-5.)[6]

These contacts demonstrate that Mr. Bray is prone to overstatements. The Court should consider that propensity when it weighs Ariel Capital's decision to use the ARIEL mark in its name notwithstanding Mr. Bray's awareness of Ariel Investments' principal John Rogers, Mr. Bray's

---

[6] Mr. Bray may argue that these speaking engagements occurred before he formed Ariel Capital, but these engagements are currently touted on Ariel Capital's website and he stated that Ariel Capital was "essentially the same company" as its predecessor Willow Street Advisors. (Shoenfelt Decl. ¶ 6; Bray Dep. Ex. P-5.)

attendance at trade shows prominently sponsored by Ariel Investments, Mr. Bray's reading of publications in which Ariel Investments advertises heavily, and Mr. Bray having conducted Google searches of the "Ariel" name before deciding to use the name Ariel Capital. That is, Mr. Bray's denial of targeting Ariel Investments when he decided to use the ARIEL mark is not credible.

### III. Venue Is Proper in This District Because Ariel Capital Is Subject to Personal Jurisdiction.

Venue is proper in any district in with the defendant resides. 28 U.S.C. § 1391(b)(1). When assessing venue, a corporate defendant is deemed to reside in any district in which the defendant has sufficient minimum contacts to subject the corporation to personal jurisdiction. 28 U.S.C. § 1391(c)(2). Thus, in this case, the venue analysis collapses into the personal jurisdiction analysis and venue is proper in this district because Ariel Capital is subject to personal jurisdiction in the Northern District of Illinois, for the reasons explained above. Therefore, the Court should deny Ariel Capital's motion to dismiss under Rule 12(b)(3).

### IV. This Case Should Not Be Transferred to Florida.

The so-called "private" and "public" factors do not favor transferring this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404.

#### A. The Private Factors Favor Keeping this Case in this Court.

The most important factor here is that Ariel Investments is a Chicago-based company that is being harmed in its Chicago home by Ariel Capital's intentional trademark infringement and, therefore, seeks to protect its trademark rights in a Chicago court. *In re: National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (quoting *Golf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Ariel Capital argues that the Court should ignore Ariel

Investments' choice of its home forum because Ariel Capital is infringing Ariel Investments' trademarks in Florida. (Dkt. 17 at 12.) Ariel Capital, however, again ignores the fact that it is intentionally infringing the ARIEL marks and intentionally harming Ariel Investments in this District. Mr. Bray testified that he decided not to use the name "Ariel Wealth Advisors" when his initial Google search found a conflict with another firm. (Bray Dep. At 75:16-25). But, when Mr. Bray searched for "Ariel Capital Advisors," he must have found Ariel Investments and, this time, he decided to go forward anyway, notwithstanding Ariel Investments' 30-year history of using its ARIEL marks. Thus, a key operative fact is taking place in this District. Ariel Investments is feeling the effect of Ariel Capital's infringement of Ariel Investments' long-standing trademark rights.

In the age of digital discovery, many of the rest of the "public factors" do not favor either forum. Documentary evidence is equally available everywhere. *Rabbit Tanaka v. Paradies Shops*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town."); *Abbott v. Lockheed Martin Corp.*, Case No. 06-cv-0701-MJR, 2007 U.S. Dist. LEXIS 19600, at *12-13 (S.D. Ill. Mar. 20, 2007) (the contention that relevant documents are located outside the jurisdiction "does not tilt the balance in favor of transfer" where paper documents will likely be scanned and produced in electronic form for discovery purposes). The witnesses are split between Chicago and Naples, Florida – with Ariel Investments' key witnesses located in Chicago, and Mr. Bray located in Florida. Likewise, the availability of compulsory process is not an issue as the parties' respective Rule 26 disclosures identify employees and agents of the parties and a single third party not located in either jurisdiction.

### B. The Public Factors Favor Keeping this Case in this Court.

The "public factors" favor this District because there is a "community interest" in allowing a Chicago-based company to protect its valuable trademark rights in a Chicago court. For example, if Ariel Capital's infringement harms the reputation of Ariel Investments or devalues the ARIEL marks, then Ariel Investments will suffer that harm where it resides – in Chicago. Likewise, consumers are likely to be confused by Ariel Capital's infringement in Chicago as well as in Florida. Indeed, Ariel Investments has thousands of customers in this District (Kosier Decl. ¶ 4), and Ariel Capital claims to be a nationwide business seeking clients throughout the USA (Bray Dep. Ex. P-5).

As for the congestion of the two courts, Ariel Capital's citation to the number of pending cases in each court (7,381 to 11,060) is irrelevant, if not misleading. There are 15 active judges in the Middle District of Florida, meaning that there are 561 cases per judge. And there are 22 active judges in this District, meaning that there are 615 cases per judge in this District – hardly a material difference. Likewise, the time-to-trial numbers in the two districts are similar at two years versus two years and six months – neither court is a so-called "rocket docket."

Because the "private factors" and "public factors" favor keeping this case in this District, this Court should deny Ariel Capital's motion to transfer the case to the Middle District of Florida.

*Conclusion*

For these reasons, Ariel Investments respectfully requests that the Court deny Ariel Capital's motion to dismiss or transfer this case.