**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: 1:15-cv-3717 |
| v. | ) | |
| | ) | Judge: Hon. Matthew F. Kennelly |
| ARIEL CAPITAL ADVISORS LLC, | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION, IMPROPER VENUE AND/OR TO TRANSFER**

Plaintiff Ariel Investments, LLC ("AIL") did not and cannot show any Illinois-contacts by Ariel Capital Advisors LLC ("ACA"). AIL argues that a Google search, a speaking engagement a decade before ACA's creation, AIL's advertising, and emails to ACA are Illinois contacts. But none of those points are sufficient to confer personal jurisdiction.

Indeed, ACA has no clients in Illinois. No property. No offices or agents. None of ACA's employees have ever traveled to Illinois for any purpose related to ACA. Nor has ACA advertised to or sought clients in Illinois. AIL received interrogatories, document productions, a declaration and a jurisdictional deposition all showing that ACA did not have Illinois contacts. Yet AIL responded not with evidence to support why it filed here, but with misrepresented testimony, abrogated law, and suppositions about the efficacy of its advertising. In short, AIL's lack of evidence connecting ACA to Illinois shows there was no basis to bring this suit here.

Accordingly, because AIL has not shown that ACA "targeted" the Illinois market, this case should be dismissed. But if the Court finds that jurisdiction exists, Florida consumers are the better populace to decide this matter because ACA's marketing is aimed at them.

1

## I.  PLAINTIFF FAILED TO SHOW SUIT-RELATED CONTACTS TO ILLINOIS

AIL has not shown that ACA's "*suit-related* conduct []create[d] a substantial connection with" Illinois.  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).  Indeed, its main arguments to support jurisdiction in Illinois are directed to *Plaintiff's* conduct rather than Defendant's.  For instance, AIL first argues that ACA must have known about AIL because of Google searches and its advertising.  But AIL does not show any evidence of that occurring, or why that connects ACA to Illinois.  Even so, knowledge about a party (with a different name than the asserted trademark) is insufficient to confer jurisdiction.  AIL then argues that its cease-and-desist letter conferred jurisdiction by making ACA aware of the alleged mark.  But the Seventh Circuit has denied receipt of such a letter and knowledge of a mark as bases for jurisdiction.  And finally, AIL misstates testimony and cites an abrogated case to justify jurisdiction, which still supports ACA.  In short, because Plaintiff has not presented any evidence that ACA had Illinois contacts, it did not meet its burden, so the suit should be dismissed.

### A.  ACA Does Not Have Any Contacts with Illinois

Plaintiff AIL must show that ACA had "suit-related" conduct that created a "substantial connection" with Illinois.  *Walden v. Fiore*, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction…the defendant's suit-related conduct must create a substantial connection with the forum State.").  At its core, AIL argues that ACA chose its name based on AIL's advertising, and because AIL has offices in Chicago, ACA knew it could be haled into court in Illinois.  It argues that ACA "intentional[ly] misappropriate[ed] [AIL's] long-held trademark rights…"  In support, AIL states that it used the "ARIEL marks for more than 30 years," in its advertising,[1] its

---

[1] Ariel Investments, LLC did not exist before 2004

appearance in Google searches, and that it purportedly sent emails to ACA. In turn, AIL argues that Mr. Bray, ACA's managing partner, must have known about AIL when he chose the name Ariel Capital Advisors, and therefore traded off of AIL's name intentionally. However, ACA's name had a simpler origin, and AIL's theory is unsupported by the facts or law.

"Ariel Capital Advisors" was named after Mr. Bray's daughter, Ariel Bray, and also to honor Jerusalem (also known as Ariel) and Ariel Ministries, a mission that his family is a part of that seeks to strengthen Jewish-Christian relations. *See* Exh. A, ACA 30(b)(6) Dep., pg. 74, lns. 18-24 ("[Mr. Bray's daughter] was named after the ancient Hebrew word, which means lion of God, which also is another name for the City of Jerusalem.… So we named our daughter Ariel. And when it came to naming the firm…"); *see also Isaiah* 29:1 (Jerusalem known as "Ariel"); Ariel Ministries website, http://www.ariel.org/index.htm (last visited Aug. 24, 2015). ACA's name thus honors Mr. Bray's family and faith.

