**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ARIEL INVESTMENTS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 15 C 3717** |
| ) | |
| **ARIEL CAPITAL ADVISORS LLC,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

Ariel Investments, LLC, which is based in Illinois, has sued Ariel Capital Advisors LLC (Ariel Advisors), which is based in Florida, under the Lanham Act and Illinois law. Both companies provide investment-related services. Ariel Investments alleges that Ariel Advisors adopted a confusingly similar name in an effort to trade on Ariel Investments' name and goodwill. Ariel Advisors has moved to dismiss the complaint for lack of personal jurisdiction and proper venue, or alternatively to transfer the case to the Middle District of Florida. For the reasons stated below, the Court denies Ariel Advisors' motion.

**1.      Personal jurisdiction**

As the plaintiff, Ariel Investments has the burden of establishing jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Because the Court has not held an evidentiary hearing on personal jurisdiction (and none has been requested), Ariel Investments need only show a prima facie case of personal jurisdiction. *Id.* In evaluating whether Ariel Investments has done so, the Court accepts as true the uncontroverted allegations in the complaint and resolves any disputes concerning relevant facts in Ariel Investments' favor. *Id.*

Ariel Investments, which has its headquarters in Chicago, has been in business since 1983. It was originally called Ariel Capital Management, Inc., but it changed its name to Ariel Investments in 2008. It alleges that it continues to be referred to, at least by some, as Ariel Capital. Ariel Investments provides investment management services

for its clients nationwide. It owns several federally-registered trademarks with the term Ariel for use in the investment field, including Ariel, Ariel Investments, Ariel Fund, and so on.

Ariel Advisors, which has its headquarters in Naples, Florida, began doing business in the early part of 2014. Like Ariel Investments, Ariel Advisors provides investment management services for its clients. In addition to its office in Naples, it has an office in Cleveland, Ohio. Based on the evidence adduced to date, Ariel Advisors has clients in a number of states, but none in Illinois—though on its website it says that it provides services "throughout the United States."

Before responding to Ariel Advisors' motion, Ariel Investments was given leave to take the deposition of Ariel Advisors' founder, Christopher Bray, on matters relating to the question of personal jurisdiction. Bray testified that he chose the company's name because Ariel is his daughter's name. He stated that neither he nor the company performed a trademark search before adopting the name. When asked whether he performed any sort of online search, Bray testified that he originally chose the name Ariel Wealth Advisors but then performed a Google search and discovered a New Jersey firm with that name. He said that he didn't "want to take another firm's name," Bray Dep. at 75, so he passed on that name. Bray testified that he then performed a Google search using the term "Ariel Capital Advisors" and found no other firm with that name. When asked whether he found "any other financial services firms using the name 'Ariel,'" Bray said, "Not that I recall," and when asked by Ariel Investments' attorney, "What about my client?" he said "I would say no, but I'm not 100 percent certain." *Id.* at 76.

In August 2015, an attorney for Ariel Investments performed a Google search using the term "Ariel Capital Advisors." The first two "hits" were for defendant's website. The next hit after that was for plaintiff's website. Ariel Investments has also offered evidence of its longstanding prominence and that of its founder, John Rogers, in the investment field, as well as its extensive marketing efforts, including at industry events Bray has attended. Based on this and other evidence, the fact that Bray has worked in the same field for over twenty years, and his admission regarding his conduct of Google searches, Ariel Investments contends that when Bray chose the name Ariel Capital

2

Advisors, he likely was aware of Ariel Investments' existence, its work in the same field, and its similar name.

In August 2014, after Ariel Investments learned of Ariel Advisors, its counsel sent Ariel Advisors a cease-and-desist letter demanding that it stop using the name Ariel. The letter came from the Chicago office of the law firm representing Ariel Investments. It is undisputed that Ariel Advisors received this letter as well as follow-up communications from Ariel Investments' counsel. There is evidence that Bray responded to at least one of these communications in a dismissive manner. It is undisputed that after receiving these communications, Ariel Advisors continued using the same name and thus, according to Ariel Investments, continued violating the Lanham Act and state law.

