# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 1:15-cv-3717 |
| ARIEL CAPITAL ADVISORS LLC, | ) |
| | ) Judge: Hon. Matthew F. Kennelly |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO RECONSIDER ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

-OR-

**TO AMEND ORDER TO ADD CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND STAY PROCEEDINGS PENDING APPEAL**

-AND-

**TO STAY DEADLINE FOR ANSWERING UNTIL THE MOTIONS ARE RULED ON**


Dated: November 19, 2015

Respectfully submitted,

By: /s/ Brian T. Noack
Brian T. Noack
Adam Wolek
WOLEK & NOACK
70 East Lake St., Suite 1220
Chicago, Illinois 60601
P 239.671.1103
F 708.843.0509
***Attorneys for Defendant Ariel Capital Advisors LLC***

Defendant Ariel Capital Advisors LLC ("ACA") respectfully moves this Court to reconsider its ruling on Defendant's motion to dismiss for lack of personal jurisdiction for the reasons stated below, or otherwise respectfully requests the Court to certify the below issues for appeal pursuant to 28 U.S.C. § 1292(b) and to stay proceedings pending appeal.

In its October 29, 2015 decision, this Court denied ACA's motion to dismiss for lack of personal jurisdiction, and held it had specific personal jurisdiction over ACA. The Court based its finding on Ariel Investments, LLC's ("AIL") contention that alleged knowledge of a trademark indicated an intent to trade off of AIL's name, which in turn it held was sufficient to confer specific personal jurisdiction in Illinois. The ruling creates new jurisdictional precedent based not on the location of trademark use, but instead purely on the location of a plaintiff and knowledge thereof. In turn, this holding can have the unintended consequence of making any company, regardless of its contacts with any given state, to be forced to defend in a state simply based on allegations that it intended to trade off a mark even when the actual use and services occurred outside the state. This legal issue is ripe for certification under 28 U.S.C. §1292(b) as it is a controlling question of law, there are substantial grounds for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation.

Defendant also respectfully requests that the Court reconsider, or certify, whether the Court was required to hold an evidentiary hearing and use a preponderance of the evidence standard for finding personal jurisdiction (rather than a *prima facie* standard) because the Court acknowledged that the facts that allegedly indicated knowledge of AIL's alleged trademark and intent to trade off its name were disputed.

1

Defendant further respectfully requests that the Court reconsider, or certify, whether specific personal jurisdiction could be found where there was no finding that Defendant "purposely availed" itself of Illinois.

For these reasons, and the reasons mentioned in Defendant's motion to dismiss, Defendant respectfully requests that the Court reconsider its denial of its motion to dismiss, or certify these questions for an interlocutory appeal, and stay the proceedings until these issues are resolved.

## BACKGROUND

Defendant ACA is a Florida limited liability company with its headquarters and principal place of business in Naples, Florida. *See* Dkt. 17, Exh. 1, Exh. 2, Decl. of Chris Bray, at ¶ 3. It provides tax and estate planning, financial planning and trust administration services to individuals and families almost exclusively in Florida.[1] *Id.*, Exh. 2, Decl. of C. Bray, at ¶ 3.

ACA does not have any clients in Illinois. *Id.* at ¶¶ 9-12, 20. It does not own property in Illinois, does not have an office or an agent in Illinois, nor directs any business or advertising to Illinois. *Id.* at ¶¶ 11-16. None of ACA's employees have ever traveled to Illinois for any purpose related to any activity of ACA. *Id.* at ¶¶ 18, 20. ACA has never had any connection to Illinois. *Id.* at ¶¶ 6-22.

On April 28, 2015, Plaintiff filed this lawsuit against ACA in the Northern District of Illinois alleging claims of violating Illinois deceptive trade practices, violating Illinois common law, unfair competition, and trademark infringement. Dkt. 1. ACA was served in Naples,

---

[1] It also has a small branch office in Cleveland, Ohio with one employee.

[2] The denial of a motion to dismiss is an interlocutory order. *Varitalk, LLC v. Lahoti*, 2007 WL 1805086, *1 (N.D. Ill. 2007).

[3] General personal jurisdiction over ACA was not asserted.

