UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-3717 |
| ) | |
| ARIEL CAPITAL ADVISORS LLC, ) | Hon. Judge Matthew F. Kennelly |
| ) | |
| Defendant. ) | |

**Plaintiff Ariel Investments, LLC's Response to Defendant Ariel Capital Advisors LLC's Motion to Compel John Rogers' Deposition**

Defendant Ariel Capital is demanding to depose the Chief Executive Officer and Chairman of the Board of Ariel Investments in this trademark case because he founded the company and selected its name *over thirty years ago*. This is the epitome of an unnecessary and harassing "apex" deposition and, therefore, the Court should deny Ariel Capital's motion to compel.

*Facts*

Ariel Investments filed this trademark infringement case against defendant Ariel Capital on April 28, 2015. (Dkt. 1.) When the Court rejected Ariel Capital's jurisdictional motions in January 2016, Ariel Capital responded with misplaced counterclaims for fraud and abuse of process. (Dkt. 64, ¶¶ 93-99.) On May 16, the Court dismissed those counterclaims. (Dkt. 82.) Now, Ariel Capital continues its pattern of throwing obstacles in the path of resolving this case – which could have been resolved long ago if the defendant would just change its name – by demanding to depose John Rogers, the founder, Chairman, and CEO of Ariel Investments.

Ariel Capital served its notice of the deposition of Mr. Rogers on May 2, less than a month before the close of fact discovery. One week later, on May 9, Ariel Investments advised Ariel Capital that it objected to deposing Mr. Rogers. (*See* Email from A Gollwitzer to A Wolek, dated May 9, 2016, included in Dkt. 83, Ex. B.)

Ariel Capital also asked to depose Mellody Hobson, the President of Ariel Investments, and for a Rule 30(b)(6) deposition. Ariel Investments is willing to provide Ms. Hobson and also its Chief Marketing Officer, Ms. Merrillyn Kosier, in response to Ariel Capital's individual and Rule 30(b)(6) deposition notices. Indeed, those depositions are tentatively set for June 7 and 8.

## *Argument*

The Court should reject Ariel Capital's deposition request because it is both disproportionate to the needs of the case and unduly burdensome.

Under Rule 26, courts should reject discovery demands that are disproportionate to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and <u>proportional to the needs of the case</u>, . . .

Fed R. Civ. P. 26(b)(1) (emphasis added). The December 2015 amendments to that rule placed even greater emphasis on proportionality in order to control the spiraling costs of discovery in civil litigation. Fed. R. Civ. P. 26 (Committee Notes on Rules – 2015 Amendment).[1]

Moreover, this particular discovery demand is unduly burdensome because it is a classic "apex" deposition demand. Courts in this Circuit and elsewhere recognize that the depositions of

---

[1] Tellingly, Ariel Capital cites the older and no longer applicable discovery standard: "reasonably could lead to other matter than could bear on any issue that is or may be in the case." (Dkt. 83 at 3.) Ariel Capital obviously is hoping Mr. Rogers' deposition "could lead to other matter," but that is not the proper standard. As amended, Rule 26 no longer includes the "reasonably calculated" standard and limits discovery to matters relevant to the claims or defenses actually at issue in the case. Fed. R. Civ. P. 26(b)(1).

high-ranking corporate executives can be "quite costly and burdensome." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002). When assessing the need for an apex deposition, courts should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681.

Here, Mr. Rogers' deposition is disproportionate to the needs of this trademark case. The merits of this case are self-evident from the names of the parties. Plaintiff Ariel Investments has been using the ARIEL mark since long before Ariel Capital began doing business in 2014. Both firms are in the financial services business. Ariel Capital attempts to justify Mr. Rogers' deposition because he was "creator of the asserted mark and … has relevant knowledge about the validity of the marks…," among other reasons. (Dkt. 83 at 3.) Ariel Capital, however, fails to appreciate that an incontestable mark is conclusively valid. 15 U.S.C. §1115(b). Here, Ariel Investments registered its ARIEL mark in 1984, and that mark became incontestable under 15 U.S.C. § 1065. Therefore, the ARIEL trademark registration is subject to only a limited list of challenges, only one of which (abandonment) has been alleged in this case. 15 U.S.C. § 1115(b).

As a result, this case boils down to the factors used to evaluate confusion. *See Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977).[2] Mr. Rogers' testimony is not essential to establish or rebut any of those factors. In short, Ariel Investments has no intention to call him as a witness at any stage of this case, and his deposition is unnecessary.

---

[2] The "likelihood of confusion" factors include: "the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complaint's mark; actual confusion; and an intent on the party of the alleged infringer to palm off his products as those of another." *Helen Curtis Indus., Inc.*, 560 F.2d at 1330 (citation omitted).

