**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC, | ) | Hon. Judge Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |

**Plaintiff Ariel Investments, LLC's Motion to Strike**
**Defendant Ariel Capital Advisors LLC's First Affirmative Defense**

Defendant Ariel Capital Advisors LLC's ("Ariel Capital") new affirmative defense entitled "Plaintiff's Inequitable Conduct Before the USPTO" ("Defense") should be stricken because it is legally and factually baseless. Specifically, Ariel Capital's Defense should be stricken because (i) the alleged misstatement of dates of first trademark use, upon which the Defense is based, is legally immaterial even if true (which it is not); (ii) the Defense is premised upon a factually inaccurate reading of an interrogatory answer; and (iii) for multiple reasons, the Defense fails to satisfy the "who," "what" and "how" requirements of Federal Rule of Civil Procedure 9(b). Ariel Investments, LLC ("Ariel Investments") hereby moves to strike it.

*Facts*

On April 28, 2015, plaintiff Ariel Investments filed this trademark infringement case complaining about Ariel Capital's infringement of the ARIEL Marks and multiple trademark registrations. (Dkt. 1.) Following the denial of Ariel Capital's Motion to Dismiss (Dkt. 44 and 55), Ariel Capital filed its Answer to Complaint and Counterclaims, including Fourth and Fifth Counterclaims entitled "Trademark Cancellation - Fraud" (Counterclaim IV) and "Abuse of

Process" (Counterclaim V). (Dkt. 64.) In response, Ariel Investments moved to dismiss Ariel Capital's Fourth and Fifth Counterclaims. (Dkt. 68.) On May 16, 2016, the Court dismissed Ariel Capital's Fourth and Fifth Counterclaims. (Dkt. 82.)

Shortly thereafter, Ariel Capital filed two more motions, specifically, a Motion to Compel John Rogers' Deposition (Dkt. 83) and a Motion for Leave to Amend Answer Based on Newly Received Evidence (Dkt. 85).[1] On May 24, 2016, the Court granted Ariel Capital's Motion to Amend its Answer over Ariel Investments' objection, but the Court invited Ariel Investments to move to strike the Defense. (Dkt. 88, 90).[2]

### Argument

A motion to strike pursuant to Federal Rule of Civil Procedure 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Motions to strike also serve as a means to expedite a case by removing "unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Man Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill 1999); *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp. 1224, 1228 (N.D. Ill 1996). A court may strike an affirmative defense if it is legally insufficient on its face. *See Heller Fin., Inc.* 883 F.2d at 1294.

---

[1] The latter motion includes the Defense in both Exhibits A and B, with different paragraph numbering in each Exhibit. For clarity in this Motion, Ariel Investments cites to the relevant paragraphs set forth in Exhibit A. (Dkt. 85-1 ¶¶ 56-63).

[2] Ariel Investments is not aware of any available defense to trademark infringement labelled "Inequitable Conduct Before the USPTO," and Ariel Capital cites no authority. Because the Defense refers to "material misrepresentations," Ariel Investments treats the Defense as requiring the same pleading standards as fraud.

Courts in the Northern District of Illinois have followed a three-part test when evaluating affirmative defenses subject to a motion to strike: (i) the matter must be properly pleaded as an affirmative defense; (ii) the matter must be adequately pleaded under Rules 8 and 9; and (iii) the matter must withstand a Rule 12(b)(6) challenge. If it is impossible for defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient. *Renalds v. S.R.G. Rest. Grp., Chi., LLC*, 119 F. Supp. 2d 800, 803 (N.D. Ill. 2000) (citing *Heller,* 883 F.2d at 1294) (approving three-part test set forth in *Bobbit v. Victorian House, Inc.,* 532 F. Supp. 734, 737 (N.D.Ill.1982)); *see also Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*, 99 C 8237, 2000 U.S. Dist. LEXIS 1738, at \*1 (N.D. Ill. Feb. 16, 2000) (quoting and following three-part test).

When assessing a defense's factual basis, courts in this District generally follow the majority view that an affirmative defense must contain sufficient factual material that, when taken as true, states a defense that is plausible on its face pursuant to *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). *See Malibu Media, LLC v. Doe*, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at \*4 (N.D. Ill. June 9, 2014); *Senne v. Vill. of Palatine*, No. 10 C 5434, 2013 U.S. Dist. LEXIS 1271, at \*8-10 (N.D. Ill. Jan. 4, 2013); *United Cent. Bank v. Ramoni, Inc.*, No. 10 C 6405, 2011 U.S. Dist. LEXIS 96668, at \*6-7 (N.D. Ill. Aug. 28, 2011); *Emplrs Mut. Cas. Co. v. Keystone Elec. Co.*, No. 08 C 7408, 2009 U.S. Dist. LEXIS 72840, at \*3-5 (N.D. Ill. Aug. 18, 2009). Consequently, a party must make factual allegations sufficient to raise the asserted defenses above the "speculative level." *Bell Atl. Corp.* 550 U.S. at 555.

