UNITED STATED DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case Number: 15-cv-3717 |
| ARIEL CAPITAL ADVISORS LLC, | ) | |
| | ) | Hon. Judge Matthew F. Kennelly |
| Defendant. | ) | |
| | ) | |

**DEFENDANT ARIEL CAPITAL ADVISORS LLC'S RESPONSE
TO PLAINTIFF'S MOTION TO STRIKE ITS FIRST AFFIRMATIVE DEFENSE**

Plaintiff Ariel Investments falsely claimed to the U.S. Patent and Trademark Office ("USPTO") that it was using the ARIEL trademark in commerce to get a registration allowed, yet it did not start using the mark in commerce until months after it filed the application. It conceded so in its interrogatory answers, and its founder John Rogers verified it in interviews that Plaintiff produced in discovery. Once Defendant Ariel Capital Advisors LLC ("ACA") uncovered this, it amended its Answer to include an affirmative defense to challenge Plaintiff's ARIEL trademark. ACA's affirmative defense should stand, and Plaintiff's motion is baseless because (1) an incontestable trademark can be cancelled for inequitable conduct or fraud; (2) falsely declaring a trademark was "used in commerce" to the USPTO is a material misrepresentation; and (3) ACA's allegations give Plaintiff sufficient notice and meet Rule 9(b)'s standards.

**Background**

ACA received Plaintiff's Supplemental Interrogatory Answers on May 10, 2016. In its answer, Plaintiff listed that the earliest day that it had provided any services to consumers was

1

September 30, 1983. To the USPTO, however, Plaintiff represented it performed services for consumers under its ARIEL mark[1] before it filed its June 20, 1983 trademark application. Indeed, Plaintiff told the USPTO that the mark had been used in commerce since March 23, 1983. John Rogers also stated in public interviews that Plaintiff did not service its first customer until *eighteen months* after opening.

ACA had a meet and confer with Plaintiff on May 18 to discuss Plaintiff's failure to produce documents, and ACA's wish to amend its answer to add two affirmative defenses and to depose John Rogers. Plaintiff opposed ACA's request to amend its answer, Plaintiff refused to produce John Rogers for a deposition, and Plaintiff agreed to produce additional documents by the end of discovery, May 27, 2016. ACA filed its Motion for Leave to Amend Based on Newly Discovered Evidence and its Motion to Compel John Rogers' Deposition the next day. On May 24, 2016, this Court granted ACA's Motion to Amend its Answer, and postponed ruling on ACA's Motion to Compel John Rogers' Deposition until after the parties briefed the motion to strike.

ACA accordingly filed its Amended Answer (Dkt. 85), and Plaintiff filed a Motion to Strike. Dkt. 92.

## Argument

The striking of an affirmative defense is an extreme measure and motions to strike are accordingly disfavored. *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991); *see also Cumis Ins. Soc., Inc. v. Peters,* 983 F. Supp. 787, 798 (N.D. Ill. 1997) ("motions to strike…are disfavored and usually denied"). An affirmative defense should not be stricken

---

[1] Plaintiff claims that ACA did not identify Plaintiff's ARIEL trademark in its amended claims, yet ACA explicitly stated the "ARIEL" trademark in its allegations, and there is only one such mark listed in Plaintiff's Complaint.

unless the defense is insufficient as a matter of law and "it appears to a **certainty** that plaintiff would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel*, 944 F.2d at 1400 (emphasis added). All factual allegations also should be accepted as true and the court should draw every reasonable inference in the non-moving party's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

To survive a motion to strike, a party need only (a) properly plead an affirmative defense, (b) comply with Rules 8 and 9; and (c) plead matter that can withstand a Rule 12(b)(6) challenge. *Renalds v. S.R.G. Rest. Grp., Chi., LLC*, 119 F. Supp. 2d 800, 802-03 (N.D. Ill. 2000). Ordinarily, "defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "If a defense may be relevant, then there are other contexts" for challenging it like "a motion for summary judgment." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991).

## 1. ACA's Affirmative Defense is Legally Valid and Attacks the Heart of Plaintiff's Infringement Claim

ACA's inequitable conduct claim is a proper affirmative defense because it addresses whether Plaintiff's ARIEL trademark registration is valid, and thus whether Plaintiff can recover under its claim. *See Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) ("In a trademark infringement claim, the plaintiff must demonstrate: (1) **the validity of its trademark**; and (2) the infringement of the mark") (emphasis added); *see also* 15 U.S.C. § 1115(b) (an "incontestable" trademark may be invalidated by fraud). To that end, the validity of Plaintiff's ARIEL registration as void *ab initio* may be challenged under 15 U.S.C. § 1115(b). *See NetJets Inc. v. Intellijet Grp., LLC*, No. 2:12-CV-0059, 2013 WL 5675464, at *5 (S.D. Ohio Oct. 17, 2013) ("incontestable" trademarks that are void *ab initio* are invalid under

