**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC<br><br>Plaintiff,<br><br>v.<br><br>ARIEL CAPITAL ADVISORS LLC<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 15-cv-3717 |

**Memorandum in Support of Plaintiff Ariel's Motion for Partial Summary Judgment**


Arthur Gollwitzer III (6225038)
agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
lwdemarte@michaelbest.com
Larry L. Saret (2459337)
llsaret@michaelbest.com
Zachary J. Watters (6310675)
zjwatters@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601

***Attorneys for Plaintiff Ariel Investments, LLC***

Plaintiff Ariel has been using "Ariel" in its company name and service mark non-stop since 1983, and today is a nationally-known, award-winning financial services firm with more than $10 billion under its management. In January 2014, Christopher Bray founded defendant Ariel Capital and decided to use "Ariel" in the name for his financial services business, armed with full knowledge that he was infringing Ariel's long-standing service mark rights. Thus, it is not surprising that Mr. Bray's decision to use the ***same name*** for a business offering the ***same services*** has led to actual confusion between the two firms. Nevertheless, Mr. Bray has refused to stop infringing in the face of Ariel's superior rights.

The Court should enter summary judgment under Rule 56 in Ariel's favor on its Section 32 infringement claim and Section 43 unfair competition claim.[1] As demonstrated below and in Ariel's accompanying Statement of Material Facts, Ariel owns incontestable service marks, and Ariel Capital is using nearly identical marks to identify itself as a financial services firm. Moreover, there is not only a ***likelihood*** of confusion but indisputable evidence of ***actual*** confusion between the two entities.

## *Undisputed Facts*

### I. Ariel and its Service Marks

Ariel and its predecessors-in-interest provide investment management services, and offer products (including separate accounts and mutual funds) to individual and institutional investors in all fifty states. (Ariel's Statement of Material Facts ("SOF") ¶ 7.) Ariel's revenues are split about 50/50 between mutual funds and separate accounts, which are financial strategies that mimic mutual funds but are offered to high net worth clients who want to personalize their

[1] Ariel is not moving on its other three claims, two brought under Illinois law (deceptive trade practice and common law infringement/unfair competition) and another under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

investment strategy. (*Id.* ¶¶ 8-9.) Today, Ariel is a well-known provider of investment services, managing over $10 billion in client assets. (*Id.* ¶ 10.)

Ariel, its predecessors, and related companies have continuously used "Ariel" in their names since Ariel's founder, John Rogers, opened the door of "Ariel Capital Management, Inc." in January 1983. (SOF ¶¶ 4, 6.) Ariel registered the ARIEL mark in 1984, and the ARIEL INVESTMENTS mark in 2008. (*Id.* ¶ 11.) Today, Ariel owns nine federally registered service marks containing the term "ARIEL" (the "ARIEL Marks"). (*Id.*) The words "Ariel Capital" – identical to the first two words of the defendant's name – remain as the assumed name of Ariel's parent company, "Ariel Capital Management Holdings, Inc." (*Id.* ¶ 4.)

The registrations for the ARIEL Marks are in full force and effect on the Trademark Office's Principal Register. (SOF ¶ 11.) The registrations for ARIEL, ARIEL APPRECIATION FUND, ARIEL FUND, ARIEL INVESTMENTS, and ARIEL FOCUS FUND have become incontestable pursuant to 15 U.S.C. § 1115(b). (*Id.*)

Ariel promotes its financial services under the ARIEL Marks, [redacted] [redacted]. (SOF ¶ 15.) In addition to promoting its services under the ARIEL Marks on its website at www.arielinvestments.com and in brochures, Ariel has promoted its services under the ARIEL Marks in a wide variety of media and channels of trade, including in national publications, websites, and advertising networks. (*Id.* ¶ 13.) Moreover, Ariel's advertisements, making use of the ARIEL Marks, have earned critical acclaim, including more than 70 STAR Awards. (*Id.* ¶ 16.) Ariel officers also have been contributors to a wide variety of television programs. (*Id.* ¶ 17.) For example, John Rogers provides a regular column in *Forbes* Magazine. (*Id.*) Additionally, Ariel promotes its services under the ARIEL Marks through high-profile sponsorships of cultural and civic events. (*Id.* ¶ 18.)

Finally, Ariel has diligently protected its marks by sending cease-and-desist letters and taking legal action, when necessary. (SOF ¶ 19.)

