UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC, <br> Plaintiff, <br> <br> v. <br> <br> ARIEL CAPITAL ADVISORS LLC, <br> Defendant. | ) <br> ) <br> ) Case No.: 1:15-cv-3717 <br> ) <br> ) Judge: Hon. Matthew F. Kennelly <br> ) <br> ) |

**Defendant Ariel Capital Advisors LLC's Statement of Material Facts in Support of Its Motion for Summary Judgment**

Defendant Ariel Capital Advisors LLC ("ACA") respectfully submits the following statement of material facts in support of its motion for summary judgment in accordance with Local Rule 56.1(a)(3):

**I.    Jurisdiction and Venue**

1.     This is an action seeking to invalidate Ariel Investments, LLC's ("Plaintiff") ARIEL mark because it did not satisfy the first use requirement under Lanham Act, 15 U.S.C. § 1127, and it fraudulently misrepresented the first use in commerce in contravention to Lanham Act, 15 U.S.C. 1115(b). Therefore, this Court has subject matter jurisdiction over this matter. (Defendant's Second Amended Answer and Counterclaims, Dkt. 98, attached as Exhibit 34, at ¶ 64-86.)

2.     While Plaintiff maintains its objections that jurisdiction and venue are improper in the Northern District of Illinois, this Court has previously ruled that a substantial part of the events giving rise to this action have occurred or will occur in the Northern District of Illinois and that this Court has personal jurisdiction over the plaintiff and venue is proper in this District. (Christopher Bray Declaration dated November 3, 2016, attached as Exhibit 1, at ¶ 3-4, 9-22; Order dated October 29, 2015, Dkt. 44, attached as Exhibit 35.)

1

II.     **The Parties**

    **A. Defendant Ariel Capital Advisors LLC**

3.      ACA is a Florida limited liability company, founded by its current and then CEO Christopher Bray, having its principal place of business in Naples, Florida and a small satellite office in Cleveland, Ohio. (Exh. 1, at ¶ 2-4.)

4.      ACA provides private wealth management, including personalized investment management services, tax planning, cash flow planning, retirement planning, estate planning, and tax return preparation. (Exh. 1, at ¶ 6.)

5.      With limited exceptions for pre-existing relationships, ACA requires clients to have a minimum of a million dollars in investable assets to open an account. (Exh. 1, at ¶ 7.)

6.      ACA primarily gets clients through word-of-mouth advertising. (Exh. 1, at ¶ 8.)

7.      Bray named Ariel Capital Advisors after his daughter, Ariel Bray, and Ariel Ministries, which he and his wife have served for fifteen years. (Ariel Capital Advisors LLC's Second Rule 30(b)(6), attached as Exhibit 2, at 202:5 – 203:10.) "Ariel" is a Hebrew word that means lion of God. (Exh. 2, at 202:11-12; *see also* Bates Number ACA000819, attached as Exhibit 4.)

    **B. Plaintiff Ariel Investments, LLC**

8.      Plaintiff Ariel Investments, LLC ("Plaintiff") is a limited liability company duly organized and existing under the laws of the State of Delaware with its principle place of business at 200 E. Randolph Street, Suite 2900, Chicago, Illinois. It was originally founded as Ariel Capital Management, Inc. in 1983 and reorganized to Ariel Capital Management, LLC in 2004 and later changed its name to Ariel Investments, LLC in 2008 (Plaintiff's Complaint, attached as Exhibit 36, at ¶ 2, 9.)

9. Plaintiff and its predecessors-in-interest provide investment services, financial and investment advisory services, and mutual funds. (*Id.* at ¶ 8.)



15. In an interview for Spirit magazine, Mr. Rogers stated "[i]n 1983, at 24 years old, I founded Ariel Capital Management with $150,000 from family and friends." (Deposition Exhibit 8 to the Plaintiff 30(b)(6) Deposition, attached as Exhibit 37, at *3.)

16. While being interviewed for N'Digo magazine, Mr. Rogers stated that he "had no money to manage, no clients", that he "g[ot] his first million-dollar account after 18 months", and that "[Plaintiff] offers [an investment plan] for as little as $50 a month." (Deposition Exhibit

5 to the Plaintiff 30(b)(6) Deposition, attached as Exhibit 15, at *2-3.)

17. In an article for Dollar & Sense, Mr. Rogers stated that "[i]t took us over a year and a half before we got that first million-dollar account", that "[t]here were a lot of long lean days", and that "[Plaintiff] offers a one-time investment option where a minimum of $1,000 must be invested, with minimum subsequent investments of $50." (Deposition Exhibit 6 to the Plaintiff 30(b)(6) Deposition, attached as Exhibit 32, at *2, 4.)



