**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case Number: 15-cv-3717 |
| ARIEL CAPITAL ADVISORS LLC, | ) | |
| | ) | Hon. Judge Matthew F. Kennelly |
| Defendant. | ) | |
| | ) | |

**Memorandum in Opposition to Plaintiff Ariel Investments'
<u>Motion for Summary Judgement</u>**

# TABLE OF CONTENTS

**I.     Plaintiff Limited its Case to Two Trademarks, One of Which is Void** ........................2

**II.    All of the Likelihood of Confusion Factors Favor ACA or Are Neutral** .....................3

     A.    Actual Confusion:  There is No Evidence of Actual Confusion and Plaintiff's "Evidence" is Insufficient as a Matter of Law ........................................................ 3

     B.    ACA's Intent: Bray named ACA after his faith and daughter, which is not bad faith intent to benefit off of Plaintiff's purported mark ................................................... 6

     C.    Similarity of Services: ACA services different markets and consumers than Plaintiff.................................................................................................................... 7

     D.    Degree of Consumer Care: Expensive investment decisions require great care and confusion is unlikely ........................................................................................... 10

     E.    Strength of the Marks: Plaintiff's marks are weak and its own customers admit the Plaintiff marks are not well-recognized ................................................................ 12

     F.    Similarity of Marks: The Marks are not the same in sound, style or impression... 13

     G.    Channels of Trade: No concurrent use exists and the parties' trade channels are different .................................................................................................................. 16

**III.   Damages Are Improper Because Plaintiff Failed to Show Nexus of Profits to Trademark Use**.........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1 (1st Cir.1993) .................................. 21

*AM Gen. Corp., v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) ...................................... 7

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............. 1

*August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir. 1995)................................................ 13

*Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350 (Fed. Cir. 2009) ............................................ 2

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868 (N.D. Ill. 1999), *aff'd,* 258

    F.3d 578 (7th Cir. 2001)........................................................................................................ 20

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041(7th Cir. 2000)........................ 7, 8, 15, 16

*Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445 (S.D.N.Y. 1982).................. 8, 10

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503 (N.D. Ill. 2011)................ 3

*Central Mfg. Co. v. Brett*, No. 04 C 3049, 2005 WL 2445898 (N.D. Ill. Sept. 30, 2005)............. 4

*Couture v. Playdom, Inc.*, 778 F.3d 1379 (Fed. Cir. 2015) ......................................................... 2

*Fishman Transducers, Inc. v. Paul*, 684 F.3d 187 (1st Cir. 2012) ............................................. 21

*Flagstar Bank, FSB v. Freestar Bank, N.A.*, 687 F.Supp.2d 811 (C.D. Ill. 2009)...................... 12

*Haven Capital v. Havens Advisors*, 965 F. Supp. 528 (S.D.N.Y. 1997) ...................................... 14

*Henri's Food Prod. Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir. 1983).......................................... 17

*Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789 (N.D. Ill. 2007)........................ 1

*Humanly Possible, Inc. v. Manpower, Inc.*, No. 11 C 4977, 2013 WL 633332 (N.D.Ill. Feb. 19,

    2013)................................................................................................................................... 13

*Knaack Mfg. v. Rally Accessories, Inc.*, 955 F. Supp. 991 (N.D. Ill. 1997) ............................ 9, 15

*Lang v. Retirement Living Pub. Co.*, 949 F.2d 576 (2d Cir. 1991)................................................ 5

*Lebewohl v. Heart Attack Grill LLC*, No. 11 CIV. 3153 PAE, 2012 WL 3839379 (S.D.N.Y. Sept. 5, 2012) ............................................................................................................... 20

*Lincoln Fin. Advisors Corp. v. Sagepoint Fin. Inc.*, No. 109-CV-15RM, 2009 WL 928993 (N.D. Ind. Apr. 2, 2009) ..................................................................................................... 11

*Maxim's Ltd. v. Badonsky*, 772 F.2d 388 (7th Cir. 1988) ............................................................. 12

*Omicron Capital LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382 (S.D.N.Y. 2006) ...... 10, 20

*Packman v. Chi. Tribune Co.*, 267 F.3d 628 (7th Cir. 2001)............................................ 3, 4, 7, 16

*Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722 (7th Cir. 1998)......... 2

*Romag Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782 (Fed. Cir. 2016)......................................... 21

*Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210 (7th Cir. 1997) ......................... 11

*Smith Fiberglass Prod., Inc. v. Ameron, Inc.*, 7 F.3d 1327 (7th Cir. 1993)........................ 4, 6, 19

