**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**Plaintiff/Counter-Defendant Ariel's Combined Reply in Support of Its**
**Motion for Partial Summary Judgment and Opposition to**
**Defendant/Counter-Plaintiff Ariel Capital's Motion for Summary Judgment**

Arthur Gollwitzer III (6225038)
   agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
   lwdemarte@michaelbest.com
Larry L. Saret (2459337)
   llsaret@michaelbest.com
Zachary J. Watters (6310675)
   zjwatters@michaelbest.com

Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601

*Attorneys for Plaintiff Ariel Investments, LLC*

**Table of Contents**

**Argument** ...................................................................................................... 1

**I.** This Court Should Enter Summary Judgment in Ariel's Favor on Its Claims
under Sections 32 and 43 of the Lanham Act. ................................................. 1

    A. The ARIEL Marks Are Registered, Incontestable, and Properly At
Issue. ........................................................................................................ 1

    B. Ariel Capital's Use of "Ariel" Continues to Create a Likelihood of
Confusion. ................................................................................................ 3

        1. The Marks Are Similar Because "Ariel" Is the Salient Feature
of the Parties' Marks. ...................................................................... 3

        2. The Parties Sell Similar Products and Services to Similar
Customers in the Same Manner and Areas. ...................................... 7

            a. Services Must be Related Not Identical. .................................. 8

            b. Ariel Mischaracterizes the Undisputed Facts. ...................... 10

        3. There Is Strong Evidence of Actual Confusion. ........................... 12

        4. The ARIEL Marks Are Strong ....................................................... 17

        5. Ariel Acted Intentionally. ............................................................. 20

        6. The Degree of Care Likely To Be Exercised by Clients
Fails To Diminish the Likelihood of Confusion. ........................... 21

    C. Ariel Is Entitled to Ariel Capital's Profits. ........................................... 22

**II.** This Court Should Deny Ariel Capital's Motion for Summary Judgment ..................... 23

    A. Ariel Capital's Fraud Defense Has No Bearing on Ariel's Section
43 Claim or Eight of the Nine ARIEL Marks. ....................................... 23

    B. Ariel Capital Fails to Meet Its Burden of Proving Fraud ...................... 24

        1. Ariel Capital Erroneously Places the Burden of Proof on Ariel. ............ 24

        2. Ariel Undisputedly Used the ARIEL Marks. ......................................... 25

        3. Ariel Capital Fails to Demonstrate Materiality or Intent to
Deceive……………………………………………………………...27

**III.** Ariel Capital's Remaining Evidentiary Objections Are Misplaced ................................ 29

**Conclusion** .......................................................................................................... 29

i

## Table of Authorities

**Page(s)**

CASES

*Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*,
2013 U.S. Dist. LEXIS 180912 (N.D. Ill. Dec. 27, 2013) .......................................4, 16, 20, 21

*Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors*,
2014 U.S. Dist. LEXIS 163294 (N.D. Ill. Nov. 21, 2014) .......................................8

*Armco, Inc. v. Armco Burglar Alarm Co.*,
693 F.2d 1155 (5th Cir. 1982) .......................................15

*AT&T Corp. v. Synet, Inc.*,
1997 U.S. Dist. LEXIS 1954 (N.D. Ill. Feb. 11, 1997) .......................................4, 17

*Autozone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) .......................................8

*Avent Am., Inc. v. Playtex Prods., Inc.*,
68 F. Supp. 2d 920 (N.D. Ill 1999) .......................................14, 22

*Aycock Eng'g, Inc. v. Airflite, Inc.*,
560 F.3d 1350 (Fed. Cir. 2009) .......................................27

*Badger Meter, Inc. v. Grinnell Corp.*,
12 F.3d 1145 (7th Cir. 1994) .......................................24

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
235 F.3d 1041 (7th Cir. 2000) .......................................9

*Beneficial Corp. v. Beneficial Capital Corp.*,
529 F. Supp. 445 (S.D.N.Y. 1982) .......................................9

*Burlington N. Santa Fe Corp. v. Purdy*,
1999 U.S. App. LEXIS 34998 (5th Cir. Dec. 7, 1999) .......................................27

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
267 F.3d 660 (7th Cir. 2001) ....................................... *passim*

*Conn. Cmty. Bank, Nat'l Assn. v. Bank of Greenwich*,
2008 U.S. Dist. LEXIS 9726 (D. Conn. Feb. 11, 2008) .......................................16

*Corp. of Am. v. Pony Express Delivery Serv.*,
872 F.2d 317 (9th Cir. 1989) .......................................28

*Dreyfus Fund, Inc. v. Royal Bank of Canada*,
    525 F. Supp. 1108 (S.D.N.Y. 1981)...................................................................8

*Eco Mfg. LLC v. Honeywell Int'l, Inc.*,
    295 F. Supp. 2d 854 (S.D. Ind. 2003) ......................................................24, 29

*Fly v. Dollar Park & Fly*,
    469 U.S. 189 (1985)...................................................................................28

*Fort James Corp. v. Kimberly-Clark Tissue Co.*,
    1999 U.S. Dist. LEXIS 16321 (N.D. Ill Oct. 8 1999)..............................19

*Fujisawa Pharm. Co. v. Kapoor*,
    165 F.R.D. 79 (N.D. Ill. 1996)....................................................................2

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
    111 F.3d 993 (2d Cir. 1997)......................................................................15

*Green v. Travis*,
    2000 WL 1409828 (N.D. Ill. Sept. 26, 2000) ...........................................3

*Haven Capital Mgmt. v. Havens Advisors. L.L.C.*,
    965 F. Supp. 528 (S.D.N.Y. 1997).........................................................9, 11

*Henri's Food Prods. Co. v. Kraft, Inc.*,
    717 F.2d 352 (7th Cir. 1983) ......................................................................7

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079 (7th Cir. 1988) .......................................................... *passim*

*Knaack Mfg. Co. v. Rally Accessories, Inc.*,
    955 F. Supp. 991 (N.D. Ill. 1997) .....................................................8, 10, 11

*KOS Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)......................................................................17

*Kroger Co. v. Superx, Inc.*,
    1976 U.S. Dist. LEXIS 13019 (E.D. Pa. Sept. 28, 1976) .......................15

*Lexington Mgmt. Corp v. Lexington Capital Partners*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998)......................................8, 9, 19, 24

*Lincoln Fin. Advisors Corp. v. SagePoint Fin., Inc.*,
    2009 U.S. Dist. LEXIS 28142 (N.D. Ind. Apr. 2, 2009) ...........................6

*McGraw-Edison Co. v. Walt Disney Prods.*,
    787 F.2d 1163 (7th Cir. 1986) ...................................................................17

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*,
    128 F.3d 1111 (7th Cir. 1997) ..................................................3, 5

*Metro. Life Ins. Co. v. Metro. Ins. Co.*,
    277 F.2d 896 (7th Cir. 1960) ...........................................................19

*Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*,
    576 F. Supp. 2d 868 (N.D. Ill. 2008) ...........................................25, 28

*Money Store v. Harriscorp Fin., Inc.*,
    689 F.2d 666 (7th Cir. 1982) ...........................................................25

*Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*,
    182 F.3d 133 (2d Cir. 1999)...........................................................5, 16

*Munters Corp. v. Matsui Am., Inc.*,
    909 F.2d 250 (7th Cir. 1990) ............................................................2

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*,
    2015 U.S. Dist. LEXIS 74700 (N.D. Ill. June 10, 2015) ...........................8

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    269 F.3d 114 (2d Cir. 2001)...........................................................15, 17

*Omicron Capital, LLC v. Omicron Capital, LLC*,
    433 F. Supp. 2d 382 (S.D.N.Y. 2006)...............................................11

*Piper Aircraft Corp v. Wag-Aero, Inc.*,
    741 F.2d 925 (7th Cir. 1984) .........................................................13, 15

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*,
    80 F. Supp. 2d 815 (N.D. Ill. 1999) ...................................................9

*Prudential Ins. Co. of Am. v. Prudential Title Co.*,
    1976 U.S. Dist. LEXIS 16798 (S.D. Tex. Feb. 6, 1976) ...........................15

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ..........................................................14

*Road Dawgs Motorcycle Club of U.S., Inc. v. "Cuse" Rd. Dawgs, Inc.*,
    679 F. Supp. 2d 259 (N.D.N.Y. 2009)................................................13

*Roulo v. Russ Berrie & Co.*,
    886 F.2d 931 (7th Cir. 1989) ...........................................................23

*Santucci Constr. Co. v. Santucci, Inc.*,
    1978 U.S. Dist. LEXIS 14939 (N.D. Ill. Oct. 16, 1978)............................14

*Sara Lee Corp v. Kraft Foods, Inc.*,
   276 F.R.D. 500 (N.D. Ill. 2011) ........................................................15

