UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC         ) | |
| ) | |
| Plaintiff/Counter-Defendant,  ) | |
| ) | |
| v.                            ) | Case No. 15-cv-3717 |
| ) | |
| ARIEL CAPITAL ADVISORS LLC    ) | |
| ) | |
| Defendant/Counter-Plaintiff.  ) | |

**Plaintiff Ariel's Motions *in Limine***

Dated: January 19, 2017

By: /s/ Zachary J. Watters
Arthur Gollwitzer III (6225038)
  agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
  lwdemarte@michaelbest.com
Larry L. Saret (2459337)
  llsaret@michaelbest.com
Zachary J. Watters (6310675)
  zjwatters@michaelbest.com
Michael Best & Friedrich LLP
River Point
444 W. Lake Street, Suite 3200
Chicago, Illinois 60606

***Attorneys for Plaintiff Ariel Investments, LLC***

**Table of Contents**

Ariel's Motion No. 1:  Alleged Fraud on the Trademark Office ……….……….……………..1

Ariel's Motion No. 2:  John Rogers…………………………………………….……………...3

Ariel's Motion No. 3:  Ariel Wealth Advisors………………………….………................5

Ariel's Motion No. 4:  Turtle Talk Surveys…………………………….………..................7

Ariel's Motion No. 5:  Christopher Bray's Daughter, Ariel………………………………………8

Statement of Compliance with Meet-and-Confer Requirement……………………………10

Case: 1:15-cv-03717 Document #: 165 Filed: 01/19/17 Page 2 of 13 PageID #:3999

The Court should bar defendant Ariel Capital from introducing at trial the following categories of evidence and argument:

**Ariel's Motion No. 1:  Alleged Fraud on the Trademark Office**

Ariel Capital has asserted a misplaced argument about supposed fraud on the Trademark Office as the centerpiece of its defense in this case.  That issue, however, is before the Court in the parties' summary judgment submissions.  Therefore, the Court should bar Ariel Capital from presenting any evidence or argument that Ariel engaged in fraud when applying for registration of its ARIEL mark if the Court rejects Ariel Capital's fraud argument before trial.  Any evidence or argument in front of the jury regarding supposed fraud would be irrelevant and unfairly prejudicial under Rules 401 and 403.

Specifically, Ariel Capital asserts in its First Amended Affirmative Defense that Ariel falsely represented that the mark ARIEL was being used in commerce at the time it filed its first trademark application in June 1983.  (*See* Dkt. 98 ¶¶ 64-80.)  In response, Ariel explained that Ariel Capital's fraud defense is legally baseless, factually unsupported, and unsuitable for trial for several reasons.  (*See* Dkt. 144 at 23-28.)  For one, it is undisputed that Ariel's founder and CEO, John Rogers, managed money and offered financial advice and investment management services upon opening Ariel's first office in January 1983 – six months prior to filing his first trademark application.  (*See* Dkt. 142, Plaintiff's Additional SOF ¶ 9.)  Moreover, Ariel has presented competent evidence of its use of the mark ARIEL at least as early as the June 1983 application date, including a brochure for its investment services, a photo in Mr. Rogers' first office, and a copy of Mr. Rogers' first client newsletter.  (*See* Dkt. 115, SOF ¶ 5.)  Finally, Mr. Rogers personally began to seek out clients and promote his investment strategies when he started the firm.  (*See* Dkt. 142, Plaintiff's Additional SOF ¶ 9.)  Because Ariel Capital has not

1

presented anything more than argument and conjecture to the contrary, it cannot satisfy its burden of proving by clear and convincing evidence that the mark ARIEL was not used in commerce prior to Ariel's trademark application.

In addition to this evidence of use in commerce, Ariel Capital's defense fails for a second reason: it failed to establish scienter, *i.e.*, that Ariel "knew it was making false statements to the USPTO and that it did so willfully, with intent to deceive." *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 295 F. Supp. 2d 874, 879 (S.D. Ind. 2003). The only persons potentially having personal knowledge of the scienter element – Jessica Berger, who signed the trademark application and John Rogers, who founded the company – are not witnesses on either party's trial witness list. Put simply, there is no possible evidence that Mr. Rogers or anyone else at Ariel intentionally misled anyone.

Consequently, the Court should bar evidence and argument of alleged fraud on the Trademark Office as irrelevant under Federal Rule of Evidence 401 because it does not have any tendency to make more or less probable any fact of consequence in the case. Moreover, such evidence could only serve to unfairly prejudice the jury, outweighing any minimal probative value it may have under Rule 403.

