# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Answers to Defendant's First Set of Interrogatories**

Plaintiff Ariel Investments, LLC, ("Ariel Investments" or "Plaintiff") responds to Defendant Ariel Capital Advisors LLC's ("Ariel Capital") First Set of Interrogatories dated January 27, 2016, pursuant to Federal Rules of Civil Procedure 26 and 33 as follows:

### *General Objections*

The following General Objections are expressly incorporated by reference into Plaintiff's responses to each of the Interrogatories set forth below. Each of Plaintiff's responses is made without waiving these General Objections.

A. Plaintiff objects to these Interrogatories to the extent that they seek documents or information protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. To the extent these Interrogatories seek privileged materials created since the beginning of this litigation, April 28, 2015, solely for the purpose of this litigation, Plaintiff will not identify those materials on a privilege log.

B. Plaintiff objects to these Interrogatories to the extent they seek documents or information that contain confidential or proprietary information belonging to Plaintiff unless all

such documents and information are produced pursuant to the confidentiality order entered by the Court on August 10, 2015. (Dkt. 38.)

C.      Plaintiff objects to these Interrogatories to the extent that the accompanying three pages of "Instructions" and "Definitions" purport to impose upon Plaintiff duties or responsibilities greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and the orders of this Court as exemplified below:

a.      Plaintiff objects to definitions of "You," or "Your" as they purport to include all agents, employees, and consultants, among others. These definitions are overly broad, burdensome, and impracticable.

b.      Plaintiff objects to Instruction No. 3 because it purports to require information on a privilege log beyond that which is required by Fed. R. Civ. P. 26(b)(5)(A). Plaintiff will log withheld documents according to Rule 26(b)(5)(A).

c.      Plaintiff objects to the definition of "document" because Rule 34 already defines that term. Plaintiff will respond to these Interrogatories in light of the definition of document provided in Rule 34.

### *Answers and Objections*

1.      Identify each person who has, claims to have, or whom you claim or believe may have knowledge, documents, or information pertaining to any fact alleged in the pleadings filed in the Action or any fact underlying the subject matter of this dispute and state the specific nature and substance of the knowledge, documents, or information you believe that each person identified in response to this request has or may have and identify all documents responsive to this interrogatory to this request.

**ANSWER:**      Ariel Investments objects to this Interrogatory on the grounds that it is overly broad and imposes a burden that is not proportional to the needs of the case. Subject to and without waiving its general and specific objections, Ariel Investments incorporates by reference

- 2 -

the information contained in its Rule 26(a)(1) disclosures dated August 4, 2015. Ariel

Investments also identifies the following individuals: Khoa Ho and John Rogers. Khoa Ho has

knowledge of marketing materials and sponsorships. John Rogers has knowledge regarding

Ariel Investments' adoption of the Ariel name and registration of the ARIEL mark. These

individuals may be contacted only through Ariel Investments' attorneys of record in this case.

     2.    Identify each product and/or service that you have provided or presently provide or offer for sale for use by consumers and for each, describe the product or service in detail and state when the product or service was first made available to consumers.

**<u>ANSWER:</u>**    Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning. Subject to and

without waiving its general and specific objections, Ariel Investments states that it offers,

without limitation, the following products and services:

- Six current mutual funds:
  - Ariel Fund  (Investor Class November 6, 1986 – present; Institutional Class December 30, 2011 – present)
  - Ariel Appreciation Fund (Investor Class December 1, 1986 – present; Institutional Class December 30, 2011 – present)
  - Ariel Discovery Fund (Investor Class January 31, 2011 – present; Institutional Class December 30, 2011 – present)
  - Ariel Focus Fund (Investor Class June 30, 2005 – present; Institutional Class December 30, 2011 – present)
  - Ariel Global Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)
  - Ariel International Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)

- One former mutual fund:
  - Ariel Premier Bond Fund (Investor Class October 1, 1995 – June 10, 2005; No Institutional Class)

- Separately managed accounts in the following strategies or products:
  - Small-cap value (September 30, 1983 – present)
  - Small-/mid-cap value (December 31, 2000 – present)
  - Mid-cap value (March 31, 1990 – present)
  - Focused value strategy (March 31, 2005 – present)
  - Micro-cap value (July 31, 2002 – present)

       o   Small-cap deep value (October 31, 2013 – present)
       o   Global strategy (December 31, 2011 – present)
       o   International (developed markets) (December 31, 2011 – present)
       o   International (developed & emerging markets) (December 31, 2011 – present)

With regard to the remaining information requested by this Interrogatory, Ariel Investments answers this Interrogatory by producing business records pursuant to Federal Rule of Civil Procedure 33(d). Ariel Investments will make this production within 30 days.

3.      Identify all of your marks, whether intended to be used, currently in use, previously in use, cancelled, abandoned, or projected to be in use, adopted, and/or registered, including any marks that you have or are using to identify any of your products or services. For each mark identified in response to this Interrogatory: (a) state whether the mark is still in use in commerce today and, if so list each product or service identified by or to be identified by the mark; and (b) identify the market, trade, or distribution channel in which each mark is used and in which each product or service is sold or distributed.

**ANSWER:**    Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrase "and/or" is not a proper English word and has an ambiguous meaning. Moreover, much of the information requested by this Interrogatory is not relevant to any party's claim or defense in this matter. Ariel Capital's infringement arises from its use of trademarks which are confusing similar to those marks of Ariel Investments identified in paragraph 12 of the Complaint. Subject to and without waiving its general and specific objections, Ariel Investments states the following:

The marks at issue in this case are in use today in connection with the products and services identified in response to Interrogatory No. 2 and the trademark registrations identified in paragraph 12 of the Complaint. The market, trade, or distribution channel in which each mark relevant to this litigation is used and in which the products and services identified in response to Interrogatory No. 2 are sold or distributed include broker-dealers, Ariel Investments' website, brochures, national publications (identified in paragraph 15 of the Complaint), other media

outlets (identified in paragraph 16 of the Complaint), and through sponsorships and civic events (identified in paragraph 17 of the Complaint).

4.       Identify and describe in detail all instances that you claim demonstrates any confusion created by the alleged use of your mark by Defendant Ariel Capital Advisors, LLC. An adequate response to this interrogatory would include the identity of each person that you have knowledge of who received any contact evidencing confusion, the identity and contact information for each person that was allegedly confused, a description of any response from or action taken by you relating to each instance and the identity of and all documents related to each alleged instance of confusion.

**ANSWER:**       Subject to and without waiving its general objections, Ariel Investments states the following:

Approximately 12 months ago, a woman in Naples, Florida called Mareilé Cusack, Ariel Investments' General Counsel, to inquire about a property in Naples, Florida. The woman stated that the property was listed under the name "Ariel" and that when she performed a Google search to contact the company listed at the property, she could only find Ariel Investments. Ms. Cusack assured the caller that Ariel Investments did not own or lease the property. The women then stated she must have been mistaken and hung up.

Approximately 12 months ago, Phyllis Brady, head of Human Capital at Ariel Investments, received a phone call from someone who had purportedly first contacted Ariel Capital in Naples, Florida to obtain a reference for a candidate the caller was considering hiring. The caller stated that someone at Ariel Capital had told her that Ariel Investments and Ariel Capital were affiliated companies. Ms. Brady explained to the caller that there is no affiliation between Ariel Investments and Ariel Capital.

Ariel Investments believes that on or about February 5, 2016, Defendant received a telephone call to its Naples office from phone number (908) 400-8730. The caller spoke with one of Defendant's employees and asked to speak to "Cheryl Hagen." When the caller was told

- 5 -

that there was no one associated with Defendant with the name "Cheryl Hagen," the caller

inquired, "isn't this Ariel Investments?" When the caller was told that Defendant had no

affiliation with Ariel Investments, the caller ended the call.

5.      Identify each item of damage you claim, whether as an affirmative claim or as a
setoff, and include in your answer: the count to which the item of damage relates; the category
into which each item of damages falls, i.e. general damages, special or consequential damages
(such as lost profits), interest, and any other relevant categories; the factual basis for each item of
damages; and an explanation of how you computed each item of damages, including any
mathematical formula used; identify each document pertaining to your response to this
interrogatory; and identify all persons with knowledge of the information provided in response to
this interrogatory.

**ANSWER:**      Ariel Investments objects to this Interrogatory as premature. At this stage in the

case, Ariel Investments has not yet calculated the full extent of the damages resulting from Ariel

Capital's willful infringement. Ariel Investments is at least entitled to its damages, costs,

attorneys' fees (from the date of its cease and desist letter through the conclusion of this

litigation), and equitable relief arising out of its claims. Ariel Investments anticipates seeking all

categories of relief available under the Lanham Act and applicable state law, including but not

limited to Ariel Capital's profits. Ariel Investments' investigation continues, and Ariel

Investments will supplement this interrogatory response as more information becomes available.

6.      Please provide the name and complete contact information of each person whom
you may use as an expert witness at the trial of this Action and state in detail the substance of the
opinions to be provided or that you expect to be provided by each person whom you may use as
an expert witness at trial.

**ANSWER:**      Ariel Investments objects to this Interrogatory at premature. At this stage in the

case, Ariel Investments has not yet determined what expert witnesses, if any, it will call to testify

in this matter. Ariel will make such disclosures as required by the Court's scheduling order

dated January 12, 2016 (Dkt. 65) and all applicable rules including Federal Rule of Civil

Procedure 26(a)(2).

7.     Identify each market, consumer, and/or trade survey or investigation conducted by you or on your behalf which related in any way to consumer recognition or awareness of your marks, all documents which relate in any way to such survey or investigation, each person who conducted or is conducting such survey or investigation, the results of such survey or investigation, and all documents which relate in any way to such survey or investigation.

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning.  Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it

requests information related to marks not at issue in this case.  Additionally, Ariel Investments

objects to this Interrogatory to the extent it requests information protected from discovery by the

work-product doctrine.

Subject to the foregoing specific and general objections, Ariel Investments answers this

Interrogatory by producing non-privileged, business records pursuant to Federal Rule of Civil

Procedure 33(d).  Ariel Investments will make this production within 30 days.

8.     Identify each person to whom you have licensed or authorized the use of your marks and identify the products and/or services that you have licensed or authorized for such person(s).

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning.  Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it

requests information related to marks not at issue in this case, such as information related to

licenses and authorizations outside the financial services industry, and information related to

licenses and authorizations which occurred prior to the inception of Ariel Capital.  Ariel

Investments will limit its answer to the marks at issue in this case.

