**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARIEL INVESTMENTS, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case Number: 15-cv-3717 |
| ARIEL CAPITAL ADVISORS LLC, | ) |
| | ) Hon. Judge Matthew F. Kennelly |
| Defendant. | ) |
| | ) |

**DEFENDANT ARIEL CAPITAL ADVISORS LLC'S
COMBINED MOTIONS _IN LIMINE_**

## TABLE OF CONTENTS

NO. 1:  TO PRECLUDE EVIDENCE OF THE PHYLLIS BRADY CALL ................................. 1

NO. 2:  TO PRECLUDE EVIDENCE OF THE MAREILÉ CUSACK CALL ............................ 2

NO. 3:  TO PRECLUDE EVIDENCE OF JUSTIN LAND .................................................... 3

NO. 4:  TO PRECLUDE EVIDENCE OF DAVID BOONE ................................................... 4

NO. 5:  TO PRECLUDE TESTIMONY AND EMAIL EVIDENCE OF MS. SCHANDEL ........ 5

NO. 6:  TO PRECLUDE TESTIMONY OF POTENTIAL CONFUSION .................................. 6

NO. 7:  TO PRECLUDE EVIDENCE OF PLAINTIFF'S ADVERTISING AWARDS, ADVERTISING EXPENDITURES, AND SPONSORSHIPS ................................... 8

NO. 8:  TO PRECLUDE TESTIMONY ABOUT THE SIMILARITY OF PLAINTIFF'S PRODUCTS AND ACA'S SERVICES ................................................... 10

NO. 9:  TO PRECLUDE PAST TESTIMONY OF ACA's PROFITS ......................... 12

NO. 10:  TO EXCLUDE EVIDENCE OF PLAINTIFF'S ALLEGED DAMAGES ................. 13

NO. 11:  TO PRECLUDE NEW EVIDENCE OF USE IN COMMERCE OF "ARIEL" BEFORE JUNE 20, 1983 ................................................................................ 14

NO. 12:  TO PRECLUDE PURPORTED BAD FAITH INTENT EVIDENCE ........................ 17

NO. 13:  TO PRECLUDE EVIDENCE OF ONLINE SEARCH EVIDENCE ........................ 17

NO. 14:  TO PRECLUDE PLAINTIFF FROM REFERRING TO ITSELF AS "ARIEL" ......... 18

NO. 15:  TO PRECLUDE PLAINTIFF FROM CALLING ACA "ARIEL CAPITAL" ............. 18

NO. 16:  TO PRECLUDE TESTIMONY ABOUT GEORGE LUCAS ....................................... 18

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*B. Sanfeield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868 (N.D. Ill. 1999), *aff'd*, 258 F.3d 578 (7th Cir. 2001) ................................................................................................................................................13

*Black Horse Lane v. Down Chem. Corp.*, 228 F.3d 275 (3rd Cir. 2000) ..................................................16

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503 (N.D. Ill. 2011) ......................9, 10

*Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000) ..............................6

*Duluth News-Tribune v. Mesabie Publ'g Co.*, 84 F.3d 1093 (8th Cir. 1996) ........................................1, 3

*Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264 (7th Cir. 1989) .................................................8

*Elec. Design v. Elec. Data*, 954 F.2d 713 (Fed. Cir. 1992) ................................................................2, 3

*Hearthware, Inc. v. E. Mishan & Sons, Inc.*, No. 11 C 5233, 2012 WL 3309634 (N.D. Ill. Aug. 10, 2012) ...............8

*Henri's Food Prod. Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir. 1983) .....................................................17

*Innovation Ventures, LLC v. NVE, Inc.* 90 F. Supp. 3d 703 (E.D. Mich. 2015) .........................................5

*Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842 (N.D. Ill. 2010) ..........................................................4

*Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657 (10th Cir. 2014) .................................................9, 14

*Knaack Mfg. v. Rally Accessories, Inc.*, 955 F. Supp. 991 (N.D. Ill. 1997)...............................................9

*Lang v. Ret. Living Pub. Co.*, 949 F.2d 576 (2d Cir. 1991) .................................................................5

*Marshall Field & Co. v. Mrs. Field's Cookies*, 25 U.S.P.Q.2d 1321, 1992 WL 421449 (T.T.A.B. 1992) .................6

*Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814 (10th Cir. 2010) .............................................7

*Native Am. Arts, Inc. v. Duckhouse, Inc.*, 2007 WL 2789274 (N.D. Ill. Sept. 20, 2007) .................7, 12, 13, 15

*Nat'l Cable TV Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572 (Fed. Cir. 1991) .........................18

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114 (2d Cir. 2001) .......................................4

*Packman v. Chi. Tribune Co.*, 267 F.3d 628 (7th Cir. 2001)........................................................2, 3, 4, 5

*Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619 (N.D. Ill. 2016) ..............................................................5

*Reeves v. Fed. Res. Bank of Chi.*, No. 00 C 5048, 2004 WL 742248 (N.D. Ill. Apr. 6, 2004) ......................7

*Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253 (2d Cir. 1999) ...............................................................16

*Smith Fiberglass Prod., Inc. v. Ameron, Inc.*, 7 F.3d 1327 (7th Cir. 1993).......................................1, 2, 3, 4

*Somat Corp. v. Somat Corp.*, No. 90 C 4943, 1992 WL 315198 (N.D. Ill. Oct. 26, 1992) ......................8, 9

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005)...................................................................2

*U.S. v. Conn*, 297 F.3d 548 (7th Cir. 2002) ................................................................................6, 11

*U.S. v. Oriedo*, 498 F.3d 593 (7th Cir. 2007) ...............................................................................11

*Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655 (7th Cir. 1991) ...........................................14

*VMC Corp. v. Distrib. Marketing Serv.*, 192 U.S.P.Q. 227, 1976 WL 21124 (T.T.A.B. 1976) ...................................6

## RULES

FRCP 16(b)(4) .............................................................................................................................16

FRE 401/402.........................................................................................................................passim

FRE 403................................................................................................................................passim

FRE 602................................................................................................................................passim

FRE 701/702...............................................................................................................14, 15, 18

FRE 802........................................................................................................................................7, 8

FRE 901........................................................................................................................................7, 13

Defendant Ariel Capital Advisors LLC ("ACA") moves for entry of an Order *in limine* prohibiting Plaintiff Ariel Investments, LLC ("Plaintiff"), its counsel or any witness from testifying, arguing, or otherwise raising the following matters:

## NO. 1: TO PRECLUDE EVIDENCE OF THE PHYLLIS BRADY CALL

Any evidence or testimony relating to a purported phone call received by Phyllis Brady ("Brady") must be excluded because it is hearsay, irrelevant, and in danger of misleading a jury on actual confusion. Plaintiff stated that Brady "received a phone call from someone who purportedly first contacted [ACA] in Naples, Florida to obtain a reference for a candidate the caller was considering hiring." Ex. A at No. 4. The call is hearsay because it was an unidentified caller and without an exact quote, and is not relevant to "actual confusion" because the caller was not an actual or potential consumer.

First, because the *caller is unknown*, and lacks a direct quote, it is inadmissible hearsay. FRE 802. Without exact language and the declarant's identity, this evidence should be excluded because the jury will be unable to determine whether the statement demonstrates actual confusion or mere inattentiveness. *See Smith Fiberglass Prod., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1330-31 (7th Cir. 1993) (excluding evidence of alleged confusion where plaintiff lacked exact quote and could not identify person making the statement); *see also Duluth News-Tribune v. Mesabie Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("vague evidence of misdirected phone calls…is hearsay of particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'"). Plaintiff did not know the identity of the caller, nor did it provide a direct quote. The Seventh Circuit has refused "without hesitation" to admit such evidence. *See Smith Fiberglass*, 7 F.3d at 1330-31 (refusing to "craft[] a new hearsay exception to the FRE for *paraphrases* of state of mind declarations by unknown declarants"). Because evidence of this call is a paraphrase and lacks a direct quote, the call is hearsay and does

not meet the FRE's state of mind exception.[1]

The call is also irrelevant because the alleged caller was not a relevant consumer under the Lanham Act. FRE 402; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001) (evidence of actual confusion irrelevant where confused callers were not trying to purchase goods); *Elec. Design v. Elec. Data*, 954 F.2d 713, 716 (Fed. Cir. 1992) (confusion "must be based on the confusion of some **relevant person**; ***i.e., a customer or purchaser***.") (emphasis added). The caller was purportedly checking a work reference, not buying any products. Ex. A at No. 4. As the caller was not trying to purchase the parties' products, nor making a purchasing decision, the call is irrelevant to actual confusion. *Id.*

Last, because the alleged evidence lacks a direct quote, is ambiguous, and could support other inferences, it lacks probative value on the issue of likelihood of confusion. FRE 403. Given the hearsay impediments of foundation, reliability and inability to cross-examine, evidence subject to such speculative interpretation must also be excluded to avoid prejudice and misleading the jury.

## NO. 2:  TO PRECLUDE EVIDENCE OF THE MAREILÉ CUSACK CALL

Any evidence relating to a purported phone call Mareilé Cusack ("Cusack") received must be precluded because it is hearsay, irrelevant, and would mislead a jury. Plaintiff claims:

> "a woman in Naples, Florida called Mareilé Cusack, [Plaintiff's] General Counsel, to inquire about a property in Naples, Florida…Ms. Cusack assured the caller that [Plaintiff] did not own or lease the property. The women (*sic*) then stated she must have been mistaken and hung up." Ex. A at No. 4.