Despite this notice, AIL nevertheless argues that Mr. Bray chose to use Ariel Capital Advisors because he had seen "Ariel Investments" in advertising and Google. AIL argues that because Mr. Bray googled "Ariel Wealth Advisors" (an unrelated New York company) as a potential name, he must have seen AIL in the search results. Same with the search for ACA. AIL then argues its attorney googled "Ariel Capital Advisors" on August 5, 2015, and saw "Ariel Investments" in the search results, so in turn Mr. Bray must have seen it 1.5 years prior. However, because Google tailors search results to individuals, and because search results change over time, AIL's attorney's "replicated" search provides no support or reliability that "Ariel Investments" came up years earlier. *See* Exh. B (Google "search results are not only based on the relevance of each web page to the search term, ***but also on which websites the user (or someone else using the same browser) visited through previous search results***") (emphasis

added); *see also* MOZ, *Google Algorithm Change History*, https://moz.com/google-algorithm-change (Google's search algorithm is changed "500–600 times" yearly, and that "[w]hile most of these changes are minor, Google occasionally rolls out a 'major' algorithmic update…that affects search results in significant ways.") (last visited Aug. 20, 2015).  Accordingly, there is no evidence that "Ariel Investments, LLC" appeared at that time, and even if it had, a Google search is not conduct "targeting" Illinois.

Next, AIL implies that its magazine advertisements and a Schwab conference drove Mr. Bray to select ACA's name.  However, placing advertisements in a magazine is *Plaintiff's* conduct, not *Defendant's* conduct.  *Walden*, 134 S. Ct. at 1122 (citing *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  Furthermore, many of these advertisements significantly predate ACA's existence, and AIL does not show how its ads drove ACA to target Illinois.  *Id.* ("it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").  ACA also did not exist when Mr. Bray attended a Schwab conference in Washington, D.C.

But even if Mr. Bray had knowledge of AIL when he formed ACA, knowledge of a mark is not targeting a forum.  *See Payne v. Bucket Sol., LLC*, No. 2:13-CV-110-TLS, 2013 WL 5946690, at *5 (N.D. Ind. Nov. 6, 2013) ("knowing infringement of a trademark is not the same as intentionally targeting a forum."); *Family Watchdog, LLC v. Schweiss*, No. 1:08CV-642-SEB-DML, 2009 WL 276856, at *4 (S.D. Ind. Feb. 5, 2009) ("In a trademark case, courts are to be wary of conflating a knowing infringement with intentional harm aimed at the forum.").

### B. AIL's Letters and Call to ACA Do Not Confer Personal Jurisdiction

AIL next claims that its phone call and "[writing] to Ariel Capital…to stop using the ARIEL mark" exhibit ACA's intentional disregard for AIL's trademark rights, which it argues is intent to target Illinois.  However, as the Seventh Circuit has stated, that "argument finds no support in the case law" because that could subject any party to jurisdiction merely by receiving a letter.  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 447 (7th Cir. 2010) ("To find express aiming based solely on the defendant's receipt of [the cease-and-desist] letter would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is."); *see also be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("The Lanham Act does not authorize nationwide service of process") (citation omitted); *Payne*, 2013 WL 5946690, at *5 ("knowing infringement of a trademark is not the same as intentionally targeting a forum."). Accordingly, AIL's contacts to ACA have no bearing on the jurisdictional analysis.