Illinois law governs the issue of jurisdiction, *see* Fed. R. Civ. P. 4(k)(1)(A), and Illinois permits a court to exercise jurisdiction over a defendant to the extent permitted by due process. 735 Ill. Comp. Stat. 5/2-209(c). Due process is satisfied by a court's exercise of jurisdiction over a defendant if it has "certain minimum contacts" with the forum state such that the "maintenance of the action does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). When a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), a court in that state may exercise jurisdiction over the defendant "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Ariel Advisors' receipt of the cease-and-desist letter and related communications from Ariel Investments' counsel are not relevant contacts for purposes of personal jurisdiction. Those contacts were initiated by Ariel Investments, and for purposes of jurisdiction only the defendant's contacts with the forum state count. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State.") (internal quotation marks omitted). Nor may the Court consider as a basis for exercising jurisdiction Ariel Advisors' claimed continuation of its alleged infringement following receipt of the communications from

3

Ariel Investments.  *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 447 (7th Cir. 2010).  Were the contrary true, as the Seventh Circuit noted in *Mobile Anesthesiologists*, all it would take to create personal jurisdiction over an out-of-state defendant would be to send that defendant a letter or e-mail telling it to stop infringing.  Such a contention, the Seventh Circuit said, "finds no support in the case law."  *Id.*

      Those irrelevant contacts aside, the Court turns to the main question, namely whether it is sufficient for jurisdictional purposes that Ariel Advisors intentionally caused injury to an Illinois plaintiff by deliberately trading on its intellectual property rights.  The threshold issue, of course, is whether Ariel Investments has made a sufficient showing that this is what occurred.  The Court finds that Ariel Investments has done so.  Bray testified that he did not seek to trade on the name of another entity and that his use of "Ariel" was inspired by other considerations.  But Ariel Investments has offered evidence that provides reason to doubt Bray's claim that he was ignorant of Ariel Investments' prior and extensive use of the term in his field.  First, Ariel Investments has shown that it is highly likely that Bray came across Ariel Investment's name and presence in the investment advisory field on repeated occasions during his twenty-plus years working in that same field.  Second, Bray conceded that he performed online searches before adopting the Ariel name.  Although Ariel Investments' more recent replication of one of those searches does not necessarily amount to a smoking gun given how the results of online searches may change over time, it is certainly enough for present purposes to give rise to an inference that Bray realized, or deliberately chose to ignore, that he was adopting a name that arguably was confusingly similar to that used by Ariel Investments.  Discovery that Ariel Investments is an Illinois-based company would have been quite simple and thus also arguably part of what Bray may be claimed to have deliberately chosen to ignore.  The Court hastens to note that it does not intend by these comments to make a definitive finding that Ariel Advisors deliberately chose to trade on Ariel Investments' name.  But the evidence is certainly sufficient to make out a *prima facie* showing that it did so, which is the level of proof required of a plaintiff trying to establish personal jurisdiction when confronted with a motion to dismiss.

The next question is whether this is sufficient to give rise to jurisdiction. The Supreme Court made it clear in *Walden* that what is significant is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. And "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State . . . ." *Id.* Jurisdiction over an non-resident alleged to have committed an intentional tort "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 1123.

*Walden* says that the fact that Ariel Investments claimed to have suffered injury in Illinois, without more, "is not a sufficient connection to the forum." The issue "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. The Seventh Circuit has noted that although the foreseeability of harm in the forum state is not enough following *Walden*, the question of whether causing harm to a resident of the forum state creates sufficient minimum contacts "is more complex." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). The court did not, however, draw a bright line for when that is enough, but simply repeated the admonition in *Walden* that "'the plaintiff cannot be the only link between the defendant and the forum.'" *Id.* (quoting *Walden*, 134 S. Ct. at 1122).