[4] ACA pointed out that recent search results may have little or no bearing on past search results because Google "tailors search results to individuals, and because search results change over time, AIL's attorney's 'replicated' search provides no support or reliability that 'Ariel Investments' came up years

2

Florida the next day. On June 10, 2015, ACA filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, Improper Venue and/or to Transfer. Dkt. 17.

On October 29, 2015, this Court denied Defendant's Motion to Dismiss finding that ACA "intentionally caused injury to an Illinois plaintiff by deliberately trading on its intellectual property rights." Dkt. 44 at *4. The basis for this finding was that "Bray conceded that he performed online searches before adopting the Ariel name," and because this Court found that it was "highly likely that Bray came across Ariel Investment's name and presence in the investment advisory field on repeated occasions during his twenty-plus years working in that same field." Dkt. 44 at *4. The Court also acknowledged that "Bray testified that he did not seek to trade on the name of another entity and that his use of 'Ariel' was inspired by other considerations." *Id*.

## LEGAL STANDARD

### A.     Motion for Reconsideration

The inherent power of courts, the common law, and Rule 54(b) of the Federal Rules of Civil Procedure all permit courts to review and revise their interlocutory orders prior to the entry of final judgment.[2] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *Ramade Franchise Sys., Inc. v. Royal Vale Hosp. of Cinc., Inc.*, 2004 WL 2966948, *3 (N.D. Ill. 2004) ("[t]he Court need not decide whether Defendants are invoking the inherent authority of the Court, the common law, Rule 54(b), or all three…"). Courts often reconsider motions "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted).

---

[2] The denial of a motion to dismiss is an interlocutory order. *Varitalk, LLC v. Lahoti*, 2007 WL 1805086, *1 (N.D. Ill. 2007).

3

### B. Standards for Certification of an Interlocutory Appeal

In order for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) to be appropriate, this Court need only be of the opinion that one of the questions:

1. Is a controlling question of law;

2. There are substantial grounds for difference of opinion; and,

3. An immediate appeal may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624-25 (7th Cir. 2010) (accepting interlocutory appeal to review ruling of a denial of a motion to dismiss).

### C. Personal Jurisdiction

Plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). To establish this Court's personal jurisdiction over Defendant, Plaintiff must demonstrate that ACA has had sufficient minimum contacts with the State of Illinois. *Cent. States, Se. & Sw. Areas Pension Fund v. Reinemer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). The "crucial inquiry" in applying this test is whether "the defendant's conduct and connection with the forum are such that [it] should reasonably anticipate being haled into court there." *Cent. States*, 230 F.3d at 943. "To establish such a reasonable anticipation the defendant must have purposely availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws." *Id.* (citing *Burger King*, 471 U.S. at 474-75). Even if minimum contacts are shown to exist, the court must nevertheless examine other factors to determine whether the exercise of personal jurisdiction satisfies "traditional notions of fair play and substantial justice." *Cent. States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77).

I. **ACA RESPECTFULLY REQUESTS THE COURT RECONSIDER ITS DENIAL OF ACA'S MOTION TO DISMISS**

ACA respectfully requests that the Court reconsider its denial of ACA's motion because (1) purported knowledge of a trademark or alleged intent to trade off a name is insufficient to confer specific personal jurisdiction where there have been no contacts with Illinois, (2) an evidentiary hearing was required where the Court acknowledged material disputed issues of fact, and (3) there was no finding that ACA purposefully availed itself of "the privilege of conducting activities [in Illinois]" and did not "invoke[] itself of the benefits and protections of its laws."[3]

A. **Alleged Knowledge of a Trademark or Purported Intent to Trade off a Name is Insufficient to Confer Specific Personal Jurisdiction in a State**

AIL's general allegation that Mr. Bray had knowledge of AIL's trademark, and in turn purported to trade off of AIL's trademark, is not enough to grant specific personal jurisdiction where ACA had no other contacts with Illinois. The only evidence cited and noted by the Court was that ACA may have seen Ariel Investments in an online search and through AIL's advertising. However, that all goes to knowledge of the mark, and is not evidence of "intent" to trade off of the mark. On that score, ACA is aware of no case law finding that knowledge of a trademark indicated that a defendant was targeting a forum. Whereas ACA cited cases expressly finding that knowledge alone is insufficient to show it targeted a forum. *See, e.g.*, *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (defendant's knowledge of a plaintiff's trademark was insufficient to confer jurisdiction because it was not express aiming as required by *Calder*, and because *Calder* requires more than knowledge of where the subject of an intentional tort resides); *see also Payne v. Bucket Sol., LLC*, No. 2:13-CV-110-TLS, 2013 WL 5946690, at *5 (N.D. Ind. Nov. 6, 2013)

---

[3] General personal jurisdiction over ACA was not asserted.