Moreover, Mr. Rogers is the Chairman and CEO of a very large company. His schedule is demanding, and forcing him to sit for a deposition every time someone infringes the ARIEL mark would place a great burden on Ariel Investments, limiting its ability to conduct its business or protect its trademarks. Courts are understandably skeptical of such apex depositions as it is easy to imagine top-ranking officers spending more time in lawyers' conference rooms than running their companies. *See, e.g. Last Atlantis Capital, LLC v. AGS Specialist Partners*, Nos. 04-C-0397, 05-C-5600, 05-C-5671, 2013 U.S. Dist. LEXIS 128664, at *14-20 (N.D. Ill. Sept. 4, 2013) ("Because high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, they may need some measure of protection from the courts") (citation and quotation omitted); *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528-RED-KLM, 2011 U.S. Dist. LEXIS 68940, at * (D. Colo. June 27, 2011) ("The apex doctrine developed as courts recognized that high ranking and important executives can easily be subjected to unwarranted harassment and abuse and should therefore be protected") (citation and quotation omitted); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 U.S. Dist. LEXIS 8295, at *8 (N.D. Cal. Jan 24, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the high level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."). Indeed, some courts require the party seeking the deposition to show that the deponent is a unique source of relevant knowledge. *See, e.g.*, *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (granting protective order quashing noticed deposition of chairman of board and CEO of defendant corporation where defendant represented that CEO "had no knowledge as to facts pertinent to plaintiffs' action"); *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46

(E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition.").

Viewed under these legal principles, Ariel Capital's three arguments for deposing Mr. Rogers are unpersuasive.

I.  **Mr. Rogers' Adoption and Registration of the ARIEL Mark Is Not Relevant to this Case.**

Ariel Investments registered its ARIEL mark in 1984. The mark is now legally incontestable, and the ARIEL mark's registration is conclusive evidence of its validity subject only to a limited set of challenges, *not including alleged first use dates in applications*. 15 U.S.C. § 1115(b).

Ariel Capital is misreading Ariel Investments' interrogatory answer to find a discrepancy with its trademark registration. But, even if this discrepancy exists, an incorrect date of first use in a registration does not void a trademark registration as a matter of law. *See Pony Express Courier Corp., v. Pony Express Delivery Service*, 872 F.2d 317, 319 (9th Cir. 1989) ("The claim of a date of first use is not a material allegation" to fraud); *Miyano Mach., USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, (N.D. Ill. 2008) (rejecting a claim of fraud and finding that "[a]n incorrect date of first use is not a material representation that serves as grounds for cancellation so long as the first use preceded the application date") (citation omitted)

As a result, Mr. Rogers' "knowledge about the marks' first uses," a primary reason for his deposition (Dkt. 83 at 4), is not at issue in this case. Indeed, Ariel Capital initially alleged a fraud on the Trademark Office counterclaim, but the Court recently dismissed that claim because Ariel Capital could not point to any supporting facts. The Court should not now countenance another fishing expedition through Mr. Rogers under the guise of proposed affirmative defenses, especially in light of the amended Rule 26 limiting discovery to the claims or defenses actually at

issue in the case.  Indeed, Ariel Capital's proposed affirmative defense is based solely on allegedly "contradictory evidence of the first use in commerce" of the ARIEL mark (Dkt. 83 at 4), again that first use of the ARIEL may have taken place on September 30, 1983 rather than March 23, 1983.  That six month discrepancy does not affect the validity of the registration, even if true, so even if Mr. Rogers can recall anything about those dates 33 years ago is immaterial.

Ariel Capital's remaining challenge to the ARIEL mark is based on arguments that ARIEL is not protectable.  For example, Ariel Capital argues that the mark is generic, descriptive, and has been abandoned.  (*See* Ariel Capital's Counterclaims, Dkt. 64.)  While Ariel Investments also believes these defenses are misplaced, Ariel Capital can pursue them without testimony from Mr. Rogers.  Whether or not the mark is generic or descriptive depends mostly on facts outside of Ariel Investments' control, and to the extent Ariel Investments has relevant information, Mr. Rogers' testimony is not crucial when Ms. Hobson and Ms. Kosier can answer questions regarding them.  Likewise, evidence of supposed abandonment is not dependent on Mr. Rogers.

Finally, Ariel Capital argues that Mr. Rogers has "knowledge about what services and products" the marks have been used on, presumably trying to differentiate the two parties' financial services. (Dkt. 83 at 5.)  Even if Mr. Rogers could testify on any of the *Helene Curtis* confusion factors, however, he is far from the only or even best witness to do so.  Indeed, Ariel Investments already is producing its President and Chief Marketing Officer, so Ariel Capital will have ample opportunity to explore the scope of Ariel Investments' business and its impact on the confusion factors.  *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 96263, at *19 (S.D. Ill. Aug. 18, 2011) (denying motion to compel executive where there was no "indication that these executives possess

information that is more than marginally relevant to this litigation, as well as the information's duplicative nature and availability through other deponents"). Put simply, Mr. Rogers is not a unique source of knowledge here. *See Lewelling*, 879 F.2d at 218.