Fraud is held to a higher pleading standard under Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In trademark cases, "[a]llegations of trademark fraud must be stated with particularity in accordance with Fed. R. Civ. P. 9(b)." *Nw. Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1996 U.S. Dist. LEXIS 6137, at *14-15 (N.D. Ill. May 8, 1996); *see also Carmichael v. Prime*, No. IP 02-0379-C-T/K, 2003 U.S. Dist. LEXIS 6444, at *9 (S.D. Ind. Jan. 6, 2003) (finding that a party "may not rest on the bare allegation that Defendants defrauded the PTO" and that the requirements of Rule 9(b) apply); *San Juan Prods. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir. 1988) (holding that allegations of fraud in the procurement of a trademark "must be alleged with specificity as required by Rule 9(b), both in federal court and in PTO administrative proceedings.").

Under Rule 9(b), a party asserting a claim for fraud must specifically allege the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated …." *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1078 (7th Cir. 1997) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). In short, the rule requires the "who, what, when, where, and how" of the circumstances of the alleged fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); see also *DiLeo v. Ernst & Young*, 901 F.2d 614, 627 (7th Cir. 1990).

**I.      An Incorrect First Use Date Does Not Constitute A Material Misrepresentation, So Ariel Capital Fails To Satisfy The "What" And "How" Requirements Of Rule 9(b).**

Ariel Capital's Defense is not plausible on its face because Ariel Capital failed to allege that anyone made a false representation to the U.S. Patent & Trademark Office ("USPTO") regarding a *material fact*.

Ariel Capital's Defense alleges the following:

56.     On June 20, 1983, Plaintiff represented to the USPTO that its first use in commerce of its ARIEL trademark for "Management of Investments and Investment Funds" was March 23, 1983.

57.     On March 16, 2016, Plaintiff listed that it offered its products or services in its response to Defendant's Interrogatory No. 2 for the first time on September 30, 1983, but stated that it would supplement that response.

58.     On May 10, 2016, Plaintiff again listed in a supplemental response that that the first time it offered its products or services was September 30, 1983, this time without qualification.

59.     Because Plaintiff's actual use in commerce of September 30, 1983 postdated its statement to the UPSTO that it used its mark in March 23, 1983, that was a material misrepresentation and Plaintiff's mark is void ab initio.

60.     Plaintiff had a duty of candor in its application to the USPTO.

61.     Because Plaintiff's actual use in commerce of September 30, 1983 postdated the date it filed its trademark application for the ARIEL trademark with the UPSTO on June 20, 1983, that was a material misrepresentation and Plaintiff's mark is void ab initio.

62.     Use in commerce is a requirement in a trademark use application, thus Plaintiff's misrepresentation to the USPTO that it was using the mark when it filed its trademark application, and by stating that it used the mark in commerce on March 23, 1983, were material misrepresentations.

63.     Therefore, Plaintiff made a material misrepresentation to the USPTO which constitutes inequitable conduct and its trademark is void.

(Dkt. 85-1 ¶¶ 56-63).

Ariel Capital appears to allege two misrepresentations in this Defense: (i) "Plaintiff's actual use in commerce of September 30, 1983 postdated its statement to the USPTO that it used its mark in March 23, 1983" (*id*. at ¶59); and (ii) "Plaintiff's actual use in commerce postdated the date it filed its trademark application … on June 20, 1983" (*id*. at ¶61).

Ariel Capital, however, does not identify a specific trademark application or registration, but Ariel Investments assumes from the dates that the Defense is directed at Trademark Registration No. 1,286,420.  That registration is incontestable pursuant to 15 U.S.C. § 1065,

which means that the registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark."  15 U.S.C. § 1115(b).  Consequently, Ariel Capital has a steep uphill climb to properly allege and later prove invalidity.