Section 1115(b)(1)); *see also UHS of Delaware, Inc. v. United Health Services, Inc.*, No. 1:12-CV-485, 2015 WL 7294454, at *5 (M.D. Pa. Nov. 19, 2015) ("[A]n applicant's misrepresentations concerning the use of a mark may provide the basis of a Section 1115(b)(1) claim."). Here, ACA asserted that the trademark is void *ab initio* because Plaintiff misrepresented that it used the trademark when it filed its application yet had not. Accordingly, ACA's defense that the trademark is void under § 1115(b) is valid as a matter of law, which affects the heart of Plaintiff's claim.

### 2. Falsely Claiming Use of Mark is a Material Misrepresentation

ACA's defense survives a motion to strike because falsely telling the USPTO that a trademark was used in commerce when its first use *postdated* the application's filing is a material misrepresentation. *See NetJets v. Intellijet,* 2013 WL 5675464, at *5-6 (obtaining a "registration and incontestability status through a false (*i.e.,*fraudulent) statement" is grounds for cancellation of the mark); *see also Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (holding that a trademark registration is void *ab initio* unless the mark was used "in commerce" when the application was filed). ACA alleges that Plaintiff misrepresented to the USPTO that it used the mark in commerce before its June 20, 1983 trademark application, whereas the mark actually was not used in commerce until months later, in September 1983, or later. Dkt. 85-1 ¶¶ 56, 59-63. Because using a trademark in commerce is a requirement for registration, and because Plaintiff would not have been eligible for or received a trademark but for the misrepresentation, it was material. *See Couture v. Playdom, Inc.*, 778 F.3d 1379, 1380 (Fed. Cir. 2015) (the "use in commerce must be as of the application filing date" and occurs on services "when [1] it is used or displayed in the sale or advertising of services **and** [2] **the services are rendered in commerce"**) (emphasis added); *see also* McCarthy on Trademarks and

Unfair Competition § 19:103 (4th ed. Supp. 2013) ("To qualify for registration, the Lanham Act requires that the mark be both used in the sale or advertising of services **and** **that the services themselves have been rendered in interstate commerce**.") (bold added; italics in original).

Plaintiff first argues that falsely claiming to use a trademark in commerce is not material, but that is wrong and based on an incorrect reading of the four cases it cites. *See ISP.Net, LLC v. Qwest Comm. Intern., Inc.*, 2013 WL 21254430, at *3 (S.D. Ind. May 27, 2003) ("Material facts are those which, if disclosed, would result in refusal by the Office to register the mark."). Indeed, in each case Plaintiff cites, the services were performed **before** the trademark application was filed. Conversely, Plaintiff's first use came months **after** it applied for the trademark, so its registration would not have been granted but for the misrepresentation. *See Aycock v. Airflite*, 560 F.3d at 1357 (trademark application is void *ab initio* unless the mark was used in commerce when it was filed); *see also Couture v. Playdom*, 778 F.3d at 1380 (the "use in commerce must be as of the application filing date"). Plaintiff's incorrect first use date accordingly constitutes a material misrepresentation and ACA's claims thus survive a motion to strike.

Plaintiff additionally argues that ACA misconstrued its answer, but Plaintiff's Third Supplemented Interrogatory Answer substantiates that the ARIEL trademark was only used in commerce **after** the trademark application was filed. In all three iterations, Plaintiff listed its first services as provided in September 1983. Nonetheless, Plaintiff points to its ARIEL application, application specimens and registration that list "use in commerce" dates of January 10, 1983, and March 23, 1983. However, these documents are insufficient to demonstrate "use in commerce" because the specimens are brochures. *See Avakoff v. Southern Pacific Co.,* 765 F.2d 1097, 1098 (Fed. Cir. 1985) ("[A]dvertising material is not use within the meaning of the statute and therefore is insufficient to support federal registration."); *see also Couture*, 778 F.3d

at 1381 (advertising, even when combined with subsequent sales, is not sufficient for showing use in commerce); *and see Sensient Techs. Corp. v. SensoryEffects Flavor, Co.*, 613 F.3d 754, 762-63 (8th Cir. 2010) (finding no use in commerce where mark owner issued press release, made announcement, gave presentations, and constructed website but where there was no evidence of any sale or transport of goods bearing the mark). Additionally, ACA is not required to rely on the first use dates listed on Plaintiff's application because ACA's defense specifically disputes the correctness of these dates. Therefore, Plaintiff's interrogatory answer stands as the only evidence of Plaintiff's earliest services in commerce, which postdates its application date. As a result, ACA's defense is based on the most current facts in the record, and accordingly should not be stricken.