## II. Defendant Ariel Capital

Mr. Bray founded Ariel Capital in January 2014 and is its sole owner and ultimate decision-maker. (SOF ¶ 22.) Ariel Capital's services include investment management. (*Id.* ¶ 23.) According to its website, Ariel Capital "provides independent and objective investment management, tax and estate planning, financial planning, and trust administration services to clients throughout the United States." (*Id.* ¶ 25.) Ariel Capital's clients include both individuals and entities such as IRAs and family trusts, [REDACTED].[2] (*Id.* ¶¶ 28-29.) Ariel Capital stated to the SEC that it creates for its clients "a portfolio of all or some of the following investments in accordance with the investment objectives of the client: mutual funds, exchange traded funds (commonly known as 'ETFs'), debt and equity securities, real estate, real estate investment trusts (commonly known as 'REITS'), private placements, government securities, and alternative investments (e.g., hedge funds)." (*Id.* ¶ 24.)

Ariel Capital has offices in Cleveland, Ohio and Naples, Florida and has 68 clients in at least eleven states. (SOF ¶¶ 21, 28.) Ariel Capital advertises its financial services in print, radio, via its website, by word of mouth, and by sponsoring events in the Naples area. (*Id.* ¶ 27.)

## III. Ariel Capital Uses the Same Marks to Identify the Same Services, Leading to Actual Confusion

Both Ariel and Ariel Capital are using "Ariel." (SOF ¶ 34.) Moreover, both Ariel and Ariel Capital are in the same business, providing investment management services to the same types of investors. (*Id.* ¶¶ 35-36, 38.) Ariel offers both mutual funds and separate accounts, and Ariel Capital offers personalized investment services much like Ariel's separate accounts. (*Id.* ¶

35.) Moreover, Ariel Capital could readily expand its offerings to include its own mutual funds in competition with Ariel. (*Id.* ¶¶ 37-38.)

The undisputed record reveals several instances of actual confusion:

- In April 2015, Justin Land, a member of the Chartered Financial Analysts ("CFA") in Naples, asked Ariel Capital employee Chris Squitteri during a meeting whether Ariel Capital was affiliated with Ariel. (SOF ¶ 41.)

- In February 2016, Ariel Capital employee Marcie Rebardo received a phone call from David Boone, the owner of a digital publication that covers the financial trading industry, who was trying to reach an employee of Ariel. (*Id.* ¶¶ 42-44 .) Boone called the wrong entity – Ariel Capital – he believes based on the results of a Google search. (*Id.* ¶¶ 46-47.)

- In June 2016, Ariel Capital client Monica Schandel, who is a longtime friend of Mr. Bray and both an Ariel Capital client and owner of a financial planning firm that does business with Ariel Capital, confused the names of Ariel and Ariel Capital in an e-mail drafted to Ariel's counsel in connection with a subpoena. (*Id.* ¶¶ 48-51.) Schandel later confused the two entities several times during her deposition. (*Id.* ¶ 51.)

- In or around March 2015, an Ariel human relations employee received a telephone call from someone checking references about a person who worked for Ariel Capital. (*Id.* ¶ 52.)

- Also, in or around March 2015, Ariel's General Counsel, Mareilé Cusack, received a telephone call inquiring about Florida real estate, a call that was intended for Ariel Capital. (*Id.* ¶ 53.)

## IV. Ariel Capital Chose Its Name with Knowledge of the ARIEL Marks.

Mr. Bray, an attorney, was aware of Ariel when he opened and named his firm. He admits performing Google searches for "Ariel Wealth Advisors" and "Ariel Capital Advisors" before choosing his firm's name. (SOF ¶¶ 62-64.) This admission undermines his claim that he was not aware of Ariel because a search of "Ariel Capital Advisors" reveals Ariel on the first

---

[2] [redacted]

page of results. (*Id.* ¶ 65.) Indeed, this Court already has observed that this search is sufficient "to give rise to an inference that Bray realized, or deliberately chose to ignore, that he was adopting a name that arguably was confusingly similar to that used by Ariel." (*Id.*) When Ariel replicated Mr. Bray's Google searches in 2015, it found that its own website appears among the first three "hits." (*Id.*)

Moreover, Mr. Bray has worked in the financial services industry since 1991 and was aware of Ariel's founder, John Rogers, before Mr. Bray founded his firm, as he recalled watching a Rogers interview on television. (*Id.* ¶ 56-57.) Mr. Bray also regularly reads *Investment Advisor*, a periodical that often contains full-page Ariel advertisements, and he attends conferences at which Ariel promotes its services with large exhibits. (*Id.* ¶ 58-59.) Mr. Bray even received promotional emails directly from Ariel. (*Id.* ¶ 60.)