21. An article published in Black Enterprise noted that Plaintiff's "first investment came from the Howard University endowment fund" and was "helped by the fact that one of his original investors was a Howard Medical School graduate, and that Rogers' mother, prominent Chicago lawyer, Jewel Lafontant, was on the University's board of trustees." (Exh. 38, at *3.)



[redacted]

### III. Plaintiff's Trademark Application

27. Plaintiff's ARIEL mark was filed on June 20, 1983. (Exhibit A to Plaintiff's Complaint, Dkt 1-1, attached as Exhibit 39, at 2.)

28. Plaintiff's trademark application was for use with the "management of investments and investment funds." (*Id.*)

29. In its application to the USPTO, Plaintiff claimed its date of first use as January 10, 1983 and its first use in commerce as March 23, 1983. (*Id.*)

30. Plaintiff's ARIEL trademark was registered on July 17, 1984. (Exh. 39.)

31. Plaintiff licenses its marks to its various corporate entities, third-party brokers in connection with offering Plaintiff's mutual funds, and to organizations and events that Plaintiff sponsors. (Exh. 12, at 7-9.)

32. Plaintiff lists its website and Bates Numbers AI000361-000411, AI000739-000771 in support of its first use date in its Supplemental Answers to Defendant's First Set of Interrogatories. (Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories, attached as Exhibit 13, at 2-3.)

33. In its Third Supplemental Answers to Defendant's First Set of Interrogatories, Plaintiff provided a Second Supplemental Answer to Interrogatory No. 2 stating that its "first

use" in the "management of investments and investment funds" "was at least as early as January 10, 1983, based on [Plaintiff]'s U.S. Application No. 73-431,218 and Registration No. 1,286,420[,]" and "[Plaintiff]'s U.S. Application includes a specimen of use of the mark as of June 20, 1983." (Plaintiff's Third Supplemental Answers to Defendant's First Set of Interrogatories, attached as Exhibit 14, at 4.)

34. In its Third Supplemental Answers to Defendant's First Set of Interrogatories, Plaintiff provided a Second Supplemental Answer to Interrogatory No. 2 stating that its "first use" in the "[m]utual fund advisory and management services, mutual fund brokerage services, and mutual fund distribution services" "was at least as early as November 6, 1986, based on [Plaintiff]'s U.S. Application No. 73-228,021 and Registration No. 2,772,980[,]" and "[Plaintiff]'s U.S. Application includes a specimen of use of the mark as of March 21, 2001." (*Id.*)

35. In ACA's first requests for production, ACA requested: "1. Each document relating to [Plaintiff's] selection, adoption, or first use of the word 'Ariel' in [Plaintiff's name; 7. Each document related to the 'Ariel' mark's first use on January 10, 1983. [and] 8. Each document related to the 'ariel' mark's first use in interstate commerce on March 23, 1983." (Ariel Capital Advisor LLC's First Set of Request for Production to Plaintiff, attached as Exh. 11, at *4-5.) To date, ACA has not received any documents that demonstrate Plaintiff's use of "Ariel" in commerce before it filed its trademark application on June 20, 1983. (Exh. 11.)

36. In its Rule 30(b)(6) deposition, Plaintiff testified that it used the name Ariel in a newsletter known as "The Patient Investor" and that its earliest use was May 6th, 1983. (Exh. 9, at 101:1-24, 297:1-24.)

37. Plaintiff filed an Answer to ACA's Second Amended Answer and Counterclaims

6

on October 28, 2016. (Pl's Answer to ACA's Second Amended Answer and Counterclaims, Dkt. 122, attached as Exhibit 40.)

IV. **The Parties' Products and Services**

A. **Defendant's Services**

38. ACA provides private wealth management for individuals and families, including personalized investment management services, tax planning, cash flow planning, retirement planning, estate planning and tax return preparation. (Exh. 2, at 76:7-10.)

39. ACA accumulates a significant amount of data and consults with the client as part of its business. (Exh. 2, at 179:21-24. As part of the tax planning services ACA performs, ACA reviews clients' prior tax returns and performs income tax projections based on income data that clients provide. (Exh. 2, at 177:11-18.) ACA then provides recommendations about how to reduce tax expenses for that specific client or family members of that client. (*Id.*)

40. ACA also performs estate planning services, and gathers documents such as wills, trusts, durable powers of attorney, healthcare powers of attorney, and living wills and reviews each to advise clients on their inheritance goals, like reducing estate taxes. (Exh. 2, at 177:19-178:2.) ACA often meets with the whole family to discuss estate plans, including with grandparents, children, and grandchildren. (*Id.* at 179:7-11.)