*Sullivan v. CBS Corp.*, 385 F.3d 772 (7th Cir. 2004) ................................................................... 8

*Syndicate Sales v. Hampshire Paper Corp.*, 192 F.3d 633 (7th Cir. 1999)............................. 3, 13

*Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213 (7th Cir. 1978) .................................................. 15

*TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997)..………………………12

Plaintiff Ariel Investments, LLC's ("Plaintiff[1]") Partial Motion for Summary Judgment should be denied because of the two trademarks that are at stake in this case, one is invalid, and neither are likely to cause confusion with consumers. Plaintiff has presented no relevant or admissible instances of confusion, and the likelihood of confusion factors all favor Defendant Ariel Capital Advisors LLC ("ACA[2]").

In short, the ARIEL trademark is void, and there is no confusion between ARIEL, ARIEL INVESTMENTS, and Ariel Capital Advisors.

## LEGAL STANDARD

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is only appropriate when all admissible evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 792 (N.D. Ill. 2007) (J. Kennelly).

## ARGUMENT

Plaintiff can only assert its "ARIEL" and "ARIEL INVESTMENTS" trademarks in this suit, the former of which is invalid. There is nevertheless no infringement of any mark because no consumers have been confused between the marks, and no consumers are likely to be confused. To recover under a trademark infringement claim, "the plaintiff must demonstrate: (1) the validity of its trademark; and (2) the infringement of that mark." *Platinum Home Mortg. Corp. v. Platinum*

---

[1] ACA departs from Ariel Investments, LLC's use of "Ariel" to refer to itself, and instead uses "Plaintiff" or "Ariel Investments." Plaintiff only refers to itself as "Ariel Investments" or by the turtle logo in commerce, so its use of "Ariel" risks obfuscating the record. ACA further uses "Plaintiff" because hundreds of other companies use "Ariel" in their name, which is also a defense in this suit.

[2] Plaintiff refers to ACA throughout its Motion for Partial Summary Judgment by "*Ariel Capital*." However, ACA only uses "Ariel Capital Advisors*,*" or sometimes "ACA," in commerce.

*Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

## I.      Plaintiff Limited its Case to Two Trademarks, One of Which is Void

As a threshold matter, Plaintiff Ariel Investments LLC ("Plaintiff") has limited its suit to two trademarks, "ARIEL" and "ARIEL INVESTMENTS," and therefore cannot now pursue the other seven marks. Indeed, Plaintiff explicitly stated that "[o]nly the ARIEL and ARIEL INVESTMENTS marks are at issue in this case." Dkt. 79, at 6; *see also* Dkt. 68, at 1-2 (only addressing ARIEL and ARIEL INVESTMENTS marks). ACA relied upon Plaintiff's abandoning pursuit of the remaining marks in this suit, so it would be unfair for it to recapture what it chose to give up. *See Green v. Travis*, No. 00-cv-2230, 2000 WL 1409828, at *2 (N.D. Ill. Sept. 26, 2000) ("no court would permit" a party to reclaim a portion of a claim from their complaint after it had already disavowed that portion to the Court) (J. Kennelly).

As more fully laid out in ACA's Memorandum in Support of [its] Motion for Summary Judgment, Plaintiff admitted that its first use in commerce was, at earliest, months *after* it filed its trademark application for the ARIEL mark. (SOF 6, 8, 10.) Plaintiff filed its ARIEL trademark application with the USPTO on June 20, 1983. (SOF 6) But its first use was at earliest September 30, 1983.  Critically, trademarks must have been used in commerce at the time of the application's filing, otherwise they are void *ab initio*. 15 U.S.C. §§ 1115(a)(2) & 1115(a)(3)(c) (use required); *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (a trademark is void *ab initio* unless the mark was used "in commerce" *when* the application was filed); *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 88, 193 L. Ed. 2d 35 (2015) (the "use in commerce must be as of the application filing date" or the mark is void); *Gay Toys, Inc. v. McDonald's Corp.*, 199 USPQ 722, 723 (CCPA 1978) (because applicant did not use the mark in commerce in association with the goods at the time it filed the application, its application is void). Indeed, Plaintiff conceded in its interrogatory answers that it did not use the

mark in commerce until after it filed its application, and has presented no evidence to the contrary. (SOF 8.) Accordingly, Plaintiff's ARIEL trademark is void, should be cancelled, and is unenforceable. And because Plaintiff did not show or provide any evidence that it used the "ARIEL" mark in commerce prior to ACA's use in Naples, Florida or Cleveland, Ohio, it does not have priority of use of the name "Ariel" for any financial services companies in those areas.