*Slep-Tone Entm't Corp. v. Coyne*,
   2015 U.S. Dist. LEXIS 1683 (N.D. Ill. Jan. 8, 2015) ...........................28

*Specialized Seating, Inc. v. Greenwich Indus., L.P.*,
   616 F.3d 722 (7th Cir. 2010) ...........................................................24

*Steinway & Sons v. Robert Demars & Friends*,
   1981 U.S. Dist. LEXIS 15169 (C.D. Cal. Jan. 28, 1981) .....................15

*Stone Lion Capital Partners, L.P. v. Lion Capital LLP*,
   746 F.3d 1317 (Fed. Cir. 2014)...........................................................5

*Sullivan v. CBS Corp.*,
   385 F.3d 772 (7th Cir. 2004) .............................................................9

*Susan's, Inc. v. Thomas*,
   1993 U.S. Dist. LEXIS 4793 (D. Kan. Mar. 19, 1993)..........................15

*Telemed Corp v. Tel-Med, Inc.*,
   588 F.2d 213 (7th Cir. 1978) .............................................................7

*Thomas Indus., Inc. v. L.E. Mason Co.*,
   1991 U.S. Dist. LEXIS 6491 (N.D. Ill. May 12, 1991) ....................25, 28

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
   350 F.2d 609 (7th Cir. 1965) ...................................................17, 18, 19

*Top Tobacco, L.P. v. N. Atl. Operating Co.*,
   2007 U.S. Dist. LEXIS 2838 (N.D. Ill. Jan. 4, 2007) ......................19, 20

*Ty, Inc. v. Jones Grp., Inc.*,
   237 F.3d 891 (7th Cir. 2001) .............................................................6

*Virgin Enters, Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003)...............................................................16

*Wells Fargo & Co. v. Wells Fargo Constr. Co.*,
   619 F. Supp. 710 (D. Ariz. 1985) .......................................................16

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb*,
   698 F.2d 862 (7th Cir. 1983) .............................................................17

## STATUTES AND RULES

15 U.S.C. § 1114(1) ..............................................................................1

15 U.S.C. § 1115(b) ........................................................................................2, 28

15 U.S.C. § 1115(b)(1) ..........................................................................................29

15 U.S.C. § 1125(d) ...............................................................................................29

15 U.S.C. § 1117(a) ...............................................................................................23

15 U.S.C. § 1127 ....................................................................................................27

Fed. R. Evid.602 ...................................................................................................19

Fed. R. Evid.602 ...................................................................................................18

Fed. R. Evid.802 ..............................................................................................18, 19

Fed. R. Evid.901 ..............................................................................................18, 19

Fed. R. Civ. P. 30(b)(6) ..................................................................................... *passim*

**OTHER AUTHORITIES**

McCarthy, Trademarks and Unfair Competition § 31:68 ............................................25

The briefing reveals agreement on at least one issue: this case can be resolved on summary judgment. As for the merits, the parties' names alone reveal the proper outcome. Mr. Bray's decision to use the word "Ariel" over 30 years after plaintiff Ariel began using the word mark ARIEL presents a clear case of infringement under Lanham Act Sections 32 and 43.

To avoid summary judgment, Ariel Capital asserts a contrived fraud defense and misplaced arguments regarding confusion that do not tip the scales in its favor. Ariel Capital's fraud defense relies on immaterial or unsupported facts, with no evidence of requisite mal intent, and assumes erroneously that the date Ariel first offered a fund is tantamount to first commercial use of the word mark ARIEL. In any event, although this fraud defense is fatally flawed, it impacts only one of nine registered marks at issue and only Ariel's claim under Section 32 with respect to that one mark. As for confusion, Ariel Capital relies on narrow distinctions unsupported by law, ignoring that both companies offer sophisticated investment management services to a wide range of investors. Moreover, Ariel Capital's protests do not change the fact that Ariel has presented evidence of actual confusion – a significant factor when assessing likelihood of confusion, especially where, as here, the defendant has only been in business for less than three years.

Therefore, as demonstrated below and in Ariel's opening submission, the Court should grant Ariel's motion for partial summary judgment and deny Ariel Capital's cross-motion.

### *Argument*

I.   **This Court Should Enter Summary Judgment in Ariel's Favor on Its Claims under Sections 32 and 43 of the Lanham Act.**

   A.   **The ARIEL Marks Are Registered, Incontestable, and Properly at Issue.**

There are no genuine issues of fact regarding the first element of Ariel's infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1): it owns registered service

marks.  *See Munters Corp. v. Matsui Am., Inc.*, 909 F.2d 250, 252 (7th Cir. 1990).  Ariel Capital

does not – and cannot – dispute that Ariel federally registered each of the marks using the term

ARIEL and asserted by Ariel in this case (the "ARIEL Marks"), or that those marks are all in full

force and effect on the Trademark Office's Principal Register.  (SOF ¶ 11.)  Moreover, Ariel's

registrations for ARIEL, ARIEL INVESTMENTS, and three additional ARIEL Marks have

become incontestable and constitute conclusive evidence that those marks are valid, owned by

Ariel, and that Ariel has the exclusive right to use such marks.  15 U.S.C. § 1115(b).

Ariel Capital, however, contends that Ariel "has limited its suit to two trademarks,

'ARIEL' and 'ARIEL INVESTMENTS,' and therefore cannot pursue the other seven marks."

(Dkt. 131 at 2; Dkt. 129 at 5.)  According to Ariel Capital, Ariel disavowed pursuing the other

seven marks in its response to a discovery motion (Dkt. 79) and its motion to dismiss Ariel

Capital's counterclaims (Dkt. 68).  But this argument is baseless, taking statements out of

context and construing them as disavowal of seven valid marks in this case.  Ariel's statement

that only the ARIEL and ARIEL INVESTMENTS **marks** are at issue was made in the context of

opposing Ariel Capital's demand for irrelevant discovery relating to Ariel's use of **animal**

**illustrations**.  (*See* Dkt. 79 at 6.)  Ariel's point was that use of gazelles and turtles is irrelevant

because those images are not marks at issue, and it named only two of the asserted marks as

descriptive shorthand.  As for the motion to dismiss the counterclaims, Ariel simply referenced

these marks as part of its summary background of the case.  (Dkt. 68 at 2.)  Ariel has never

disavowed pursuing the other seven marks in this case.  *See, e.g.*, *Fujisawa Pharm. Co. v.*

*Kapoor*, 165 F.R.D. 79, 80 (N.D. Ill. 1996) (denying motion to amend complaint to add claim

that plaintiffs had "expressly" disavowed in opposing an earlier motion).

Ariel Capital also claims that it "relied upon [Ariel's] disavowal of the other seven trademarks in this suit, so it would be unfair for it to recapture what it gave up." (Dkt. 131 at 2; Dkt. 129 at 5-6 (citing *Green v. Travis*, 2000 WL 1409828, at *2 (N.D. Ill. Sept. 26, 2000)). But Ariel Capital does not explain or substantiate how it relied upon this so-called disavowal or why asserting all of the marks at issue is unfair. Indeed, Ariel Capital did not rely on any purported disavowal of the other marks when it served its Rule 30(b)(6) Deposition Notice expressly including all of the "ARIEL Marks" *after* the supposed disavowal. (Additional SOF ¶ 1.)

Finally, Ariel Capital's reliance on the *Green* decision is misplaced. In *Green*, this Court rejected a litigant's attempt to avoid remand to state court based on a cause of action that it expressly and repeatedly told the Court it was no longer pursuing. 2000 WL 1409828, at *2. Ariel did no such thing.

### B. Ariel Capital's Use of "Ariel" Continues to Create a Likelihood of Confusion.

#### 1. The Marks Are Similar Because "Ariel" Is the Salient Feature of the Parties' Marks.

Ariel Capital does not contest the fact that the salient or dominant feature of the ARIEL Marks and the name "Ariel Capital Advisors" *is the word "Ariel."* To review, Ariel owns nine federally registered service marks containing the term "ARIEL." (SOF ¶ 11.) Registration No. 1,286,420 for ARIEL is not limited to any particular font or arrangement. (SOF ¶ 11, Ex. L.) Today, both Ariel and Ariel Capital are using "Ariel" as the first word in their service marks and company names. (SOF ¶ 34.) This fact alone makes the parties' marks similar.

Ariel Capital's mark also is audibly similar to the ARIEL Marks. A person hearing the parties' names likely would focus on the initial word "Ariel," not the descriptive words that follow. *See Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115-16 (7th Cir. 1997) (marks both using dominant word "Meridian" are similar, in part because "[a]ny visual

- 3 -

distinctions between the parties' use of 'Meridian' are irrelevant in the aural realm."); *Avent Am., Inc. v. Playtex Prods., Inc.*, 68 F. Supp. 2d 920, 925-26 (N.D. Ill. 1999) (deeming "Avent" and "Avance" marks similar due to audible similarity despite the marks' visual dissimilarity ). This precept is particularly relevant here, where Ariel Capital asserts that it obtains its customers through referrals, and the design or artwork used by Ariel Capital does not distinguish the parties' marks audibly. (Dkt. 132, Def. Additional SOF ¶ 24.)