Alternatively, even if the Court permits Ariel Capital to assert this affirmative defense at trial, the Court should admit any supporting evidence only in limited fashion because the defense pertains to only ***one*** of Ariel's ***nine*** trademark registrations and to only ***one*** of Ariel's ***five*** asserted causes of action. (*See* Dkt. 144 at 23-24.) There is a high probability that evidence of fraud relating only to one of the nine registrations at issue in this case would be unfairly prejudicial under Rule 403 because the jury is unlikely to properly limit the effect of the supposed fraud defense to the registration of the mark ARIEL alone as would be required by law.

Thus, at a minimum, admission of this evidence should be accompanied by an instruction explaining to the jury that such evidence has no bearing on Ariel's eight remaining trademark registrations, on the common law trademark ARIEL, nor on its other four causes of action.

For these reasons, the Court should bar argument and evidence of Ariel's alleged fraud on the Trademark Office, including Ariel Capital's proposed exhibits D5-D8, D38-D39, D58, D70, D76, and D78-84 (attached to this Motion as Exs. 1-16) under Rules 401 and 403.

**Ariel's Motion No. 2: John Rogers**

Ariel Capital apparently wishes to convince the jury that Ariel is hiding unfavorable facts simply because Mr. Rogers does not plan to testify at this trial. Consequently, Ariel Capital has proposed Seventh Circuit Pattern Jury Instruction 1.19, which states: "[*Witness*] was mentioned at trial but did not testify. You may, but are not required to, assume that [*Witness's*] testimony would have been unfavorable to [Plaintiff] [Defendant]." Ariel Capital's suggestion that Mr. Rogers would provide injurious testimony is baseless. Accordingly, Ariel objected to this instruction and raises this issue in this Motion to make sure that Ariel Capital cannot expressly or impliedly make this argument before the jury at any stage of the trial.

Stated simply, there is no legal basis for instructing the jury or for trying to persuade it to draw a negative inference from Mr. Rogers not testifying in this case. The Pattern Jury Instruction Committee Comments state this instruction should be given only if there is evidence from which the jury could find (i) that the missing witness was physically available only to the party against whom the inference would be drawn, or (ii) that the missing witness has a relationship with that party that practically renders the testimony unavailable to that party's adversary. *See* 7th Circuit Pattern Instruction 1.19 (2005) (Committee Comments).

Mr. Rogers, however, does not fit these criteria because he is not an absent or missing witness. When the Court denied Ariel Capital's motion to compel Mr. Rogers to appear at deposition, the Court also informed Ariel Capital that it could revisit the request if it did not learn sufficient information from the depositions of Ariel's Rule 30(b)(6) witness or from the deposition of Mellody Hobson (Ariel's president). (*See* Dkt. 96.) Ultimately, however, Ariel Capital chose not to pursue deposing Mr. Rogers and did not even depose Ms. Hobson, presumably because it had whatever it needed from other sources. *See United States v. Mahone*, 537 F.2d 922, 927 (7th Cir. 1976) ("No inference is permissible . . . where the unpresented evidence would be merely cumulative . . . ."). Moreover, Ariel has not derived any unfair advantage, as it has not offered and will not offer any testimony from Mr. Rogers. Thus, the procedural history underlying this issue reveals that Mr. Rogers is not a missing witness who triggers the negative inference instruction or any such argument by Ariel Capital at trial.

### *The articles purporting to quote Mr. Rogers are hearsay.*

Ariel Capital has also identified as trial exhibits several newspaper and magazine articles about Mr. Rogers, some of which purport to include quotations from him. (*See* D38-D39, D58, D76, and D78-84 (attached to this Motion as Exs. 5-7, 9-16).) As revealed in its summary judgment submission, Ariel Capital intends to use these articles to support its fraud defense, *i.e.*, that various statements by Mr. Rogers shed light on when Ariel first used the mark "ARIEL" in commerce. (*See* Dkt. 130, Defendant's SOF ¶¶ 15-22.)

As a threshold matter, this evidence should be barred as irrelevant under Rule 401 if the Court rules in favor of Ariel and rejects Ariel Capital's fraud defense. (*See* Pl. Motion *in Limine* No. 1.) Moreover, even if the fraud defense can be advanced at trial, these articles contain inadmissible hearsay under Rule 802 because they contain out-of-court statements offered for the

4

truth of the matter asserted. *See Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005) (excluding article purporting to quote the defendant as "clearly hearsay" when offered to prove defendant made the statement at issue). Stated simply, Ariel has had no opportunity to cross-examine the authors of the articles regarding the accuracy of either the statements they made or the quotations they attribute to Mr. Rogers. Finally, Ariel Capital is unable to lay any other foundation for these articles as required by Rule 602.