Subject to and without waiving its general and specific objections, Ariel Investments

responds that it licenses the marks identified in the Complaint at paragraph 12 to the following

entities: Ariel Investment Trust, Ariel Distributors LLC, Ariel Education Initiative (f/k/a Ariel Foundation), and Ariel Community Academy. Additionally, Ariel Investments licenses the marks identified in the Complaint at paragraph 12 for use by third-party brokers in connection with offering Ariel Investment's mutual funds. Finally, Ariel Investments licenses the marks identified in the Complaint at paragraph 12 to organizations and events that Ariel Investments sponsors.

9.     Other than the Action, identify any proceeding to which you are presently or have ever been a party that involved any claim regarding your marks.

**ANSWER:**     Ariel Investments objects to this Interrogatory as broad and unduly burdensome to the extent it requests information related to marks not at issue in this case. To the extent this Interrogatory seeks the identification of any proceedings to which Ariel Investments is presently or has ever been a party that involved any claim regarding the marks at issue in this litigation, Ariel Investments will answer. Subject to and without waiving its general and specific objections, Ariel Investments responds that Ariel Investments was involved in the following proceedings:

a.     *Ariel Capital Management, LLC v. Dauben, Inc. d/b/a Texas International Property Associates and Joseph Dauben,* U.S. Dist. Ct. N.D. of Texas, Dallas Division, Civil Action No. 3:07-CV-1475-P, initiated on August 28, 2007 and dismissed on October 3, 2007.

b.     *Ariel Investments, LLC v. Morneau Sobero Limited Partnership*, Trademark Trial and Appeal Board Opposition No. 91198115, initiated on January 7, 2011 and terminated on August 22, 2011.

- 8 -

10. Identify and describe in detail your knowledge of any person, not a party to this Action, which has used or is using any of your marks and identify each such person, each such mark, the products and services sold or offered for sale in connection with each such mark, the circumstances under which you learned of the use, and identify all documents related to the response to this Interrogatory.

**ANSWER:** Ariel Investments objects to this Interrogatory as vague and ambiguous because the phrase "detail you knowledge of any person responsible" is unclear. Moreover, Ariel Investments objects to this Interrogatory as broad and unduly burdensome to the extent it requests information related to marks not at issue in this case. To the extent that this Interrogatory seeks the names of individuals or entities which have used or are using Ariel Investments' marks at issue in this case, Ariel Investments will answer.

Subject to and without waiving its general and specific objections, Ariel Investments responds that Ariel Wealth Advisors and Ariel Investment Management (an entity located in Uruguay) have used or are using an "Ariel" name or mark. Additionally, Ariel Investments answers this Interrogatory by producing business records pursuant to Federal Rule of Civil Procedure 33(d). Ariel Investments will make this production within 30 days.

11. Identify and describe in detail your knowledge of any person responsible for adoption of the word "Ariel" in your name, describe each such person's explanation related to the adoption of the word "Ariel" in your name, and identify all documents related to the response to this Interrogatory.

**ANSWER:** Ariel Investments objects to this Interrogatory as vague and ambiguous because the phrase "detail your knowledge of any person responsible" is unclear. Ariel Investments objects to this Interrogatory on the grounds that it is not relevant to any party's claim or defense in this matter. Ariel Capital's infringement arises from its use of marks that are confusing similar to Ariel Investments' ARIEL marks identified in paragraph 12 of the Complaint.

To the extent that this Interrogatory seeks the names of individuals who were responsible for the adoption of the word "Ariel" in Ariel Investments' name, Ariel Investments will answer.

- 9 -

Subject to and without waiving its general and specific objections, Ariel Investments states that

John Rogers was responsible for the adoption of the word "Ariel" in Ariel Investments' name.

12.    Identify and describe in detail your knowledge of any person responsible for adoption of any representation of an ariel gazelle for use in any of your former or current promotional materials, describe each such person's explanation related to the adoption any representation of an ariel gazelle for use in any of your former or current promotional materials, and identify all documents related to the response to this Interrogatory.

**ANSWER:**    Ariel Investments objects to this Interrogatory on the grounds that it is not

relevant to any party's claim or defense in this matter.  Ariel Capital's infringement arises from

its use of marks that are confusing similar to Ariel Investments' ARIEL marks identified in

paragraph 12 of the Complaint and is not related to any graphic representation of a gazelle, or

any other graphic.

13.    Identify and describe in detail your knowledge of any person responsible for adoption of any representation of a reptile for use in any of your former or current promotional materials, describe each such person's explanation related to the adoption any representation of a reptile for use in any of your former or current promotional materials, and identify all documents related to the response to this Interrogatory.

**ANSWER:**    Ariel Investments objects to this Interrogatory on the grounds that it is not

relevant to any party's claim or defense in this matter.  Ariel Capital's infringement arises from

its use of marks that are confusing similar to Ariel Investments' ARIEL marks identified in

paragraph 12 of the Complaint and is not related to any graphic representation of a reptile, or any

other graphic.

14.    Identify and describe in detail your knowledge of any person responsible for the creation, editing, or approval of any specimen provided with the original and any amended application filed with the USPTO for the "Ariel" mark and identify all documents related to the response to this Interrogatory.

**ANSWER:**    Ariel Investments objects to this Interrogatory as vague and ambiguous since the

phrases "detail your knowledge of any person responsible" and "amended application" are

unclear.

To the extent that this Interrogatory seeks the names of individuals who were responsible for the creation, editing, or approval of any specimen provided with Ariel Investments' application filed with the USPTO for the "Ariel" mark, Ariel Investments will answer. Subject to and without waiving its general and specific objections, Ariel Investments states that John Rogers and Mellody Hobson were responsible for the creation, editing, or approval of specimens provided with Ariel Investments' application filed with the USPTO.

15. Identify and describe in detail your knowledge of any person employed by you who provides estate planning services to the purchasers of your products or services.

**ANSWER:** Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "estate planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

16. Identify and describe in detail your knowledge of any person employed by you who provides tax planning services to the purchasers of your products or services.

**ANSWER:** Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "tax planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

17. Identify and describe in detail your knowledge of any person employed by you who provides asset protection planning services to the purchasers of your products or services.

**ANSWER:** Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "asset protection planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

18.     Identify and describe in detail your knowledge of any person employed by you who provides retirement planning services to the purchasers of your products or services.

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrases "retirement planning services" and "detail your knowledge of any person" are undefined

and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel

Investments is unable to answer this Interrogatory.

Dated:  March 16, 2016                    By: */s/ Zachary J. Watters*
                                          Arthur Gollwitzer III (6225038)
                                            agollwitzer@michaelbest.com
                                          Luke W. DeMarte (6269621)
                                            lwdemarte@michaelbest.com
                                          Larry L. Saret (2459337)
                                            llsaret@michaelbest.com
                                          Zachary J. Watters (6310675)
                                            zjwatters@michaelbest.com
                                          MICHAEL BEST & FRIEDRICH LLP
                                          Two Prudential Plaza
                                          180 N. Stetson Avenue, Suite 2000
                                          Chicago, Illinois  60601
                                          Tel:  (312) 222-0800
                                          Fax:  (312) 222-0818

                                          *Attorneys for Plaintiff Ariel Investments, LLC*

### Certificate of Service

I, Zachary J. Watters, an attorney of record in this matter, certify that on March 16, 2016, I caused a copy of the following document:

### Plaintiff's Answers to Defendant's First Set of Interrogatories

to be served upon the following counsel of record via electronic mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
233 S. Wacker Drive
21st Floor
Chicago, IL 60606
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

*/s/ Zachary J. Watters*
Zachary J. Watters

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories**

Plaintiff Ariel Investments, LLC, ("Ariel Investments" or "Plaintiff") supplements its response to Defendant Ariel Capital Advisors LLC's ("Ariel Capital") First Set of Interrogatories dated January 27, 2016, pursuant to Federal Rules of Civil Procedure 26 and 33 as follows:

*General Objections*

The following General Objections are expressly incorporated by reference into Plaintiff's responses to each of the Interrogatories set forth below. Each of Plaintiff's responses is made without waiving these General Objections.

A.       Plaintiff objects to these Interrogatories to the extent that they seek documents or information protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. To the extent these Interrogatories seek privileged materials created since the beginning of this litigation, April 28, 2015, solely for the purpose of this litigation, Plaintiff will not identify those materials on a privilege log.

B.       Plaintiff objects to these Interrogatories to the extent they seek documents or information that contain confidential or proprietary information belonging to Plaintiff unless all

such documents and information are produced pursuant to the confidentiality order entered by the Court on August 10, 2015. (Dkt. 38.)

C.      Plaintiff objects to these Interrogatories to the extent that the accompanying three pages of "Instructions" and "Definitions" purport to impose upon Plaintiff duties or responsibilities greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and the orders of this Court as exemplified below:

a.      Plaintiff objects to definitions of "You," or "Your" as they purport to include all agents, employees, and consultants, among others. These definitions are overly broad, burdensome, and impracticable.

b.      Plaintiff objects to Instruction No. 3 because it purports to require information on a privilege log beyond that which is required by Fed. R. Civ. P. 26(b)(5)(A). Plaintiff will log withheld documents according to Rule 26(b)(5)(A).

c.      Plaintiff objects to the definition of "document" because Rule 34 already defines that term. Plaintiff will respond to these Interrogatories in light of the definition of document provided in Rule 34.

### *Answers and Objections*

2.      Identify each product and/or service that you have provided or presently provide or offer for sale for use by consumers and for each, describe the product or service in detail and state when the product or service was first made available to consumers.

**<u>ANSWER:</u>**      Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrase "and/or" is not a proper English word and has an ambiguous meaning. Subject to and without waiving its general and specific objections, Ariel Investments states that it offers, without limitation, the following products and services:

- 2 -

- Six current mutual funds:
  - Ariel Fund (Investor Class November 6, 1986 – present; Institutional Class December 30, 2011 – present)
  - Ariel Appreciation Fund (Investor Class December 1, 1986 – present; Institutional Class December 30, 2011 – present)
  - Ariel Discovery Fund (Investor Class January 31, 2011 – present; Institutional Class December 30, 2011 – present)
  - Ariel Focus Fund (Investor Class June 30, 2005 – present; Institutional Class December 30, 2011 – present)
  - Ariel Global Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)
  - Ariel International Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)

- One former mutual fund:
  - Ariel Premier Bond Fund (Investor Class October 1, 1995 – June 10, 2005; No Institutional Class)

- Separately managed accounts in the following strategies or products:
  - Small-cap value (September 30, 1983 – present)
  - Small-/mid-cap value (December 31, 2000 – present)
  - Mid-cap value (March 31, 1990 – present)
  - Focused value strategy (March 31, 2005 – present)
  - Micro-cap value (July 31, 2002 – present)
  - Small-cap deep value (October 31, 2013 – present)
  - Global strategy (December 31, 2011 – present)
  - International (developed markets) (December 31, 2011 – present)
  - International (developed & emerging markets) (December 31, 2011 – present)

With regard to the remaining information requested by this Interrogatory, Ariel Investments answers this Interrogatory by producing business records pursuant to Federal Rule of Civil Procedure 33(d). Ariel Investments will make this production within 30 days.