The call is hearsay because it was an unidentified caller and without a direct quote, and is not relevant to "actual confusion" because the caller was not an actual or potential consumer. FRE 802; *see Smith Fiberglass v. Ameron*, 7 F.3d at 1330-31 (excluding evidence of alleged confusion

---

[1] *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005) (witness testimony that recounts statements by unidentified and unidentifiable declarants excluded as hearsay).

where plaintiff lacked exact quote and could not identify speaker); *see also Duluth News v. Mesabie*, 84 F.3d at 1098 ("vague evidence of misdirected phone calls…is hearsay" and "particularly unreliable"). Plaintiff never identified the caller, nor provided the caller's exact quote. This statement also is not a state of mind exception per FRE 803(3) because it is a paraphrase and lacks a direct quote. *See Smith Fiberglass*, 7 F.3d at 1330-31 (refusing to "craft[] a new hearsay exception to the [FRE] for paraphrases of state of mind declarations by unknown declarants").

This caller was also not a relevant consumer under the Lanham Act. Indeed, it is unlikely that the caller was a relevant consumer because she purportedly called about real estate, a product neither Plaintiff nor ACA sells. Ex. A at No. 4; FRE 402 & 901; *Packman*, 267 F.3d at 645 (evidence of actual confusion irrelevant where confused callers were not trying to purchase goods); *Elec. Design*, 954 F.2d at 716 ("...must be based on the confusion of some relevant person; i.e., a customer or purchaser."). Because the caller was not trying to purchase Plaintiff's or ACA's products, nor making a purchasing decision, the call was not relevant to actual confusion.

Further, without the caller's identity or direct quote, a jury cannot ascertain whether the caller was confused between Plaintiff and ACA, or Plaintiff and a third-party, like ***Ariel Investment Properties, Inc***. (an unrelated real estate company). Ex. B; FRE 403. Accordingly, its probative value is outweighed by the danger it would be highly prejudicial and mislead a jury to believe the caller was confused between Plaintiff and ACA when, because the call was about real estate, that is unlikely.

## NO. 3:  TO PRECLUDE EVIDENCE OF JUSTIN LAND

Evidence or testimony about Justin Land ("Land") is inadmissible as it is double hearsay, and is further irrelevant because he was not a relevant *or* confused consumer. Evidence of Land's statements is from a third-party statement who did not testify, to another party, who also did not testify to the statement, and is presented to prove the truth of the matter asserted. FRE 802. Land's

3

alleged statement further lacks a direct quote to enable this Court to determine if he was actually confused. *See Smith Fiberglass*, 7 F.3d at 1330-31 (excluding evidence of alleged confusion where plaintiff lacked exact quote). And although Land's identity is known, neither Land nor the person that Land spoke with were deposed, cross examined or provided affidavits about the statement. It is thus hearsay, and a vague summary.

Plaintiff argues that Chris Bray testified about it, but that does not change that it was a third-party statement to another party, who also did not testify to the statement. Or that Bray had no direct knowledge of this statement, making it also inadmissible under FRE 602.

The statement is nevertheless irrelevant because it was not *purchasing* confusion. Land allegedly asked at a conference "if ACA had any affiliation with Plaintiff." Ex. C at 48:4-8. Land was socializing, not making a purchasing decision, so he is not a relevant consumer. FRE 402; *Packman*, 267 F.3d at 645 (evidence of actual confusion irrelevant where confused callers were not purchasing goods). Land also *thought* to ask if there was a relationship, he did not *assume* they were related, thus he was not actually confused between Plaintiff and ACA. Ex. C at 48:4-50:18; *and see Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (inquiries not actual confusion as they "are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself.") (emphasis in original); *Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 855 (N.D. Ill. 2010) (evidence of inquiries is trivial absent actual customer diversion). Because this evidence does not show Land was actually confused, its probative value is outweighed by the danger that it would confuse the issues and be highly prejudicial. FRE 403.

## NO. 4: TO PRECLUDE EVIDENCE OF DAVID BOONE

Evidence about David Boone's ("Boone") phone call to ACA is irrelevant and unreliable because Boone testified that he was ***not*** shopping for investment or financial services, and that he

4

had **no** intentions of buying such services (Ex. D at 51:7-51:22), so he is not a relevant consumer of Plaintiff's or ACA's products or services. FRE 402; *Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 630 (N.D. Ill. 2016) (actual confusion evidence must come from actual customers); *Packman*, 267 F.3d at 645 (callers must have been trying to purchase goods).

Boone also testified he does not remember making the call (Ex. D at 25:5-20), so his testimony is unreliable and inadmissible under FRE 403 as any probative value it may have is substantially outweighed by the danger that it will confuse the issues and mislead the jury.

Plaintiff's assertion that Boone's publication covers the trading industry still does not establish he qualifies as a relevant consumer because he was not making a purchasing decision, nor exercising buying caution at the time. Rather, he testified he was soliciting ads and articles for his magazine, not purchasing products or services. He was therefore not a relevant consumer and his testimony is inadmissible.