### C. AIL Misstates Facts and Law to Argue that ACA Purposefully Availed Itself of Illinois

AIL cited abrogated case law and nonexistent deposition testimony to support its case that ACA "purposely availed" itself of Illinois.  AIL bases its claim that ACA targeted Illinois because it had "knowledge that the effects of [ACA's] actions—the plaintiff's harm—would be felt in the forum state."  Dkt. 27 (Pl.'s Br. at 7[2].) (citing *Indianapolis Colts, Inc. v. Metro. Balt. Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994)).  But as the Supreme Court stated:

> "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced a

---

[2] ACA used AIL's numbering for its page cites, which because of the cover page, differs from the ECF numbering.

> particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

As with *Walden*, Plaintiff's complaint that it felt harm in the forum State is not enough for jurisdiction. *See also Advanced Tactical*, 751 F.3d at 802 (abrogating *Indianapolis Colts v. Metro. Bal. Football Club* in view of *Walden v. Fiore*) ("after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative."; *and* "[t]he 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'"); *and see Family Watchdog*, 2009 WL 276856, at *4 n.16 ("The broad proposition that a victim of alleged trademark infringement can sue in its home jurisdiction simply because the injury was felt there is not accepted even in the Seventh Circuit.") (citations omitted). But even if *Indianapolis Colts* was not abrogated, the court there found jurisdiction largely because defendant planned on targeting Indiana customers, and planned to broadcast its games in Indiana. *See Indianapolis Colts*, 34 F.3d at 412. Whereas here, AIL has not shown that ACA intended to target Illinois consumers.

AIL then miscites Mr. Bray's deposition testimony as stating: "Ariel Capital is targeting Ariel Investments by using the ARIEL mark in its company name, ***which is marketed to potential clients in Illinois***…" (Pl.'s Br. at 10.) (citing ACA Dep. Ex. P-5.) (emphasis added). But Mr. Bray never said that: he testified that ACA did **not** "market" to potential clients in Illinois. *See* Exh. A, ACA Dep., pg. 19, lns. 2-5 ("Q: Are any of [your clients] in Illinois? A: They are not. Q: Have you ever had clients in Illinois? A: No."); *and see* pg. 67, ln. 8 – pg. 68, ln. 4 (ACA does not advertise in Illinois).

AIL further stated Mr. Bray testified that "[ACA's] primary advertising vehicle is its website." (Pl.'s Br. at 9.) Mr. Bray also never said that. He instead testified that ACA's primary

advertising vehicle is its clients and referrals.  Exh. A, ACA Dep., pg. 83, lns. 14-21 ("Q: …how do new clients typically come to ACA?  A: Referrals from existing clients. … Q: …you're saying almost all or all clients come via referral?  A: That's correct.").

AIL next argues that ACA is intentionally committing "a tort in Illinois" because its website says it "serves customers 'throughout the United States,'" which AIL again incorrectly states is ACA's "primary advertising vehicle."  (Pl.'s Br. at 9.)  However, operating a website is not contact with Illinois, especially because it does not target the Illinois market.  *See Mobile Anesthesiologists*, 623 F.3d at 446 (maintaining "a website accessible to residents of the forum state and alleging that the defendant caused harm through that website" is not enough to meet the *Calder* standard); *be2 v. Ivanov*, 642 F.3d at 559 ("merely operat[ing] a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state…").  So even if ACA's website says it serves "customers throughout the U.S.," that is not enough to confer jurisdiction.

### D.   AIL Also Incorrectly States that Mr. Bray's Declaration is Contradicted

AIL states that Mr. Bray's declaration contains "inaccuracies and omits facts," and that "Mr. Bray is not credible."  AIL is wrong, and its accusations are baseless and overreaching.  For instance, AIL questions Mr. Bray's credibility that "[ACA] 'has never advertised in Illinois.'"  In support it states:

> Ariel Capital's website again belies this claim. In Mr. Bray's biography included on the company's current website, he touts his various qualifications, including numerous speaking engagements, such as a speaking engagement in Peoria, Illinois and other meetings "throughout the Midwest."