In this case, the basis asserted for personal jurisdiction is not merely causation of harm in Illinois. Rather, Ariel Investment's contention is that Ariel Advisors deliberately set out to trade on the reputation and goodwill of an Illinois entity. As a matter of policy, the law ought not require a holder of intellectual property owner in these circumstances to go to the home forum of one who has, in effect, reached into the holder's home forum to take its property. When an out-of-state entity chooses to trade on the established name of an entity in the forum state and use that name for its own gain, it has, in the Court's view, established a relationship not just with the in-state entity, but with the forum state itself. This is sufficient under *Walden* and *Advanced Tactical*. The fact that Ariel Advisors might not *yet* have any Illinois clients—though it markets itself as providing services "throughout the United States"—is of no consequence.

5

2.    **Venue**

The Court also concludes that venue is proper in this district.  Venue is proper in a judicial district in which any defendant resides, 28 U.S.C. § 1391(b)(1), and under 28 U.S.C. § 1391(c)(1), an entity is considered to reside in any judicial district in which it is subject to personal jurisdiction.

3.    **Transfer**

The last issue is the question of transfer under 28 U.S.C. § 1404(a).  To obtain a transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient."  *Heller Fin., Inc. v. MidWhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).  "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Courts ordinarily give substantial weight to the plaintiff's choice of a forum, particularly in a case like this one in which it is the plaintiff's home forum.  *See In re Nat'l Presto Indus.*, 347 F.3d at 664 (plaintiff's choice "should rarely be disturbed"); *cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (common law forum non conveniens doctrine).  Ariel Advisors cites *Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955), for the proposition that little or no weight is given to the plaintiff's forum choice where the conduct complained of took place outside that forum.  *Igoe*, however, was a case in which the plaintiff sued outside her home forum.  The more recent decisional law the Court has cited makes it clear that *Igoe* does not carry much if any weight outside that context.

With regard to the question of convenience of the parties and witnesses, some though not all of the material events took place outside Illinois.  In addition, it is likely that witnesses will be coming both from Illinois and from Florida.  The Court notes, however, that Ariel Advisors has made no effort to identify a single likely witness from Florida or elsewhere aside from Bray.  Party and employee witnesses, however, are

largely disregarded in the convenience analysis, because it is reasonable to assume that they will appear voluntarily at trial, and under the Federal Rules, their depositions must be taken where they live or work under ordinary circumstances. *See, e.g., Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *3 (N.D. Ill. Feb. 6, 2013) (Kennelly, J.); *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *4 (N.D. Ill. June 1, 2006); *Hyatt Corp. v. Pers. Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004) ("Party witnesses are considered to be under the control of the party and thus their voluntary appearance in court is assumed.'").  Finally, the factor of access to sources of proof, specifically relevant records, is not a significant factor in the analysis. Given the way records are maintained and produced in litigation these days, the site of the lawsuit has little impact on the convenience of record production. *See Qurio Holdings v. DISH Network Corp.*, No. 14 C 7504, 2015 WL 536002, at *3-4 (N.D. Ill. Feb. 9, 2015) (Kennelly, J.).

The "interests of justice" factors typically considered on a section 1404(a) motion do not tilt the balance in favor of transfer.  Illinois has a significant interest in providing a forum for its residents to pursue litigation to protect their intellectual property rights.  It appears, based on statistics cited by Ariel Advisors, that cases that go to trial get there, on average, several months more quickly in the Middle District of Florida than in this district, but as the Court has noted on earlier occasions, general statistics like these are of limited utility, because they concern civil cases in the aggregate and not the particular type of case at issue, and because they are not judge-specific. *See, e.g., Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009) (Kennelly, J.).  The Court advises that it will set this case for a trial date no more than 21 months following its filing date of late April 2015.  This is a typical filing-to-trial interval for the undersigned judge's docket, and it is a shorter interval than the average cited for civil cases in the Middle District of Florida.

The Court concludes that Ariel Advisors has failed to show that the balance tips strongly in its favor such that the Court should disregard Ariel Investments' choice of its home forum.  For this reason, and because the proposed transferee forum is not

"clearly more convenient" after considering the relevant factors under section 1404(a), the Court declines to transfer the case.

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss or transfer [dkt. no. 16].

Date:  October 29, 2015

_____
MATTHEW F. KENNELLY
United States District Judge