("knowing infringement of a trademark is not the same as intentionally targeting a forum."); *Family Watchdog, LLC v. Schweiss*, No. 1:08-CV-642-SEBDML, 2009 WL 276856, at *4 (S.D. Ind. Feb. 5, 2009) ("In a trademark case, courts are to be wary of conflating a knowing infringement with intentional harm aimed at the forum."); *see also Cent. States,* 230 F.3d at 943 ("The generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction.") (citing *Burger King*, 471 U.S. at 474).

For instance, the court in *Payne v. Bucket Solutions, LLC* declined to find personal jurisdiction because there was no evidence that "[d]efendant advertises, promotes, or sells its products to Indiana residents any more than it does to residents of any other state." *Payne v. Bucket Solutions, LLC*, 2013 WL 5946690, at *6 (N.D. Ind. Nov. 6, 2013). The court went on to state that while plaintiff felt harm in Indiana, the "[d]efendant has simply brought about an injury to an interest that is located in a particular state, which is not sufficient to establish a connection between the tortious conduct and the forum state." *Id.*; *see also Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000) ("intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile for purposes of tort provisions of the Illinois long arm-statute."). Like the defendant in *Payne*, ACA does not "advertise, promote, or sell" its products to Illinois residents.

Likewise, in *Family Watchdog, LLC v. Schweiss*, the court held there was no personal jurisdiction because there is no evidence that defendant ever did anything to attract forum state customers to his website. And even if some customers had been confused, it still did not "rise to the level of 'targeting,'" and that "the customer confusion in a particular forum must somehow bear the defendant's fingerprints." *Family Watchdog, LLC v. Schweiss*, 2009 WL 276856, at *4. In each of these cases, knowledge of a trademark was insufficient to rise to the level of

intentional targeting. Like in *Family Watchdog* and *Payne*, ACA, at most, had knowledge of the trademark and at no point expressly targeted any customers in Illinois. Accordingly, there was no finding of intentional targeting.

In the case at hand, the Court found "it is highly likely that [Mr.] Bray came across [AIL]'s name and presence in the investment advisory field on repeated occasions during his twenty-plus years working in that same field," and that "[Mr.] Bray conceded that he performed online searches before adopting the Ariel name." Dkt. 44 at *4. Indeed, beyond a purported intent to trade off of AIL's mark, the Court found no other jurisdictional contact between Defendant ACA and Illinois. However, under this policy, any company, regardless of its contacts with any given state, can be forced to defend in a state simply based on allegations that it intended to trade off a mark even when the actual use and services occurred outside the state. Accordingly, the exercise of specific personal jurisdiction over ACA would fail to comport with "traditional notions of fair play and substantial justice." *Central States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77).

    **B.    Because Facts Used to Support Jurisdiction Were Contested, an Evidentiary Hearing Was Required**

The Court conceded that the facts used to support jurisdiction were contested, so therefore an evidentiary hearing was required, and in turn, Plaintiff should have had to show there was personal jurisdiction over ACA by a preponderance of the evidence. The Seventh Circuit has stated that when "personal jurisdiction is challenged under Rule 12(b)(2), the court ***must decide*** whether any material facts are in dispute." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (emphasis added). And if there are disputed material facts, the Court "***must hold*** an evidentiary hearing to resolve them, at which point the party asserting personal

7

jurisdiction must prove what it alleged." *Id.* (emphasis added); *Philos Tech., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (same).

Here, the Court based jurisdiction on ACA's alleged intent to trade on AIL's trademark. It gathered into two points: (a) that Mr. Bray had worked in the investment advisory field for many years so had likely come across Ariel Investments; and, (b) that Mr. Bray performed online searches before adopting the "Ariel" name and that he likely came across AIL. Dkt. 44 at 4. However, the Court also acknowledged that "Bray testified that he did not seek to trade on the name of another entity and that his use of 'Ariel' was inspired by other considerations." *Id.* Indeed, ACA presented evidence that ACA was named after Mr. Bray's daughter, Ariel Bray, and Ariel Ministries, a mission that he is part of. *See* Reply Brief, Dkt. 40 at 3; Exh. A, ACA 30(b)(6) Dep., pg. 74, lns. 18-24 ("[Mr. Bray's daughter] was named after the ancient Hebrew word, which means lion of God, which also is another name for the City of Jerusalem…. So we named our daughter Ariel. And when it came to naming the firm…"). Because the Court acknowledged that the "intent" to choose the name Ariel Capital Advisors was in dispute, and because it was used as a basis for finding jurisdiction, it was material.