## II. Identifying Mr. Rogers as Having Knowledge Does Not Mean He Must Be Deposed.

It almost goes without saying that a senior executive like Mr. Rogers is likely to have knowledge of topics at issue in any lawsuit. That does not mean that courts routinely allow apex depositions. Indeed, the converse is true; courts look upon such deposition requests skeptically. *Patterson*, 281 F.3d at 682.

As applied to this case, Ariel Investments provided full answers to Ariel Capital's interrogatories, including identifying Mr. Rogers as a person with knowledge on various topics. That does not mean that Ariel Investments intends to call Mr. Rogers as a witness in this case or that he is the only or even best source of such information. Indeed, Ariel Investments intentionally did not include Mr. Rogers in its Rule 26(a)(1) list of witnesses that it may call in this case.

More specifically, Ariel Capital cites to interrogatories addressing likelihood of confusion and damages. (Dkt. 83 at 5.) As explained above, however, Ariel Investments' President, Mellody Hobson, and Chief Marketing Officer, Merrillyn Kosier, will testify and are fully conversant in those subjects. Ariel Capital also cites to interrogatories relating to adoption of the ARIEL mark and its registration. Again, as explained above, these are not even proper issues in this case as the ARIEL mark is legally incontestable and conclusively valid. See 15 U.S.C. § 1115(b). Mr. Rogers is not the best, much less the only, source of information on these topics. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS

8482, at *5 (S.D. Ill. Jan. 23, 2014) (recognizing that "courts often focus on whether the senior executive possesses unique, specialized, and/or personal knowledge relevant to the litigation").

### III. Producing John Rogers Would Be Unduly Burdensome.

Finally, Ariel Capital's argument that Mr. Rogers' deposition would not be burdensome misunderstands the nature of the burden. Both parties have been discerning in the *number* of depositions to be taken in this case, but that is not the issue.[3] The burden is the result of this being an apex deposition. Ariel Capital is demanding a deposition of the Chairman and CEO of a multi-billion dollar company, who is additionally the portfolio manager of two of its strategies. As such, Mr. Rogers travels extensively and has numerous duties. Moreover, he sits on the boards of two major, publicly-traded corporations and several significant philanthropies. At the same time, Mr. Rogers is not the sole nor even best source of evidence on matters relevant to the claims and defenses in this case. Indeed, Ariel Investments does not even intend to call Mr. Rogers as a witness in this case.

Ariel Capital also cannot argue that it is being denied access to high-level, knowledgeable witnesses. Ms. Hobson is President of the company. Ms. Kosier is its Chief Marketing Officer. These witnesses will testify personally, and Ms. Kosier also will serve as Ariel Investments' Rule 30(b)(6) designee. Ariel Capital has no need to depose John Rogers.

---

[3] Ariel Capital fails to mention that Ariel Investments just informed Ariel Capital that it is willing to forego one deposition, Mr. Chen, and limit two other depositions to half days, Ms. Wilmore and Ms. Rebardo.

*Conclusion*

For these reasons, Ariel Investments respectfully asks the Court to deny Ariel Capital's motion to compel the deposition of John Rogers.

Dated:  May 23, 2016               By: */s/ Arthur Gollwitzer III*
                                   Arthur Gollwitzer III (6225038)
                                     agollwitzer@michaelbest.com
                                   Luke W. DeMarte (6269621)
                                     lwdemarte@michaelbest.com
                                   Larry L. Saret (2459337)
                                     llsaret@michaelbest.com
                                   Zachary J. Watters (6310675)
                                     zjwatters@michaelbest.com
                                   MICHAEL BEST & FRIEDRICH LLP
                                   Two Prudential Plaza
                                   180 N. Stetson Avenue, Suite 2000
                                   Chicago, Illinois  60601
                                   Tel:  (312) 222-0800
                                   Fax:  (312) 222-0818

                                   *Attorneys for Plaintiff Ariel Investments, LLC*

**Certificate of Service**

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on May 23, 2016, I caused a copy of the following document:

**Plaintiff Ariel Investments, LLC's Response to Defendant Ariel Capital Advisors LLC's Motion to Compel John Rogers' Deposition**

to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by e-mail delivery:

> Adam Wolek
> Brian Noack
> Wolek and Noack
> 233 S. Wacker Drive
> 21st Floor
> Chicago, IL 60606
> adamw@wonoip.com
> briann@wonoip.com
>
> Christopher Bray
> Christopher P. Bray Associates, LLC
> 9115 Corsea Del Fontana Way, Suite 200
> Naples, FL 34109
> cpbray@cpbrayassociates.com

> > */s/ Arthur Gollwitzer III*
> > Arthur Gollwitzer III