The first alleged misrepresentation ("Plaintiff's actual use in commerce of September 30, 1983 postdated … its statement … that it used its mark in March 23, 1983…."), even if true, is not a material misrepresentation sufficient to constitute fraud on the USPTO.  *See Pony Express Courier Corp. of Am. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989) ("the claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date"); *Slep-Tone Entm't Corp. v. Coyne, No.* 13 C 2298, 2015 U.S. Dist. LEXIS 1683, at *10 (N.D. Ill. Jan. 8, 2015) (citing to *Pony Express* for the proposition that "the claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date"); *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, 879-80 (N.D. Ill. 2008) ("an incorrect date of first use is not a material representation that serves as grounds for cancellation so long as the first use preceded the application date"); *ISP.Net, LLC v. Qwest, Communs. Int'l, Inc.*, No. IP 01-0480-C-B/S, 2003 U.S. Dist. LEXIS 9076, at *11 (S.D. Ind. May 27, 2003) ("the Trademark Board has consistently held that a misstatement of the date of first use in an application for registration is not fraudulent as long as there has been some use of the mark prior to the filing date").  Consequently, that alleged misrepresentation cannot constitute fraud as a matter of law.  As shown subsequently herein, the date is not a misrepresentation.

The second alleged misrepresentation ("Plaintiff's actual use in commerce as of September 30, 1983 postdated the date it filed its trademark application ….") rests upon a factual inaccuracy derived from Ariel Capital misconstruing an interrogatory answer.  In the Defense,

Ariel Capital cites Defendant's response to Interrogatory 2, stating that "Plaintiff listed that it offered its products or services … for the first time on September 30, 1983." (Dkt. 85-1 at ¶57.) Actually, with regard to that date, the interrogatory response merely lists "Small-cap value (September 30, 1983-present)" as a particular separately managed account offered by Ariel Investments and does not state that is when Ariel Investments first offered its services. When Ariel Investments realized that Ariel Capital was misconstruing the dates listed in the interrogatory answer, Ariel Investments further supplemented its interrogatory answer to state that regarding the services in question, "First use was at least as early as January 10, 1983" and pointing out that the trademark application "includes a specimen of use of the mark as of June 20, 1983," the date when the application was filed. See attached Exhibit A showing Ariel Investments' responses to Interrogatory No. 2. In that supplemental response, Ariel Investments also directed Ariel Capital to the documents supporting those dates, *documents Ariel Capital had in its possession long before it alleged the Defense*, namely Ariel Investments' trademark registration and application file. The statement in the application that the mark was then in use in commerce and the accompanying specimens showing use of the mark, all submitted to the USPTO with a signed declaration under penalty of perjury, constitute evidence that the mark was in use as of the filing date. Ariel Capital makes no allegation that the application or specimens were false or fraudulent.

Where factual *inaccuracy* of a pleading produces a legally insufficient affirmative defense, a motion to strike is the appropriate mechanism. *See Riemer v. Chase Bank, N.A.,* 275 F.R.D. 492, 494 (N.D. Ill. 2011); *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). The second alleged misstatement rests upon a factual inaccuracy derived from misconstruing an interrogatory answer, so the Defense should be stricken.

In summary, Ariel Capital has not answered the critical "what and how" questions required to allege an affirmative defense of fraud on the USPTO. Specifically, Ariel Capital has failed to allege "what" *material misrepresentation* was made to the USPTO to constitute fraud or "how" anyone was deceived, as there in fact were no *material misrepresentations* made to the USPTO by Ariel Investments. Ariel Investments' mark is therefore not "void due to improper registration" as incorrectly alleged in the Defense.

## II. Ariel Capital Failed to Identify any Individual Who Made The Alleged Misrepresentation To The USPTO.

Under Rule 9(b), a party asserting a claim for fraud must "state with particularity the circumstances constituting fraud," including specifically the "identity of the person who made the misrepresentation." *Gen. Elec. Cap. Corp*. 128 F.3d at 1078. Conclusory allegations that an adverse *party's* conduct was fraudulent and deceptive do not satisfy the Rule. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (the complaint needed to "state who made the [false] statement to whom and when"); *See Sullivan v. Leor Energy LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (plaintiff failed to "allege who at the company made the allegedly fraudulent statements"); *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 819-20 (N.D. Ill. 2013).

Ariel Capital's Defense consists of nothing more than vague allegations that "Plaintiff" made misrepresentations. (Dkt. 85-1 ¶¶ 56-63.) The Plaintiff in this case, Ariel Investments, is a company with hundreds of employees. The Defense does not identify any *individual* at Ariel Investments who made the alleged false statements.[3]

---

[3] Further, the Defense ignores that the USPTO rules would not have permitted the ARIEL trademark application to proceed if "Plaintiff" had signed the application. The Trademark Rules permit only natural *persons* to sign documents filed in connection with a trademark application, including (i) a person with legal authority; (ii) a person with firsthand knowledge of the facts and actual authority; or (iii) an attorney

The Defense fails to identify the person "who" engaged in the alleged misrepresentations as required by Rule 9(b) and is therefore insufficient on its face.