### 3. Plaintiff had Notice of ACA's Defense and it meets Rule 9(b)'s Standards

ACA stated its defense with particularity because it alleged the "who, what, when, where, and how" Plaintiff misrepresented its trademark use to the USPTO, and Plaintiff in effect conceded it had sufficient notice. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In its defense, ACA alleges that Plaintiff made material misrepresentations to the USPTO about its first use of the ARIEL mark, thereby fulfilling the "who" (Plaintiff, Jessica Berger, and its CEO John Rogers), "what" (first use date), and "where" (to the USPTO) requirements. Dkt. 85-1 ¶¶56, 59-63. ACA further satisfies the "how" requirement because it alleges Plaintiff made the misrepresentations by claiming that the mark had been "used in commerce" since March 23, 1983, whereas the mark had not been used before Plaintiff filed its application. Dkt. 85-1 ¶¶ 59, 61. In fact, Plaintiff stated that its first service was in September 30, 1983. Exh. A at Interrog. No. 2. Lastly, ACA alleges that Plaintiff made the misrepresentations in its trademark

application to the USPTO on or about June 20, 1983 (the "when"). Dkt. 85-1 ¶ 56. Therefore, ACA's claims satisfy Rule 9(b).

Indeed, a defense that paralleled ACA's was found to be properly pled under Rule 9(b) in *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898 (N.D. Ill. Dec. 18, 2014). In *Slep-Tone*, the defendant alleged that "Slep-Tone committed fraud in the form of a material misrepresentation to the PTO…by claiming to the PTO that the…mark was used in commerce…in its trademark application to the PTO on or about November 29, 2011," when it had not. *Id*. at 906. That was found to meet Rule 9(b). Like in *Slep-Tone v. Kalamata*, ACA also stated that Plaintiff made a material misrepresentation to the USPTO *because* Plaintiff represented it used its trademark in commerce when it had not. Specifically, Plaintiff stated its first "use in commerce" was March 23, 1983, although its *actual* first "use in commerce" did not occur until *after* its June 1983 application. Dkt. 85-1 ¶¶ 56-58; *and see Energy Absorption Sys., Inc. v. Roadway Safety Serv. Inc.*, No. 93 C 2147, 1993 WL 389014, at *2 (N.D. Ill. Sept. 16, 1993) (Rule 9(b)'s "how" and "why" requirements are met by identifying the specific part of the application that contains the material misrepresentation).

Additionally, ACA identified "who" made the misrepresentation by alleging Plaintiff – who is the listed owner on the application and registration – made the misrepresentation. Plaintiff's claim that ACA must identify a natural person is self-serving because it forbid ACA to depose John Rogers, who Plaintiff identified in its interrogatory answers as the person possessing the information about its first uses of the mark. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 873 F. Supp. 111, 119 (N.D. Ill. 1995) *aff'd,* 67 F.3d 605 (7th Cir. 1995) (Rule 9(b)'s particularity requirement is relaxed where facts that a party would otherwise be required to plead are in the possession of its opponent). Even if a natural person's name was required, ACA

nevertheless identified and gave Plaintiff notice of Jessica E. Berger in its pleading by attaching and incorporating the ARIEL registration and application that named and was signed by Jessica E. Berger.[2] *See Thompson v. Ill. Dept. of Prof. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Royster v. McKesson HBOC, Inc.*, No. 01 C 1439, 2001 WL 1029389, at *1 (N.D. Ill. Sept. 6, 2001) (documents incorporated by reference in the pleadings are considered part of the pleadings for all purposes).

Indeed, Plaintiff conceded that it was notified of "who" misrepresented the first use because it stated in its Motion to Strike that Ms. Berger "signed the application, declaring that the mark was 'in use' as of the filing date of the application." Dkt. 92, at 10. So while plaintiff argues that it did not have sufficient notice of who provided the "use" date to the USPTO, Plaintiff's statement that Ms. Berger provided the "use" date directly contradicts that argument. For these reasons, ACA sufficiently pled the defense because it demonstrated the "who, what, when, where and how".

Plaintiff's further claim that ACA's defense should be defeated because it did not use the words "knowingly" or "with the intent to deceive" also misses the mark: courts look at the substance of the pleadings, not at keywords. *See U.S. v. White County Bridge Comm'n*, 275 F.2d 529, 535 (7th Cir. 1960) ("A pleading is judged by its substance and not its form."). ACA pled facts alleging that Plaintiff was deceptive by falsely telling the USPTO that it was using its mark in commerce when it was not, and that the misrepresentation was directed at the USPTO in order to get a trademark registration. Accordingly, simply because ACA did not use the words

---

[2]Plaintiff's 26(a)(1) disclosures also did not mention Jessica E. Berger nor has ACA been able to locate Ms. Berger through online searches. Accordingly, the specific identity of the individual who made the misrepresentation about ARIEL's "use in commerce" may be uncovered in John Rogers' Deposition.