Finally, Mr. Bray has continued to ignore Ariel's requests to change his firm's name. In August 2014, Ariel's counsel advised Mr. Bray of Ariel's service mark rights and asked him to stop using the ARIEL Marks. (SOF ¶ 67.) Mr. Bray denied infringing the ARIEL Marks and refused to stop using them. (*Id.* ¶ 68.) In October 2014, Ariel's counsel called Mr. Bray and again asked him to stop using the ARIEL Marks, but he refused. (Id. ¶ 69.)

## V. Ariel's Damages and Ariel Capital's Profits

Ariel Capital's infringement poses a serious risk of devastating reputational harm to Ariel. Every day that Ariel Capital infringes the ARIEL Marks, Ariel faces the threat that some misdeed at Ariel Capital could irreparably harm Ariel's business. Ariel Capital's own employees concede how important a firm's reputation is in this industry. (SOF ¶ 72.) For example, an SEC accusation of wrongdoing would negatively affect Ariel Capital's clients' perception of the

company. (*Id.* ¶ 73.) And, because Ariel Capital is misusing the ARIEL Marks, this potential reputational damage would be imputed to Ariel as well. (*Id.* ¶ 74.)

Also, Ariel Capital is profiting from its use of the "Ariel" name. [REDACTED] Those profits flow directly to Mr. Bray. (*Id.* ¶ 78.)

***Argument***

This Court should enter summary judgment in Ariel's favor on its claims under Sections 32 and 43 of the Lanham Act. To prove infringement under Section 32, Ariel must show (i) it owns registered, protectable service marks; and (ii) Ariel Capital's use of those service marks is likely to cause confusion among consumers. *Munters Corp. v. Matsui Am., Inc.*, 909 F.2d 250, 252 (7th Cir 1990). Section 43 protects registered and unregistered service marks against use that is likely to cause confusion, measured under the same standard as Section 32. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001); *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277-78 (S.D.N.Y. 1998).

**I. The ARIEL Marks Are Valid.**

Because the ARIEL Marks are valid and enforceable, there are no triable issues of fact regarding the first element of Ariel's infringement claim. Ariel Capital cannot reasonably dispute that Ariel federally registered each of the ARIEL Marks and that they are all in full force and effect on the Trademark Office's Principal Register. (SOF ¶ 11.) Under Lanham Act Section 32, 15 U.S.C. § 1115(b), ARIEL, ARIEL INVESTMENTS, and three additional ARIEL Marks have become incontestable and constitute conclusive evidence that the marks are valid, owned by Ariel, and Ariel has the exclusive right to use such marks. (*Id.*) Ariel's incontestable

marks are sufficient to enjoin and recover damages from infringers such as Ariel Capital, subject to limited defenses that are either unsupported or not at issue.[3] *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985).

## II. Ariel Capital's Use Of "Ariel" Has Caused Actual Confusion and Continues to Create a Likelihood of Confusion.

The crux of this case is simple – Ariel Capital is using essentially the ***same name*** when offering the ***same services***. Therefore, it is no surprise that the facts also demonstrate a strong likelihood of confusion, warranting summary judgment in Ariel's favor on its infringement claim (coupled with Ariel's valid, registered marks) and on its unfair competition claim (standing alone). This Court analyzes the following seven factors to determine whether confusion is likely: (i) similarity between the marks; (ii) similarity of the services; (iii) area and manner of concurrent use; (iv) evidence of actual confusion; (v) strength of the plaintiff's mark; (vi) the defendant's intent; and (vii) degree of care likely to be exercised by consumers. *CAE*, 267 F.3d at 677-78. Although the evidence reveals that these factors weigh in Ariel's favor, Ariel is not required to show all (or even a majority) of them favor Ariel to prevail. *Id.* at 678. No single factor is dispositive, and courts may assign varying weight to each of them depending on the facts presented. *Id.* at 683.