41. ACA also performs retirement planning for its clients, and evaluates clients' living expenses, projected living expenses after retirement, and savings accounts. (Exh. 2, at 178:3-14.)

42. ACA does not sell mutual funds, nor does it plan to offer mutual funds. (Exh. 2, at 189:8-14.) ACA never advises a client to include mutual funds as part of his or her plan. (*Id.* at 63:18-20.) Mutual Funds are provided in ACA's Form ADV in case an ACA client has mutual

7

funds they received from a different advisor. (*Id.* at 66:17-20.) Mutual funds are listed in ACA's client brochure for disclosure purposes as fees for those types of investments, and are independent from ACA's advisory fee. (*Id.* at 188:6-21.)

43. ACA does not create or provide separate accounts for any of its clients. (Ariel Capital Advisors LLC's First Rule 30(b)(6) Deposition, attached as Exhibit 5, at 27:11-15.) And ACA does not have plans to offer any kinds of additional services in the future. (Exh. 2, at 60:4-6, 13-16.)

B. **Plaintiff's Products**

44. Plaintiff offers mutual funds and separate accounts that can be ordered off its website. (Ariel Investments, LLC's Statement of Facts, attached as Exhibit 41, at ¶ 7; Exh. 9, at 112:5-10.) A "separate account" is "basically, mutual funds, except not in a mutual fund framework, but in an individual account framework for an individual investor." (Exh. 5, at 27:10.)



8

██████████████████████████████████████ A Dow Jones News Service article quotes John Rogers and reads, "Ariel wants to be a niche player and do 'one thing very well,' Rogers said, and that's value investing picking downtrodden and unloved stocks." (Bates Number AI020054, attached as Exhibit 42.)

V. **Customers and Advertising**

A. **ACA's Clientele**

49. ACA provides its private wealth management services to natural persons, individuals and families. (Exh. 5, at 21:5-6.) ACA does not "tak[e] on an investment relationship or a private wealth management relationship for an LLC in and of itself or a trust in and of itself." (*Id.* at 185:17-20.) ACA only accepts a charitable trust or a family LLC if its tied to an individual or family who is already an ACA client. (Id. at 184:22-185:8.)

50. ACA's typical client is "someone with investable assets over a million dollars, someone with typically complex income tax planning and compliance needs, someone typically with possible state or estate tax exposure, complicated financial planning issues." (Exh. 2, at 195:8-13.)

51. ACA imposes a minimum account size of $1,000,000 as a condition for managing accounts. (Bates Numbers ACA000679-ACA000687, attached as Exhibit 16.) Any accounts that are less than ACA's minimum are generally related as a family in a relationship, and the relationship typically exceeds a million dollars. (Exh. 2, at 176:15-19.) For example, "mom and dad might have a portfolio of two million. And they may have established a custodial account that [ACA] manage[s] for daughter or son, and the value of that account may be less than a million dollars." (*Id.* at 72:10-16.) Most of these "primary" family members have accounts ranging from five million to twenty million dollars. (*Id.* at 194:13-15.)

52. All of ACA's clients came from client referrals or employee referrals. (Exh. 2, at 216:14-16.) ACA and its employees personally know and have a relationship with each client. (Exh. 5, at 18:25; Exh. 2, at 69:20-21.) For meetings, an ACA employee often meet its client at ACA's office, the client's home, a restaurant, or at the client's business. (Exh. 2, at 180:10-18.) And when an ACA employee meets with a client, they often meet with members of the client's family, like grandparents, parents, children, and grandchildren. (*Id.* at 179:7-11.) ACA also provides this advice over conference calls or telephonically, but the primary way ACA communicates to its clients is in person, face to face. (Exh. 2, at 181:8-18.)

53. ACA has advertised only a handful of times since opening its doors. And these ads have been through local non-profits and media, and once in Crane's Cleveland Business. (*Id.* at 68:1-3; Exh. 2, at 56:13-15; 67:11-13, 213:1-10.) ACA does not advertise on the internet. (Exh. 2, at 67:18-19.)