## II.    All of the Likelihood of Confusion Factors[3] Favor ACA or Are Neutral

### A.    Actual Confusion:  There is No Evidence of Actual Confusion and Plaintiff's "Evidence" is Insufficient as a Matter of Law

Plaintiff has not shown any instances of actual confusion among consumers. Indeed, its only "evidence" is inadmissible and not credible. None of the witnesses were relevant consumers under the Lanham Act as they were not consumers of Plaintiff's products or ACA's services. And the *unnamed* callers are inadmissible hearsay, and still *de minimus* if admissible.

Only consumers who purchase or attempt to purchase the plaintiff's goods, either from plaintiff or defendant, are relevant "consumers" for the actual confusion analysis. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001) (holding plaintiff's evidence of actual confusion irrelevant where confused callers were not trying to purchase her goods); *Syndicate Sales v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999) (plaintiff's evidence of confusion was insufficient because the confusion did not occur among the *relevant* group of consumers).  Similarly, accounts of alleged confusion by unknown callers are hearsay, and vague summaries of such calls are inadmissible. *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 520 (N.D. Ill. 2011) (holding instances of confusion by unknown customers must be rejected as hearsay during summary judgment); *see also Smith Fiberglass Prod., Inc. v. Ameron,*

---

[3] The likelihood of confusion factors are: (1) similarity between marks in appearance and suggestion; (2) similarity of products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; and, (7) intent of defendant to palm off his product as that of another. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043-44 (7th Cir. 2000).

*Inc.*, 7 F.3d 1327, 1330-31 (7th Cir. 1993) (refusing to consider state of mind declarations by unknown declarants as evidence of actual confusion because they are inadmissible). Moreover, a court can infer that confusion is unlikely where actual confusion is nonexistent. *Cent. Mfg. Co. v. Brett*, No. 04 C 3049, 2005 WL 2445898, at *12 (N.D. Ill. Sept. 30, 2005) (noting "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion"). None of the instances Plaintiff cites show actual confusion.

*First*, David Boone ("Boone") is not a relevant consumer under the Lanham Act, but even if he is, his testimony is nevertheless unreliable. In fact, David Boone testified that he did not remember his call with ACA (SOF 33; FRE 403), and only recalled it after Plaintiff's counsel called him five times. (SOF 33.) He nevertheless testified that he was not shopping for investment or financial services and had no intentions of buying those services any time soon, thus he is not a relevant consumer. *Id.*; *Packman v. Chi. Trib.*, 267 F.3d at 645 (holding plaintiff's evidence of actual confusion *irrelevant* where confused callers were not trying to purchase her goods). If he indeed made the call, he states his purpose was to attempt to solicit advertisements *for his magazine*, not buy Plaintiff's products. (SOF 33.) He further testified that he barely spoke with the person in the past ten years, did not know she worked for Ariel Investments, and had not heard of Ariel Investments before. *Id.*

*Second*, Justin Land ("Land") was also not a relevant or "confused" consumer. At the onset, evidence of what Land said is inadmissible hearsay because it is a third-party statement to *another party who did not testify to this statement*, and this statement is presented to prove the truth of the matter asserted. FRE 802. Even if true, Land allegedly asked at a conference "if ACA had any affiliation with Plaintiff." (SOF 32.) Land was thus merely socializing, not *seeking* a company to invest his assets. *Id*. He is accordingly not a relevant consumer for purposes of the "actual

confusion" factor because he was not making a purchasing decision. *Packman*, 267 F.3d at 645 (only relevant consumers considered for actual confusion analysis). Furthermore, Justin Land *thought* to inquire whether there was a relationship between Plaintiff and ACA, he did not *assume* they were related. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc*., 269 F.3d 114, 124 (2d Cir. 2001) (inquiries do not constitute actual confusion as they "are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself.") (emphasis in original). This distinction is key because trademark law only protects against certain species of confusion. *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) ("trademark infringement protects only against mistaken purchasing decisions and not against confusion generally"). So at most Land was mistaken, and not confused about an intended purchase, and thus is not a relevant consumer.

*Third*, Monica Schandel was not confused. Indeed, Ms. Schandel, who is very familiar with Mr. Bray, stated that she simply misspoke in her deposition. (SOF 34.) She was no more confused between Plaintiff and ACA than a mother who calls one child by the other child's name. She further testified that she simply miscopied Plaintiff's name into her email as she was responding to an email from Plaintiff's counsel. *Id*. And lastly, Monica Schandel was responding to a subpoena when the alleged confusion occurred, not looking to invest. *Id*. So she is not a relevant consumer.