Ariel Capital's responds by pointing to its use of the words "Capital Advisors" and differences in "fonts, capitalization, layout, coloring and design elements" to divert attention from the parties' common use of ARIEL. (Dkt. 131 at 13-16; Dkt. 129 at 15-16.) Where, as here, one word of a mark is the salient or dominant portion of the mark, another party's use of that same word weighs heavily in favor of finding similarity. This is particularly true where the additional elements of a defendant's mark are descriptive. For example, in *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088-89 (7th Cir. 1988), the court affirmed that the only significant difference between "International Kennel Club" and "International Kennel Club of Chicago" was the geographically descriptive term "Chicago." And because "International Kennel Club" was the dominant feature of plaintiff's mark, the similarity factor weighed "beyond doubt" in the plaintiff's favor. *See also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001) (affirming determination that "Beanie Racer" and "Beanie Babies" were similar marks because "Beanie" was salient portion, notwithstanding "minor stylistic differences" and surrounding elements); *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 U.S. Dist. LEXIS 180912, at *13 (N.D. Ill. Dec. 27, 2013) (finding similarity in marks using "American Eagle"); *AT&T Corp. v. Synet, Inc.*, 1997 U.S. Dist. LEXIS 1954, at *20 (N.D. Ill. Feb. 11, 1997) (similarity between marks using "AT&T").

- 4 -

Ariel Capital's addition of the generic or descriptive words "Capital Advisors" after "Ariel" also does not reduce the likelihood of confusion because the public is accustomed to seeing the word ARIEL combined with one or more descriptive financial terms such as INVESTMENTS, FUND, INTERNATIONAL, GLOBAL, and APPRECIATION. ARIEL CAPITAL ADVISORS looks and sounds like just another member of Ariel's family of marks. *See Meridian*, 128 F.3d at 1116 ("A person hearing the two parties' names would likely focus on the word 'Meridian' and gloss over the other words, and the parties are therefore using essentially the same mark."); *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1322 (Fed. Cir. 2014) (affirming TTAB rejection of registration of STONE LION CAPITAL due to prior registrations of LION and LION CAPITAL); *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) ("Only one word stands out as dominant in the two names . . . and the only other word in defendant's name [the term CAPITAL] . . . does not serve any differentiating role.").

Next, Ariel Capital argues that the parties' marks are not similar because of Ariel Capital's occasional use of a lion logo. The lion logo, however, does not identify Ariel Capital as the source of financial services or distinguish Ariel Capital's services from those of Ariel any more than the descriptive and commonly used words "Capital Advisors." Indeed, several other financial services companies including Harris Bank, ING Bank (www.ing.com), Dreyfus (https://dreyfuslionaccount.netxinvestor.com/web/dreyfus/login), and RBC Royal Bank (www.rbcroyalbank.com) have long used similar lions or lion head designs as service marks. Ariel Capital cannot even claim that its particular lion head design identifies or is associated with Ariel Capital much less use it to distinguish the name "Ariel Capital" from the ARIEL marks. Compare:





http://lionhouseportfolio.co.uk/          and          www.arielcapitaladvisors.com

In any event, Ariel Capital's contention is unavailing as it does not always use a logo with the word "Ariel."  (Additional SOF ¶ 3.)

Finally, Ariel Capital's case law does not support its position.  In *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000), the court concluded that the district court did not err by concluding that the marks for SMOKE DADDY and BONE DADDY were similar because "Smoke" and "Bone" sound alike and both conjure images of slow cooked meat.  The court did not address or examine the circumstances here, where the first word of each party's mark is a distinctive term like ARIEL.

In *Lincoln Fin. Advisors Corp. v. SagePoint Fin., Inc.*, 2009 U.S. Dist. LEXIS 28142, at *18-21 (N.D. Ind. Apr. 2, 2009), the court examined differences in logos and surrounding elements ***only after*** rejecting an argument that "Sagemark Consulting" and "SagePoint Financial" were similar marks because both used "Sage."  The court concluded that the term "sage" alone, which was only part of different words in each mark, was not salient (unlike the word "Beanie" in *Ty, Inc.*).  Also, the court found that the marks sounded different and had different meanings, and noted that the plaintiff previously argued to the USPTO that there was no likelihood of confusion between the marks because of the common term "sage."  *Id.* at *18-19.  Here, the mark ARIEL is the salient feature of the ARIEL Marks, the parties' marks are similar in appearance, sound, and meaning, and Ariel has never previously argued that its ARIEL Marks created no likelihood of confusion with Ariel Capital's mark.

Ariel Capital's reliance on *Telemed Corp v. Tel-Med, Inc.*, 588 F.2d 213 (7th Cir. 1978), also is misplaced. There, the court noted that the district court did not clearly err by concluding that the term "Telemed," when used in connection with a computer-analysis, is a descriptive trade name not entitled to trademark protection against a noncompeting service. *Id.* at 214, 219. The court affirmed the ruling that the plaintiff had a weak, descriptive mark and had failed to prove a strong secondary meaning, thus affording it no protection against use by the defendant. *Id.* at 220. The case did not involve incontestable registrations immune to a descriptiveness defense, nor did the court even engage in a similarity analysis.

And finally, in *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 355 (7th Cir. 1983), the court deemed the marks "Miracle Whip" and "Yogowhip" dissimilar in part because "Miracle" and "Yogo" were not the same and the shared term "whip" was merely descriptive or generic. *Id.* at 355-56. Thus, the differences between the marks outweighed the similarities, a finding further supported by differences in the product labels. *Id.* Here, both parties undisputedly use the first word ARIEL and there is no evidence of descriptiveness or genericness.

### 2. The Parties Sell Similar Products and Services to Similar Customers in the Same Manner and Areas.

As Ariel demonstrated in its opening brief, similarity of services and area and manner of concurrent use also support finding a likelihood of confusion. Here, both parties sell related (if not identical) services, namely investment management services. (SOF ¶¶ 25, 35; Def. SOF ¶ 9.) Ariel does so by directing clients to its own mutual funds and separate accounts, both of which it manages. (SOF ¶¶ 7-9.) Ariel Capital does so by directing its clients to a variety of investment vehicles offered by others, while still managing the clients' accounts. (Def. SOF ¶ 4.) Ariel Capital argues that the parties "operate two different businesses who sell to different markets:

[Ariel] sells mutual funds to institutions, [Ariel Capital] manages finances, capital and taxes of wealthy individuals." (Dkt. 131 at 7; Dkt. 129 at 13.) This argument, however, is predicated on (a) the false legal premise that Ariel and Ariel Capital must offer identical services or be in direct competition to be "similar," and (b) Ariel Capital mischaracterizing the evidence.

### a. Services Must be Related, Not Identical.

Similarity of services requires only a showing that the parties' services are "sufficiently related to create an inference in consumers' minds that the products came from the same source." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001) (citing *Int'l Kennel Club*, 846 F.2d at 1089). In *Lexington Mgmt. Corp v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 284-85 (S.D.N.Y. 1998), the court rejected the defendant's argument that retail brokerage services are distinguishable from managing and selling mutual funds. In rejecting such a thin distinction, the court held that "both companies seek individuals with disposable income who desire investment opportunities." *Id.* at 285. Similarly, in *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1118-19 (S.D.N.Y. 1981), the court held that the plaintiff's mutual fund services were similar to retail banking services because both parties "seek to assist companies and individuals in making money."[1] *Id.*

Ariel Capital also argues that the parties serve different markets because they do not compete directly. (Dkt. 131 at 9-10; *see also* Dkt. 129 at 14 (citing *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1000 (N.D. Ill. 1997)).) But again, direct competition is not required to find similarity; the services just need to be related. *Autozone, Inc. v. Strick*, 543 F.3d

---

[1] *See also Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 U.S. Dist. LEXIS 74700, at *15 (N.D. Ill. June 10, 2015) (though plaintiff primarily offered consulting and financial services and defendant offered software products, "a consumer reasonably would think that one company offered all of these services."); *Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors*, 2014 U.S. Dist. LEXIS 163294, at *36-37

(Cont.)