**Ariel's Motion No. 3: Ariel Wealth Advisors**

The Court should preclude Ariel Capital from offering evidence and making argument relating to another company, Ariel Wealth Advisors. Ariel Wealth Advisors in not a party in this case nor is it affiliated in any way with either Ariel or Ariel Capital. Nevertheless, Ariel Capital seeks to inject an irrelevant third party into this case to argue that its existence somehow negates any finding that ***Ariel Capital*** is infringing Ariel's trademark and common law rights. (*See* Dkt. 129 at 12, 15, 16; Dkt. 131 at 9, 12, 15-16.) But this evidence plainly has no place at trial for several reasons.

***First***, this evidence is irrelevant under Rule 401 because it does not have any tendency to make more or less probable any fact of consequence in the case. It is a matter of common sense that the business, marketing, names, and other actions of one unrelated entity have no bearing on whether ***Ariel Capital*** is infringing the ARIEL Marks. Instead, this jury must focus on the marks and actions of the litigants in this case. Moreover, even if Ariel Wealth Advisors offers financial services, the mere existence of ***one*** party that offers allegedly comparable services does not materially dilute the strength of Ariel's marks. *See Lexington Mgmt. Corp v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 283 (S.D.N.Y. 1998) (finding any weakening effect from third-party use of the mark to be "marginal" where only three entities using the mark offered

competitive services); *Fort James Corp. v. Kimberly-Clark Tissue Co.*, 1999 U.S. Dist. LEXIS 16321, at *11-12 (N.D. Ill. Oct. 8, 1999) (noting third-party use of mark may lead to abandonment only if defendant shows widespread use of the mark such that the mark has lost ***all*** significance).

***Second***, even if this evidence had any marginal probative value it is substantially outweighed by the danger of unfair prejudice under Rule 403. Specifically, this evidence and argument could confuse and mislead the jury by injecting the marks, services, and actions of a third company into the present dispute. Moreover, the jury could be left to wonder why Ariel Wealth Advisors has not been sued, which again has no bearing on whether Ariel Capital is liable for its own actions.

***Third and finally***, this evidence is inadmissible under several other Federal Rules of Evidence. For example, Ariel Capital purports to introduce evidence that Ariel Wealth Advisors offers similar services to Ariel in the form of a supposed printout from the firm's website. (*See* D33-35, D87 (attached to this Motion as Exs. 17-20).) But this document lacks the requisite record foundation under Rule 602, has not been authenticated as required by Rule 901, and constitutes inadmissible hearsay under Rule 802 (because Ariel Capital is offering this out-of-court statement for the truth of the matter asserted, *i.e.*, that Ariel Wealth Advisors offers the services reflected in the document). These same failings infect the other proposed Ariel Wealth Advisors exhibits.

For all these reasons, the Court should bar this evidence and argument at trial, including Ariel Capital's proposed exhibits D33-35 and D87.

**Ariel's Motion No. 4: Turtle Talk Surveys**

The Court should bar from trial any evidence or argument regarding two "Turtle Talk Surveys." These surveys of Ariel shareholders and advisors were conducted by an outside consultant in 2015 and 2016. (*See* D56-D57 (attached to this Motion as Exs. 21-22).)

Notably, Ariel Capital has ***objected*** to the admissibility of similar evidence proposed as an exhibit by Ariel, specifically a "Shareholder Communications: User Experience Survey" from May 2014. Ariel Capital argued that this survey is inadmissible under Federal Rules 701and 702 because lay witnesses cannot testify regarding survey results, none of Ariel's witnesses personally performed the surveys, and there has been no showing that the survey satisfies *Daubert* and Rule 702. Upon reflection, Ariel now concedes that Ariel Capital's objections are well-founded. But these failings apply with equal force against the admissibility of the Turtle Talk Surveys. Indeed, Ariel Capital seeks to admit results of surveys unsupported by testimony from any witness with specialized or personal knowledge of their methodology or reliability. Thus, the Court should bar the Turtle Talk Surveys from trial under Rules 701 and 702.