***Supplemental Answer:***

Descriptions of Ariel Investments' separately managed accounts can be found on its website at https://www.arielinvestments.com/ariel-separate-accounts/. Ariel Investments further answers this Interrogatory by producing business records bearing Bates Nos. AI000361-000411; AI000739-000771; and pursuant to Federal Rule of Civil Procedure 33(d).

7.    Identify each market, consumer, and/or trade survey or investigation conducted by you or on your behalf which related in any way to consumer recognition or awareness of your marks, all documents which relate in any way to such survey or investigation, each person who conducted or is conducting such survey or investigation, the results of such survey or investigation, and all documents which relate in any way to such survey or investigation.

**ANSWER:**    Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning.  Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it

requests information related to marks not at issue in this case.  Additionally, Ariel Investments

objects to this Interrogatory to the extent it requests information protected from discovery by the

work-product doctrine.

Subject to the foregoing specific and general objections, Ariel Investments answers this

Interrogatory by producing non-privileged, business records pursuant to Federal Rule of Civil

Procedure 33(d).  Ariel Investments will make this production within 30 days.

*Supplemental Answer:*

Ariel Investments further answers this Interrogatory by producing business records

bearing Bates Nos. AI005336-005375 and AI005420-005496 pursuant to Federal Rule of Civil

Procedure 33(d).

8.    Identify each person to whom you have licensed or authorized the use of your marks and identify the products and/or services that you have licensed or authorized for such person(s).

**ANSWER:**    Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning.  Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it

requests information related to marks not at issue in this case, such as information related to

licenses and authorizations outside the financial services industry, and information related to

licenses and authorizations which occurred prior to the inception of Ariel Capital. Ariel

Investments will limit its answer to the marks at issue in this case.

Subject to and without waiving its general and specific objections, Ariel Investments

responds that it licenses the marks identified in the Complaint at paragraph 12 to the following

entities: Ariel Investment Trust, Ariel Distributors LLC, Ariel Education Initiative (f/k/a Ariel

Foundation), and Ariel Community Academy. Additionally, Ariel Investments licenses the

marks identified in the Complaint at paragraph 12 for use by third-party brokers in connection

with offering Ariel Investment's mutual funds. Finally, Ariel Investments licenses the marks

identified in the Complaint at paragraph 12 to organizations and events that Ariel Investments

sponsors.

***Supplemental Answer:***

Upon further investigation, Ariel Investments authorizes third-party brokers,

organizations, and events that Ariel Investments sponsors to use the marks identified in the

Complaint at Paragraph 12. Ariel Investments further answers this Interrogatory by producing

non-privileged, business records bearing Bates Nos. AI005936-5938 pursuant to Federal Rule of

Civil Procedure 33(d).

10.    Identify and describe in detail your knowledge of any person, not a party to this
Action, which has used or is using any of your marks and identify each such person, each such
mark, the products and services sold or offered for sale in connection with each such mark, the
circumstances under which you learned of the use, and identify all documents related to the
response to this Interrogatory.

**ANSWER:**    Ariel Investments objects to this Interrogatory as vague and ambiguous because

the phrase "detail you knowledge of any person responsible" is unclear. Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it

requests information related to marks not at issue in this case. To the extent that this

- 5 -

Interrogatory seeks the names of individuals or entities which have used or are using Ariel Investments' marks at issue in this case, Ariel Investments will answer.

Subject to and without waiving its general and specific objections, Ariel Investments responds that Ariel Wealth Advisors and Ariel Investment Management (an entity located in Uruguay) have used or are using an "Ariel" name or mark. Additionally, Ariel Investments answers this Interrogatory by producing non-privileged, business records pursuant to Federal Rule of Civil Procedure 33(d). Ariel Investments will make this production within 30 days.

***Supplemental Answer:***

Ariel Investments learned of Ariel Wealth Advisors' use of the Ariel mark during a meet-and-greet event hosted by Ariel Investments in the North-East region in 2009 or 2010 at which Ariel Investments' Vice President of Institutional Marketing, Malik T. Murray, spoke with Kevin M. Gibney of Ariel Wealth Advisors.

Ariel Investments believes that it learned of Ariel Investment Management's use of the Ariel mark in Uruguay through an internet search.

Finally, Ariel Investments answers this Interrogatory by producing business records bearing Bates Nos. AI005156-005169; AI005177-005184; AI005193-005207, and AI005282-005284 pursuant to Federal Rule of Civil Procedure 33(d).

Dated:  May 10, 2016

By: */s/ Arthur Gollwitzer III*
Arthur Gollwitzer III (6225038)
  agollwitzer@michaelbest.com
Luke W. DeMarte (6269621)
  lwdemarte@michaelbest.com
Larry L. Saret (2459337)
  llsaret@michaelbest.com
Zachary J. Watters (6310675)
  zjwatters@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois  60601
Tel:  (312) 222-0800
Fax:  (312) 222-0818

*Attorneys for Plaintiff Ariel Investments, LLC*

## Certificate of Service

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on May 10, 2016, I caused a copy of the following document:

**Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories**

to be served upon the following counsel of record via electronic mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
233 S. Wacker Drive
21st Floor
Chicago, IL 60606
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Second Supplemental Answers to Defendant's First Set of Interrogatories**

Plaintiff Ariel Investments, LLC, ("Ariel Investments" or "Plaintiff") responds to Defendant Ariel Capital Advisors LLC's ("Ariel Capital") First Set of Interrogatories dated January 27, 2016, pursuant to Federal Rules of Civil Procedure 26 and 33 as follows:

*General Objections*

The following General Objections are expressly incorporated by reference into Plaintiff's responses to each of the Interrogatories set forth below. Each of Plaintiff's responses is made without waiving these General Objections.

A.      Plaintiff objects to these Interrogatories to the extent that they seek documents or information protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. To the extent these Interrogatories seek privileged materials created since the beginning of this litigation, April 28, 2015, solely for the purpose of this litigation, Plaintiff will not identify those materials on a privilege log.

B.      Plaintiff objects to these Interrogatories to the extent they seek documents or information that contain confidential or proprietary information belonging to Plaintiff unless all

such documents and information are produced pursuant to the confidentiality order entered by the Court on August 10, 2015. (Dkt. 38.)

   C. Plaintiff objects to these Interrogatories to the extent that the accompanying three pages of "Instructions" and "Definitions" purport to impose upon Plaintiff duties or responsibilities greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and the orders of this Court as exemplified below:

    a. Plaintiff objects to definitions of "You," or "Your" as they purport to include all agents, employees, and consultants, among others. These definitions are overly broad, burdensome, and impracticable.

    b. Plaintiff objects to Instruction No. 3 because it purports to require information on a privilege log beyond that which is required by Fed. R. Civ. P. 26(b)(5)(A). Plaintiff will log withheld documents according to Rule 26(b)(5)(A).

    c. Plaintiff objects to the definition of "document" because Rule 34 already defines that term. Plaintiff will respond to these Interrogatories in light of the definition of document provided in Rule 34.

### *Answers and Objections*

   15. Identify and describe in detail your knowledge of any person employed by you who provides estate planning services to the purchasers of your products or services.

**<u>ANSWER:</u>** Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "estate planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

***SUPPLEMENTAL ANSWER:*** Based on Ariel Investments' understanding of the phrase "estate planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide estate planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Todd R. Trubey, Ph.D.
Camille M. El-Amin
Melissa J. Hill
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera
Merrillyn J. Kosier
Khoa X. Ho
James R. Rooney, CPA
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis
Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

16.     Identify and describe in detail your knowledge of any person employed by you who provides tax planning services to the purchasers of your products or services.

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "tax planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel Investments is unable to answer this Interrogatory.

***SUPPLEMENTAL ANSWER:***     Based on Ariel Investments' understanding of the phrase "tax planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide tax planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera

Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

17.     Identify and describe in detail your knowledge of any person employed by you who provides asset protection planning services to the purchasers of your products or services.

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "asset protection planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel Investments is unable to answer this Interrogatory.

***SUPPLEMENTAL ANSWER:***     Based on Ariel Investments' understanding of the phrase "asset protection planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide asset protection planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis
Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

18.     Identify and describe in detail your knowledge of any person employed by you who provides retirement planning services to the purchasers of your products or services.

**ANSWER:**     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "retirement planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel Investments is unable to answer this Interrogatory.

**_SUPPLEMENTAL ANSWER:_**     Based on Ariel Investments' understanding of the phrase "retirement planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide retirement planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Todd R. Trubey, Ph.D.
Camille M. El-Amin
Melissa J. Hill
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera
Merrillyn J. Kosier

Khoa X. Ho
James R. Rooney, CPA
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis
Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.


Dated: May 13, 2016                     By: */s/ Zachary J. Watters*
                                        Arthur Gollwitzer III (6225038)
                                           agollwitzer@michaelbest.com
                                        Luke W. DeMarte (6269621)
                                           lwdemarte@michaelbest.com
                                        Larry L. Saret (2459337)
                                           llsaret@michaelbest.com
                                        Zachary J. Watters (6310675)
                                           zjwatters@michaelbest.com
                                        MICHAEL BEST & FRIEDRICH LLP
                                        Two Prudential Plaza
                                        180 N. Stetson Avenue, Suite 2000
                                        Chicago, Illinois 60601
                                        Tel: (312) 222-0800
                                        Fax: (312) 222-0818

                                        ***Attorneys for Plaintiff Ariel Investments, LLC***

## <u>Certificate of Service</u>

I, Zachary J. Watters, an attorney of record in this matter, certify that on May 13, 2016, I caused a copy of the following document:

**Plaintiff's Second Supplemental Answers to Defendant's First Set of Interrogatories**

to be served upon the following counsel of record via U.S. Mail and electronic mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
233 S. Wacker Drive
21st Floor
Chicago, IL 60606
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

*/s/ Zachary J. Watters*
Zachary J. Watters

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-3717 |
| | ) | |
| ARIEL CAPITAL ADVISORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Plaintiff's Third Supplemental Answers to Defendant's First Set of Interrogatories</u>**

Plaintiff Ariel Investments, LLC, ("Ariel Investments" or "Plaintiff") responds to Defendant Ariel Capital Advisors LLC's ("Ariel Capital") First Set of Interrogatories dated January 27, 2016, pursuant to Federal Rules of Civil Procedure 26 and 33 as follows:

*General Objections*

The following General Objections are expressly incorporated by reference into Plaintiff's responses to each of the Interrogatories set forth below. Each of Plaintiff's responses is made without waiving these General Objections.