## NO. 5:  TO PRECLUDE TESTIMONY AND EMAIL EVIDENCE OF MS. SCHANDEL

Monica Schandel's ("Schandel") testimony is irrelevant because she testified she was not confused, and was not making a purchasing decision, but simply made a mistake responding to an email, thus she was not a relevant consumer. FRE 402; *see Packman*, 267 F.3d at 645; *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) ("trademark infringement protects only against mistaken purchasing decisions and not against confusion generally"). Specifically, Schandel testified she accidentally referred to Plaintiff instead of ACA in her email because she was looking at Plaintiff's subpoena while responding, which listed Plaintiff's name. Ex. E at 30:18–31:15. She further testified she misspoke in her deposition due to inattentiveness, but was not confused between Plaintiff and ACA. *Id.* at 30:7-16; *see Innovation Ventures, LLC v. NVE, Inc.* 90 F. Supp. 3d 703, 725 (E.D. Mich. 2015) (misstatements or slips of the tongue are inadmissible evidence of actual confusion); *VMC Corp. v. Distrib. Marketing Serv.*, 192 U.S.P.Q. 227, 1976 WL 21124, *3

n. 4 (T.T.A.B. 1976) ("This slip of the tongue under tension of being subjected to interrogation by opposing counsel is not indicative of a marketing environment"). Indeed, she has known Chris Bray for 26 years, so was not confused between the two. Ex. E at 35:9-11; *see Marshall Field & Co. v. Mrs. Field's Cookies*, 25 U.S.P.Q.2d 1321, 1992 WL 421449, at \*16 (T.T.A.B. 1992) (striking evidence of actual confusion as slip of the tongue where it was clear the speaker knew difference between plaintiff and defendant). Because her email and testimony are both irrelevant to any issue here because she testified she was not confused between the parties and simply made a mistake, admitting such evidence would be unfairly prejudicial. FRE 403.

**NO. 6:  TO PRECLUDE TESTIMONY OF POTENTIAL CONFUSION**

Any testimony from Plaintiff's witnesses about third-parties' propensity for *potential* confusion between Plaintiff and ACA, and consumers' state of mind about their familiarity with Plaintiff, is outside the scope of lay witness testimony, requires specialized knowledge, and would be based on speculation, not on Plaintiff's witnesses' personal knowledge or observations. It also would be new evidence not produced in discovery. That testimony is inadmissible because it is not based upon personal observations. FRE 602/701. It instead centers on consumers' state of mind and their level of familiarity with Plaintiff, whether they could hypothetically be confused between Plaintiff and ACA, and the likelihood of that potential confusion. Correlating consumer's thoughts to confusion, and drawing those inferences, requires specialized knowledge and analysis outside the scope of FRE 701. *See U.S. v. Conn*, 297 F.3d 548, 553 (7th Cir. 2002) ("lay opinion testimony most often takes the form of a summary of first-hand sensory observations."); *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203-04 (4th Cir. 2000) (District Court erred when it admitted testimony from a lay witness because witness responded to hypothetical or like questions which required specialized knowledge only an expert was capable of delivering). Such testimony accordingly would be improper under FRE

701 because Plaintiff's witnesses have not personally observed potential confusion, but are speculating about its possibility, which would be based on gut instinct, not factual instances. FRE 602/701; *see Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 824 (10th Cir. 2010) (opinion testimony regarding possible future occurrences could not be based on lay witness testimony as it was not what witness had personally observed); *Reeves v. Fed. Res. Bank of Chi.*, No. 00 C 5048, 2004 WL 742248, at *7 (N.D. Ill. Apr. 6, 2004) (excluding opinion testimony on FRE 701 grounds as it "appears to be based on a gut instinct as opposed to any hard facts. A gut instinct is not a fact rationally based on perception."). This testimony is accordingly inadmissible.

Testimony about consumers' states of mind and their level of familiarity with Plaintiff and its products is correspondingly inadmissible under FRE 702 because none of Plaintiff's witnesses have been established as experts on this topic, nor has Plaintiff established that their opinions are (a) scientific, technical, or other specialized knowledge; (b) sufficient facts or data; (c) reliable principles and methods; and (d) reliably applied principles and methods to the facts of the case. Accordingly, Plaintiff's witnesses should not be permitted to make correlations or inferences for the jury on whether consumers could potentially be confused.

Testimony on potential confusion would also be new evidence submitted after the discovery deadline ended. FRE 403; *see also Native Am. Arts, Inc. v. Duckhouse, Inc.*, 2007 WL 2789274, at *3, (N.D. Ill. Sept. 20, 2007) (evidence not disclosed during discovery not permitted at trial). ACA noticed potential confusion as a topic in Plaintiff's 30(b)(6) deposition. Ex. F at No. 5. But Plaintiff's 30(b)(6) witness provided no evidence or specificity of potential confusion when asked. Ex. G at 164:13–165:12. Nor has Plaintiff provided information or documents relating to potential confusion.