(Pl.'s Br. at 12.)  At the onset, listing a past speaking engagement in a biography is not "advertis[ing] in Illinois," let alone targeting Illinois.  But even so, AIL omits that it was 10 years prior to ACA's formation, and that it occurred prior to Mr. Bray even joining his former firm.

Simply put, Mr. Bray was truthful about ACA <u>not</u> advertising to Illinois consumers. *See, e.g.*, Exh. A, ACA Dep., pg. 67, ln. 8 – pg. 68, ln. 4 (no Illinois advertising); *and see* pg. 19, lns. 2-5 (no Illinois clients).

AIL then questions Mr. Bray's honesty about: (1) "ACA has never conducted any business in or directed at the state of Illinois" (Pl.'s Br. at 12.), and that (2) "ACA has never had any contacts with the state of Illinois..." (Pl.'s Br. at 11.). To support its claims, AIL uses the website quote that ACA provides "services to clients throughout the United States." But that is a false association: stating that it serves clients "throughout" the U.S. does *not* mean ACA conducted business *in Illinois*, the remaining 49 states, or that it is a basis to question Mr. Bray's honesty.

AIL then disputes Mr. Bray's credibility that "ACA has never engaged in any transaction in the state of Illinois" saying he conceded that it "may have traded securities in Illinois companies, including Chicago based Illinois Tool Works, or Illinois municipalities." Pl. Br. at 12. However, Mr. Bray said that ACA, if anything, "avoid[s]" investing in Illinois municipalities because it is a "very risky asset." Exh. A, ACA Dep., pg. 54, lns. 2-6 ("[Illinois is] in real bad shape, so we generally look at that as a very risky asset. So our general advice would be to eliminate exposure to the near-bankruptcy State of Illinois."). Mr. Bray also never "conceded" that ACA bought or sold Illinois stocks. Rather, he said that he does not recall whether one of his clients at some point owned an Illinois stock that was sold, just that it was a possibility. Tellingly, Plaintiff has not presented any evidence of that occurring, but even if it had, that would not have occurred "in the state of Illinois" as ACA's office is in Naples, Florida, and Illinois Tool Works is traded on the NYSE.[3]

---

[3] Selling and buying stock of Illinois companies nevertheless is not suit-related conduct targeting Illinois.

AIL further questions that ACA did not have contacts with Illinois because Mr. Bray received emails from "attorneys in the Chicago area prior to choosing counsel for this case[,]" and because AIL's counsel corresponded with him. (Pl. Br. at 11-12.) However, post-filing emails from attorneys about representing ACA in this suit, and AIL's attorneys sending letters to and calling Mr. Bray are not "ACA's intentional" contacts "expressly aimed at Illinois," "committed with knowledge" that AIL would be harmed in Illinois. *See, e.g.*, *Advanced Tactical*, 751 F.3d at 803 ("connection between the place where an email is opened and a lawsuit is entirely fortuitous").

Accordingly, because AIL did not identify any contacts by *ACA* to Illinois, it does not meet the first or second prongs of the jurisdictional analysis so the inquiry ends there and the complaint should be dismissed. *See GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). But even if some contacts existed – which they do not – the third prong is not met because the contacts are not "suit-related," and thus the exercise of personal jurisdiction over ACA would fail to comport with "traditional notions of fair play and substantial justice." *See id.*; *and see Advanced Tactical*, 751 F.3d at 801 ("'the defendant's [must have] *suit-related* conduct [that] create[d] a substantial connection with the forum State.'").

## II.   NORTHERN DISTRICT OF ILLINOIS IS AN IMPROPER VENUE

AIL's sole basis for venue in the Northern District of Illinois is based on its personal jurisdiction argument. Because there is no personal jurisdiction over ACA in this District, venue is improper under § 1391(b)(3) and the suit should be dismissed.