What is more, ACA's contention has evidentiary support in the record, whereas there is no support for AIL's contention that ACA's name was chosen to trade off of AIL's reputation; only supposition based on inference from online searches and AIL's advertising.

ACA also presented evidence that Mr. Bray performed online searches and did not come across AIL. That is at odds with what AIL had argued.[4] And because that was a basis of the

---

[4] ACA pointed out that recent search results may have little or no bearing on past search results because Google "tailors search results to individuals, and because search results change over time, AIL's attorney's 'replicated' search provides no support or reliability that 'Ariel Investments' came up years earlier. Dkt. 40 at *4. Given that AIL's attorneys almost certainly have googled their client previously, it is little surprise that "Ariel Investments" came up when they googled "Ariel Capital Advisors."

Court's finding jurisdiction over ACA, that is a material dispute that should have triggered an evidentiary hearing and a corresponding preponderance of the evidence standard.

Because there are facts the Court acknowledged were disputed that are central to whether ACA had sufficient minimum contacts with Illinois to support jurisdiction, the Court should have held an evidentiary hearing, and in turn, used a preponderance of the evidence standard.

### C. Plaintiff Did Not Show ACA "Purposefully Availed" Itself of Illinois

There was no finding, or any evidence presented by AIL, that showed ACA "purposefully availed" itself of Illinois. ACA has no office, employees, clients, or other contacts with Illinois. In short, even assuming *arguendo* that ACA used "Ariel" to trade off of AIL's reputation, that does not equate to ACA "purposefully avail[ing]" itself of Illinois.

However, the Seventh Circuit has stated that there "must be some showing that the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (citing *Burger King*, 471 U.S. at 474). On that score, there must be a showing that "defendant has deliberately engaged in significant activities within the forum state," or that "it has created continuing obligations between itself and a resident of the forum." *Id.* at 780-81. In other words, did a defendant have a territorial presence, or were "a commercial defendant's efforts…directed toward a particular jurisdiction"? *Id.* at 781. None of these were shown here.

AIL did not dispute that ACA did not have a territorial presence in Illinois. The Court did not explicitly find ACA purposefully availed itself of Illinois, but AIL claimed that ACA "purposefully availed" itself by its alleged intentional use of its trademark, and because ACA's website "serves customers 'throughout the United States.'" However, alleged intentional use of a trademark is not an "effort[] directed toward [Illinois]." *See id.* (must be "significant activities **within** the forum state") (emphasis added); *see also Berthold Types v. European Mikrograf*, 102

9

F. Supp. 2d at 932 ("intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile for purposes of tort provisions of the Illinois long arm-statute."). Nor is a passive website an activity "directed toward a particular jurisdiction." *Purdue Res. v. Sanofi-Synthelabo*, 338 F.3d at 781; *see Advanced Tactical v. Real Action*, 751 F.3d 796, 803 (7th Cir. 2014) ("the operation of a…website does not show that the defendant has formed a contact with the forum state"); *Mobile Anesthesiologists*, 623 F.3d at 446 ("a website accessible to residents of the forum state and alleging that the defendant caused harm through that website" is not enough to meet the *Calder* standard); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1161 (W.D. Wisc. Jan. 8, 2004) (website only supports a finding of personal jurisdiction if "there is a corresponding finding that the defendant is expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location"). The Supreme Court in *Walden* further stated that "an injury is jurisdictionally relevant only insofar as it shows the defendant has formed a contact with the forum state" and that the "proper question is not where a plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. But AIL has not shown that ACA intended to target Illinois consumers or benefit from Illinois.