### III. The Defense Fails to Allege a "Knowing" Misrepresentation With "Intent to Deceive"

A trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant *knowingly* makes a false, material misrepresentation with the *intent to deceive* the Trademark Office. *Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors, LLC*, No. 11-cv-4016, 2014 U.S. Dist. LEXIS 163294, at \*30 (N.D. Ill. Nov. 21, 2014) (citing *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009)). "Subjective intent to deceive is an indispensable element in the analysis." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). See also, *The Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 673 (7th Cir. 1982). Evidence of deceptive intent "must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* at 1245. Moreover, there is "a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive." *Id.* at 1243. When drawing an inference of intent, "the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988).

The Defense includes no allegation that anyone "knowingly" made a misrepresentation, or that a misrepresentation was made with "intent to deceive." The Defense merely concludes that a misrepresentation was made. Without the knowledge and intent to deceive, an allegedly false statement, and even a material misrepresentation, cannot be fraudulent.

---

who has an actual written or verbal power of attorney or an implied power of attorney. 37 CFR § 2.193(e). The Defense, on the other hand, asserts only that "Plaintiff" made the representations.

**IV.    Ariel Capital's Pending Motion to Compel John Rogers' Deposition Should Be Denied For The Same Reasons**

Ariel Capital's Motion to Compel John Rogers' Deposition is pending the outcome of this motion to strike. The deposition of John Rogers, the Chief Executive Officer and Chairman of the Board of Ariel Investments, would not only be unnecessary but would also constitute a harassing "apex" deposition, as set forth in Ariel Investments' Response to Ariel Capital's Motion to Compel John Rogers' Deposition. (Dkt. 87.) Ariel Capital has based its demand to depose Mr. Rogers on its Defense, stating in its Motion (but *not* in the Defense) that "John Rogers also has knowledge of Plaintiff's registration." (Dkt. 83 at 5.) As described in this motion to strike, however, Mr. Rogers' alleged "knowledge about the marks' first uses" (Dkt. 83 at 4) is not material because the alleged first use date is not material to the validity of the registration.

Moreover, Ariel Capital makes several false and misleading statements concerning Mr. Rogers and the Defense in both its motion to compel Mr. Rogers' deposition (Dkt. 83) and its motion to add the Defense (Dkt. 85). For example, Ariel Capital states that Mr. Rogers "signed the USPTO submissions," "was responsible for the specimens before the USPTO, [and] signed the declarations to get the asserted trademarks allowed" (Dkt. 83 at 1, 4), all without citing any support. Actually, however, Mr. Rogers did *not* sign the "submissions" or "declarations" attesting to the "use" of the mark and the "specimens" in the trademark application at issue. The attached copy of the application (Exhibit B), *previously produced* to Ariel Capital, shows that Jessica Berger, Vice President of Ariel Investments at the time, signed the application, declaring that the mark was "in use" as of the filing date of the application (and as of dates prior to that),

and that "five specimens showing the mark as actually used" as of the filing date were attached.

Ariel Capital's alleged basis for deposing Mr. Rogers, therefore, is faulty.

### *Conclusion*

For the foregoing reasons, Ariel Investments respectfully requests that the Court strike

Ariel Capital's Defense and deny Ariel Capital's Motion to Compel John Rogers' Deposition.

Dated: June 7, 2016

By: */s/ Arthur Gollwitzer III*
Arthur Gollwitzer III (6225038)
agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
lwdemarte@michaelbest.com
Larry L. Saret (2459337)
llsaret@michaelbest.com
Zachary J. Watters (6310675)
zjwatters@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Tel: (312) 222-0800
Fax: (312) 222-0818
***Attorneys for Plaintiff***
***Ariel Investments, LLC***

## CERTIFICATE OF SERVICE

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on June 7, 2016, I caused a copy of the following document:

**Plaintiff Ariel Investments, LLC's Motion to Strike Defendant
Ariel Capital Advisors LLC's First Affirmative Defense**

to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by e-mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
233 S. Wacker Drive
21st Floor
Chicago, IL 60606
adamw@wonoip.com
briann@wonoip.com

Christopher Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III