"knowingly" or "with intent to deceive" does not make ACA's pleadings inadequate when Plaintiff had notice of the conduct and purpose of that conduct.

Lastly, Plaintiff's claim that "[e]vidence of deceptive intent must be clear and convincing" is misplaced in a motion to strike because no evidentiary standard is required under notice pleading; that is for summary judgment. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (Rule 8(a)(2) requires only a short and plain statement to give the other party notice of the claim and the grounds upon which it rests); *see also U.S. v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975) ("relevant defenses should be tested on a motion for summary judgment with the benefit of a full record."). Remarkably, while it argues that "evidence" is required, Plaintiff has blocked ACA's efforts to get that evidence by postponing depositions until the end of July, refusing others, and not producing documents by the discovery end date.[3] Even if it were required, ACA cited Plaintiff's interrogatory responses listing the incorrect date as the basis for its defense. For these reasons, Plaintiff's Motion to Strike should be denied because ACA has met both Rule 8 and Rule 9's pleading requirements.

### 4. ACA's Motion to Compel John Roger's Deposition Should be Granted Because He Has Personal Knowledge of Ariel Investments' First Services in Commerce

John Roger's deposition should be compelled because he is in the best position to testify about the first date Plaintiff provided its services in commerce, which is *material* to the validity of the ARIEL registration. Plaintiff further lists John Rogers as having information about its first uses in commerce in its interrogatory responses, *and* John Rogers signed Plaintiff's Affidavit of Continued Use and Incontestability with the USPTO for this trademark. (Exh. B). And importantly, John Rogers even publicly stated that Plaintiff did not service its first client until

---

[3] Plaintiff postponed Ariel Investment's 30(b)(6) deposition to an undisclosed future date, has pushed Melody Hobson's deposition to July 28 stating that it is the first full day she is available, and refused to produce its founder John Rogers altogether, who has unique knowledge of Plaintiff's first services.

**eighteen months** after it opened. (Exh. C). That postdates the "first use" and application dates in its ARIEL registration significantly, making it invalid. Indeed, despite discovery ending, no evidence exists in the record that Plaintiff's use predated the application. (See Exhs. A & D; Interrog. No. 2 & Prod. Req. Nos. 1, 7, 8). Consequently, ACA's defense could hinge on a question of fact – when Plaintiff's first "use in commerce" occurred – and this fact seems to be solely in John Roger's possession.

**Conclusion**

Therefore, ACA respectfully requests that the Court deny Plaintiff's Motion to Strike ACA's First Affirmative Defense because (1) ACA's affirmative defense is sufficient as a matter of law under 15 U.S.C. § 1115(b); (2) ACA pled a material misrepresentation to the USPTO; and (3) ACA met the requirements of Rule 9(b) and Rule 8(a)(2) by pleading the "who, what, when, where and how" which gave Plaintiff sufficient notice of the claims against it. ACA also requests that the Court grant its Motion to Compel the Deposition of John Rogers because he has unique, personal knowledge regarding when Plaintiff first provided its services in commerce, and that despite ACA's efforts, has not been obtained another way.

Dated: June 20, 2016

By:/s/   Adam Wolek
Adam Wolek
Brian Noack
Wolek & Noack
233 S. Wacker Drive
21st Floor
Chicago, IL  60606
P: 312.860.9006
F: 708.843.0509
adamw@wonoip.com
briann@wonoip.com

*Local Counsel for Defendant Ariel Capital
Advisors, LLC*

Christopher P. Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Ste 200
Naples, FL  34109
P: 239.651.6008
F: 239.431.3914
cpbray@cpbrayassociates.com
*Lead Counsel for Defendant Ariel Capital
Advisors, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on June 20, 2016, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Arthur Gollwitzer III
agollwitzer@michaelbest.com
Luke W. DeMarte
lwdemarte@michaelbest.com
Larry L. Saret
llsaret@michaelbest.com
Zachary J. Watters
zjwatters@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, Illinois 60601

Mareile Bayard Cusack
mcusack@arielinvestments.com
David Allyn Miley
dmiley@arielinvestments.com
Ariel Investments, LLC
200 East Randolph Street, Ste 2900
Chicago, Illinois 60601-6505

By:/s/__Adam Wolek_____
Adam Wolek