---

[3] Ariel Capital asserts that Ariel committed fraud when it applied to register a trademark for ARIEL in June 1983 because, contrary to Ariel's representation, that mark had not been used in commerce by the dates set forth in the application. (*See* Dkt. No. 98 at 7-9.) This assertion is factually inaccurate because (i) Rogers began using the Ariel name in January 1983, and (ii) it mistakenly assumes that because Ariel did not offer its first mutual fund until September 1983 that Rogers and his colleagues were not offering other investment services, or marketing their soon to be launched fund, between January and September 1983. (SOF ¶¶ 4-5.) But even if Ariel's statement to the USPTO was inaccurate, representations regarding first use are legally immaterial. *See Pony Express Courier Corp. of Am. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989) ("the claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date"); *see also Slep-Tone Entm't Corp. v. Coyne*, 2015 U.S. Dist. LEXIS 1683, at *13 (N.D. Ill. Jan. 8, 2015); *ISP.Net, LLC v. Qwest, Communs. Int'l, Inc.*, 2003 U.S. Dist. LEXIS 9076, at *11 (S.D. Ind. May 27, 2003). Even if this baseless defense has legs, it has no bearing on Ariel's ***eight*** other senior registered marks at issue in this case or to Ariel's Section 43(a) claim. *See Lexington Mgmt. Corp.*, 10 F. Supp. 2d at 277-78.

**A. Confusion Is Likely Because "Ariel" Is The Salient Feature of Ariel and Ariel Capital.**

First, the marks are nearly identical because the salient feature of the ARIEL Marks and "Ariel Capital Advisors" is "Ariel." If one word of a composite mark is the salient portion of the mark, it should be given greater weight than the surrounding elements. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001); *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090 (7th Cir. 1988) ; *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 U.S. Dist. LEXIS 180912, at *13 (N.D. Ill. Dec. 27, 2013). Indeed, the proper focus should be on the most memorable part of a mark because purchasers "often do not retain a clear impression of the precise form in which a mark appears . . . due to the fallibility of the human memory." *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 377 (7th Cir. 1976) (*overruled other grounds*).

Here, the principal, eye-catching word in all of the ARIEL Marks is "Ariel." *AT&T Corp. v. Synet, Inc.*, 1997 U.S. Dist. LEXIS 1494, *20 (N.D. Ill. Feb. 11, 1997) (finding similarity between marks that both used "AT&T"). That all but one of the ARIEL Marks contain additional words does not weaken Ariel's rights because those additional words, such as "Investments" and "Fund," are descriptive or generic when standing alone. Ariel Capital's use of "Capital Advisors" does not reduce the likelihood of confusion because the public is accustomed to seeing the ARIEL Marks combining ARIEL with similar descriptive words. *See Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1320 (Fed. Cir. 2014) (affirming TTAB rejection of registration of STONE LION CAPITAL due to prior registrations of LION and LION CAPITAL); *see also Liquid Controls v. Liquid Control Corp.*, 802 F.2d 934, 934 (7th Cir. 1986) ("[A] generic term merely specifies the genus of which the particular product is a species."). Moreover, the parties' emphasis on "Ariel" impacts the eye ***and*** the ear. *See*

*Grotrian v. Steinway & Sons*, 523 F.2d 1331, 1340 (2d Cir. 1975) ("Trademarks, like small children, are not only seen, but heard."). A person hearing the parties' names likely would focus on the initial word "Ariel," not the extraneous words that follow. Consequently, Ariel Capital's use of the ARIEL Marks weighs heavily in favor of finding a likelihood of confusion.

### B. The Parties Sell Similar Products to Similar Customers in the Same Manner and Areas.

The second and third factors – similarity of services and area and manner of concurrent use –also suggest likelihood of confusion. Similarity of services does not require identical services or direct competition, only a showing that the parties' services are "sufficiently related to create an inference in consumers' minds that the products came from the same source." *CAE*, 267 F.3d at 679 (citing *Int'l Kennel Club*, 846 F.2d at 1090). Indeed, an important reason to protect trademark owners against the use of similar marks on closely related services is to protect the owner's ability to enter markets in which it does not now trade but into which it might reasonably be expected to expand in the future. *CAE*, 267 F.3d at 681.