54. ACA also has never advertised in, and does not intend to advertise in Barons, Fortune, Mutual Funds Magazine, Morningstar Fund Investor, Morningstar Advisor, Investment Advisor, Value Investor Insight, Entrepreneur, Personal Finance, Savoy Magazine, Black Enterprice, Smart Money, Bloomberg Businessweek, Financial Advisor, Hispanic Executives, Ticker, Trader Magazine, Techsmart Trader, USA Today, Wall Street Journal, the New York Times, Pensions and Investments, Chicago Tribune, Chicago Sun-Times, Crain's Business Chicago, in elevators or on CNBC, Morning Call, Fox, Fox Markets Now, Your World with Neil Cavoto, Cavoto on Business, Nightly Business Report, ABC, Good Morning America, World News Tonight, Bloomberg TV, In Focus, Morning Call, Open Exchange, Frontline, News Hour with Jim Lehrer, Chicago Tonight, WCIU, First Business, WBBM, DuSable Night of 100 Stars, Eye on Chicago, Twitter, Facebook, Dow Jones, wellingtononwallstreet.com, Morningstar.com,

forbes.com, cnnmoney.com, blackamericaweb.com, wvon.com, Green Money, or Fast Company. (*Id.* at 208:5-215:15, 216:17- 219:15.)

55. ACA does not have any clients that are banks, institutional clients, investment companies, business development companies, pooled investments, pensions, profit-sharing plans, corporations, businesses, state governments, municipal governments, insurance companies, or other investment advisors. (Exh. 2, at 226:2-227:16.)

**B. Plaintiff's Customers**

██ ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

██ ████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
███████████████████

██ ████████████████████████████████████████
████████████████████████████████████████████

1

██████████████████████████████████████████████████

██████████████████████████████████████

### C. Lack of Confusion

59. There have been no instances of actual confusion among consumers attempting to purchase either Plaintiff's products or ACA's services.

### D. The Parties' Marks

60. ACA's mark always features a masculine white lion's head enclosed in a royal blue shield, with a royal blue background. (Bates Number 000069, attached as Exhibit 6; Bates Number 000072, attached as Exhibit 7; Bates Number 000081, attached as Exhibit 8.) To the right of ACA's lion are the words, "Ariel Capital Advisors, LLC" in a sans-serif font, with only the "A" in Ariel, the "C" in Capital, and the "A" in Advisors capitalized. (*Id.*)

61. Plaintiff's marks appear as "ARIEL INVESTMENTS," never "Ariel," and all the letters are capitalized and in a light and whimsical *serif* font. (Bates Number AI000007, attached as Exhibit 20.) The Plaintiff "R" loops under the mark in a calligraphy-like, reverse-swoop. (Id.) Plaintiff's marks are also usually accompanied by either (i) a sketched turtle holding a trophy, much like a turtle one would see as a character in a children's fable, or (ii) a realistic tortoise, and who is directly facing its viewer. (*Id.*)

### E. Other Firms use Ariel, Including in Financial Services

62. Ariel Wealth Advisors is a firm, established in 2010, located in New Jersey in the financial services industry that offers investment advice and execution, cash flow planning for today and tomorrow, family asset protection, estate and wealth transfer strategies, and tax planning. (Exhibit 24 to Ariel Investments LLC's Rule 30(b)(6) Deposition, attached as Exhibit 24.)

██ ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

64. Over fifty other companies in Illinois use "Ariel" as the first word of their company name. (Exhibit 22 to Ariel Investments LLC's Rule 30(b)(6) Deposition, attached as Exhibit 28.)

65. Over one hundred and fifty other companies use "Ariel" in their name, including in the financial services industry. (Exhibit 25 to Ariel Investments LLC's Rule 30(b)(6) Deposition, attached as Exhibit 29.)

Dated: November 4, 2016                    RESPECTFULLY SUBMITTED,


By: /s/ Brian T. Noack
Adam Wolek
Brian T. Noack
Wolek & Noack
333 S. Wabash Ave.
Suite 2700
Chicago, IL  60604
P: 312.860.9006
F: 708.843.0509
adamw@wonoip.com
briann@wonoip.com
*Local Counsel for Defendant Ariel Capital Advisors, LLC*

Christopher P. Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Ste 200
Naples, FL  34109
P: 239.651.6008
F: 239.431.3914
cpbray@cpbrayassociates.com
*Lead Counsel for Defendant Ariel Capital Advisors, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on November 4, 2016, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: November 4, 2016                    WOLEK & NOACK


                                           By:  /s/ Brian T. Noack
                                           Brian T. Noack