*Next*, the two purported instances of confusion reported by Ms. Brady and Ms. Cusack were from unnamed callers, so are inadmissible hearsay. (SOF 35, 36.) Without a name, phone number or proper context, these calls are nothing more than vague, uncorroborated musings of unidentified individuals, and so are inadmissible hearsay. *See Smith Fiberglass v. Ameron*, 7 F.3d at 1331 (excluding as hearsay testimony that "a gentleman" at a trade show was confused).

Moreover, in the call Ms. Cusack allegedly received, the unnamed individual notably inquired about Florida real estate. (SOF 36.) Because neither party sells real estate, it is improbable

the caller was confused between Plaintiff and ACA. *Nora Beverages, Inc. v. Perrier Grp. of Am.*, 269 F.3d 114, 124 (2d Cir. 2001) (evidence of actual confusion must be due to confusion between the asserted mark and defendant's mark). Rather, ███████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Id.* Plaintiff's account of "actual" confusion by this caller is therefore doubly unreliable because the caller is not only unidentified, but was not actually confused as to a relationship between Plaintiff and ACA, but an unrelated *third party*.

Ms. Brady's alleged call was also not a relevant consumer as the caller purported to check a reference (unrelated to Plaintiff or ACA), and not buy Plaintiff's products. (SOF 35.)

Finally, even if this Court found that Boone, Land and Schandel are relevant consumers and actually confused – which they were not – three instances of confusion are *de minimis*. *See Packman* v. *Chi. Trib.*, 267 F.3d at 645 (even if four customers had been relevant consumers, that is *de minimis* evidence of confusion). Thus, Plaintiff's evidence does not show that an appreciable number of relevant consumers are confused about the source, affiliation or sponsorship of ACA.

### B. ACA's Intent: Bray named ACA after his faith and daughter, which is not bad faith intent to benefit off Plaintiff's purported mark

Mr. Bray named Ariel Capital Advisors after his daughter, Ariel Bray, to honor Ariel Ministries, a religious mission to which his family belongs, and its biblical origin. (SOF 2.) The intent to use the biblical Ariel is further evidenced by ACA's use of the lion on its website and in advertisements, as "Ariel" translates to "lion of God." *Id.* Bray further testified that he "didn't want to take anyone else's name." (SOF 3.)

Plaintiff argues that Bray must have seen its advertising, so he in turn must have intended to use its name. Plaintiff also argues that Bray intended to use its name because he must have seen it in a google search. But even if Bray knew of Plaintiff, knowledge of another's name is not

sufficient to show intent, especially where defendant had other inspirations for its name. *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1046 (7th Cir. 2000) (finding no intent where defendant's name was inspired by a movie, even though defendant previously knew plaintiff's name and used its products). Indeed, intent in trademark law refers to the *intent to confuse consumers*, not the intent to use a mark similar to one already in use. *AM Gen. Corp., v. DaimlerChysler Corp.*, 311 F.3d 796, 829 (7th Cir. 2002) ("Passing off means fraud; it means trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off.") (internal citations omitted).

Plaintiff further argues that because its attorney asked ACA to stop using its name, that indicates ACA had intent. However, a conversation *after* ACA chose its name is irrelevant to whether Bray intended to "pass of his services" as Plaintiff's *when he chose the name* ACA.

Accordingly, ACA's name was intended to honor Bray's family and faith, not Plaintiff, so this factor weighs in favor of ACA.

### C. Similarity of Services: ACA services different markets and consumers than Plaintiff

ACA and Plaintiff operate two different business who sell to different markets: Plaintiff sells mutual funds to institutions, ACA manages finances, capital and taxes of wealthy individuals. While Plaintiff contends both parties are in the "same business," ███████████████ ███████████████████████████ When evaluating whether two companies sell similar products or services, courts consider the details of each product and whether the buying public would think they come from the same source. *See Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004) (holding that the parties' CDs were not similar because plaintiff's was in the "rock" section and defendant's was in "soundtracks"); *see also Barbecue Marx*, 235 F.3d at 1045 (differences in ambiance, style and theme weakened plaintiff's claim that the two barbecue

restaurants were similar). By extension, courts must consider whether the parties exist for distinct purposes, or sell to different markets or classes of customers. *See Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445, 449 (S.D.N.Y. 1982) (finding the parties' financial services were not proximate products because the parties appealed to different customers, sold in different markets, and existed for different purposes).