923, 931 (7th Cir. 2008) ("A likelihood of confusion may exist even if the parties are not in direct competition, or their products or services are not identical.") (quoting *CAE, Inc.*, 267 F.3d at 679); *Int'l Kennel Club*, 846 F. 2d at 1089 ("[W]e have specifically noted that a plaintiff need not demonstrate that it is in direct competition with an alleged infringer in order to establish likelihood of confusion.").[2]

Ariel Capital cites only cases that are distinguishable or actually support a finding of similarity here. (Dkt. 131 at 7-8; Dkt. 129 at 13.) *Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004), involved two music CDs, one authored by the band "Survivor" and the other containing soundtracks from the "Survivor" TV show. The court held that consumers were not likely to confuse the source of these CDs because of the care that CBS took to indicate on the packaging that the CBS soundtrack was affiliated with the TV show and not the band. *Id.* at 778-79. In contrast, here, the parties offer a panoply of similar financial services with no warning from Ariel Capital that it is unrelated to Ariel. And in *Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445 (S.D.N.Y. 1982), the court concluded that there was no similarity between two lenders based on "pronounced differences between the loans made by [the parties] and … the sophistication of defendant's customers[.]" 529 F. Supp. at 450. In contrast, both Ariel and Ariel Capital deal with investors who have large portfolio investments and a range of sophistication—and even a longtime Ariel Capital client confused the two.

---

(N.D. Ill. Nov. 21, 2014) (companies that provided financial planning and investment services deemed similar because their services, "in the minds of consumers, might be put out by a single producer").

[2] *See also Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 882 (N.D. Ill. 1999) ("It is not necessary that the parties be in direct competition or that their goods and services be identical."); *Lexington Mgmt. Corp.*, 10 F. Supp. 2d at 278 (same); *Haven Capital Mgmt. v. Havens Advisors. L.L.C.*, 965 F. Supp. 528, 531-32 (S.D.N.Y. 1997) (same).

Ariel Capital cites *Knaack* because the court there noted the companies were not competitors, but ignores that the court's finding of dissimilarity also stemmed from many differences in their products. Weather guards and soft car covers were related only by being for cars. In contrast, here, both parties manage the investments of their clients.

### b. Ariel Mischaracterizes the Undisputed Facts.

Ariel Capital also wrongly describes the undisputed facts. Ariel Capital concedes in its own statement of undisputed facts that Ariel provides "investment services, financial and investment advisory services, and mutual funds." (Def. SOF ¶ 9.) Nevertheless, Ariel Capital argues that the parties' services are dissimilar because, even though both companies provide investment services, unlike Ariel, it does not sell any "products" (such as mutual funds or separate accounts), only services. (Dkt. 131 at 8-9; Dkt. 129 at 13-14.)

Ariel Capital's argument, however, mischaracterizes investment as "products." But these are not tangible products like cars or toys. Ariel offers investment services through which its clients invest in mutual funds or separate accounts. The term "product" is sometimes used by those in the financial world to describe the investment vehicle, not a tangible item sold to a client. Indeed, a "separate account" is a client-specific account in which funds are invested in a group of stocks identified by Ariel. (SOF ¶ 8.) Ariel Capital's investment management services are much like Ariel's "separate accounts." Both parties are providing investment services tailored to individual client demands and each client's funds are segregated from the funds of other clients. (*Id*. ¶ 35.)

Ariel Capital's argument also rests heavily on its claim that it does not sell mutual funds and that it included mutual funds in its most recent Form ADV only in case a client purchased mutual funds from another advisor. (Def. Additional SOF ¶ 16.) Form ADV is an annual disclosure required by the SEC that must be made completely and truthfully to comply with

government regulations.  (SOF ¶ 24.)  But Arial Capital's argument is contradicted directly by the actual language of its Form ADV dated January 14, 2016, which states that Ariel Capital "***will create*** a portfolio principally comprised of all or some of the following investments in accordance with the investment objectives of the client: ***mutual funds***, . . ."  (SOF ¶ 24 (emphasis added).)[3]

Moreover, both Ariel and Ariel Capital "target the same general audience," *see CAE*, 267 F.3d at 682, namely individual investors looking for advice and portfolio management.  (SOF ¶¶ 7-8, 23-24, 35.)  Ariel Capital argues that it has a different customer base because it claims to require an initial investment of $1,000,000 from individuals and families, whereas Ariel allows mutual fund clients to invest only $50 monthly or $1,000 total and also services institutional clients and professional broker-dealers, as well as individuals.  (Dkt. 131 at 9-10; *see also* Dkt. 129 at 14.)  Ariel Capital actually accepts clients with much smaller portfolios (SOF ¶ 29), and Ariel Capital's argument disregards Ariel's much wealthier separate account clients.

Ariel Capital does not dispute that the parties use their marks in the same manner, as both use them in their websites, mass-media advertising, and public sponsorships.  (SOF ¶ 34.)  *See CAE*, 267 F.3d at 681-82.  Nor does it dispute that both offer their services to customers in and advertise in many of the same states, including Ohio and Florida.[4]  (SOF ¶ 36.)  Instead, Ariel

---

[3]  Ariel Capital's case law purporting to differentiate the services of the parties here is distinguishable. *See Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382, 391-92 (S.D.N.Y. 2006) (finding dissimilarity between a hedge fund manager and a one-employee broker that arranged lending transactions and equipment leases); *Haven Capital*, 965 F. Supp. at 531-32 (distinguishing high-risk arbitrage services from conservative, traditional investment management); *Knaack*, 995 F. Supp. at 1000 (finding dissimilarity between hard material weather guards for cars and soft material car covers).  Here, Ariel Capital ***admits*** it is providing "investment management services," like Ariel.  (Def. SOF ¶¶ 4, 9, 38).

[4]  Ariel Capital argues in its response to Ariel's Statement of Facts that Ariel did not present evidence of its customers' locations.  (Dkt. 132 at 36.)  But this is mistaken, as Ariel has introduced evidence of offering and providing services to customers in Ohio and Florida.  (SOF ¶¶ 10, 36.)

Capital argues that the parties' trade channels are different because Ariel Capital gets its clients from referrals and requires in–person meetings, while Ariel sells its services through brokers on-line.  (Dkt. 131 at 16.)  But this ignores un-rebutted testimony that Ariel sells its mutual funds on-line but only offers its separate accounts in the same way as Ariel Capital– typically involving in-person meetings.  (Additional SOF ¶ 4.)

Notably, Ariel Capital's repeats its mistaken impression that trademark law is concerned only about direct competitors by arguing that it does not infringe the ARIEL Marks because the parties do not currently share the same customers and markets.  Even if Ariel Capital never stole a single customer from Ariel, Ariel would be harmed if Ariel Capital's actions brought negative attention to Ariel's reputation (such as a problem with the SEC or through a media report of disgruntled investors).  Ariel cannot control the quality of Ariel Capital's services and, therefore, any ongoing infringement unfairly imperils Ariel's reputation.  *Int'l Kennel Club*, 846 F.2d at 1092.  Ariel Capital also mischaracterizes the record and Ariel's argument by touting evidence that Ariel has no intention to expand into Ariel Capital's services.  (Dkt. 131 at 16.)  As a threshold matter, Ariel and Ariel Capital already offer the same or related services, and investment advisors like Ariel Capital have started their own mutual funds.  (SOF ¶ 37.)  With this blurred line between what investment advisors and mutual fund providers do, it is likely that consumers would assume the parties are related.  Moreover, Ariel Capital has produced no evidence closing the door on its own future expansion.  In any event, Ariel's witness Kosier never stated that Ariel has no intention to expand, she testified that she did not know and that she was unaware of any *immediate* plans to expand.  (Additional SOF ¶ 5.)

### 3. There Is Strong Evidence of Actual Confusion.

In its opening brief, Ariel described five individuals' actual confusion.  Ariel Capital's primary response is that all of these instances of actual confusion are irrelevant or otherwise

inadmissible because none of the witnesses were clients or consumers of the parties' services. (Dkt. 131 at 3-6; Dkt. 129 at 12.)  But that is untrue.

First, Ariel Capital cannot dispute that Monica Schandel is an Ariel Capital client, longtime friend of Mr. Bray, and owner of a financial services firm in business with Ariel Capital.  Ms. Schandel confused the names of the two entities both in an e-mail and several times during her deposition.  (SOF ¶¶ 48, 49.)  This amounts to least one instance of direct customer confusion.  Second, David Boone and Justin Land are conduits for potential Ariel consumers even though they are not direct clients.  Mr. Boone owns a publication that covers the financial trading industry for investment advisors and brokers who, in turn, sell investments in Ariel funds to their clients.  (*Id.* ¶¶ 10, 43; Additional SOF ¶ 6.)  Those advisors are Ariel customers, like investors who buy funds directly from Ariel.  (SOF ¶ 10.)  Moreover, courts have held that confusion by a media member like Mr. Boone is relevant to demonstrating actual confusion.  *See Road Dawgs Motorcycle Club of U.S., Inc. v. "Cuse" Rd. Dawgs, Inc.*, 679 F. Supp. 2d 259, 288 (N.D.N.Y. 2009) (newspaper articles misnaming plaintiff's club in association with violent crimes deemed "at least some evidence of actual consumer confusion"); *cf. Piper Aircraft Corp v. Wag-Aero, Inc.*, 741 F.2d 925, 929 (7th Cir. 1984) (affirming finding of actual confusion where district court relied in part on articles from a newspaper and a trade publication).  It also is undisputed that personal referrals are the most common source of customers for both Ariel and Ariel Capital, including referrals from financial advisors—the same people who read Mr. Boone's publication.  (SOF ¶ 10.)  Similarly, Mr. Land is a direct conduit for Ariel customers, a Certified Financial Advisor who asked about the parties' affiliation at a networking event.  (*Id.* ¶ 41.)  That these two individuals, who work in financial services and are potential conduits for clients, were actually confused by Ariel and Ariel Capital is relevant to whether there is

likelihood of confusion. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).[5]

Ariel Capital then challenges each of the five instance of actual confusion on several additional grounds. But these challenges are meritless.