In addition to these fatal evidentiary failings, the Court should bar these surveys as irrelevant under Rule 401. Ariel Capital wants to use these surveys to argue that the ARIEL Marks do not have brand recognition among consumers based on responses from Ariel's broker–dealer clients wishing Ariel had more brand awareness among consumers. (*See* Dkt. 131 at 13.) But the fact that some clients report wishing that Ariel have "more brand awareness" does not mean that Ariel's brand awareness is weak. Moreover, as companies often have several trademarks, customer association of Ariel with its turtle trademark and the concept of "patience" does not mean that Ariel lacks strong customer association with its ARIEL Marks. Indeed, Ariel

7

Capital has not cited any evidence regarding what these survey reports were intended to reveal, how they were conducted, or what role, if any, the ARIEL Marks at issue in this case played in the surveys. So there is no discernable nexus between these surveys and Ariel Capital's defenses in this case. Thus, the Turtle Talk Surveys are irrelevant and should be excluded from trial.

For all these reasons, the Court should bar this evidence and argument at trial, including Ariel Capital's proposed exhibits D56-D57.

**Ariel's Motion No. 5: Christopher Bray's Daughter, Ariel**

Christopher Bray has testified – and presumably wishes to do so again at trial – that he named Ariel Capital after Ariel Bray, his daughter. Ariel of course has no issue with this testimony and will stipulate that Mr. Bray named his company after his daughter. But Mr. Bray also offered additional testimony – and Ariel Capital seeks to admit other evidence – tangential evidence that is irrelevant and unfairly prejudicial. The Court should therefore bar the following evidence and testimony from trial under Rules 401 and 403:

***Photograph of Ariel Bray:*** Ariel Capital has tendered a photograph of Mr. Bray's daughter Ariel as a demonstrative exhibit. (*See* D45-D46 (attached to this Motion as Exs. 23-24).) The Court should not allow this for several reasons. First, it is not a "demonstrative" exhibit because it does not help explain any fact in the case. Second, this photograph is irrelevant under Rule 401 because it does not have any tendency to make more or less probable any fact of consequence in the case. Third, this evidence cannot pass muster under Rule 403 because it is unfairly prejudicial, a transparent ploy to tug at the jury's heartstrings and appeal to its sympathies by showing a picture of a young child.

***Ariel's miraculous conception:*** Mr. Bray elaborated on naming the firm after his daughter by testifying that he and his wife had trouble having a child, deeming her eventual

8

conception and birth as "miraculous." (*See* D90 at 73:22-75:9 (attached to this Motion as Ex. 25), D91 at 202:7-203:10 (attached to this Motion as Ex. 26).) This has nothing to do with Ariel's claims or Ariel Capital's defenses. The Court should therefore bar this and similar testimony at trial as irrelevant and unfairly prejudicial, as it unfairly appeals to the jury's emotions and sympathies.

*Mr. Bray's ministry work and biblical references:* Finally, Mr. Bray testified regarding his longtime work for Ariel Ministries and also offered insight into the biblical origins behind his daughter's name. (*See* D48-49 (attached to this Motion as Exs. 27-28).) The Court should preclude Ariel Capital from offering this testimony at trial for the same reasons: it is irrelevant, as it has no tendency to make any contested fact more or less true, and it is unfairly prejudicial, because its sole purpose is to invoke juror sympathy toward Mr. Bray based on his religious ideals, ministry work, daughter's conception, or some combination of those factors.

For all these reasons, the Court should bar this evidence and argument at trial, including Ariel Capital's proposed exhibits D48-49.

Dated: January 19, 2017

By: /s/ Zachary J. Watters
Arthur Gollwitzer III (6225038)
   agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
   lwdemarte@michaelbest.com
Larry L. Saret (2459337)
   llsaret@michaelbest.com
Zachary J. Watters (6310675)
   zjwatters@michaelbest.com
Michael Best & Friedrich LLP
River Point
444 W. Lake Street, Suite 3200
Chicago, Illinois 60606

***Attorneys for Plaintiff Ariel Investments, LLC***

**Statement of Compliance with Meet-and-Confer Requirement**

The parties conferred on these motions on January 17 and 18, 2017, and determined that the matters upon which each ruling is sought is actually in dispute.

/s/ Zachary J. Watters
Zachary J. Watters

*Attorney for Plaintiff*

**Certificate of Service**

       I, Zachary J. Watters, an attorney of record in this matter, certify that on January 19, 2017, I caused a copy of **Plaintiff Ariel's *Motions in Limine*** to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by e-mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
333 South Wabash Avenue
Suite 2700
Chicago, IL 60604
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

                                                      /s/ Zachary J. Watters
                                                      Zachary J. Watters