A. Plaintiff objects to these Interrogatories to the extent that they seek documents or information protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. To the extent these Interrogatories seek privileged materials created since the beginning of this litigation, April 28, 2015, solely for the purpose of this litigation, Plaintiff will not identify those materials on a privilege log.

B. Plaintiff objects to these Interrogatories to the extent they seek documents or information that contain confidential or proprietary information belonging to Plaintiff unless all

such documents and information are produced pursuant to the confidentiality order entered by the Court on August 10, 2015. (Dkt. 38.)

      C.     Plaintiff objects to these Interrogatories to the extent that the accompanying three pages of "Instructions" and "Definitions" purport to impose upon Plaintiff duties or responsibilities greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and the orders of this Court as exemplified below:

      a.     Plaintiff objects to definitions of "You," or "Your" as they purport to include all agents, employees, and consultants, among others. These definitions are overly broad, burdensome, and impracticable.

      b.     Plaintiff objects to Instruction No. 3 because it purports to require information on a privilege log beyond that which is required by Fed. R. Civ. P. 26(b)(5)(A). Plaintiff will log withheld documents according to Rule 26(b)(5)(A).

      c.     Plaintiff objects to the definition of "document" because Rule 34 already defines that term. Plaintiff will respond to these Interrogatories in light of the definition of document provided in Rule 34.

### *Answers and Objections*

**2.     Identify each product and/or service that you have provided or presently provide or offer for sale for use by consumers and for each, describe the product or service in detail and state when the product or service was first made available to consumers.**

*Answer*:     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrase "and/or" is not a proper English word and has an ambiguous meaning. Subject to and without waiving its general and specific objections, Ariel Investments states that it offers, without limitation, the following products and services:

- 2 -

- Six current mutual funds:
    - Ariel Fund  (Investor Class November 6, 1986 – present; Institutional Class December 30, 2011 – present)
    - Ariel Appreciation Fund (Investor Class December 1, 1986 – present; Institutional Class December 30, 2011 – present)
    - Ariel Discovery Fund (Investor Class January 31, 2011 – present; Institutional Class December 30, 2011 – present)
    - Ariel Focus Fund (Investor Class June 30, 2005 – present; Institutional Class December 30, 2011 – present)
    - Ariel Global Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)
    - Ariel International Fund (Investor Class December 30, 2011 – present; Institutional Class December 30, 2011 – present)

- One former mutual fund:
    - Ariel Premier Bond Fund (Investor Class October 1, 1995 – June 10, 2005; No Institutional Class)

- Separately managed accounts in the following strategies or products:
    - Small-cap value (September 30, 1983 – present)
    - Small-/mid-cap value (December 31, 2000 – present)
    - Mid-cap value (March 31, 1990 – present)
    - Focused value strategy (March 31, 2005 – present)
    - Micro-cap value (July 31, 2002 – present)
    - Small-cap deep value (October 31, 2013 – present)
    - Global strategy (December 31, 2011 – present)
    - International (developed markets) (December 31, 2011 – present)
    - International (developed & emerging markets) (December 31, 2011 – present)

With regard to the remaining information requested by this Interrogatory, Ariel Investments answers this Interrogatory by producing business records pursuant to Federal Rule of Civil Procedure 33(d).  Ariel Investments will make this production within 30 days.

***Supplemental Answer:***

 Descriptions of Ariel Investments' separately managed accounts can be found on its website at https://www.arielinvestments.com/ariel-separate-accounts/.  Ariel Investments further answers this Interrogatory by producing business records bearing Bates Nos. AI000361-000411; AI000739-000771; and pursuant to Federal Rule of Civil Procedure 33(d).

***Second Supplemental Answer:***

      In further response to this interrogatory No. 2, Ariel Investments first made the following services and products available to consumers on the dates listed:

| | |
|---|---|
| Management of investments and investment funds | First use was at least as early as January 10, 1983, based on Ariel Investments' U.S. Application No. 73-431,218 and Registration No. 1,286,420.  Also, Ariel Investments' U.S. Application includes a specimen of use of the mark as of June 20, 1983. |
| Mutual fund advisory and management services, mutual fund brokerage services, and mutual fund distribution services | First use was at least as early as November 6, 1986, based on Ariel Investments' U.S. Application No. 76-228,021 and Registration No. 2,772,980.  Also, Ariel Investments' Statement of Use filed for this Application includes a specimen of use of the mark as of March 21, 2001. |
| Printed publications, namely, reports, educational materials, newsletters, pamphlets and periodicals featuring investment news and commentary; Investment advisory services; investment management; mutual fund brokerage, distribution and investment; financial sponsorship of cultural and performing arts events; providing on-line information in the field of investments | First use was at least as early as April 30, 2008, based on Ariel Investments' U.S. Application No. 77-209,986 and Registration No. 3,506,141.  Also, Ariel Investments' Statement of Use filed for this Application includes a specimen of use of the mark as of August 4, 2008. |
| Online information in the fields of investments and personal financial matters | First use was at least as early as April 15, 2009 based on Ariel Investments' U.S. Application No. 77-683,963 and Registration No. 3,897,717.  Also, Ariel Investments' Statement of Use filed |

for this Application includes a
specimen of use of the mark as of
November 2, 2010.

Ariel Investments further answers this Interrogatory by citing to the following previously

produced documents which include additional information about its services and products, as

well as the dates on which those services and products were first provided, pursuant to Federal

Rule of Civil Procedure 33(d):

App: AI017085-017111
Reg: AI017062
App: AI017287-017292
Reg: AI017064
App: AI017580-017647
Reg: AI017068
App: AI017528-017537
Reg: AI017069
App: A017204-017217
Reg: AI017070
App: AI017364-017370
SOU: AI017337-017345
Reg: AI017063
App: AI017485-017490
SOU: AI017397-017402
Reg: AI017065
App: AI017795-018000
SOU: AI017769-017776
Reg: AI017066
App: AI017713-017718
SOU: AI017687-017694
Reg: AI017067

7.      **Identify each market, consumer, and/or trade survey or investigation
conducted by you or on your behalf which related in any way to consumer recognition or
awareness of your marks, all documents which relate in any way to such survey or
investigation, each person who conducted or is conducting such survey or investigation, the
results of such survey or investigation, and all documents which relate in any way to such
survey or investigation.**

*Answer*:      Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrase "and/or" is not a proper English word and has an ambiguous meaning.  Moreover, Ariel

Investments objects to this Interrogatory as broad and unduly burdensome to the extent it requests information related to marks not at issue in this case. Additionally, Ariel Investments objects to this Interrogatory to the extent it requests information protected from discovery by the work-product doctrine.

Subject to the foregoing specific and general objections, Ariel Investments answers this Interrogatory by producing non-privileged, business records pursuant to Federal Rule of Civil Procedure 33(d). Ariel Investments will make this production within 30 days.

**Supplemental Answer:**

Ariel Investments further answers this Interrogatory by producing business records bearing Bates Nos. AI005336-005375 and AI005420-005496 pursuant to Federal Rule of Civil Procedure 33(d).

**Second Supplemental Answer:**

Ariel Investments further answers this Interrogatory by producing business records bearing Bates Nos. AI10584-586, AI10829-846, AI17806-810, AI 17811-857, AI17867-906, AI17912-916, AI17917-963, AI pursuant to Federal Rule of Civil Procedure 33(d).

**8.    Identify each person to whom you have licensed or authorized the use of your marks and identify the products and/or services that you have licensed or authorized for such person(s).**

*Answer*:     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrase "and/or" is not a proper English word and has an ambiguous meaning. Moreover, Ariel Investments objects to this Interrogatory as broad and unduly burdensome to the extent it requests information related to marks not at issue in this case, such as information related to licenses and authorizations outside the financial services industry, and information related to

licenses and authorizations which occurred prior to the inception of Ariel Capital. Ariel Investments will limit its answer to the marks at issue in this case.

Subject to and without waiving its general and specific objections, Ariel Investments responds that it licenses the marks identified in the Complaint at paragraph 12 to the following entities: Ariel Investment Trust, Ariel Distributors LLC, Ariel Education Initiative (f/k/a Ariel Foundation), and Ariel Community Academy. Additionally, Ariel Investments licenses the marks identified in the Complaint at paragraph 12 for use by third-party brokers in connection with offering Ariel Investment's mutual funds. Finally, Ariel Investments licenses the marks identified in the Complaint at paragraph 12 to organizations and events that Ariel Investments sponsors.

***Supplemental Answer:***

Upon further investigation, Ariel Investments authorizes third-party brokers, organizations, and events that Ariel Investments sponsors to use the marks identified in the Complaint at Paragraph 12. Ariel Investments further answers this Interrogatory by producing non-privileged, business records bearing Bates Nos. AI005936-5938 and AI18046 pursuant to Federal Rule of Civil Procedure 33(d).

***Second Supplemental Answer:***

Ariel Investments further answers this Interrogatory by producing business records bearing Bates Nos. AI11225-230 pursuant to Federal Rule of Civil Procedure 33(d).

**10. Identify and describe in detail your knowledge of any person, not a party to this Action, which has used or is using any of your marks and identify each such person, each such mark, the products and services sold or offered for sale in connection with each such mark, the circumstances under which you learned of the use, and identify all documents related to the response to this Interrogatory.**

**Answer:**        Ariel Investments objects to this Interrogatory as vague and ambiguous because the phrase "detail you knowledge of any person responsible" is unclear.  Moreover, Ariel Investments objects to this Interrogatory as broad and unduly burdensome to the extent it requests information related to marks not at issue in this case.  To the extent that this Interrogatory seeks the names of individuals or entities which have used or are using Ariel Investments' marks at issue in this case, Ariel Investments will answer.

Subject to and without waiving its general and specific objections, Ariel Investments responds that Ariel Wealth Advisors and Ariel Investment Management (an entity located in Uruguay) have used or are using an "Ariel" name or mark.   Additionally, Ariel Investments answers this Interrogatory by producing non-privileged, business records pursuant to Federal Rule of Civil Procedure 33(d).  Ariel Investments will make this production within 30 days.