7

**NO. 7:  TO PRECLUDE EVIDENCE OF PLAINTIFF'S ADVERTISING AWARDS, ADVERTISING EXPENDITURES, AND SPONSORSHIPS**

Plaintiff's evidence of its advertising awards, expenditures and sponsorships is inadmissible because it is likely to confuse the issues and mislead the jury because this evidence does not establish its mark has achieved brand recognition or strength, and is irrelevant. Indeed, a mark must first be recognized in the marketplace before a plaintiff can rely on its expenditures, awards and charitable donations to establish its recognition and strength. *See Somat Corp. v. Somat Corp.*, No. 90 C 4943, 1992 WL 315198, at *6 (N.D. Ill. Oct. 26, 1992) (absent evidence of the ***effect*** of plaintiff's efforts, expenditures and advertising do not establish a mark as recognized or strong); *Hearthware, Inc. v. E. Mishan & Sons, Inc.*, No. 11 C 5233, 2012 WL 3309634, at *7 (N.D. Ill. Aug. 10, 2012) ("[Plaintiff]'s assertion that it has strong market leadership because it has won many awards for its infomercials sheds no light on strength of its marks," remarking it did not present "customer testimony or consumer surveys regarding the strength of [its] mark."); *see also Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1270 (7th Cir. 1989) (circumstantial evidence such as breadth of advertising is ineffective to show strength of mark as it is the effect or success of advertising that matters, not the mere fact of advertising). Plaintiff has not presented any evidence to substantiate its advertising has been effective, however, or that its mark has achieved brand recognition. As a result, Plaintiff may not rely on its awards and expenditures to prove its mark's strength, and allowing it to do so would confuse the issues and confuse the jury.

Evidence of Plaintiff's advertising awards, expenditures and sponsorships also is irrelevant because these things do not establish that ACA, Bray, or ***relevant*** consumers actually saw Plaintiff's marks or advertisements. FRE 401/402; FRE 901; *Somat Corp. v. Somat Corp.*, 1992 WL 315198, at *6 (absent evidence of the effect of plaintiff's efforts, expenditures, and

8

advertising did not establish strength of mark). They are therefore inappropriate to establish the public has knowledge of Plaintiff's marks. Plaintiff's evidence also does not make any issue here more or less likely because it does not establish that Plaintiff achieved brand recognition, nor does it establish that Plaintiff's mark is strong. FRE 401/402; *see also Knaack Mfg. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1001-02 (N.D. Ill. 1997) (25 years of use, millions spent in advertising, sales growth, and a quality product do not equate to whether "the name resonate[d] in the consumers' consciousness," or had gained name or brand recognition); *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 519 (N.D. Ill. 2011) (despite plaintiff selling its products under the mark for almost 45 years did not answer the question of whether the name resonates in consumers' consciousness); *Somat Corp. v. Somat Corp.*, 1992 WL 315198, at *6 (absent evidence of the *effect* of plaintiff's efforts, expenditures and advertising do not establish strength of mark). Accordingly, these awards, marketing expenses, and sponsorships are not relevant to show Plaintiff's marks are strong or recognized among the consuming public.

Furthermore, testimony about any correlating or attributing of Plaintiff's advertising awards, expenditures or sponsorships to brand recognition is inadmissible because such analysis would be based upon specialized knowledge of the kind possessed only by an expert, not a lay witness. FRE 701; *see also Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657, 675 (10th Cir. 2014) (excluding testimony by a lay witness under 701 as too complex to qualify for admission under Rule 701, especially specialized, technical, or professional experience of the sort possessed by an expert); *Knaack v. Rally*, 955 F. Supp. at 1003 ("failure to produce any survey evidence or direct testimony from the relevant customer group undermines its ability to prove the strength of its mark"). Additionally, any testimony about whether consumers recognize Plaintiff's marks would be improper because Plaintiff's witnesses have not personally observed

9

it. *See Bobak Sausage*, 805 F. Supp. at 519 ("[S]trength cannot be proven merely by conclusory statements from a party's executive that its mark is well-known."). All testimony correlating Plaintiff's awards, expenditures and sponsorships with brand recognition thus would be improperly outside the scope allowed its lay witnesses and should thus be excluded.

Testimony on this topic is correspondingly also inadmissible under FRE 702 because Plaintiff has not designated any witnesses as experts on consumer correlations between brand recognition and awards, sponsorships or expenditures. Indeed, Plaintiff has not established that any of its witnesses' opinions would be founded upon (a) professional or other specialized knowledge of correlations between awards, sponsorships or expenditures, and whether they resonated in the consumers' consciousness and developed brand recognition; (b) analysis of sufficient facts or data that this resonated in the consumers' consciousness and developed brand recognition; (c) application of reliable principles or methods to test these correlations; and, (d) principles and methods were reliably applied to the facts of this case. *See* FRE 702.

Moreover, this evidence is inadmissible because its probative value is outweighed by the danger it will confuse the issues and mislead the jury to believe that awards, expenditures, and sponsorships represent a mark's strength among the consuming public when in reality, it is brand *recognition*, not efforts at brand recognition, that are relevant. FRE 403. The danger of such evidence would be further compounded when coming from Plaintiff's witnesses, whose work in this area would bias their testimony on the efficacy of such awards, sponsorships or expenditures.

Plaintiff thus should be precluded from presenting evidence of its awards, expenditures and sponsorships at trial because such evidence is irrelevant and prejudicial to show brand recognition or strength of a mark without an expert to show a correlation, which Plaintiff has not done.