## III.  THE MIDDLE DISTRICT OF FLORIDA IS MORE CONVENIENT

If this Court disagrees with ACA and finds both personal jurisdiction and venue to be proper, the Middle District of Florida, Fort Myers Division, is more "convenien[t for the] parties

and witnesses, [and is] in the interest of justice." Indeed, all of the public and private factors favor or are neutral to transfer save AIL filing here.

## A. The Private Interest Factors Favor Transfer

AIL's main argument against transfer is that ACA is purportedly "intentionally infringing" AIL's mark and is "intentionally harming" it in Illinois. It argues that it is "feeling the effect of Ariel Capital's infringement." However, it offers no evidence or support for why or how it is "feeling" those effects in Illinois. Whereas ACA markets its services to Florida residents and has its principal place of business there. *See* Exh. A, ACA Dep., pg. 67, ln. 8 – pg. 68, ln. 4 (ACA advertises locally). So if ACA's name is confusing consumers, it would confuse the people who actually see its advertisements: Floridians. Thus, Florida is the alleged situs of material events, and any alleged conduct and proofs related to this matter would be connected to Florida. *Barnes v. Rollins Dedicated Carriage Serv., Inc.*, 976 F. Supp. 767, 769 (N.D. Ill. 1997) (transferring the case "[p]rimarily, because [the Southern District] is the situs of the events giving rise to this action."); *Belmonte v. Examination Mgmt. Servs.*, No. 05-CV-3206, 2007 WL 551578, at *3 (N.D. Ill., Feb. 16, 2007) ("[T]he convenience of the parties is strongly in favor of the Northern District of Texas where all, or virtually all, of the proof of this claim can be found."). Because the alleged events occurred in Florida, and all the physical evidence of ACA's advertising resides in Florida, the facts of this case heavily favor transfer there.

## B. Plaintiff's Choice of Forum Should Be Disregarded

AIL's choice of forum should be disregarded because it is the only factor in its favor and none of the alleged conduct occurred in Illinois. *See Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (Plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff."). Here, all acts alleged by Plaintiff would have ostensibly occurred in Florida and primarily impacted Florida

residents, so the claim lacks any significant connection to this forum. *See Walter E. Heller & Co. v. James Gobe Co.*, 601 F. Supp. 319, 321 (N.D. Ill. 1984) ("[W]here the chosen forum lacks any significant connection with the underlying claim, it is of reduced..."). For these reasons, AIL's selected forum should be ignored.

### C. The Public Interest Factors Weigh in Favor of Transfer

AIL downplays the true efficiency of hearing the case in the Middle District of Florida. In fact, the time to trial in the Middle District of Florida is 25.9% quicker, while at the same time the Northern District of Illinois judges are busier. *See* Dkt. 17-4, Exh. 4a & 4b, Admin. Off. U.S. Cts., *2014 Ann. Rep. of the Dir.: Jud. Bus. of the U.S. Cts.* (2015). Accordingly, the less congested court with a faster time to trial would be less burdened by the litigation and could resolve the dispute faster. Furthermore, because Florida's citizens were the populace that are allegedly most likely to be confused by ACA's use of its name and advertising, they have a community interest in adjudicating this case.

### CONCLUSION

Because Plaintiff AIL has not shown that ACA has contacts to Illinois, Defendant ACA respectfully requests this Court to enter an order dismissing the Complaint in its entirety under Rules 12(b)(2) and 12(b)(3). In the alternative, ACA respectfully requests that this Court transfer this action to the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.

Dated: August 26, 2015                Respectfully submitted,


                                             By:/s/ Brian Noack _____

                                             Adam Wolek

                                             Brian Noack

                                             WOLEK & NOACK

                                             70 East Lake Street, Suite 1220

                                             Chicago, Illinois 60601

                                             P 239.671.1103

                                             F 708.843.0509

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 26, 2015, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated:  August 26, 2015                    WOLEK & NOACK


                                           By: s/  Brian T. Noack
                                               Brian T. Noack