For example, the defendant in *Advanced Tactical Ordnance Systems, LLC* operated an interactive website directed to customers from all over the U.S. and regularly sent out emails directly to those customers, including residents of the forum state, and was found not to have purposefully availed itself of the forum state. ACA's interaction with Illinois residents is even less than that of the defendant in *Advanced Tactical Ordnance Systems* because ACA's website is not interactive and it does not send out emails to Illinois clients. Accordingly, ACA has not

10

purposefully availed itself of Illinois through its website, or in any other way.

## II. IN THE ALTERNATIVE, ACA REQUESTS THAT THE COURT CERTIFY THESE ISSUES FOR INTERLOCUTORY APPEAL

If the Court denies ACA's motion for reconsideration, ACA respectfully requests this Court to amend its October 29, 2015 Order to include the certification necessary for it to seek an interlocutory appeal. Under 28 U.S.C. § 1292(b), the Court may certify an interlocutory appeal if any one of the questions is: (a) a controlling question of law; (b) there are substantial grounds for difference of opinion; and, (c) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Text Messaging*, 630 F.3d at 624-25.

Here, ACA presents three questions that each meet these factors: (1) whether knowledge of a trademark alone and an allegation of intentionally trading off of a company's name, when all uses and services occurred outside of the state, is sufficient to confer specific personal jurisdiction over an out of state defendant; (2) whether a District Court is required to hold an evidentiary hearing for facts it acknowledged were disputed; and, (3) whether specific personal jurisdiction could be found to exist where there was no finding that Defendant "purposefully availed" itself of Illinois. The Court need only find that one of these questions meets the factors to certify appeal.

### A. Each of These Issues are Controlling Questions of Law

While the Seventh Circuit has not adopted a blackletter rule as to when a question is controlling, it has stated that "a question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the District Court, and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citations omitted); *see also In re Text Messaging*, 630 F.3d at 624-25 (if denial of motion to dismiss is overturned, then the case may get dismissed and is thus a controlling question). All three

questions are controlling questions of law sufficient to meet the first requirement for certification under 28 U.S.C. § 1292(b).

Because the action would likely terminate if alleged knowledge and intentional use of a trademark are not enough to confer specific personal jurisdiction, and because this Court found no other jurisdictionally relevant contacts, this question is a controlling question of law.

Also, a finding that the Court was required to hold an evidentiary hearing for facts it acknowledged were disputed could materially affect the litigation's outcome by potentially terminating the action. *See Hyatt Int'l v. Coco*, 302 F.3d at 713 (a District Court "must hold an evidentiary hearing to resolve [disputed material facts]"); *and see Philos Tech. v. Philos & D*, 802 F.3d at 912 (same). If an evidentiary hearing was required, the Court would have to evaluate the disputed facts by a preponderance of the evidence standard, which could reverse the outcome of the ruling on the motion to dismiss. *See Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (a question is controlling even if the decision may not lead to reversal). In other words, whether the Court was required to hold a hearing once it established material facts were disputed is a question of law and could lead to dismissal.

Finally, if the Seventh Circuit determines that there cannot be specific personal jurisdiction without a finding that ACA "purposeful availed" itself of Illinois, or that it did not do so, then there would no specific personal jurisdiction, and the matter would be seemingly dismissed. *See Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 666 (7th Cir. 1986) ("[i]n order to assert specific jurisdiction over a non-consenting, nonresident defendant, that defendant must have purposefully availed itself of doing business in the forum state.") (citation omitted).

**B.     There Are Substantial Grounds for Difference of Opinion**

Each of these questions is open to substantial differences of opinion. A question of law is open to substantial grounds for difference of opinion if "there are substantial conflicting

decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *U.S. v. Moglia*, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004).

First, whether knowledge or alleged intent to trade off an existing mark can confer specific personal jurisdiction, where there are no other contacts with the state, is a "substantial ground for a difference of opinion." Here, ACA maintains that contact with the state or an intent to target the state is required, and that mere knowledge of a trademark or even an alleged intent to trade off a name are not an intent to target the state. Whereas the Court found that an intent to trade off a name "established a relationship not just with the in-state entity, but with the forum state itself." Dkt. 44 at *5. Indeed, the Court itself recognized a difference of opinion when it noted that "the question of causing harm to a resident of the forum state creates sufficient minimum contacts 'is more complex,'" and continued on to note that "[t]he court did not, however, draw a bright line for when that is enough, but simply repeated [that] 'the plaintiff cannot be the only link between the defendant and the forum.'" Dkt. 44 at *5 (quotations omitted). The Court also noted that there are disputed facts, particularly in regards to whether Mr. Bray was aware of "Ariel Investments." *Id.* at 4. The Court further noted that:

> "[a]s a matter of policy, the law ought not require a holder of intellectual property owner in these circumstances to go to the home forum of one who has, in effect, reached into the holder's home forum to take its property. When an out-of-state entity chooses to trade on the established name of an entity in the forum state and use that name for its own gain, it has, **in the Court's view**, established a relationship not just with the in-state entity, but with the forum state itself."