Here, both parties sell highly related (if not identical) services, namely investment management services. (SOF ¶ 35.) Ariel provides investment management services (including mutual funds and separate accounts) to individual investors. (*Id.* ¶¶ 7, 35.) Ariel Capital's services likewise include private wealth management and personalized investment management to individuals. (*Id.* ¶ 23.) And like Ariel, Ariel Capital advertises that it will create an investment portfolio for its clients, including mutual funds. (*Id.* ¶¶ 8, 24.) In short, these services are sufficiently related to easily satisfy this factor and further underscore the likelihood of confusion. Moreover, Ariel Capital could easily expand its offerings to include its own mutual funds as other similar businesses have done. (*Id.* ¶ 37.) *See CAE*, 267 F.3d at 679.

So, too, the area and manner of concurrent use demonstrates similarity. Under this factor, courts evaluate "whether there is a relationship in use, promotion, distribution, or sales between the goods and services of the parties." *CAE*, 267 F.3d at 681 (quotation and citation omitted). Here, it is undisputed that the manner in which the parties use "Ariel" is the same, as both use "Ariel" in their websites, mass-media advertising, and public sponsorships. (SOF ¶ 34.) *See CAE*, 267 F.3d at 681-82. Moreover, both Ariel and Ariel Capital "target the same general audience," *see id.* at 682, namely investors looking for advice and portfolio management. (SOF ¶¶ 7-8, 23-24, 35.) And both offer their services to customers in and advertise in many of the same states, including the States of Ohio and Florida. (*Id.* ¶ 36.) For all these reasons, this factor weighs in favor of finding a likelihood of confusion.

**C. There Is Strong Evidence of Actual Confusion.**

"It is well established that ***any*** evidence of actual confusion is '***substantial evidence*** of likelihood of confusion'." *AT&T Corp.*, 1997 U.S. Dist. LEXIS 1494, at *23-24 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965) (emphasis in original); *see also Int'l Kennel Club*, 846 F.2d at 1090 (same). "Reason tells us that . . . very little proof of actual confusion would be necessary to prove likelihood of confusion." *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 (7th Cir. 1986). Indeed, for even a single instance of known confusion, there is often a vast undetected history of confusion. *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 720 (3d Cir. 2004).

Here, there are ***several*** instances of actual confusion, not just one, even though Ariel Capital has been infringing the ARIEL Marks for only two years. First, a CFA member in Naples, Justin Land, asked an Ariel Capital employee during a meeting whether Ariel Capital was affiliated with Ariel. (SOF ¶ 41.) Second, Boone, the owner of a digital publication that

covers the financial trading industry, called Ariel Capital instead of Ariel based on the results of a Google search. (*Id.* ¶¶ 42-47.) Third, Schandel, a longtime friend and client of Mr. Bray and owner of a financial services firm in business with Ariel Capital, confused the names of the two entities both in an e-mail and several times during her deposition. (*Id.* ¶¶ 48-51.) Fourth, an Ariel human relations employee received a telephone call from someone checking references about a person who worked for Ariel Capital. (*Id.* ¶ 52.) Fifth, Ariel's General Counsel received a call inquiring about Florida real estate, a call that was intended for Ariel Capital. (*Id.* ¶ 53.)[4]

This evidence of actual confusion leads to the inescapable conclusion that a strong likelihood of confusion exists and will continue unless Ariel Capital is enjoined from using the name "Ariel Capital Advisors" or any of the ARIEL Marks. Thus, this factor weighs strongly in entering summary judgment in Ariel's favor. *See Am. Eagle Outfitters,* 2013 U.S. Dist. LEXIS 180912, at *24-30 (entering summary judgment under Sections 32 and 43 where there was substantial evidence of actual confusion); *Packaging Supplies, Inc. v. Harley-Davidson Motor Co.*, 2011 U.S. Dist. LEXIS 50897, at *22 (N.D. Ill. May 12, 2011) (granting summary judgment in light of actual supplier confusion regarding the two entities); *AT&T Corp.*, 1997 U.S. Dist. LEXIS at *22 (entering summary judgment in plaintiff's favor based in part on four misdirected phone calls by consumers who confused the two entities).