First, Plaintiff and ACA are not located in the same "section" of the financial services industry, and they do not compete for the same types or classes of customers. *Knaack Mfg. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1000 (N.D. Ill. 1997) ( "If firms do not compete directly, it is harder to show consumers are likely to be confused by similar terms"). █████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (Ex. 9, at 378:11-379:8) (bold added). ACA is a small financial advisor firm who prepares clients' taxes, estate planning, and manages capital. (SOF 11-15.) Plaintiff and ACA are thus on opposite ends of the financial services spectrum.

Second, Plaintiff ████████████████████████████████████████████

████████████████████ (SOF 19.) ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████ (SOF 18; P's Exh. J.) By analogy, Plaintiff sells off-the-rack suits, but sometimes will hem the pants.

Unlike Plaintiff, ACA <u>does not</u> sell any products. ACA instead offers its clients bespoke services tailored to each client's financial situation. (SOF 11.) Specifically, ACA manages its clients' cash flow for retirement, performs estate planning services, prepares tax returns, and minimizes tax burdens. (SOF 12-15, 23.) Plaintiff does not provide any of these services. (SOF

20-21); *Omicron Capital LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382, 391-92 (S.D.N.Y. 2006) (lack of proximity of financial services provided by the parties favors a defendant in likelihood of confusion); *see Haven Capital Mgmt. v. Havens Advisors, LLC*, 965 F. Supp. 528, 531-32 (S.D.N.Y. 1997) (finding that a company that provides investment advice and managed funds, and a company that provides advice and money management services, are not in competition because the services that the parties render to their investors are significantly different); *see also Knaack v. Rally*, 955 F. Supp. at 991 (rejecting calling both plaintiff's and defendant's products "motor vehicle accessories" as sufficient to show a similarity of products, especially where purchasers do not see a commonality). So while Plaintiff sells off-the-rack suits, ACA is like a personal shopper that picks clothes specifically tailored for each person's body and taste.

Notably, Plaintiff has coexisted with ***Ariel Wealth Advisors***, a financial advisor who has used Ariel in its name for six years without any confusion. (SOF 37.) Like ACA, ***Ariel Wealth Advisors*** also offers investment advice, cash flow planning, family asset protection, estate and wealth transfer strategies, and tax planning. *Id*. Just as Plaintiff does not view Ariel Wealth Advisors' financial planning services as competing or likely to cause confusion, Ariel Capital Advisors' financial planning services also are not competing or causing any consumer confusion.

Plaintiff's and ACA's services additionally are sold to different markets and classes of purchasers. Indeed, in the financial services industry, differences in the types of customers and transaction sizes is strong evidence of difference in the parties' respective markets. *See Beneficial v. Beneficial Capital*, 529 F. Supp. at 449 (finding that the plaintiffs who made small, $1500 loans to individual consumers served an *entirely different market* than defendant who made large, $50,000 business loans). Here, Plaintiff only requires clients to invest $50 per month, or $1000

9

total. (SOF 29.) ACA, on the other hand, requires an initial investment of $1,000,000. (SOF 23.)

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ ACA's customers are often worth $5-$20 million

dollars. (SOF 23, 27.) Funds placed with ACA are also locked-in for at least 30 days, ████████

████████████████████████████████████████████████ SOF 26, 29); *see Haven*

*Capital v. Havens Advisors*, 965 F. Supp. at 531 (finding little likelihood of confusion where funds

invested in plaintiff's mutual funds are readily liquid, but funds in defendant's services were tied

up for longer periods).

Because ACA's personalized, intimate services differ vastly from Plaintiff's products, and

because ACA serves different markets and classes of consumers, this factor favors ACA.

### D. Degree of Consumer Care: Expensive investment decisions require great care and confusion is unlikely

Confusion is less likely where consumers are deliberative buyers, and consumers are

especially deliberate and less likely to be confused when deciding where to invest their money.

*Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997) ("[W]here

consumers are sophisticated, deliberative buyers, confusion is less likely."); *see also Lincoln Fin.

Advisors Corp. v. Sagepoint Fin. Inc.*, No. 109-CV-15RM, 2009 WL 928993 at *7 (N.D. Ind. Apr.

2, 2009) ("One would expect that individuals and businesses seeking to invest their money would

have a higher sophistication level and would exercise greater care in selecting a service.").

Moreover, when a customer is required to submit to financial questioning before opening an

account, as ACA's clients are, courts have held customers exercise a high degree of care. (SOF

23, 27); *see Flagstar Bank, FSB v. Freestar Bank, N.A.*, 687 F.Supp.2d 811, 831 (C.D. Ill. 2009)

(a higher degree of care is seen for complex and intrusive banking transactions). Plaintiff's and

ACA's services are thus the sort that reflect a high degree of care, so confusion is unlikely.