**Ms. Schandel**. Ariel Capital claims that Ms. Schandel was not actually confused because she knows Mr. Bray well, and simply misspoke and miscopied Ariel into her e-mail. (Dkt. 131 at 5.) This is semantics, undermined by the fact that Ms. Schandel mixed up Ariel and Ariel Capital repeatedly, in an e-mail drafted to Ariel's counsel and several times during her deposition. (SOF ¶ 51.) If a longtime friend and client of Ariel Capital cannot keep the names straight, others surely cannot. This is the very definition of confusion.

**Mr. Boone.** Ariel Capital argues that Mr. Boone's testimony is unreliable because he did not initially recall his mistaken call to Ariel Capital, he rarely spoke with the Ariel employee he was intending to call, he did not know she worked for Ariel, and he was unfamiliar with Ariel. (Dkt. 131 at 5.) But Mr. Boone never equivocated on the key issue: that he called Ariel Capital by mistake, intending to call Ariel, based on the results of a Google search. (SOF ¶¶ 46-47.)

**Mr. Land**. Ariel Capital contends that Land's testimony is inadmissible hearsay because it is a third-party statement to another party who did not testify and is offered for the truth of the matter asserted. (Dkt. 131 at 4.) This argument is baseless. As a threshold matter, this evidence **is** a party admission, as it came from Mr. Bray as Ariel Capital's corporate representative under Federal Rule 30(b)(6). (SOF ¶ 41.) *See Sara Lee Corp v. Kraft Foods, Inc.*, 276 F.R.D. 500, 501

---

[5] *See also Avent Am.*, 68 F. Supp. 2d at 929 (accepting testimony regarding calls from "the general public" as evidence of actual confusion); *Santucci Constr. Co. v. Santucci, Inc.*, 1978 U.S. Dist. LEXIS 14939, at *8-9 (N.D. Ill. Oct. 16, 1978) (evidence from non-customers such as end-users of services and suppliers relevant to show actual confusion where it is "similar to that shown in cases of consumer deception involving nationally advertised and marketed products").

(N.D. Ill. 2011) (Rule 30(b)(6) deponents are corporate representatives designated to testify on the corporation's behalf). Moreover, this testimony is not being offered for the truth of the matter asserted but for state of mind, *i.e.*, that the speaker thought the parties were associated. *See Int'l Kennel Club*, 846 F.2d at 1090–91 (testimony of plaintiff's employees admissible as to instances of actual confusion).[6]

Ariel Capital also argues that Mr. Land was mistaken, not confused, because he "***thought*** to inquire whether there was a relationship between [Ariel and Ariel Capital], he did not assume they were related." (Dkt. 131 at 5 (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001)).) But this argument flouts common sense: Mr. Land's very question epitomizes confusion. He asked the question because did not know whether the companies were affiliated in light of their nearly identical names. Indeed, it is well-settled that questions like this are relevant to show actual confusion. *See Virgin Enters, Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) (consumer inquiries into a relationship based on similar names are admissible).[7]

---

[6] *See also Piper Aircraft*, 741 F.2d at 931 (out-of-court survey results admissible to show state of mind of interviewees under Fed. R. Evid. 803(3)); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997) (testimony of plaintiff's national sales manager admissible to show instances of retail customer confusion); *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 n.10 (5th Cir. 1982) (admitting testimony of plaintiff's employees about random phone calls and inquiries from acquaintances evidencing confusion found admissible); *Prudential Ins. Co. of Am. v. Prudential Title Co.*, 1976 U.S. Dist. LEXIS 16798, at *7-8 (S.D. Tex. Feb. 6, 1976) (finding deposition testimony that five to ten people have called corporate officer to inquire about corporation's affiliation with defendant competent evidence of actual confusion); *Kroger Co. v. Superx, Inc.*, 1976 U.S. Dist. LEXIS 13019, at *4 (E.D. Pa. Sept. 28, 1976) (finding customer inquiry into whether defendant's store was affiliated with plaintiff's chain evidence of actual confusion); *Steinway & Sons v. Robert Demars & Friends*, 1981 U.S. Dist. LEXIS 15169, at *10-11, *35 (C.D. Cal. Jan. 28, 1981) (individuals inquiring about relationship between plaintiff and defendant was evidence of actual confusion); *Susan's, Inc. v. Thomas*, 1993 U.S. Dist. LEXIS 4793, at *13 (D. Kan. Mar. 19, 1993) (rejecting argument that consumer inquiries did not constitute evidence of confusion).

[7] *See also Morningside*, 182 F.3d at 141 (in context of financial services, "evidence of actual confusion regarding affiliation or sponsorship is also entirely relevant to the ultimate likelihood-of-confusion inquiry."); *Conn. Cmty. Bank, Nat'l Assn. v. Bank of Greenwich,* 2008 U.S. Dist. LEXIS 9726, at *6 (D. (Cont.)

- 15 -

**Brady and Cusack calls.** Finally, Ariel Capital argues that the two phone calls reported by Phyllis Brady and Marielle Cusack are inadmissible hearsay because they came from unnamed phone callers, and are thus nothing more than vague, uncorroborated musings of unidentified individuals. (Dkt. 131 at 5 (citing *Smith Fiberglass Prods. v. Ameron*, *Inc.*, 7 F.3d 1327, 1331 (7th Cir. 1993).) But this testimony is not offered for the truth of the matter asserted but for state of mind, *i.e.*, that the speaker thought the parties were associated with each other. *Am. Eagle Outfitters*, 2013 U.S. Dist. LEXIS 180912, at *26; *Int'l Kennel Club*, 846 F.2d at 1090; *Wells Fargo & Co. v. Wells Fargo Constr. Co.*, 619 F. Supp. 710, 712 (D. Ariz. 1985).

Ariel Capital also contends that the person who called Ms. Cusack was not confused in any relevant sense because she was likely trying to contact Ariel Investment Properties, an unrelated firm. (Dkt. 131 at 6.) This argument ignores the full context of this call. The record reveals that the caller stated she was satisfied that she was mistaken once Ms. Cusack informed her that Ariel did not ***own or lease*** any property in ***Naples, Florida***. (SOF ¶ 53.) Thus, contrary to Ariel Capital's assertion, there is no indication that the caller was looking for an entity that ***sold*** real estate. Instead the caller was searching for the owner or lease holder of real estate in Naples named "Ariel." Ariel Capital conveniently ignores that it is located in Naples to infer without substantiation that the caller was trying to reach a third-party 120 miles away (Ariel Investment Properties). Thus, the actual record does not support Ariel Capital's claim.

Finally, Ariel Capital argues that even if this Court finds that Schandel, Boone, and Land are relevant consumers who were actually confused, three instances of actual confusion are *de minimis*. (Dkt. 131 at 6.) But multiple instances of actual confusion carry significant weight,

---

Conn. Feb. 11, 2008) (admitting inquiry into possible affiliation between plaintiff and defendant and distinguishing *Nora Beverages* as applying to instances where the inquiry is related to the physical appearance of a product, despite different labels).

particularly in light of the fact that Ariel Capital has been in business for less than three years and sells services, not products, which generate more easily detectable confusion through product orders and returns. Indeed, "[i]t is well established that ***any*** evidence of actual confusion is '***substantial evidence*** of likelihood of confusion.'" *AT&T Corp.*, 1997 U.S. Dist. LEXIS 1964, at *23-24 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965)) (emphasis in original); *see also Int'l Kennel Club*, 846 F.2d at 1090 (same). "Reason tells us that . . . very little proof of actual confusion would be necessary to prove likelihood of confusion." *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1172 (7th Cir. 1986); *see also CAE, Inc.*, 267 F.3d at 686 ("One instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion."); *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb*, 698 F.2d 862, 867 (7th Cir. 1983) (one instance of actual confusion sufficient to support a finding of likelihood of confusion). Ariel Capital's argument overlooks that for even a single instance of known confusion, there is often a vast undetected history of confusion. *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 720 (3d Cir. 2004). In any event, there are ***several*** instances of actual confusion in this case, not just one, even though Ariel Capital has been infringing the ARIEL Marks for less than three years.