**Supplemental Answer:**

Ariel Investments learned of Ariel Wealth Advisors' use of the Ariel mark during a meet-and-greet event hosted by Ariel Investments in the North-East region in 2009 or 2010 at which Ariel Investments' Vice President of Institutional Marketing, Malik T. Murray, spoke with Kevin M. Gibney of Ariel Wealth Advisors.

Ariel Investments believes that it learned of Ariel Investment Management's use of the Ariel mark in Uruguay through an internet search.

Finally, Ariel Investments answers this Interrogatory by producing business records bearing Bates Nos. AI005156-005169; AI005177-005184; AI005193-005207, and AI005282-005284 pursuant to Federal Rule of Civil Procedure 33(d).

**15.      Identify and describe in detail your knowledge of any person employed by you who provides estate planning services to the purchasers of your products or services.**

*Answer*:     Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "estate planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

***Supplemental Answer:***     Based on Ariel Investments' understanding of the phrase "estate planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide estate planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Todd R. Trubey, Ph.D.
Camille M. El-Amin
Melissa J. Hill
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera
Merrillyn J. Kosier
Khoa X. Ho
James R. Rooney, CPA
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis

Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

**16. Identify and describe in detail your knowledge of any person employed by you who provides tax planning services to the purchasers of your products or services.**

*Answer:* Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "tax planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory. Accordingly, Ariel Investments is unable to answer this Interrogatory.

***Supplemental Answer***: Based on Ariel Investments' understanding of the phrase "tax planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide tax planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera

Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

**17.    Identify and describe in detail your knowledge of any person employed by you who provides asset protection planning services to the purchasers of your products or services.**

*Answer*:        Ariel Investments objects to this Interrogatory as vague and ambiguous as the

phrases "asset protection planning services" and "detail your knowledge of any person" are

undefined and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel

Investments is unable to answer this Interrogatory.

***Supplemental Answer***:        Based on Ariel Investments' understanding of the phrase "asset

protection planning services," and its understanding that Ariel Capital is seeking a list of

individuals who provide such services, Ariel Investments identifies the following individuals

who provide asset protection planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis
Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.

**18.    Identify and describe in detail your knowledge of any person employed by you who provides retirement planning services to the purchasers of your products or services.**

*Answer*:        Ariel Investments objects to this Interrogatory as vague and ambiguous as the phrases "retirement planning services" and "detail your knowledge of any person" are undefined and have no obvious meaning in the context of this Interrogatory.  Accordingly, Ariel Investments is unable to answer this Interrogatory.

***Supplemental Answer***:        Based on Ariel Investments' understanding of the phrase "retirement planning services," and its understanding that Ariel Capital is seeking a list of individuals who provide such services, Ariel Investments identifies the following individuals who provide retirement planning services:

John W. Rogers, Jr.
Charles K. Bobrinskoy
Rupal J. Bhansali
Sabrina L. Carollo, CFA
Timothy R. Fidler, CFA
Mrunal "Micky" Jagirdar
Kenneth E. Kuhrt, CPA
David M. Maley
John P. Miller, CFA
J. Chaim Schneider, CFA, CPA
Karthic Arunachalam, CFA
James P. Kenny
Jamil H. Soriano
Todd R. Trubey, Ph.D.
Camille M. El-Amin
Melissa J. Hill
Mellody L. Hobson
Gary L. Rozier
Ian M. Webber
Roopa P. Weber
Malik T. Murray
Patrice L. Scelzo
Melissa A. Smith
Julia Barrera

Merrillyn J. Kosier
Khoa X. Ho
James R. Rooney, CPA
Cheryl A. Cargie
Jill E. Gracia
Brent W. Merlis
Pamela M. Diaz
Joseph A. Anderson
Bounmany Outama

All of these individuals may be contacted through counsel for Ariel Investments.


Dated:  May 27, 2016                    By: */s/ Arthur Gollwitzer III*
                                        Arthur Gollwitzer III (6225038)
                                           agollwitzer@michaelbest.com
                                        Luke W. DeMarte (6269621)
                                           lwdemarte@michaelbest.com
                                        Larry L. Saret (2459337)
                                           llsaret@michaelbest.com
                                        Zachary J. Watters (6310675)
                                           zjwatters@michaelbest.com
                                        MICHAEL BEST & FRIEDRICH LLP
                                        Two Prudential Plaza
                                        180 N. Stetson Avenue, Suite 2000
                                        Chicago, Illinois  60601
                                        Tel:  (312) 222-0800
                                        Fax:  (312) 222-0818

                                        ***Attorneys for Plaintiff Ariel Investments, LLC***

## <u>Certificate of Service</u>

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on May 27, 2016, I caused a copy of the following document:

**Plaintiff's Third Supplemental Answers to Defendant's First Set of Interrogatories**

to be served upon the following counsel of record via electronic mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
233 S. Wacker Drive
21st Floor
Chicago, IL 60606
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III

# EXHIBIT 5

SYMBOLS: N. SCH I/SCR N/FND N/WEI M/FIN R/CA R/NME R/PRM ...
15:43 Ariel Capital Takes Full Control
(DJ)   Of Calvert-Ariel Funds
  By Mary Romano
  Dow Jones Staff Reporter

DOW JONES NEWS SERVICE

September 6, 1994

  NEW YORK -DJ- Ariel Capital Management Inc. said it aims to gain a stronger foothold in the mutual fund business by taking full control of two stock funds it ran jointly with Calvert Group.

  "We're looking to increase our presence with a brand name, but we don't want to become a Fidelity or a T. Rowe Price," said John Rogers Jr., founder and president of Ariel Capital, referring to Fidelity Investments, the nation's largest fund group and T. Rowe Price Associates Inc. (TROW), a leading fund group.

  Instead, Ariel wants to be a niche player and do "one thing very well," Rogers said, and that's value investing - picking downtrodden and unloved stocks.

  Chicago-based Ariel not only picks stocks for the Ariel Growth and Ariel Appreciation funds but, as of today, is officially responsible for the distribution, marketing and administration of the two open-end funds, which have $320 million in combined assets.

  Ariel paid Calvert $4 million to take over the two funds. The Calvert name has been dropped from the funds' titles.

  Ariel managed stock-picking for the growth fund since it began in 1986 and for the appreciation fund since its inception in 1989. Calvert, a Bethesda, Md., operator of "socially responsible" mutual funds, handled the administration and marketing side for both funds.

  The split, announced in July, was due to philosophical differences between the two money managers. The funds were broker-sold under Calvert, while Ariel wanted to sell them as no-loads, which charge no sales commission. Rogers said he prefers the latter method because no-loads are becoming more popular with investors. Ariel switched to that method of selling the funds as of July 15.

  Rogers said Ariel is negotiating with Charles Schwab Corp. (SCH) for inclusion of the Appreciation fund in Schwab's OneSource program, in which investors can choose from among 250 no-load funds without paying transaction fees. The Ariel Growth fund is currently closed to new investors.

  Ariel, one of the few money-management firms owned by an African-American, will also attempt to expand its shareholder base by marketing the funds to such groups as universities, unions and charities while also increasing advertising.

  Ariel Capital Management has a total of $2.1 billion in assets under management, mostly in pension money.

  The funds' assets dropped from about $400 million as



09/06/94  03:43 PM  P22

AI020054

brokers had the option of moving their clients out of the two when they became no-load.

To retain brokers, Ariel is offering an annual fee of 25 cents per $100 in assets their customers have invested in the fund. That fee is charged to fund shareholders and is known as a 12b-1 fee.

(MORE) DOW JONES NEWS 09-06-94
3:43 PM
-- 3 43 PM EDT 09-06-94



AI020055

# EXHIBIT 6



SUCCESS HASN'T CHANGED
JOHN W. ROGERS, JR.,
WHO STILL LUNCHES ON
A BURGER AND FRIES
IN BETWEEN SCORING BIG
POINTS FOR HIS FIRM, ARIEL
CAPITAL MANAGEMENT.

# 3

**Making Patience Pay**

John W. Rogers, Jr., 32, got his first taste of entrepreneurship when he worked as a food vendor at Chicago ballparks during high school and college summer vacations. Much of what he earned from selling hot dogs and popcorn went into the stock market. When Rogers was graduated in 1980 from Princeton University, where he was captain of the basketball team, his teammates weren't at all surprised that he didn't pursue a career in professional basketball, but decided instead to return to Chicago and take a position as a stockbroker at William Blair & Co.

But Rogers dreamed of being a stock picker, not a stock seller. All along, he had been successfully investing his own money in stocks of small, overlooked companies with a single, strong product line. "I wanted the opportunity to build a long-run track record and test my philosophy," he says.

Rogers started by asking friends and relatives to back his venture. "Once people saw my enthusiasm, 90 percent of them said yes," he says. Early in 1983, he had raised about $180,000 in start-up capital, with the biggest vote of confidence coming from his mother and father in the form of $90,000. By the end of 1983, Rogers had obtained $500,000 to invest.

Rogers didn't disappoint his first clients. Today his firm, Ariel Capital Management, Inc., invests $1.3 billion for clients that include Mobil Oil Company and the University of Michigan. Despite the rapid growth of assets under his supervision, Rogers hasn't strayed from his original approach. He still

favors small companies ignored or misunderstood by investors. Rogers also feels strongly about being a socially responsible investor and has stuck to his principles on issues that he feels are of great importance: no stocks of businesses with connections to South Africa, no defense contractors and no nuclear-power companies. "John has the courage of his convictions," says John Wsol, a principal in Wsol Associates, a Chicago marketing-consulting firm.

Rogers's first big client was Howard University. Even with no track record, he "was able to articulate his style of money management as well as managers who had been in the business for a long time," says Thomas R. Astley, president of Wellesley Group, Inc., a consultancy that helps big institutions pick money managers. Howard University gave Rogers $100,000 of its endowment to manage. With Astley's help, Rogers then obtained from Wayne State University another $360,000 to manage. Ariel Capital Management's revenues are currently in the $6-million range.

During his start-up phase, Rogers read all of the investment newsletters he could lay his hands on and in May 1983 launched his own, *The Patient Investor.* "The name helped my image," he says. "Some potential clients thought I was a young gunslinger who was going to take a lot of risks with their money."

Of his management philosophy, Rogers

says, "I work hard at making employees feel that they're members of a team. The sense of stability in the company is important to customers." In seven years, only two employees have left the company.