**NO. 8: TO PRECLUDE TESTIMONY ABOUT THE SIMILARITY OF PLAINTIFF'S PRODUCTS AND ACA'S SERVICES**

Testimony assessing the similarity of Plaintiff's products and ACA's services requires specialized knowledge, which requires expert testimony. FRE 702. Plaintiff failed to disclose any experts in discovery, or expert reports, thus should be barred from presenting this information.

First, testimony assessing the similarity of Plaintiff's products and ACA's services is inadmissible under FRE 702 because Plaintiff has not disclosed any experts on this topic, nor has it established Plaintiff's witnesses' opinions are founded upon (a) specific, technical, or other specialized knowledge; (b) sufficient facts or data; (c) reliable principles and methods; and, (d) nor are they reliably applied to the facts of the case. FRE 702.

Testimony evaluating the relatedness of Plaintiff's products and ACA's services also would be improper speculation about ACA's services. Under FRE 701, lay opinion testimony must be based on first-hand sensory observations. *U.S. v. Conn*, 297 F.3d at 553. Testimony evaluating the similarity of services, however, is not based on any of Plaintiff's witnesses' own observations of Plaintiff and ACA, but would require the witness to make connections for the jury based on his experience in the financial services industry. *See U.S. v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007) (agent's testimony about use of baggies for drugs should have been subject to expert disclosures as it was not limited to agent's observations, but agent made connections for the jury from his experience). Accordingly, Plaintiff's witnesses must not be permitted to testify about the similarity of Plaintiff's products and ACA's services because this would be drawing on his expertise beyond that of the average person, which is Rule 702 expert testimony, not a Rule 701 lay opinion. Second, opinions about similarities between the parties' products and services is new evidence that was first presented first in Mr. Trubey's October 7, 2016, declaration. Dkt. 65; 115-1; Dkt. 65) (Discovery ended 5/27/16). Indeed, ACA requested "documents related to any instance where anyone has ever inquired if there is a relationship between [the Parties] or their respective

goods or services." Ex. H at No. 2. Plaintiff first produced this evidence on October 7, 2016, unduly delayed presenting it, and has not shown "good cause" for modifying the Order Dkt. 65., nor did Plaintiff seek "consent." FRCP 16(b)(4); FRE 403; *see Native Am. v. Duckhouse*, 2007 WL 2789274, at *3 (evidence to be excluded by a "motion *in limine* if plaintiff…indicates it will present evidence not disclosed during discovery."). As a result, ACA was unable to depose Plaintiff about this information.

## NO. 9: TO PRECLUDE PAST TESTIMONY OF ACA's PROFITS

ACA's past testimony of its profits is inadmissible because no written discovery was taken on the topic, no reliable testimony was presented, nor can Plaintiff show any nexus between ACA's profits and its use of its name. Notably, Plaintiff did not request information about ACA's profits in its written discovery, and it accordingly was not produced.

Plaintiff also did not notice the topic of profits in its Notice of 30(b)(6) Topics, nor did it ask ACA to prepare for that topic. Ex. I. Plaintiff's sole evidence of ACA's profits is from a Rule 30(b)(6) deposition answer taken out of context. Specifically, Plaintiff's counsel asked:



Q: "

Because Plaintiff did not notice ACA's profits for the 30(b)(6) deposition, ACA did not prepare for it. Ex. C at 32:18-33:11. Accordingly, this testimony is at best speculative and unreliable guess-work. FRE 403; 602. The testimony is thus inadmissible under FRE 403 because its probative value is substantially outweighed by the danger that it is unfairly prejudicial and unreliable.

More critically, Plaintiff cannot provide any nexus between these "profits" and ACA's

alleged use of the trademark, which makes ACA's profits irrelevant. FRE 402; *see B. Sanfeield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868, 873 & FN3 (N.D. Ill. 1999), *aff'd*, 258 F.3d 578 (7th Cir. 2001) (for Lanham Act claims, "[c]ourts award disgorgement [of a defendant's profits] in limited situations, primarily when a defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff."). And here, Plaintiff has not shown a diversion of business or bad faith intent. Rather, ACA showed all its customers were carried over from its previous firm, that its new customers were referrals from ACA clients and employees, and not from its name, and Plaintiff has not disputed that ACA was named after Mr. Bray's daughter and not Plaintiff. Dkt 132 at SOF 2, 24.

## NO. 10:  TO EXCLUDE EVIDENCE OF PLAINTIFF'S ALLEGED DAMAGES

ACA moves to bar any evidence of Plaintiff's losses or damages allegedly attributable to ACA's use of "Ariel" in its name because Plaintiff failed to provide such evidence during discovery. FRE 403; *see Native Am. v. Duckhouse*, 2007 WL 2789274, at *3 (evidence not disclosed during discovery not permitted at trial). Specifically, Plaintiff did not list any damages in its interrogatory responses, nor did its responses show it has lost customers, lost reputation, or had any damages because of ACA. Ex. A at No. 5. Plaintiff also never listed any damages in its Initial and Amended Rule 26 Disclosures. Ex. J. Because Plaintiff has not provided a specific basis or claim for damages, nor provided any discovery from requests of the information, it should not be permitted to introduce new evidence at trial as that would be unfairly prejudicial.