Dkt. 44 at *5 (emphasis added). In so doing, the Court itself acknowledged that issue was not settled. Further, such a policy would have the unintended result of granting any plaintiff jurisdiction over virtually any defendant, regardless of its contacts with any given state, by simply alleging that it intended to trade off a mark even when the actual use and services

13

provided occurred outside the state.

Second, whether a district court is required to hold an evidentiary hearing for facts it stated were contested is open to differences of opinion. The Court noted that there were contested facts, but pointed out that it did not "h[old] an evidentiary hearing" because "none has been requested." Dkt. 44 at *1. However, ACA maintains that there is no requirement that it must actively request an evidentiary hearing because, as the Seventh Circuit has stated, if there are disputed material facts, then the court "must hold an evidentiary hearing to resolve them." *Hyatt Int'l v. Coco*, 302 F.3d at 713; *Philos Tech v. Philos & D*, 802 F.3d at 912 (same). Therefore, there are substantial grounds for a difference of opinion.

Finally, whether specific personal jurisdiction could be found in the absence of a finding that a defendant purposefully availed itself of Illinois is also subject to substantial differences of opinion. The Court did not enter a finding that ACA purposefully availed itself of Illinois, yet found ACA subject to specific personal jurisdiction. Whereas the Seventh Circuit has found that "to assert specific [personal] jurisdiction over a non-consenting, nonresident defendant, that defendant *must have purposefully availed itself* of doing business in the forum state." *Giotis v. Apollo*, 800 F.2d at 666 (emphasis added) (*citing Burger King C* 471 U.S. at 462). Thus, there is a substantial difference in opinion in the outcome of this question.

Accordingly, each of these questions is open to substantial differences of opinion.

**C.    Resolution of theses Issues Will Materially Advance the Termination of this Litigation**

Each of these issues, if resolved in ACA's favor, may cause the Court to find it does not have specific personal jurisdiction over ACA, which would bring an end to the litigation. *In re Beatty*, 2002 WL 535316, at *1 (S.D. Ind. Feb. 27, 2002) (certifying decision for interlocutory appeal of a denial of a motion to dismiss because "if [d]efendant is correct about these matters,

its motion to dismiss will be granted and provide a quick resolution to the litigation"); *see also Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 69 F. Supp. 2d 1063, 1071 (C.D. Ill. 1999) (certifying decision for interlocutory appeal noting that "[t]he Court further recognizes that if remand were granted, the federal litigation would be resolved"), *interlocutory appeal permitted, rev'd and remanded by Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.,* 224 F.3d 798 (7th Cir. 2000); *see also Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 481 (D.C. Cir 1996) ("Although the District Court judge expressed 'absolute' certainty as to the correctness of his decision,…the court nevertheless granted the Burkas' request to certify the case for interlocutory appeal in order to conserve judicial resources"). Such a ruling would terminate the litigation, and spare the parties and this Court a significant expenditure of resources.

### III. STAY OF ACA'S DEADLINE TO FILE ITS ANSWER UNTIL THIS MOTION IS RESOLVED SAVES RESOURCES

Defendant respectfully requests that the Court stay Defendant's deadline to answer until fourteen days following the resolution of this motion and, if the motion is granted, the resolution of the interlocutory appeal. This would save the parties' and Court's resources because if Defendant's motion is granted, then it may obviate the need to file an answer.

### CONCLUSION

For the foregoing reasons, Defendant ACA respectfully requests that this Court reconsider its ruling on the Motion to Dismiss, or otherwise amend its order to certify the ruling for interlocutory appeal, and to stay the proceedings until these issues are resolved.

## CERTIFICATE OF SERVICE

The undersigned certifies that, on November 19, 2015, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: November 19, 2015				WOLEK & NOACK


						By:   /s/ Brian T. Noack
						Brian Noack