**D. The ARIEL Marks Are Strong.**

The uncontested record establishes the robust strength of the ARIEL Marks. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *Autozone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2008). To begin, arbitrary marks, like

[4] Notably, Mr. Bray and his employees concede that they did not search all of their email and paper files for further evidence of confusion despite such discovery requests from Ariel. (SOF ¶ 54.) Indeed, Mr. Bray did not even instruct his employees to preserve all documents relating to this case. (*Id.*) This

ARIEL, are "inherently strong." *See Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc*., 576 F. Supp. 2d 868,886 (N.D. Ill. 2008). The strength of the ARIEL Marks also is demonstrated by its duration of use, annual sales, and advertising expenditures. *See CAE*, 267 F.3d at 684-85 (affirming conclusion that mark was strong because plaintiff had used the mark for over 40 years, had earned millions of dollars of sales, and expended tens of thousands of dollars promoting its business); *Am. Eagle Outfitters*, 2013 U.S. Dist. LEXIS 180912, at *24 (deeming American Eagle's mark strong in light of duration of trademark use, substantial sales, and significant promotion and marketing efforts and expenditures).

Here, the ARIEL Marks are strong because Ariel: has provided investment services under the arbitrary ARIEL Marks for 33 years; is a well-known provider of investment services, managing over $10 billion in assets; offers its services in all fifty states and has over 300,000 mutual fund shareholders; [REDACTED]; promotes its marks on its website, in brochures, and in a variety of other media, including national publications and advertising networks; and has earned significant acclaim, including more than 70 of the industry's prestigious STAR Awards. (SOF ¶ 16.) Ariel officers also have been featured contributors to a wide variety of television programs; John Rogers provides a regular column in *Forbes* Magazine; and Ariel promotes its services under the ARIEL Marks through high-profile sponsorships of cultural and civic events. (*Id.* ¶¶ 17-18.)

Ariel also diligently protected its marks by sending cease-and-desist letters and taking legal action, when necessary. (*Id*. ¶ 19.)

---

intentional failure to search or even preserve evidence suggests that there may have been other instances of actual confusion between Ariel and Ariel Capital.

### E. Ariel Capital Willfully Misappropriated the ARIEL Marks and Continues to Flout Ariel's Service Mark Rights.

Undisputed evidence of Ariel Capital's knowledge of the ARIEL Marks before its creation and its intransigence in the face of Ariel's rights support finding that its actions are willful. *See Autozone*, 543 F.3d at 929 (proof of intent is "particularly important" in the likelihood-of-confusion analysis). Mr. Bray, who is also a practicing attorney, adopted his company's name well aware of Ariel and its service mark rights. Mr. Bray has worked in the financial services business since at least 1991, was familiar with Ariel's founder, John Rogers, before Mr. Bray founded Ariel Capital, attended conferences that featured Ariel exhibits bearing its mark, and regularly reads a periodical in which Ariel advertises prominently. (SOF ¶¶ 57-59.) Moreover, Mr. Bray wanted to use the name "Ariel Wealth Advisors." Prior to naming his company, however, he performed a Google search because he was concerned about taking another firm's name. (*Id.* ¶ 62.) He admittedly found "Ariel Wealth Advisors" in that search. (*Id.*) Notably, when Ariel performed similar Google searches in 2015, those searches consistently revealed Ariel front and center. (*Id.* ¶ 65.) Nevertheless, Mr. Bray chose to use the name "Ariel Capital Advisors." (*Id.* ¶ 63.) Even this Court already has observed that this search is sufficient "to give rise to an inference that Bray realized, or deliberately chose to ignore, that he was adopting a name that arguably was confusingly similar to that used by Ariel." (*Id.* ¶ 65.)

In addition to this awareness, Mr. Bray ignored and rejected Ariel's requests that he change the name of his firm after receipt of a cease-and-desist letter, after a discussion with Ariel's counsel, and throughout the course of this litigation. (SOF ¶¶ 66-71.)

All of this evidence warrants finding likelihood of confusion because it suggests that Ariel Capital intentionally disregarded Ariel's rights in the ARIEL Marks.