Additionally, the $1,000,000 amount required by ACA for its personalized services is high, which further weighs against confusion. (SOF 23); *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir. 1988) ("where the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be."). In the financial services industry particularly, those who invest $100,000 or more show greater care in selecting financial services. *See Haven Capital v. Havens Advisors*, 965 F. Supp. at 534 (finding sophistication of buyers weighed in defendant's favor where defendant's clients made $1,000,000 investments initially and when the smallest amount defendant accepted was $100,000)[4]. In other words, consumers are careful and would likely investigate a firm prior to moving lots of money, so consequently their confusion is unlikely.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *See*

*Humanly Possible, Inc. v. Manpower, Inc.*, No. 11 C 4977, 2013 WL 633332, at *6 (N.D.Ill. Feb. 19, 2013) (holding that confusion is less likely to occur when customers are sophisticated business customers, like corporations, governmental entities, and small businesses); *Franklin Res., Inc. v. Franklin Credit Mgmt. Corp.*, 988 F. Supp. 322, 330 (2nd Cir. 1997) ("It is hard to imagine a more sophisticated, street-wise, savvy buyer…than professional broker-dealers").

Plaintiff argues that potential customers "could easily conclude that [ACA] is an affiliate of [Plaintiff]," but that is unconvincing because each ACA client came through direct referrals, and thus already knew of ACA and its services. (SOF 24.) It further ignores that potential

---

[4] Plaintiff noted that certain of ACA's individual accounts were over $312,000. These accounts are generally part of multi-million dollar family portfolios, so are still associated with an even higher degree of consumer care. (SOF 23.) But regardless, even $312,000 accounts supports a high degree of care.

customers investigate services prior to giving them money. *See Syndicate Sale v. Hampshire Paper*, 192 F.3d at 638 (holding that any initial interest confusion was dispelled where consumers were sophisticated). Besides, infringement requires more than a possibility of confusion. *See August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) (holding the possibility of confusion is not sufficient for infringement). Therefore, Plaintiff's argument that someone might be dissuaded by something seen in an advertisement is not enough.

### E.  Strength of the Marks: Plaintiff's marks are weak and its own customers view Plaintiff's marks as not well-recognized

Plaintiff's marks are not strong because over 150 companies use "Ariel" in their name, including companies in the financial services industry. (SOF 40.) Indeed, companies like "Ariel Investment Properties, LLC," "Ariel Inc.," and "Ariel Wealth Advisors" all use "Ariel" without confusion or protest from Plaintiff. (SOF 37-39); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (lack of enforcement against others "may deprive [a mark owner] of any remedy for infringing uses by others"). In the financial services industry in particular, a mark is considered weak where other investment services companies with the same name offer investment services. *See Haven Capital v. Havens Advisors*, 965 F. Supp. at 531 (calling plaintiff's mark weak where other investment advisory services used the name of "Haven").

Notably, the financial planning firm ***Ariel Wealth Advisors*** has existed for over six years with Plaintiff's knowledge and without any confusion between it and Plaintiff. (SOF 37.) The existence of this other financial firm therefore narrows the scope of protection Plaintiff is entitled to claim. *Top Tobacco, L.P. v. N. Atl. Operating Co.*, No. 06 C 950, 2007 WL 118527, at *1 (N.D. Ill. Jan. 4, 2007) *aff'd*, 509 F.3d 380 (7th Cir. 2007) (the existence of other marks that incorporate the same term as plaintiff, especially in the same class of goods, demonstrates "that the scope of protection that should be afforded to these marks is *extremely* narrow.") (emphasis in original).

Furthermore, "Ariel Investment Properties," an unrelated company, has existed since 2007 without any attempt by Plaintiff to stop it. (SOF 38.) Indeed, there are over a 150 companies who use "Ariel" in their name. (SOF 40.) Because over a hundred companies share this name, including those in the financial services industry, this is not a strong mark.