### 4. The ARIEL Marks Are Strong.

Ariel Capital does not take issue with uncontested evidence of strength of the ARIEL Marks. In summary, the ARIEL Marks are strong because Ariel: (i) has provided investment services under the arbitrary ARIEL mark for 33 years;[8] (ii) is a well-known provider of investment services, managing over $10 billion in assets; (iii) offers its services in all fifty states

---

[8] Ariel Capital argues erroneously in its response to Ariel's Statement of Facts that 33 years of continuous use is unsupported. (Dkt. 132 at 8.) Ariel's Rule 30(b)(6) witness described Ariel's

(Cont.)

and has over 300,000 mutual fund shareholders; (iv) spends more than $1.3 million on average per year advertising; (v) promotes its marks on its website, in brochures, and in a variety of other media, including national publications and advertising networks; (vi) has earned more than 70 of the industry's prestigious STAR Awards; (vii) features officers who have been contributors to a wide variety of television programs and *Forbes* Magazine; and (viii) promotes the ARIEL Marks through high-profile cultural and civic events sponsorships.  (SOF ¶¶ 16-19.)

Rather than countering this evidence, Ariel Capital argues that the ARIEL Marks are not strong because over 150 other companies use "Ariel" in their name.  (Dkt. 131 at 12.)  But Ariel Capital's evidence consists only of an unauthenticated, hearsay list of third parties.  There is no evidence that these companies now exist or ever operated, or what goods or services were ever offered by them (if any).[9]  *See Tisch Hotels*, 350 F.2d at 614 ("Uses of the name outside of the [plaintiff's business] field could not possibly cause confusion with plaintiffs' mark," and thus are irrelevant).  Moreover, the mere existence of third parties that apparently use "Ariel" as part of their company name does not establish infringing or diluting ***use***.  *See Metro. Life Ins. Co. v. Metro. Ins. Co.*, 277 F.2d 896, 900 (7th Cir. 1960) ("The propriety of such use in other situations would have to be determined on a case-by-case basis depending upon the circumstances surrounding each situation in a proper action.").[10]

---

continuous use of the term "Ariel" (SOF ¶ 6), and the totality of evidence in this case shows that Ariel has used the ARIEL mark for 33 years.

[9]  Ariel Capital's proffered evidence on this point is inadmissible hearsay (Fed. R. Evid. 802), unauthenticated (Fed. R. Evid. 901), and lacks foundation to establish its relevance (Fed. R. Evid. 602).

[10]  At the same time Ariel Capital touts supposed third-party users of the term "Ariel," it objects to Ariel's citation to evidence of its own efforts to police its marks.  That is, Ariel Capital claims that evidence of prior lawsuits is not relevant (Dkt. 132 at 22), while advancing unauthenticated hearsay to argue that Ariel does not police its marks.  Such inconsistency undermines Ariel Capital's relevance objection.

Ariel Capital further contends that the ARIEL Marks deserve less protection because the financial firm Ariel Wealth Advisors allegedly has existed for over six years and without any known confusion between it and Ariel.[11] (Dkt. 131 at 12 (citing *Top Tobacco, L.P. v. N. Atl. Operating Co.*, 2007 U.S. Dist. LEXIS 2838, at \*19 (N.D. Ill. Jan. 4, 2007).)  In any event, the mere existence of *one* party who sells comparable services does not dilute the strength of Ariel's mark.  *See Tisch Hotels*, 350 F.2d at 614 ("Equally irrelevant to the question of plaintiffs' right to relief against defendant is whether other hotels or motels are also infringing plaintiffs' name."); *Lexington Mgmt. Corp.*, 10 F. Supp. 2d at 283 (finding any weakening effect from third-party use of the mark to be "marginal" where only three entities using the mark offered competitive services); *Fort James Corp. v. Kimberly-Clark Tissue Co.*, 1999 U.S. Dist. LEXIS 16321, at \*11-12 (N.D. Ill. Oct. 8 1999) (noting that third-party use of a mark may lead to abandonment only if defendant shows widespread use of the mark such that the mark has lost *all* significance).[12]

Ariel Capital also argues that the ARIEL Marks do not have brand recognition among consumers, citing survey reports from Ariel's broker–dealer clients wishing Ariel had more brand awareness among consumers.  (Dkt. 131 at 13.)  Ariel Capital further cites other customers

---

[11]  Ariel Capital's argument regarding Ariel Wealth Advisors also rests on hearsay.  That is, Ariel Capital's sole evidence of Ariel Wealth Advisors' services comes from an unauthenticated (Fed. R. Evid. 901) and hearsay (Fed. R. Evid. 802) supposed printout of that firm's web page.  That printout is not admissible evidence.

[12]  *Top Tobacco* is plainly distinguishable.  Indeed, the passage quoted by Ariel Capital did not come from the court itself, but was a quote from *the plaintiff* made previously to the USPTO in appealing the examiner's refusal to register its name.  *Top Tobacco*, 2007 U.S. Dist. LEXIS 2838, at \*19.  In that submission, the plaintiff had argued that other marks using "TOP" should be entitled to narrow protection in light of the 2,360 live applications and registrations comprised of "TOP," including four tobacco-related registrations.  The court rightly observed that the plaintiff could not ignore its earlier argument about a mark's narrow scope to the USPTO and now argue that the mark was strong, and concluded that the strength of the mark factored against the plaintiff.  There is no comparable evidence or history here. *Id.* at \*20.

associating Ariel's services with "turtle" and "patient" but not "Ariel," and Ariel's admission that customers often refer to it as "turtle people." (*Id.*) Clients wishing that Ariel have "more brand awareness" does not mean that Ariel's brand awareness is weak. Moreover, as companies often have several trademarks, customer association of Ariel with its turtle trademark and the concept of "patience" does not mean that Ariel lacks strong customer association with its ARIEL Marks. Moreover, there is no evidence as to what these survey reports were intended to reveal, how or when they were conducted, or what role, if any, the ARIEL Marks played in the surveys.

Finally, Ariel Capital does not contest that Ariel spends substantially on advertising, but asserts that "advertising does not equate to brand recognition." (Dkt. 131 at 13.) But courts in this Circuit consistently recognize advertising as a key component in maintaining, and a good indicator of, a strong mark. *See CAE*, 267 F.3d at 684-85 (affirming conclusion that mark was strong because plaintiff had used the mark for over 40 years, had earned millions of dollars of sales, and expended tens of thousands of dollars promoting its business); *Am. Eagle Outfitters*, 2013 U.S. Dist. LEXIS 180912, at *23-24 (American Eagle's mark strong in light of duration of trademark use, substantial sales, and significant marketing efforts and expenditures).

### 5. Ariel Acted Intentionally.

Ariel Capital tries to sidestep the undisputed evidence that demonstrates intentional infringement. Ariel Capital's only rebuttal relies solely on Mr. Bray's testimony that he named the company after his daughter, and to honor a religious ministry to which his family belongs. (Dkt. 131 at 6.) Ariel Capital contends this simple statement is enough to negate intent, despite Mr. Bray's knowledge of Ariel and the ARIEL Marks. (*Id.* at 7.)

The rest of the evidence, however, demonstrates willful conduct. Mr. Bray has worked in the financial services business since at least 1991, was familiar with Ariel's founder before he founded Ariel Capital, attended conferences that featured Ariel exhibits bearing its mark, and

regularly reads a periodical in which Ariel advertises prominently. (SOF ¶¶ 57-59.) Mr. Bray admitted that he performed a Google search on the "Ariel" name because he was concerned about taking another firm's name. (*Id.* ¶ 62.) He admittedly found "Ariel Wealth Advisors" in that search, and then hedged when asked if he found Ariel by stating that he is "not 100 percent certain." (*Id.* ¶ 64) Notably, when Ariel performed similar Google searches in 2015, those searches consistently revealed Ariel. (*Id.* ¶ 65.) As this Court already observed, this search is sufficient "to give rise to an inference that Bray realized, or deliberately chose to ignore, that he was adopting a name that arguably was confusingly similar to that used by Ariel." (*Id.*)

Recognizing the legal obstacle to his use of "Ariel" arising from Ariel Wealth Advisors' prior use of that mark, Mr. Bray's intent to disregard the far better known ARIEL Marks is clear. This awareness, coupled with Mr. Bray's steadfast refusal to change the name is sufficient to support a finding of an intent to infringe the ARIEL Marks. Ariel Capital argues that this refusal is irrelevant because it occurred after Mr. Bray chose the name. (Dkt. 131 at 7.) But Mr. Bray's refusal to change does not exist in a vacuum; instead, it reinforces the inference that he selected the name while knowingly disregarding Ariel and the ARIEL Marks.