Once he achieved success with institutional money, Rogers began thinking about small investors. "We thought about starting our own mutual fund," he recalls, but Wsol suggested he hook up with Calvert Management Asset Management, a Washington, D.C.-based marketer of socially responsible funds. "It was a marriage made in heaven," says Wsol, who was matchmaker for the deal.

Under Rogers's management, Calvert-Ariel Growth Fund became a top performer, and money flooded in from investors. Like any good athlete, Rogers knows his limitations. When the fund's assets hit $200 million and he couldn't find enough stocks that met his investment guidelines, he decided to close the fund to new investors. But he agreed to set up a new member of the Calvert family, Calvert-Ariel Appreciation Fund, which came to market in January 1990. And this time Rogers is delegating responsibility to Eric M. McKissack, his senior vice president, who will be in charge of money management. "It's the first product in 7½ years that I'm not personally involved in," Rogers says.

*Michele Morris writes about business and finance from New York City.*

---

**STATS**

**COMPANY**
Ariel Capital Management

**TYPE OF BUSINESS**
Investment Advisory Firm

**LOCATION**
Chicago, IL

**EMPLOYEES**
14

**YEARS IN BUSINESS**
7

**KEY TO SUCCESS**
Keeps a Sharp Eye on Small-Company Stocks

**WHAT'S NEXT**
Starting Ariel Foundation for Disadvantaged Kids

---

AI018922

# EXHIBIT 7

Case: 1:15-cv-03717 Document #: 165-1 Filed: 01/19/17 Page 54 of 63 PageID #:4064



**William Gruber**
ON BUSINESS

# Ariel's Rogers speaks softly, but controversy sticks

For a quiet-spoken person who says he prefers to avoid controversy, Chicago mutual funds manager John W. Rogers Jr. often finds himself involved in some contentious situations.

Mayor Richard Daley recently named Rogers to a committee to explore ways to convert Meigs Field to a parkland site. The mayor's wife, Maggie, and brother Bill are the other members of the group.

"When the mayor asks you to do something, you don't refuse," says Rogers, the founder and president of Ariel Capital Management Inc., the nation's oldest and largest minority-controlled money management firm.

Rogers, 37, also is president of the Chicago Park District and, therefore, involved in the issue of the Chicago Bears at Soldier Field.

As a director of **Morrison Knudsen Corp.**, Rogers has assisted in the firm's financial restructuring. Its former chairman, **William Agee**, who was fired early last year, is a friend of Rogers' mother, attorney **Jewel Lafontant-Mankarious**.

Rogers' term as a governor of the **National Association of Securities Dealers** ended in January—just after the NASD underwent an investigation by the **Securities and Exchange Commission.**

He also was a director of G. Helleman Brewing Co. during its reorganization, but stepped down before it agreed to a sale to **Stroh Brewing Co.**

"They all have been interesting experiences," says Rogers.

The net assets of Ariel's three mutual funds fell to $1.5 billion last year from $1.7 billion at the end of 1994, and the funds underperformed the general market. But Rogers rejects the charge by some observers that he has neglected his major business.

"I work there full time," he says. "Those other jobs don't require that much time. I'm at the Park District usually once a month."

He adds that Ariel has a staff of 26 people, including five investment analysts. Last year, however, Ariel severed its marketing relationship with the Calvert Group, which cost it some investor money.

Ariel is launching a major marketing campaign on its own to attract new business, particularly from middle-income blacks. It has just mailed brochures to 27,000 African-American households across the country with average incomes of $50,000 or more.

"We've never done that before," says Rogers. "We never advertised that we are a minority firm."

But the black middle-class market, he believes, has been largely untapped.

A photo of Rogers appears on the outside of three of the six envelopes used in the mail campaign. Only one envelope carries a printed message noting that Ariel was the first mutual funds company to be owned and managed by African-Americans.

"It's an experiment," he says. "We also plan to hire a survey firm like Gallup to determine for the first time how many black investors there are."

A footnote: In another marketing effort, Ariel will give away 10,000 Chicago Bulls caps at Thursday's game with the New York Knicks at the United Center.

**Polish alliance:** The Chicagoland Chamber of Commerce has formed an alliance with Warsaw's Polish Chamber of Commerce. A 23-member delegation from Poland will be here Friday to cement the agreement.

The move is designed "to strengthen commercial relations" between both regions, says Gerald J. Roper, president of the Chicago chamber.

**New track:** "It's time to see what challenges exist on the private side," says Laura A. Jibben, who will resign May 13 after five years as executive director of the Regional Transportation Authority. Before that, she worked for the Illinois Toll Highway Administration and the Illinois Department of Corrections.

Jibben, 46, will still be tackling transportation problems when she becomes vice president and general manager in Chicago of MTA Inc., a civil, structural and environmental engineering firm based in Springfield. Its clients include the Illinois Department of Transportation and several local companies in the field.

**Flamed out:** Chicago almost became the U.S. headquarters of giant Siemens AG, its top official disclosed here Friday. Heinrich von Pierer, president and CEO, said the German firm built a factory here in 1883 which was destroyed by a fire.

"We lost it all," he told the Executives' Club of Chicago. "But today we are the world's largest producers of fire prevention systems."

Siemens also is a $61 billion-sales company with 380,000 employees doing business in 180 countries.

AI020083

# EXHIBIT 8

ARIEL CAPITAL INVESTMENT INC:
TODAY AND TOMORROW

Ariel Capital Investment Inc. has been organized to engage primarily in the business of managing investments. Initially, it will manage the investments of a private mutual fund which is being organized and to be known as the Ariel Fund. As the Company gains experience and increases its reputation, it is expected that it will then be able to market its management skills to larger public and private funds including corporate profit sharing and corporate and union pension plans.

The investment philosophy of Ariel shall center on identifying at an early stage of growth, small and medium sized companies that are publically traded. Ariel will then make investments therein and monitor the activities of the company as it grows over the years. The income of Ariel shall be derived from the management of such Funds. The income of Ariel shall be, where appropriate, a percentage of the yearly growth that the Fund being managed experiences.

The proceeds of the sale of the stock of Ariel is being and will be used to defray the organizational expenses including expenses attributable to the legal, accounting, printing and related costs of the organization of Ariel, and also including, the expenses needed to defray the overhead of Ariel's operation for a period of one to two years until the income flow from management operations begins to come in. It is anticipated that the total of such expenses for Ariel for the first year will approximate $90,000. and for the second year will approximate $70,000.00.

Based on my best judgment, it is anticipated that somewhere in the second or third year of operation, depending, of course, upon opportunities available and upon the extent of growth of the Ariel Fund and other funds managed by the Company, that Ariel will contract with large public and private Funds for their management, and that the income available therefrom will materially increase the income flow available to Ariel with only a modest increase in the costs attributable to such management. The effect is expected to produce material increase in funds to Ariel and it is from these funds that Ariel will generate the resources sufficient to produce income and profit to the stockholders of Ariel.

I am very optimistic about the opportunities in this area. Given the special philosophy that Ariel shall have and my own experience in identifying and following growth company situations, I am confident that all of us who will participate in Ariel will find it both stimulating and economically rewarding.

Date: January     1983                    John W. Rogers, Jr.

"The investment philosophy of Ariel shall center on identifying at an early stage of growth small and medium sized companies that are publicly traded. Ariel will then make investments therein and monitor the activities of the company as it grows over the years."

From the original Ariel business model | *January 1983*

AI001339

**EXHIBIT 9**

Case: 1:15-cv-03717 Document #: 165-1 Filed: 01/19/17 Page 58 of 63 PageID #:4068

# BLACK ENTERPRISE

MONEY MANAGEMENT SPECIAL

APRIL 1992

## SLOW AND STEADY WINS THE PROFITS

### How John Rogers Created A $1.6 Billion Portfolio

### B.E. Rates The Top Mutual Funds

JOHN W. ROGERS JR., PRESIDENT, ARIEL CAPITAL MANAGEMENT

firms have hundreds. For instance, the Fidelity Magellan Fund has some 600 stocks in its portfolio. There are only so many companies that you can follow and understand well.

I would be very cautious about chasing hot markets– health care, biotechnology and software companies. Any stock that someone comes and tells me how much it has gone up in the last year or two and says now is the time to jump on the bandwagon, it usually gives me the feeling that it's probably too late. So that marks me as one that is a little less glamorous. People should stick with companies that they know well. For example, the company where they work or the companies their friends work for. They should look at the three sectors we are in: office products, children's products and leisure or sporting goods.

**BE:** What's the best way to enter the market?

**Rogers:** Just get started. Get a broker and start buying something. Once you have money invested, it becomes more intriguing and you learn a lot faster. Subscribe to investor newsletters. Investors Daily, Valueline and Morningstar Mutual Funds are three good publications. I'm constantly looking for tips that will lead to untapped opportunities.

**BE:** How did you get interested in stocks?

**Rogers:** I had a small portfolio when I was 12 years old. My father started buying stocks for me for every birthday and every Christmas instead of normal presents like other kids got. He felt it was important for me to get exposed to the financial markets early.

I also spent a lot of time after school in the office of my father's broker, Stacy Adams, who was one of the first black stockbrokers in Chicago. When I went to college, I quickly found a broker in Princeton. His enthusiasm rubbed off on me, and by my senior year I felt I could do the same thing for a living.

**BE:** What investment mix would you advise?

**Rogers:** The average individual should have between 60% to 70% of their assets in common stocks if invested in fixed-income, money-market funds and maybe something extra, such as real estate. The person should try to split the stock position evenly between stock mutual funds and individual stocks. He or she should try individual stocks to, say, age 65. And as a person gets older, closer to retirement, he or she may want to change that mix to 40% to 60% in common stock.

**BE:** Where should risk-adverse investors look?

**Rogers:** You should always try to be your money invested in fixed-income, and invested in the money or the most or all of your money or fixed-income instruments. Over the next 10 years, you would have a real loss of your purchasing power. Stocks will compound as the years go on. Also, stocks have consistently outperformed bonds and cash over the last 70 years. □

# It's Time To Change Your Environment



Each year, Americans throw away over 16 billion disposable diapers, 220 million rubber tires, 2 billion plastic razor blades and similar items that literally take thousands of years to break down. We are faced with growing environmental problems; how can we make a global warming and ozone depletion? Our ozone layer. While solutions to all of these problems may not be immediately available, there are things that each of us can take to change on our environment, for the better.

## Calvert-Ariel Appreciation Fund
### Environmentally strong, economically sound.

Calvert-Ariel Appreciation Fund offers you the opportunity to begin to improve both your physical and financial environment now through a unique investment combining both stringent environmental and economic investment screens.