Moreover, any damages evidence Plaintiff could provide would be speculative and unsubstantiated. For example, Plaintiff's Rule 30(b)(6) witness, who was designated to testify on damages, could not identify a single item of damages Plaintiff suffered as a result of ACA despite it being a noticed topic. Ex. F at 14. Specifically, she stated she did not know of any damages, only that she *worried* damages could occur:

13

Q: "

Ex. G at 164:13–165:16 (emphasis added).

Any opinions as to damages allegedly caused by ACA's use of Ariel are thus speculative and have no basis in evidence. *See* FRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter); *see also Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (personal knowledge may not be "speculations, hunches, intuitions"). Because Plaintiff did not produce or disclose any damages evidence, and its designated witness lacked any knowledge of damages, damages evidence should be precluded.

Testimony on damages is further inadmissible under 701 because it requires drawing a nexus between damages and ACA's use of its name. FRE 701/702. That analysis would be based upon specialized knowledge of the kind possessed only by an expert, not a lay witness. FRE 701; *see also Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657, 675 (10th Cir. 2014) (excluding testimony by a lay witness under 701 as too complex to qualify for admission under Rule 701, especially specialized, technical, or professional experience of the sort possessed by an expert).

**NO. 11: TO PRECLUDE NEW EVIDENCE OF USE IN COMMERCE OF "ARIEL" BEFORE JUNE 20, 1983**

New evidence about ARIEL mark's first use in commerce before June 20, 1983 should be precluded because Plaintiff failed to produce any evidence of using "ARIEL" in commerce for "[m]anagement of investments and investment funds" in discovery before that date. *See*

*Native Am.*, 2007 WL 2789274, at *3 ("evidence not disclosed during discovery" not permitted at trial). For instance, ACA asked Plaintiff to "Identify each **product and/or service** that [Plaintiff] **ha[s] provided** or presently provide[s] or offer[s] for sale for use by consumers…and state **when** [it] **was first made available to consumers**." Ex. A at No. 2 (emphasis added). In three responses to this interrogatory, Plaintiff listed its Ariel Small Cap separate account ("Small Cap") as its first product, listing September 30, 1983 as its launch. Ex. A, K, L at No. 2.[2] ACA also requested production of "Each document related to 'ariel' mark's first use in interstate commerce on March 23, 1983." Ex. H at No. 8. Plaintiff did not produce any documents showing use of ARIEL in commerce before its application on June 20, 1983. As Plaintiff did not provide answers or documents during discovery to show it used ARIEL in commerce before June 20, 1983, it should be precluded from providing such evidence at trial. FRE 403; *see Native Am. Arts*, 2007 WL 2789274, at *3 (evidence not disclosed during discovery not permitted at trial).

To the extent Plaintiff claims Merrillyn Kosier or Melody Hobson could testify to ARIEL's first use in commerce, such testimony must be excluded because Plaintiff failed to provide this information when asked during the Rule 30(b)(6) deposition, despite it being a noticed Rule 30(b)(6) topic. Ex. F at Nos. 1, 2, 3, 4, 8. Plaintiff also had notice of this topic from ACA's affirmative defense of "Plaintiff's Inequitable Conduct before the USPTO." Dkt. 98. Plaintiff and its 30(b)(6) witness thus knew ACA would have questions about Plaintiff's first use of ARIEL in commerce before June 1983 because it was directly in dispute. Indeed, Plaintiff's 30(b)(6) witness was designated to testify to: "(1) the facts and circumstances relating to the ownership, origin, adoption, application for and clearance of the ARIEL Marks; (2) the facts and circumstances about

---

[2] Plaintiff twice supplemented this response to provide its website and 2002 and 2016 Prospectus; all listed its earliest product as the Small Cap, which was first available on September 30, 1983. Ex. K & L at 2.

submissions and correspondence with the USPTO relating to the ARIEL Marks; (3) Plaintiff's use or non-use of the ARIEL Marks; (4) Plaintiff's use of the ARIEL Marks on services and products;" and "(8) Information regarding Plaintiff's customers and buyers." Ex. F at Nos. 1, 2, 3, 4, 8.

Plaintiff's 30(b)(6) witness did not provide any uses in commerce of the ARIEL mark pre-dating June 20, 1983, and testified she had no personal knowledge of it. In particular, she had no knowledge of Plaintiff's first uses in interstate commerce before filing its ARIEL application:



Q: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉ " Ex. G at 309:9-17 (emphasis added).

Plaintiff's 30(b)(6) witness could not answer whether ▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. G at 310:11-311:10 (Q: ▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉.") (emphasis added).