### F. The Degree of Care Likely To Be Exercised by Clients Fails To Diminish the Likelihood of Confusion.

Finally, to assess the degree of client care, the Court must consider both parties' ***potential*** consumers. *See CAE*, 267 F.3d at 682 (citing *Fuji Photo. Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 598 (5th Cir. 1985) (Lanham Act's infringement prohibition "clearly encompasses confusion on the part of purchasers of either (or both) party's products.")). Here, the fact that both parties' services and pool of potential clients overlap "makes it even more likely that even an informed and sophisticated consumer will mistakenly attribute the parties' products . . . to a common source." *See CAE*, 267 F.3d at 683. An Ariel client could easily conclude that Ariel has opened an office in Naples, or an Ariel Capital client could easily conclude that Ariel Capital is an affiliate of Ariel. (SOF ¶ 38.) "The potential for such mistakes is heightened by the difficulty of determining which [Ariel] entity belongs to which party without some prior knowledge of each party's corporate structure." *CAE*, 267 F.3d at 683. That potential is real in light of the multiple, documented instances of actual confusion, including by a journalist who covers the financial industry. (SOF ¶¶ 41-53.)

## III. Ariel Is Entitled to an Injunction and to Ariel Capital's Profits as Damages.

The Court should enjoin[5] Ariel Capital from infringing the ARIEL Marks. Ariel Capital's infringement poses a serious risk of devastating reputational harm to Ariel. Both companies are selling services in the highly regulated financial services industry, where success

[5] A plaintiff seeking a permanent injunction must satisfy a four-factor test : (i) irreparable injury; (ii) inadequate remedies at law; (iii) balance of hardships warrant equitable relief; and (iv) the public interest would not be disserved by a permanent injunction. *See DeVry Inc. v. Int'l Univ. of Nursing*, 638 F. Supp. 2d 902, 910 (N.D. Ill. 2009); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1005 (N.D. Ill 2008). In this case, for the reasons described in this Memorandum, Ariel can satisfy all four factors. Indeed, as the Seventh Circuit observed in an earlier trademark case: "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high

is heavily dependent on a company's reputation for integrity. Regardless of a person's wealth, he or she is not likely to invest hard-earned savings with a firm that cannot be trusted. Therefore, every day that Ariel Capital uses Ariel's name, Ariel faces the threat that some misdeed at Ariel Capital could irreparably harm Ariel's business. Indeed, Ariel Capital's own employees concede how important a firm's reputation is in this industry. (SOF ¶ 72.) An SEC accusation of wrongdoing or a public complaint by a private investor would negatively affect Ariel Capital's clients' perception of the company, and Ariel Capital would be required to take steps to repair its image and reputation. (*Id.* ¶ 73.) Therefore, because Ariel Capital is misusing the ARIEL Marks, this potential reputational damage would be imputed to Ariel. (*Id.* ¶ 74.) Put another way, Ariel cannot control the quality of Ariel Capital's services and, therefore, any ongoing infringement unfairly imperils Ariel's reputation. *See Int'l Kennel Club*, 846 F.2d at 1092.

[redacted]. (SOF ¶ 78.) Section 35(a) permits recovery of the defendant's profits "subject to the principles of equity." 15 U.S.C. § 1117(a). This discretionary method for determining damages does not require the plaintiff to prove that it suffered damage because of the infringement but for defendant's unjust enrichment. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994). The statute also provides for recovery of enhanced damages, costs, and attorneys' fees. 15 U.S.C. § 1117(a); s*ee BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Therefore, the Court should award damages to Ariel in the amount of Ariel Capital's unjust profits from 2014 to the present, plus prejudgment interest, costs, and fees.

---

quality the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Int'l Kennel Club.*, 846 F.2d at 1092.

***Conclusion***

For the foregoing reasons, the Court should enter partial summary judgment in Ariel's favor on Counts I and II of the Complaint and enter an order: (i) enjoining Ariel Capital and all persons and entities acting in concert with Ariel Capital, from infringing the ARIEL Marks; and (ii) awarding Ariel damages, prejudgment interest, costs, and attorneys' fees.

By: /s/ Zachary J. Watters

Arthur Gollwitzer III (6225038)
agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
lwdemarte@michaelbest.com
Larry L. Saret (2459337)
llsaret@michaelbest.com
Zachary J. Watters (6310675)
zjwatters@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601

***Attorneys for Plaintiff Ariel Investments, LLC***

## Certificate of Service

I, Zachary J. Watters, an attorney of record in this matter, certify that on October 7, 2016, I caused a copy of the following document:

**Memorandum in Support of Plaintiff Ariel's Motion for Partial Summary Judgment**

to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by email delivery:

Adam Wolek
Brian Noack
Wolek and Noack
333 South Wabash Avenue
Suite 2700
Chicago, IL 60604
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

/s/ Zachary J. Watters
Zachary J. Watters