Second, Plaintiff does not have brand recognition for its "Ariel" mark among consumers. *See Haven Capital*, 965 F. Supp. at 531 (finding a weak mark where customers associated the plaintiff with its low cost and style of investment rather than its name). Indeed,



*See Knaack v. Rally*, 955 F.Supp. at 1001-02 (holding that statements by plaintiff's executives that its mark had been used for 25 years, and that the company had spent millions in advertising, were *insufficient* to show that the mark had gained brand recognition). In other words,

### F. Similarity of Marks: The Marks are not the same in sound, style or impression

Plaintiff's and ACA's marks have different visual, suggested and general impressions in the marketplace. *See Barbecue Marx v. 551 Ogden*, 235 F.3d at 1044 (finding SMOKE DADDY and BONE DADDY marks distinct based on their surrounding elements). Here, Plaintiff's marks are surrounded by elements that consumers recognize more than "Ariel," and that give it a holistic commercial impression. (SOF 28); *Packman v. Chi. Trib.*, 267 F.3d at 643 (when determining

similarity between marks, the comparison is made in light of what happens in the marketplace); *see Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978) (holding confusion unlikely between "Telemed" and "Tel-Med" because the public distinguishes the marks because of their slight differences and the goods to which they are applied, even though the goods may be considered "related"). For example, ACA's mark always incorporates the wording "Capital Advisors" immediately following Ariel, and ACA is always presented as "Ariel Capital Advisors." (SOF 30.) None of the Plaintiff marks contain "Capital Advisors." (SOF 31.) Rather, "Investments" always follows Ariel in all its advertisements.

Moreover, the two logo's presentations also differ visually in fonts, capitalization, layout, coloring and design elements. These distinctions significantly alter the general impression conveyed by each mark. *See Lincoln Fin. v. Sagepoint*, 2009 WL 928993, at *7 (discussing that customers quickly distinguish logos based on differences in color, layout, design, font and capitalization elements); *see also Barbecue Marx*, 235 F.3d at 1044 (despite the marks "SMOKE DADDY" and "BONE DADDY" "sound[ing] alike" and "evok[ing] similar imagery," the marks' "visually distinct" appearance "significantly undercuts" the plaintiff's claim that they are similar in appearance and suggestion); *see also Packman*, 267 F.3d at 644 ("Different packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion."). For instance, ACA's mark always features a white, male lion's head enclosed in a royal blue shield, which signifies safety and protection. (SOF 30.) To the right of ACA's lion and shield in a *sans-serif* font, are the words "Ariel Capital Advisors, LLC," with only the "A" in Ariel, "C" in Capital and "A" in Advisors capitalized, the rest are in lowercase. *Id.*

In contrast, Plaintiff's marks appear as "ARIEL INVESTMENTS" (never simply "Ariel"), and the letters are all capitalized, and are presented in a lighter and whimsical *serif* font. The

14

ARIEL INVESTMENTS "R" notably also loops under the mark in a calligraphy-like reverse-swoop. (SOF 31.) Plaintiff's marks are also typically accompanied by a sketched, fable-like turtle holding a trophy[5], which suggests "patience wins." *Id*.

| Plaintiff | ACA |
|-----------|-----|
|  |  |

In total, the marks convey distinct impressions, and consumers easily distinguish the two marks in their minds and in the marketplace.

Similarly, Plaintiff's mutual fund marks also differ visually and by suggestion from ACA's mark. First, Ariel Appreciation Fund, Ariel Discovery Fund, Ariel Fund, Ariel International Fund and Ariel Global Fund all suggest the marks are for products and specifically evoke images of large funds. The Ariel's ABCs of Money mark suggests financial information or pamphlets. By contrast, the "Advisors" in ACA's mark invokes people providing financial services, like CPAs, not a product. Second, Plaintiff's mutual fund marks are not stylized, but are presented in the same font used everywhere else on Plaintiff's website, therefore no similarity exists between these marks and the visual appearance of ACA's mark and lion logo, which always appear together. *See Henri's Food Prod. Co. v. Kraft, Inc.*, 717 F.2d 352, 355 (7th Cir. 1983) (an examination of marks looks for similarity of sight and meaning). Because the parties' consumers also proceed with greater care than buying typical product, they are even more likely to differentiate between these marks.

Lastly, Plaintiff ostensibly conceded that a more similar mark for "Ariel Wealth Advisors"

---

[5] Plaintiff's mark is also sometimes presented with a photographic turtle that faces the viewer.

does not pose a likelihood of confusion. Like Plaintiff's mark, ARIEL WEALTH ADVISORS also is displayed in all capitals. (SOF 37.) And also like Plaintiff, Ariel Wealth Advisors uses a light, *serif* font. Ariel Wealth Advisor's "R" also extends partially under its name. *Id.* Notably, the Ariel Wealth Advisors mascot is a lion, like ACA's, but Ariel Wealth Advisor's lion is lightly sketched like the Plaintiff turtle, not bold or dominant like ACA's lion. *Id.*

| Plaintiff | Ariel Wealth Advisors | ACA |
|---|---|---|
|  |  |  |

To be sure, Ariel Wealth Advisor's marks are closer to Plaintiff's, yet Plaintiff permitted Ariel Wealth Advisors to use its mark as the two are not similar enough to confuse consumers.