### 6. The Degree of Care Likely To Be Exercised by Clients Fails To Diminish the Likelihood of Confusion.

Ariel Capital correctly points out that expensive investment decisions require greater care, typically from sophisticated buyers. (Dkt. 131 at 10-11.) But here, the fact that both parties' services and pool of potential clients overlap "makes it even more likely that even an informed and sophisticated consumer will mistakenly attribute the parties' products . . . to a common source." *See CAE*, 267 F.3d at 683. For that reason an Ariel client could easily conclude that Ariel has opened an office in Naples, or an Ariel Capital client could easily conclude that Ariel Capital is an affiliate of Ariel. (SOF ¶ 38.) *See CAE*, 267 F.3d at 683

(recognizing heightened potential for confusion where affiliation is difficult to determine without prior knowledge of parties' corporate structure). Ariel Capital counters that there is no danger that potential customers will be confused because its customers come through direct referrals and are thus already familiar with Ariel Capital and its services. (Dkt. 131 at 10-11.) But this does not dispel the likelihood of confused affiliation identified by Ariel, as someone may refer a potential client to Ariel Capital thinking it is affiliated with Ariel, or someone may impute negative publicity about Ariel Capital to Ariel. *See Avent Am.*, 68 F. Supp. 2d at 925 (noting significance of the audible similarity of marks when word-of-mouth referrals are particularly important to the companies).

Moreover, Ariel Capital's argument fails to recognize another aspect of customer care: the reputational threat it poses to Ariel. The question is not only whether customers might confuse Ariel with Ariel Capital when seeking investment services. Indeed, what would the investing public think if Ariel Capital was subject to an SEC investigation or some other reputational damage? (Mr. Bray and others admitted this would be bad for business. (SOF ¶¶ 72-73).) And, in turn, the investing public – even sophisticated investors – could mistakenly attribute that negative publicity to Ariel.

### C. Ariel Is Entitled to Ariel Capital's Profits.

Ariel Capital does not dispute that Ariel is entitled to an injunction if the Court rules in its favor on its Lanham Act claims. Thus, the Court should enjoin Ariel Capital from infringing the ARIEL Marks, which poses a serious risk of irreparable reputational harm to Ariel.

For the same reasons, the Court should award damages in the amount specified in Ariel's opening brief (Dkt. 114 at 15), which represents Ariel Capital's net profits in 2014 and 2015, plus prejudgment interest and Ariel's reasonable costs and attorneys' fees. (SOF ¶¶ 76-78.) 15 U.S.C. § 1117(a). Ariel Capital challenges Ariel's claim for disgorgement of profits on two

grounds. First, it contends the amount requested is speculative and unreliable because the figure was mere guesswork from its Rule 30(b)(6) witness. (Dkt. 131 at 17.) But Ariel Capital failed to rebut this evidence with a different figure, and Rule 30(b)(6) deposition testimony from the defendant is admissible evidence.[13] Indeed, perhaps Ariel Capital failed to substantiate its profits because the estimate is ***too low***.

Second, Ariel Capital argues that Ariel is not entitled to recover its profits because Ariel failed to show a nexus between use and profits. (*Id.* (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868, 873 & n.3 (N.D. Ill. 1999).) This is not the law; disgorgement is an equitable remedy that can be awarded without evidence of actual diverted sales. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989) ("Where plaintiff seeks an award of ***damages***, plaintiff must show that defendant's infringement caused those losses. Here, however, an award of ***profits*** was appropriate under either a deterrence or unjust enrichment theory even if plaintiff's actual sustained losses may have been less.") (emphasis added); *Badger Meter, Inc. v. Grinnell Corp.*, 12 F.3d 1145, 1157 (7th Cir. 1994).

## II.   This Court Should Deny Ariel Capital's Motion for Summary Judgment

### A.   Ariel Capital's Fraud Defense Has No Bearing on Ariel's Section 43 Claim or Eight of the Nine ARIEL Marks.

Ariel Capital's fraud defense is legally baseless and factually flawed. Merits aside, the Court should bear in mind this defense's limited scope: it only addresses whether Ariel's ARIEL mark should remain registered. Unlike Section 32, Section 43 protects registered ***and unregistered*** service marks against use that is likely to cause confusion, measured under the same standard as Section 32. *CAE, Inc.*, 267 F.3d at 673-74; *Lexington Mgmt. Corp.*, 10 F.

---

[13]  Ariel is citing the admissions of the founder, sole owner, and sole decision-maker for Ariel Capital. (SOF ¶ 78.) Mr. Bray is the person most likely to have personal knowledge of these facts. (SOF ¶ 22.)

- 23 -

Supp. 2d at 277-78.  So even if Ariel misrepresented facts in its application for the word mark ARIEL, Ariel Capital's defense would not affect Ariel's common law rights.  *See Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 616 F.3d 722, 728 (7th Cir. 2010).  And because the mark would still be valid and enforceable under Section 43 without its registration, a fraud finding would not terminate Ariel's claim under Section 43.  *Id.*; *see also Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 295 F. Supp. 2d 854, 877 (S.D. Ind. 2003) (noting "limited significance" of fraud defense, which merely denies procedural benefits of incontestable registration).

Moreover, Ariel Capital's defense addresses only Ariel's registration for the ARIEL mark.  Here, Ariel asserted eight other registered ARIEL Marks, including ARIEL INVESTMENTS.  (SOF ¶ 11.)  And, Ariel Capital has presented no evidence of fraud in Ariel's registration of ARIEL INVESTMENTS or the other ARIEL Marks, nor has it presented any other argument that their registrations are invalid.  Thus, a finding of fraud would have no impact on Ariel's claims in this case.

### B.      Ariel Capital Fails to Meet Its Burden of Proving Fraud.

#### 1.      Ariel Capital Erroneously Places the Burden of Proof on Ariel.

Ariel Capital contends that Ariel made a material misrepresentation in its application to the word mark "ARIEL," specifically, that it did not use "ARIEL" in commerce before it filed its application.  (Dkt. 129 at 6-11.)  In so doing, Ariel Capital misallocates the burden of proof, faulting Ariel for failing to disprove this affirmative defense.  (*See, e.g., id.* at 7 ("Tellingly, [Ariel] failed to provide any evidence to support that it used its trademark in commerce prior to filing its trademark application").)  Rather than presenting evidence supporting its assertion that Ariel defrauded the USPTO, Ariel Capital repeatedly emphasizes Ariel's lack of evidence that it **did not** commit fraud in registering its mark.  (*See id.* at 6-9; Dkt. 131 at 2-3.)

- 24 -

Of course, Ariel Capital must prove its affirmative defense. Indeed, arguing fraud in the registration of a trademark is disfavored by the trademark board and courts alike. *See* McCarthy, Trademarks and Unfair Competition § 31:68; *Thomas Indus., Inc. v. L.E. Mason Co.*, 1991 U.S. Dist. LEXIS 6491, at *7 n.2 (N.D. Ill. May 12, 1991). As such, the party alleging fraud bears a heavy burden of proof by clear and convincing evidence. *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, 879 (N.D. Ill. 2008); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). Therefore, Ariel Capital needs to present clear and convincing evidence that Ariel intentionally misled the USPTO on material facts.

## 2. Ariel Undisputedly Used the ARIEL Marks.

Ariel Capital's entire argument is based on mischaracterized Ariel discovery responses and testimony that it did not offer its first *fund* until September 1983. (Dkt. 129 at 6.) Ariel Capital has twisted Ariel's initial answer to an interrogatory asking the date on which it offered various funds into the date that is started doing business. But Ariel properly supplemented its response to clarify that Ariel used the Ariel mark in commerce at the time of the registration once Ariel Capital's misunderstanding became clear. (Additional SOF ¶ 7.) Ariel Capital complains that the documents Ariel cited "do not show use prior to September 30, 1983." (Dkt. 129 at 6.) This argument again erroneously places the burden on Ariel to produce evidence of first use to disprove fraud, which Ariel is not required to do. Burden aside, this argument ignores that the mark is incontestable and the evidence Ariel Capital wrongfully demands occurred over 30 years ago. In any event, Ariel Capital is simply wrong when it asserts that Ariel failed to substantiate its response, as the very trademark application at issue was supported by a sworn declaration and attached specimen materials confirming the first use date. (SOF ¶ 6, Ex. I; Additional SOF ¶ 8.)

- 25 -

Moreover, the statements cited by Ariel Capital do not demonstrate lack of use in commerce.[14]  It is undisputed that Rogers managed money from friends and family and offered investment management services immediately upon opening Ariel's first office in January 1983, prior to the application.  (Additional SOF ¶ 9.)  Ariel Capital strangely points to Rogers' statements that it took a year and a half to secure the first million dollar account.  (Dkt. 129 at 7.)  But the date of Ariel's first *million dollar* account has nothing to do with the date of its first account, much less the date that it first offered its services to the public.