The Fund invests in one of the most vibrant growth sections of the 90s — middle capitalization stocks of companies valued between $500 million and $5 billion. Calvert-Ariel Appreciation Fund will only invest in those mid-size companies demonstrating concern for the environment — particularly those that initiate environmental programs or take positive steps toward preserving our environment.

The Fund's investment advisors feel that companies that demonstrate concern for the environment now reduce the risk of future litigation and the consequent impact that may have on a company's earnings. After all, where the environmental and economic issues are concerned, what we do now will determine what the future has to offer.

For more complete information about Calvert-Ariel Appreciation Fund, including charges and expenses, contact your broker or Calvert Group today to order a free prospectus. Always read the prospectus carefully before investing, or sending money.

**(800) 368-2748**

Calvert Group

A Member of The Acacia Group®
Northwest Calvert Securities Corporation
4550 Montgomery Avenue, Bethesda, MD 20814

**Until May 31, 1992, Calvert Group will donate $10 to The Nature Conservancy for any new IRA prototype account opened.**

ave been ly did or sort to a firms.

lers and manages fund and rck (day- and fund nies and and sells represen- nterprise-

reyfus or

network n Merrill onvinced get that was also

speciality

to one ure is a h makes ens don't al groups socially in South arch and ve things and price mpanies in hiring

ntional, a Corp., the products ry cheap t it does. rugstore ly-owned r have a

ntent to the quiet rs. Magic of price is also will been a ı recently mpanies. , which ail Corp., rofession-

ks. Some

COVER STORY

This material is not intended to be used in connection with the offer or sale of the securities of Calvert-Ariel Growth or Appreciation Funds unless accompanied or preceded by a current prospectus.
Distributed by:

ARIEL SECURITIES, INC.
307 N. Michigan Avenue
Suite 500
Chicago, Illinois 60601

# SLOW AND STEADY WINS THE PROFITS

Equity investment specialist John Rogers' tried-and-true approach has created a $1.6 billion stock portfolio.

BY CAROLYN M. BROWN

Whether you are a novice or veteran, the greatest opportunities await the patient investor. No one knows this to be truer from history and experience than John W. Rogers Jr., founder and president of Chicago-based Ariel Capital Management Inc., which as of last December was managing $1.6 billion.

During the past nine years, the young stock specialist—Rogers is only 34—has been busy. First, he built a full-service asset management firm, which attracts investments from institutional clients including colleges, corporations and some of the nation's largest public and private pension funds. Then he created the nation's only equity mutual funds managed by African-Americans.

In 1986, he opened the Calvert-Ariel Growth Fund, a small capitalization (small-cap) fund. (Small-cap funds buy stock in companies valued at between $50 million and $1 billion.) The fund is worth $260 million. Four years lat-

**Rogers has bucked Wall Street hard by pursuing his prudent investment tactics.**

Reprinted with permission of BLACK ENTERPRISE

HOWARD SIMMONS

**A financial strategist, Rogers plans Ariel's next move with Senior Vice President Eric McKissack.**

with low price/earnings multiples of 11 or less, low price book-value ratios and low debt-to-capital ratios.

Secondly, we want to make sure we are buying a great company. We want it to grow 12% to 15% a year consistently. The company has to have a high-quality product. For example, we look for companies that dominate a niche in the marketplace by performing one service or manufacturing one product that is superior to its competitors.

So, a lot of our work is really tire kicking—going out and visiting the companies, getting to know the employees and management, and talking to the customers, competitors and suppliers. The final judgment is whether there will be long-term demand for that product.

**BE:** How does this approach differ from that of other money managers?

**Rogers:** There are two things that we do differently. One, there are not too many people trying to blend smaller company investing with value investing. Traditionally, value investors have purchased big blue-chip companies that fall into disfavor. And small company investors have bought the glamorous, fast-growth companies. We try to get the best of both worlds: smaller, undiscovered companies that are selling at reasonable prices.

The second thing that we do differently is that we spend more time than others evaluating the company's management. How long have they been in that particular business? What schools did they attend, and essentially what are their intentions? We want managers to wake up in the morning with the attitude, 'How can I make a better product and provide better service?' Most managers of large firms get up thinking about 'How much publicity can I get? How much money can I make? What acquisition can I acquire?'

Those folks who invested in Donald Trump or Robert Maxwell were mesmerized by what they were saying, and the numbers. But investors neglected to look at the character of the people. Another example is Cascade International Inc. No one can find the CEO. He left the company busted and the stores he was supposed to manufacture weren't real. We (Ariel) would have been out there visiting those stores, seeing that they did or didn't exist, not depending on an analyst's report. In a nutshell, that's what we do better than other firms.

**BE:** What is your relationship with Calvert?

**Rogers:** A mutual fund is owned by shareholders and has several entities. An investment adviser manages the assets; a board of directors oversees the fund and makes the policies; a transfer agent keeps track (day-to-day record keeping) of the securities and fund shares; a custodian bank holds all of the securities and cash; and a distribution agent or firm markets and sells the funds. Half of the board members are representatives I came up with, and the other half are representatives of Calvert.

**BE:** But why Calvert as opposed to Fidelity, Dreyfus or Vanguard?

**Rogers:** At the time, Calvert had a wholesaling network of marketing people who went and called on the Merrill Lynchs and Dean Witters of the world and convinced them to sell their funds. We didn't think we'd get that marketing experience anywhere else. Calvert was also known for its socially responsible investing.

**BE:** What distinguishes your fund from other socially responsible funds?

**Rogers:** The thing is, "socially responsible" to one group is different to another. For example, Carter-Wallace is a company in the Calvert-Ariel Appreciation Fund, which makes condoms. People who are affiliated with religious organizations don't like this company for that reason, whereas other, more liberal groups think that such a company is in keeping with being socially responsible. We avoid any companies that do business in South Africa. We also avoid companies involved in weapons research and manufacturing. We look for companies that are doing positive things for the environment. Calvert conducts extensive research and gets into some esoteric issues, such as, whether certain companies experiment with animals or have poor affirmative-action hiring policies.

**BE:** What stocks do your funds hold?

**Rogers:** The ones I am excited about are Berlitz International, a worldwide leader in language instruction, and First Brands Corp., the maker of Glad garbage bags, Prestone antifreeze and STP products. First Brands has an enormously high cash flow, is very cheap statistically and it's a solid company that's good at what it does. Another favorite is Long's Drug Stores, which is the largest drugstore chain in Hawaii and California. It's a superbly managed, family-owned operation. They own the land on most of their stores. And they have a real strong desire to provide quality customer service.

The office products area has also been good. We are content to own names such as General Binding Corp., which makes the GBC machines; United Stationers Inc., the largest wholesaler of office products in the U.S.; Sanford Corp., which manufactures Magic Marker® and highlighters; and Hunt Manufacturing Co., which owns the Boston stapler line. Children-oriented kinds of products also will do well. Companies such as Oshkosh B'Gosh Inc. have been a longtime favorite of ours. Another is Hasbro Inc., which recently bought Tonka Toys. Another key area is leisure-oriented companies. Two solid companies are Johnson Worldwide Associates Inc., which manufactures products for fishing and camping; and Russell Corp., which makes athletic wear and uniforms for major-league professional teams.

Each of our funds holds roughly 30 to 40 common stocks. Some

AI020744

m, after closing the Growth Fund to new individual and institutional investors, Rogers launched the Calvert-Ariel Appreciation Fund, worth $90 million. It buys stock in companies as large as $3 billion.

Rogers' financial strategy is different from that of most Ivy League graduates working on Wall Street. The 1980 Princeton University graduate with beliefs conventional stock-picking wisdom and sets a more stylized brand. Hired in January 1983, when Rogers—a Chicago-based company, most of his peers were chasing an accelerating bull market and larger blue-chip companies. By contrast, Rogers only bought and continues to buy the stock of unspectacular but steady companies. And he will not invest in companies that do business in South Africa, manufacture weapons or harm the environment.

Does the approach work? The numbers tell the tale. In 1991, the value of the Calvert-Ariel Growth and Appreciation Funds, which combined have more than 80,000 investors, grew more than 32%.

It appears that Rogers has carved a rather lucrative niche for his company. Like the tortoise of Aesop's fable, he knows that slow and steady wins the race—and he profits, too. The tortoise and the old saying grace the cover of his quarterly newsletter, *The Patient Investor*.

Rogers' feeling for the market stems from more than his past experience. Before earning his fortune in 1983, he read a University of Chicago study showing that small-cap stocks had soundly outperformed large company stocks for 60 years before 1983. The buoyant lets in his strategy because although small company growth stocks in general were climbing in 1977, they peaked in 1983 and stayed in the doldrums for seven years.

During the 1980s, Rogers patiently pursued his strategy of investing in overlooked and undervalued small and medium company stocks. And his instincts paid off. In 1991, small-cap funds scored huge gains. In fact, smaller company stocks outpaced larger company stocks as nearly a one-year period as a play was given in the options of what the fund compared with a 30.4% gain by the Standard & Poor's 500 Stock Index.

Equally stunning, mutual funds specializing in small company stocks, returned 51.3%, compared with 35.3% for the average general equity fund. Funds specializing in health care, biotechnology and financial services stocks were the big winners, up 74.32% and 60.64%, respectively. These fund sectors may not be able to repeat last year's gains, but investors can expect a wide range of emerging small company stocks to do well this year.

In 1991, the Calvert-Ariel Growth Fund also did well. Its value grew by 29.9%, which was not good compared to the small-cap fund average, but still better than the S&P 500. "The five-year performance paints an even better picture," says John Rekenthaler, editor of Chicago-based *Morningstar Mutual Funds*. Of 241 growth mutual funds ranked by Morningstar for five years ending Dec. 31, 1991, Calvert-Ariel Growth Fund outperformed all but a handful of small-cap funds. It placed 15th. The Appreciation Fund was up 33.19% for 1991.

A conservative exists, however. In 1992, the Growth Fund fell 18%. Why? Rekenthaler says although Rogers avoids buying hard cyclicals, such as auto or steel stocks, 35% of the Growth Fund's stocks are consumer durable and industrial-product stocks, which are somewhat sensitive to economic cycles. Other funds typically may have

half that weighing. Ironically, the stocks that hurt Rogers in 1990 helped in 1991. "They were fly years," says Rekenthaler "But if the recession continues, this fund will be vulnerable. Sometimes such cyclicals can hit you kind of hard."