Plaintiff's 30(b)(6) witness further did not know when Plaintiff first ▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉ as required by the ARIEL registration. Ex. G at 77:11-24 ("Q:
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉") (emphasis added). As a result, Plaintiff should be precluded from introducing new evidence of its first use in commerce before June 1983 after failing to present it before. FRE 403; *see Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 268-69 (2d Cir. 1999) (precluding witness from testifying at trial following a failure to produce them in response to a Rule 30(b)(6) notice); *Black Horse Lane v. Down Chem. Corp.*, 228 F.3d 275, 303-04 (3rd Cir. 2000) ("Producing an unprepared witness is tantamount to a failure to appear."). And because Plaintiff's witness had no personal knowledge of Plaintiff's first use in commerce, she cannot now testify on the subject. FRE 602.

16

## NO. 12:  TO PRECLUDE PURPORTED BAD FAITH INTENT EVIDENCE

Plaintiff should also not be permitted to introduce evidence about ACA's actions after it chose its name, such as its continued use of "Ariel" in this suit and Bray's conversation with Plaintiff's attorney, because such evidence is irrelevant and inadmissible. First, any evidence that ACA has not ceased using its name during this action is irrelevant for the intent factor. If this were the test, then any defendant that did not abandon its name at the filing of a complaint would trigger an inference of bad faith. Of course, this is not the law. *Cf. Henri's Food Prod. Co. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir. 1983) (intent refers to whether a defendant intentionally and deliberately copied a plaintiff's mark when selecting its mark). Whereas ACA's decision to keep its name and defend this suit occurred *after* ACA chose its name, thus it is irrelevant to whether Bray intended to "pass off his services" as Plaintiff's *when* he chose the name ACA in 2013.

## NO. 13:  TO PRECLUDE EVIDENCE OF ONLINE SEARCH EVIDENCE

ACA requests the Court bar any evidence of search engine results because such evidence is wildly speculative and its prejudicial effects outweigh any probative value it might have. FRE 403. First, any evidence of past search engine results is speculative because search results change over time, sometimes significantly. *See* Ex. M (Google's search algorithm is changed "500-600 times" yearly, and that "[w]hile most of these changes are minor, Google occasionally rolls out a 'major' algorithmic update…that affects search results in significant ways."). There is thus no reliability that a past search can be replicated, and is therefore inadmissible under FRE 403.

Second, search engine results would be unfairly prejudicial under FRE 403 because Google alters search results based on what a user has searched previously. *See* Ex. N (Google "search results are not only based on the relevance of each web page to the search term, but also on which websites the user (or someone else using the same browser) visited through previous search results"). So when Plaintiff's attorneys "replicated" an online search of "Ariel Capital Advisors,"

17

it is more likely that Plaintiff's name would appear as Plaintiff's counsel has likely searched its client's name previously. To avoid prejudice from this speculative evidence, evidence of alleged search results should be excluded.

**NO. 14: TO PRECLUDE PLAINTIFF FROM REFERRING TO ITSELF AS "ARIEL"**

ACA requests Plaintiff not refer to itself solely as "Ariel" at trial as that would be unfairly prejudicial, and would suggest that Plaintiff is publicly recognized by that nickname when it produced no such evidence. FRE 403; *see Nat'l Cable TV Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1577 (Fed. Cir. 1991) (plaintiffs have rights to a nickname if the nickname is given by the *public*). It would also mislead the jury because hundreds of other companies use "Ariel" in their name, which is an ACA defense in the case as well.

**NO. 15: TO PRECLUDE PLAINTIFF FROM CALLING ACA "ARIEL CAPITAL"**

Plaintiff should be precluded from calling ACA anything other than Ariel Capital Advisors, ACA, or Defendant. Plaintiff's referral of ACA as "Ariel Capital" is prejudicial and likely to mislead the jury because of Plaintiff's former use of "*Ariel Capital Management*" pre-2008. It could thus mislead the jury and be unfairly prejudicial to ACA.

**NO. 16: TO PRECLUDE TESTIMONY ABOUT GEORGE LUCAS**

Any testimony related to Plaintiff's or Mellody Hobson's relationship with George Lucas or his museum because such testimony is irrelevant to any fact or issue and would likely be prejudicial due to iconic status. And Plaintiff's affiliation with a celebrity may influence the jury to decide issues impartially. FRE 403. George Lucas also would add no probative value because he will not make any fact or issue more or less likely in this suit. FRE 401/402.

Dated:  January 19, 2017           RESPECTFULLY SUBMITTED,


By:  s/   Adam Wolek
Adam Wolek
Brian Noack
WOLEK & NOACK
333 S Wabash Ave., Suite 2700
Chicago, IL 60604
P: 312.860.9006
F: 708.843.0509
*Local Counsel for Defendant Ariel Capital*
*Advisors LLC*


Christopher P. Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Ste. 200
Naples, FL 34109
P: 239.651.6008
F: 239.431.3914
cpbray@cpbrayassociates.com
*Lead Counsel for Defendant Ariel Capital*
*Advisors LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on January 19, 2017, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: January 19, 2017                                    WOLEK & NOACK


                                                           By:    Brian T. Noack
                                                           Brian T. Noack