### G. Channels of Trade: No concurrent use exists and the parties' trade channels are different

ACA and Plaintiff do not compete in services, clients, or manner of sale. *See Smith Fiberglass v. Ameron*, 7 F.3d at 1330 (the primary consideration for this factor is whether the parties directly compete). First, Plaintiff and ACA appeal to different markets because while ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ACA's clients are families and individuals. (SOF 22, 23, 27.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF 29.) ACA requires at least $1,000,000 in liquid assets. (SOF 23.) ACA and Plaintiff thus are not "targeting the same general audience," or pulling from the same pool of investors.

Second, ACA gets all its clients from referrals, and each client is required to meet in-person prior to in-take. (SOF 24). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF 27, 29.) ACA and Plaintiff also have never advertised in the same places. (SOF 25.) Indeed, ACA has

only advertised a few times in a local Naples newspaper and in a radio ad.[6] *Id.*

██████████████████████████████████████████████

██████████████████████████████████████████████

(SOF 20); *see Omicron*, 433 F. Supp. 2d at 395 (where a party has "no concrete plans to expand…any assessment as to the likelihood of confusion presented by future expansion would be unacceptably conjectural"). Plaintiff's argument on this point is thus mere conjecture and must be ignored. In the end, ACA and Plaintiff do not advertise using the same mass-media channels, nor do they appeal to the same markets or individual customers. Accordingly, this factor favors ACA.

## III. Damages Are Improper As Plaintiff Failed to Show Nexus of Profits to Trademark Use

Plaintiff's argument that it is entitled to ACA's profits is not based on any admissible facts or any reliable metric. Plaintiff's sole "evidence" of ACA's profits is from a deposition answer taken out of context. Plaintiff did not ask ACA to prepare for that topic in its Notice of 30(b)(6) Topics. (Ex. 30.) Indeed, when asked about this topic, ACA's witness stated that he was only guessing. (*See* Response to Plaintiff's SOF at 78.) Thus, Plaintiff's determination of ACA's profits are at best speculation, and unreliable. Nor did Plaintiff ask for ACA's profits in any of its interrogatories, or provide a damages disclosure in its Rule 26(a) Disclosures.

And critically, Plaintiff failed to show a nexus between ACA's alleged use of the trademark and the profit it allegedly derived from that use. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868, 873 & FN3 (N.D. Ill. 1999), *aff'd,* 258 F.3d 578 (7th Cir. 2001) (for Lanham Act claims, "[c]ourts award disgorgement in limited situations, primarily when a defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff."). Nor did it show that ACA used the mark with intent to profit from it. *Romag*

---

[6] ACA also had advertised once in Cleveland Crain's Business. (SOF 25.)

*Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782, 791 (Fed. Cir. 2016) (willfulness required "for the recovery of profits in infringement cases."). Finally, Plaintiff failed to present an expert report or testimony linking ACA's alleged use with the profits it gained.

Rather, ACA showed that all its customers were referrals from ACA's clients or employees. (SOF 24.) Thus, ACA gained its clients, and thus its revenue, from its relationships, rather than purported confusion with Plaintiff.

For the reasons stated above, Plaintiff's motion for partial summary judgment should be denied.

Dated:  November 4, 2016                  RESPECTFULLY SUBMITTED,


                  By:   s/Adam Wolek                
                  Adam Wolek
                  Brian Noack
                  WOLEK & NOACK
                  333 S Wabash Ave., Suite 2700
                  Chicago, IL 60604
                  P: 312.860.9006
                  F: 708.843.0509
                  *Local Counsel for Defendant Ariel Capital*
                  *Advisors LLC*


                  Christopher P. Bray
                  Christopher P. Bray Associates, LLC
                  9115 Corsea Del Fontana Way, Ste. 200
                  Naples, FL 34109
                  P: 239.651.6008
                  F: 239.431.3914
                  cpbray@cpbrayassociates.com
                  *Lead Counsel for Defendant Ariel Capital*
                  *Advisors LLC*

19

## CERTIFICATE OF SERVICE

The undersigned certifies that, on November 4, 2016, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: November 4, 2016                    WOLEK & NOACK


                                           By: s/ Adam Wolek
                                           Adam Wolek

20