In light of this and other evidence, Ariel was undisputedly using the mark in commerce at the time of its application.  Ariel has presented competent evidence of its  use of the mark ARIEL at least as early as its application date, including a brochure for its investment services, and a photo of the ARIEL mark on Mr. Rogers' first office and a copy of his first newsletter.[15]  (SOF ¶ 5 (use of ARIEL in the *Patient Investor*, first mailed May 6, 1983).)  Moreover, Mr. Rogers had active clients when he started the firm.  (Additional SOF ¶ 9.)  Ariel Capital has failed to present any evidence to the contrary, and therefore has not met its burden to prove the word mark ARIEL was not used in commerce prior to its application.

Ariel Capital argues erroneously that marketing and advertising is not "use" of a service mark.  (Dkt. 129 at 7-8.)  But advertising and marketing *do* demonstrate use in commerce in the context of *services*, as opposed to goods.  Ariel Capital's argument misunderstands the distinction between the proper first use of a trademark and a service mark necessary to support

---

[14] Ariel Capital's citations to various magazine articles purportedly quoting John Rogers constitute inadmissible hearsay under Fed. R. Evid. 802.  *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005).

[15] Ariel Capital objects to the foundation for the 1983 photo of the ARIEL mark and the first copy of the *Patient Investor*.  (Dkt. 132 at 2-7.)  In doing so, Ariel Capital fails to recognize that Ariel's Rule 30(b)(6) deposition witness authenticated both of these pieces of evidence.  (SOF ¶ 5.)  Ariel Capital also incorrectly argues the newsletter is irrelevant based on its faulty belief that advertising cannot be evidence of use.

Federal registration. Because services often lack a physical product on which to attach a mark, the Lanham Act provides that use of a mark in advertisements is a proper method of first use. 15 U.S.C. § 1127 (defining "use in commerce" in services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ."); *see also Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1358 (Fed. Cir. 2009) ("[T]here must be an open and notorious public offering of the services to those for whom the services are intended.").[16]

Ariel Capital next argues that sales to family and friends do not qualify as commercial use. (Dkt. 129 at 9 (citing *Burlington N. Santa Fe Corp. v. Purdy*, 1999 U.S. App. LEXIS 34998 (5th Cir. Dec. 7, 1999)).) But that flouts common sense, as the personal relationships between Mr. Rogers and his clients has no bearing on the fact that he was performing commercial services for them through Ariel. Nor is there any requirement that only purely commercial relationships satisfy the "use" requirement. And *Burlington* is distinguishable, as the court there held that ***nominal*** and ***token*** sales to personal friends are not bona fide. That is not the record here.

### 3. Ariel Capital Fails to Demonstrate Materiality or Intent to Deceive.

Even if a mistake was made in listing the date of first use on the application, the misstatement is not a material misrepresentation sufficient to constitute fraud. *See Pony Express Courier Corp. of Am. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989) ("[T]he claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date . . . ."); *Slep-Tone Entm't Corp. v. Coyne*, 2015 U.S. Dist. LEXIS 1683, at *10 (N.D. Ill. Jan. 8, 2015) (citing *Pony Express* quotation above); *Miyano Mach.*, 576 F. Supp. 2d at

---

[16] Ariel Capital cites other cases dismissing advertising of services where there was no evidence of actual rendering of services. (Dkt. 129 at 8 n.1.) Of course here, there is ample evidence of that Ariel was servicing clients at the time of the application.

879-80 ("[A]n incorrect date of first use is not a material representation that serves as grounds for cancellation so long as the first use preceded the application date . . . .").

As discussed above, Ariel has provided numerous examples of the ARIEL mark's use in commerce prior to its application for registration. Further, the ARIEL mark is incontestable. (SOF ¶ 11.) As such, the registration is "conclusive evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1115(b). Since incontestable trademarks are only subject to the defenses listed in 15 U.S.C. § 1115(b), Ariel Capital may not simply rely upon an alleged application misstatement to invalidate the ARIEL mark; it must instead prove fraud. *See Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 196 (1985).

Moreover, cancellation of a mark requires proof of a deliberate attempt to commit fraud on the USPTO. *See Miyano Mach.*, 576 F. Supp. 2d at 879. Thus, Ariel Capital must prove by clear and convincing evidence that Ariel "knew it was making false statements to the USPTO and that it did so willfully, with intent to deceive. Inaccurate or misleading statements are not enough." *Eco Mfg. LLC*, 295 F. Supp. 2d at 879; *see also Thomas Indus.*, 1991 U.S. Dist. LEXIS 6491, at *9 n.4 ("A number of courts have held that the procurement of a trademark registration through the use of false or misleading statements does not constitute fraud within the meaning of 15 U.S.C. § 1115(b)(1) unless the statements were both material to the decision to grant the registration and made with a deliberate intent to defraud.") (quoting *Brittingham v. Jenkins*, 914 F.2d 447, 453 (4th Cir. 1990)). Ariel Capital has presented no evidence that Ariel acted with this requisite intent to defraud.[17]

---

[17] The Court should reject Ariel Capital's request for summary judgment on Ariel's other claims. (Dkt. 129 at 17-18.) Ariel's state-law claims (unfair competition and deceptive trade practices) rise and fall with its claims under the Lanham Act. Thus, the Court should deny Ariel Capital's motion on these state-law claims for the many reasons it should grant Ariel's motion. As for Ariel's claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), Ariel Capital argues that Ariel failed

(Cont.)

- 28 -

## III. Ariel Capital's Remaining Evidentiary Objections Are Misplaced.

Finally, Ariel Capital filed 80 pages of evidentiary objections and disputes in addition to its response brief (Dkt. 132), using all those pages to argue evidentiary issues in violation of this Court's standing order. In response, Ariel has addressed those objections that relate directly to its argument throughout this brief, but several additional objections warrant responses:

- Ariel Capital repeatedly objects to so-called "new evidence." (*See, e.g.*, Dkt. 132 at 13, 18-20, 35, 37-44.) For the most part, Ariel Capital is objecting to evidence offered by Ariel's declarant, Todd Trubey. Ariel, however, disclosed Mr. Trubey in its discovery responses, including in its Rule 26(a)(1) witness list. Ariel Capital's decision not to depose Mr. Trubey or anyone beyond the one Rule 30(b)(6) deposition that it conducted cannot be used to complain about so-called "new evidence" and, therefore, the Court should overrule these objections.

- Ariel Capital objects to so-called "opinion" testimony from Ms. Kosier and Mr. Trubey. (*See, e.g.*, Dkt. 132 at 8, 37.) Ariel Capital, however, fails to acknowledge the depth of these witnesses' personal knowledge. Ms. Kosier is Ariel's Chief Marketing Officer; Mr. Trubey is Vice President, Portfolio Strategies. They are not offering expert opinions; instead, they are testifying to facts that they personally observe in the course of their daily work. Therefore, the Court should overrule these objections.

- Among Ariel Capital's more absurd objections is its objection to the relevance of paragraphs providing witness backgrounds and foundation for subsequent testimony. (*See* Dkt. 132 at 30-31.) Ariel Capital's objection to basic background information regarding Mr. Trubey and even Ariel Capital's own Ms. Rebardo would be akin to objecting to simple witness questions such as, "what is your name?" "where do you work?" and "what are your job responsibilities?" *See, e.g.*, Fed. R. Evid. 104 (allowing wide latitude for such background evidence).

### *Conclusion*

For the foregoing reasons, the Court should enter partial summary judgment in Ariel's favor on Counts I and II of the Complaint, deny Ariel Capital's motion for summary judgment, and enter an order: (i) enjoining Ariel Capital and all persons and entities acting in concert with

---

to adduce any evidence of bad faith to profit from Ariel's trademark. (Dkt. 129 at 18.) But as already demonstrated, there is ample evidence of bad faith, including Mr. Bray's admitted prior awareness of Ariel, his Google name search, and his consistent refusal to change the name. If anything, these undisputed facts warrant entry of summary judgment in favor of Ariel on this claim as well.

Ariel Capital, from infringing the ARIEL Marks; and (ii) awarding Ariel damages, prejudgment interest, costs, and attorneys' fees.

Dated:  November 21, 2016

By: /s/ Zachary J. Watters
Arthur Gollwitzer III (6225038)
   agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
   lwdemarte@michaelbest.com
Larry L. Saret (2459337)
   llsaret@michaelbest.com
Zachary J. Watters (6310675)
   zjwatters@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois  60601

*Attorneys for Plaintiff Ariel Investments, LLC*

<u>**Certificate of Service**</u>

I, Zachary J. Watters, an attorney of record in this matter, certify that on November 21, 2016, I caused a copy of the following document:

**Plaintiff/Counter-Defendant Ariel's Combined Reply in Support of Its
Motion for Partial Summary Judgment and Opposition to
Defendant/Counter-Plaintiff Ariel Capital's Motion for Summary Judgment**

to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by email delivery:

Adam Wolek
Brian Noack
Wolek and Noack
333 South Wabash Avenue
Suite 2700
Chicago, IL 60604
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

/s/  Zachary J. Watters
Zachary J. Watters

- 31 -