Nevertheless, Rogers remains loyal to his contrarian strategy. Ariel Capital will always buy the equities of lesser-known small and medium-size companies, he says, and at bargain prices. "We were successful during the '80s because we picked some good, reasonably priced small stocks," he says. "We avoided the go-go, glamorous small stocks that soared in 1980 and then plunged in 1985. Instead, we stuck with low-expectation stocks that didn't go up as much, but also didn't suffer as much."

The ability to pick with a previously ignored sector drives Ariel Capital. Annually, the company only replaces about 20% to 25% of the 30 to 40 stocks that make up each fund.

## Laying The Foundation

Rogers paid quick dues before founding Ariel Capital. He spent 2½ years as a stockbroker with William Blair & Co. in Chicago. The experience major was the first person that the company hired right out of college in more than four years. The Chicago native was also the first black professional to work at the 48-employee company.

Rogers didn't stay long because of his confidence in his ability to pick stocks. "I also didn't think the brokerage business was the best place to exercise my strategy because the brokerage community is transaction-oriented, and my approach is valuation-oriented," he says.

That certitude and tenacity is paying off, literally. In 1987, his firm had $122 million under management, now it has more.

These who know Rogers well are not surprised. In 1980, while varsity basketball team captain at Princeton, he won an annual award given to the team member who exemplifies leadership on and off the court. "If ever there is a guy who was the epitome of what he did on the basketball court and what he does in the real world, it's John Rogers," says his former coach, Pete Carril. "He always knew what he could and couldn't do, and he worked hard at doing what he did best."

That attitude extends to the workplace, but John F. Beckett, senior vice president of Durham, N.C.-based NCM Capital Management Group Inc., says sometimes people underestimate Rogers. "They see a mild-mannered, soft-spoken person," he says, "but he is a pure competitor who is out to win."

In 1983, Rogers' strategy and a connection helped get his first off the ground. Its first investment of $100,000 came from the Howard University endowment fund. Rogers' connection was Howard, the fact that one of the original investors was a Howard Medical School graduate, and that Rogers' mother, prominent Chicago lawyer Jewel Lafontant, was on the university board of trustees.

Today, Ariel Capital's institutional investors include about $30 million clients include AT&T Co., Pillsbury Co., the Police and Fire Department Retirement System of the City of Detroit, the United Negro College Fund and the National Football League Players Pension Plan.

At first, however, Ariel Capital, like most start-ups, was underfunded. Initially, Rogers thought he needed $189,000 for next year's working capital and used his own funds and those of 14 investors, including his parents, friends, relatives and former classmates. It

wasn't enough. After 18 months, investors kicked in $190,000 more. But finances were just one hurdle. Rogers had no track record. "We were basically going out to all of these large corporations and pension funds managers and saying, We have a great investment strategy that we believe in and we're young and energetic. Now, give us some money," Rogers says. "Some people were very polite. Others let you know clearly that they didn't think you were credible and couldn't never manage their money."

Two things Rogers did helped to build a presence. One, in 1983 he started a newsletter, *The Patient Investor*. In each issue, he listed all the stocks he was putting in his portfolio and gave cogent disclosures of their strengths. Second, he arranged for several clients to invest $500,000 in a venture called Ariel Funds. The money bought common stocks, and every quarter after June 1983, Rogers had a new track record to show his stock-picking ability.

By 1986, the fund had grown to about $2 million. Rogers then brought on Calvert Group Ltd., a Bethesda, Md.-based investment firm, as the fund's distributor and transfer agent. Doing that allowed him to concentrate on stock-picking and ensured that the Calvert-Ariel Growth fund, a publicly traded mutual fund, would be listed in newspapers.

Rogers has no plans to enter other investment areas. In fact, he has discouraged offers to open a fixed-income mutual fund, run a public finance business or start a brokerage firm.

Since its inception, the firm has grown from two to 16 employees. Senior Vice President Eric T. McKissack, who has an MBA from the University of California at Berkeley, heads a four-person research department. He is also the Appreciation Fund's portfolio manager. In addition to Rogers, there are two other investment traders and two professionals who handle the client services. Outside of the company's

office manager and CFO, the others are support staff.

A common value among the staff is commitment to others. All maintains volunteer with nonprofit organizations. And Rogers has positions in at least a dozen or more associations such as the Princeton University trustees and the Chicago Urban League board.

This year, Rogers says Ariel Capital will put more emphasis on the medium-cap fund, which he hopes will grow much larger than the initial goal of $100 million. He also says his personal goal is to continue to outperform the S&P 500 Stock Index.

**BE:** To get a better understanding of how Ariel Capital operates and to pick up some equity tips, **BLACK ENTERPRISE** conducted an exclusive Q&A with Rogers.

**BE:** How did you arrive at your particular investment strategy?

**John Rogers:** I started to develop my investment strategy when I was with William Blair, which specializes in small-growth companies. I was a great place to learn because I had everything under one roof—corporate finance, public finance, trading, money management, mutual funds and research. At the same time, the reading I was doing on my own and my experience as an economics major taught me about value investing and the contrarian investment strategy that John Templeton was famous even for.

**BE:** What specific criteria do you use to pick the companies you invest in? Is it strictly a quantitative approach: balance sheets, price-earnings ratios and trading history?

**Rogers:** Our approach is threefold. We start off with statistics. We look for companies that are relatively small $500 million to $1 billion market capitalization and unpopular or they don't have a lot of expectations. We also look for companies that are in the environment it

---

**A lot of our work is tire-kicking—going out and visiting the companies and getting to know the employees and management.**

---

# THE CONSCIENTIOUS INVESTOR

| Socially Responsible Fund | Assets In $ Millions 9/30/91 | Minimum Initial Deposit | Subsequent Deposits | Asset Allocation — Stock | Asset Allocation — Bond | Asset Allocation — Cash | % Annual Return 12/31/90–12/31/91 | Phone (800) |
|---|---|---|---|---|---|---|---|---|
| Calvert-Ariel Appreciation (G)* | $71.7 | $2,000 | $250 | 91% | NA** | 9% | 33.19 | 368-2748 |
| Calvert-Ariel Growth (G)* | 257.8 | Closed | | 98% | NA** | 2% | 32.65 | 368-2748 |
| Calvert SRI-Growth (B) | 320.1 | $1,000 | $250 | 45% | 55% | NA** | 17.82 | 368-2748 |
| Calvert SRI-Bond (I) | 33.1 | $1,000 | $250 | NA** | 100% | NA** | 15.17 | 368-2748 |
| Calvert SRI-Money (I) | 42.5 | $1,000 | $250 | 97% | NA** | 3% | 21.34 | 368-2748 |
| Dreyfus Third Century (G) | 293.1 | $2,500 | $100 | 91% | NA** | 1% | 28.12 | 645-6561 |
| Parnassus (G) | 29.1 | $2,000 | $50 | 90% | NA** | 10% | 42.48 | 999-3505 |
| Pax World (B) | 225.1 | $250 | $50 | 50% | 38% | 12% | 20.80 | 767-1729 |

B = Balanced; G = Growth; I = Income.
* Managed by Ariel Capital Management Inc.
** Not applicable.

BLACK ENTERPRISE, APRIL 1992

AI020745

# EXHIBIT 10

# Pensions&Investments

The International Newspaper of Money Management

$50 / $229 A Year

© Entire contents copyright 2003 by Crain Communications Inc. All rights reserved

October 27, 2003



## P&I peeks at the future, and honors 30 people who brought us this far

The Publisher's sale of this reprint does not constitute or imply any endorsement or sponsorship of any product, service or organization. Crain Communications 212-210-0762. DO NOT EDIT OR ALTER REPRINTS. REPRODUCTIONS NOT PERMITTED.

© Entire contents copyright by Crain Communications Inc. All rights reserved.

AI022587

# JOHN W. ROGERS JR. | Chairman, chief executive officer and chief investment officer, Ariel Capital Management, LLC, Chicago



Michael A. Marcotte

**John W. Rogers Jr. was only 24 years old when he started Ariel Capital with $200,000. Twenty years later, the firm runs more than $13 billion.**

JOHN ROGERS was not only one of the youngest people to start a money management firm — he started Ariel Capital Management in 1983, when he was 24 years old — but he also was one of the first minorities to own an investment shop.

His first client was the Municipal Employees' Annuity & Benefit Fund of Chicago, which remains a client today. The plan's initial $3 million investment now is worth $446 million, said veteran consultant Ed Burke,

president and co-founder of Becker Burke Associates Inc., Chicago, along with A.G. Becker.

Ariel itself has grown from an initial base of $200,000 in 1983, which Mr. Rogers took from his savings and begged from friends and family, to more than $13 billion, invested in small-cap and mid-cap U.S. value equities in two retail mutual funds and in separate accounts managed for more than 120 institutional clients.

Mr. Rogers' parents were influen-

tial in his career choice: His father started buying stocks for him when he was 12 years old, and his mother provided operational assistance when Ariel first opened its doors.

Mr. Rogers has also been active in political and civic affairs. He was president of the Board of the Chicago Park District for six years and now is chairman of the Chicago Urban League. He's a member of the boards of directors of several companies, including McDonald's Corp. (legend has it that he eats a hamburger and fries every day at the McDonald's restaurant near his office). He also created Ariel Academy, a new school for underprivileged kids in Chicago. The school has a savings and investment curriculum that provides a first-grade class with $20,000 that, by sixth grade, is being invested by the students on behalf of the school's endowment.

*Ebony* magazine included Mr. Rogers on its list of the 100+ Most Influential Black Americans this year.

"John Rogers has made a terrific contribution to the industry," said Mr. Burke. "He helped to establish what a minority-owned firm should be. He was the first one in the pool, and the others who wanted to learn to swim watched him.

"But John has never emphasized the minority ownership angle. Ariel is a good investment shop, first."

CHRISTINE WILLIAMSON

This article is furnished by Ariel Capital Management, LLC, 200 East Randolph Drive, Chicago, IL 60601. This article was written by *Pensions & Investments*. The opinions expressed are not necessarily those of Ariel Capital Management, and the information is not guaranteed as to its accuracy or completeness. The information in this reprint is not reasonably sufficient upon which to base an investment decision and should not be considered a recommendation to purchase or sell any particular security. Information was current as of the original date of this reprint, October 27, 2003, and is subject to change. As of December 31, 2004, Ariel Capital Management, LLC managed over $20 billion in total assets.

**Past performance does not guarantee future results.** Per SEC disclosure, we must inform you that it is not known whether the listed clients approve or disapprove of Ariel or the advisory services provided. © January 2005, Ariel Capital Management, LLC.

© Entire contents copyright by Crain Communications Inc. All rights reserved.

AI022588