**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ARIEL INVESTMENTS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 3717** |
| | ) | |
| **ARIEL CAPITAL ADVISORS LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Ariel Investments, LLC has sued Ariel Capital Advisors LLC alleging trademark infringement, unfair competition, and cybersquatting in violation of the Lanham Act, and unfair trade practices in violation of the Illinois Deceptive Trade Practices Act (IDTPA) and Illinois common law. Ariel Investments has moved for summary judgment on its trademark infringement and unfair competition claims. Ariel Capital has cross-moved for summary judgment on all of Ariel Investments' claims. For the reasons stated below, the Court grants summary judgment in favor of Ariel Capital on Ariel Investments' cybersquatting claim but otherwise denies both parties' motions for summary judgment.

**Background**

**I.      Ariel Investments**

Ariel Investments was founded in January 1983 by John Rogers under the name Ariel Capital Management, Inc. Ariel Investments is an investment management firm that operates in all fifty states. The company provides investment management

services and also offers products such as separate accounts and mutual funds to institutional and individual investors. Ariel Investments acquires individual clients through its website, www.arielinvestments.com, and by referrals from potential clients' financial advisors, such as Schwab, Fidelity, or other broker-dealers. Ariel Investments launched its first public-facing separate account, Ariel Small Cap Fund, in September 1983. It launched its first mutual fund, the Ariel Fund, in November 1986. Rogers has stated that he launched Ariel Investments with $150,000 from family and friends and that he got his first multi-million dollar account after eighteen months. In 2008, the company changed its name to Ariel Investments, LLC. Today, Ariel Investments has over 300,000 mutual fund shareholders across the country.

In June 1983, Ariel Investments applied to the United States Patent and Trademark Office (USPTO) to register the trademark ARIEL. Its application stated that it had been using the ARIEL name since January 1983 and had been using it in interstate commerce since March 1983. The USPTO granted registration of the ARIEL trademark to Ariel Investments in July 1984. Over the following years, Ariel Investments registered eight additional trademarks with the USPTO: ARIEL APPRECIATION FUND, ARIEL FUND, ARIEL INVESTMENTS, ARIEL FOCUS FUND, ARIEL'S ABCS OF MONEY, ARIEL DISCOVERY FUND, ARIEL INTERNATIONAL FUND, and ARIEL GLOBAL FUND. These nine marks are referred to collectively as the Ariel Marks. Five of these marks—ARIEL, ARIEL INVESTMENTS, ARIEL FUND, ARIEL FOCUS FUND, and ARIEL APPRECIATION FUND—have become incontestable under 15 U.S.C. § 1115(b). Ariel Investments' current logo contains the words ARIEL INVESTMENTS and an image of a turtle holding a trophy cup:

2



Ariel Investments uses the Ariel Marks to advertise and promote its financial services in numerous publications in print as well as online.  It spends, on average, more than $1.3 million per year in advertising.  Officers of Ariel Investments have also contributed to various television programs, and Rogers writes a regular column in Forbes Magazine.

## II.    Ariel Capital

Ariel Capital is a financial services firm founded in 2014 by Christopher Bray. Bray has worked in the financial services industry since the early 1990s and knew of Rogers before founding Ariel Capital.  Ariel Investments also sent Bray promotional e-mails around July 2010, while Bray still worked for another company.

Bray indicates that he named Ariel Capital after his daughter, Ariel, and the ministry for which he and his wife have worked for several years.  Bray further states that the company name is intended to invoke the Hebrew meaning of the word, namely "lion of God."  Bray initially wanted to use the name Ariel Wealth Advisors.  He performed a Google search for this name, however, and discovered that it was already in use by a company in New Jersey.  Bray says that he cannot recall whether, during that Google search, he also noticed any other financial services firms using the name Ariel.  Ariel Capital's current logo contains the words Ariel Capital Advisors, LLC and an image of the head of a lion:



Ariel Capital has offices in Florida and Ohio.  It is a boutique private wealth management firm offering investment management services as well as tax, retirement, and estate planning services.  The company advertises its services on its website, www.arielcapitaladvisors.com, and in advertisements in Florida and Ohio publications. Ariel Capital has clients in over ten states, which it finds primarily on a word-of-mouth or referral basis.  The company requires of its clients a minimum account of $1 million, though it may choose to accept clients with smaller portfolios.  Ariel Capital does not invest in mutual funds and focuses only on individual, as opposed to institutional, clients.

### III.    The trademark dispute

Ariel Investments claims that Ariel Capital's use of the word Ariel in connection with its financial services infringes the Ariel Marks.  Specifically, Ariel Investments asserts that, given the overlap in services offered by the two companies, an individual investor might conclude that Ariel Capital is sponsored by or otherwise affiliated with Ariel Investments.

Ariel Investments contends that there have been a number of instances where individuals have confused or mistakenly associated the two companies.  In March 2015, an unidentified caller contacted Phyllis Brady, a human relations representative for Ariel Investments, and attempted to check references for a job candidate the caller was considering.  The caller allegedly stated that someone at Ariel Capital had told her that

Ariel Investments and Ariel Capital were related companies.

That same month, Mareilé Cusack, Ariel Investments' general counsel, received a phone call from a woman asking about a piece of real estate in Naples, Florida. Specifically, the woman stated that the real estate was listed under the name Ariel, she performed a Google search to determine whom this referred to, and she came up with Ariel Investments' contact information. Cusack told the woman that Ariel Investments did not own or lease any property in Naples.

In April 2015, Chris Squittieri, an employee at Ariel Capital, attended a meeting of chartered financial analysts (CFAs) in Naples. While there, Squittieri was approached by Justin Land, another CFA, who asked Squittieri whether there was any affiliation between Ariel Capital and Ariel Investments.

In February 2016, an unidentified caller contacted Marcie Rebardo, an employee at Ariel Capital, asking to speak with Cheryl Hagen and asking, "Isn't this Ariel Investments?" The phone number was later connected to the cell phone of Daniel Boone, the owner of a digital publication on the financial industry. Boone has since indicated that he was attempting to contact Cheryl Cargie, an employee of Ariel Investments, to discuss an upcoming article and to determine whether Ariel Investments wanted to advertise in his publication. Boone stated that he mistakenly found Ariel Capital's number after performing a Google search for Ariel Investments.

In May 2016, Monica Schandel, a client of Ariel Capital, also allegedly confused the two firms. Schandel owns Blue Oceans Financial Planning, LLC and employs Ariel Capital to provide investment management services. Counsel for Ariel Investments contacted Schandel to subpoena company records regarding its relationship with Ariel

Capital.  Schandel wrote a letter in response to the request, in which she stated that she has one joint client with Ariel Investments.  Ariel Investments says that Schandel has a joint client not with Ariel Investments, but with Ariel Capital.  Further, during her deposition in June 2016, Schandel appeared to confuse the two companies.  When asked the location of Ariel Investments' headquarters and whether she knew any of its employees, Schandel responded with Naples, Florida and by naming Bray and Squittieri, two employees of Ariel Capital.  Later during her deposition, Schandel testified that she was a little confused about the names but that Ariel Capital was the company with which she has a relationship.

Ariel Investments filed this suit against Ariel Capital in April 2015.  Ariel Investments alleges in count 1 that Ariel Capital's name constitutes deliberate infringement of the Ariel Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.  In count 2, Ariel Investments alleges that Ariel Capital has engaged in unfair competition in violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a).  Ariel Investments alleges in count 3 that Ariel Capital has engaged in unfair competition and deceptive trade practices in violation of the IDTPA, 815 ILCS 510/1–510/7.  In count 4, Ariel Investments alleges that Ariel Capital has engaged in trade name infringement and unfair competition in violation of Illinois common law.  Finally, Ariel Investments alleges in count 5 that Ariel Capital's use of the domain name www.arielcapitaladvisors.com constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).  Ariel Investments requests declaratory and injunctive relief, disgorgement of Ariel Capital's profits, an award of statutory and punitive damages, transfer of the www.arielcapitaladvisors.com domain name, and attorney's fees and costs.

6

In its answer, Ariel Capital asserts both affirmative defenses and counterclaims. Ariel Capital first argues, in defense to a claim of trademark infringement, that the registration for the ARIEL mark must be cancelled because it was procured by Ariel Investments' fraud on the USPTO. In its second affirmative defense, Ariel Capital alleges that Ariel Investments has abandoned the ARIEL and ARIEL INVESTMENTS marks due to naked licensing and a failure to police the marks. Ariel Capital also has asserted a five-count counterclaim, two counts of which this Court dismissed in a prior order. *See Ariel Invs., LLC v. Ariel Capital Advisors, LLC*, No. 15 C 3717, 2016 WL 2851570 (N.D. Ill. May 16, 2016). In the remaining counts of its counterclaim, Ariel Capital asserts that (1) the word Ariel is merely a descriptive term that cannot be trademarked under section 2(e)(1) of the Lanham Act; (2) the word Ariel is a generic term that cannot be trademarked under 15 U.S.C. § 1064(3); and (3) Ariel Investments has abandoned the ARIEL mark and therefore its registration must be cancelled. Ariel Capital requests declaratory and injunctive relief.

**Discussion**

Ariel Investments has moved for partial summary judgment. It contends that it is entitled to summary judgment on counts 1 and 2 of its complaint because its trademarks are incontestable and otherwise valid and it has demonstrated a likelihood of confusion between the Ariel Marks and Ariel Capital's name. Ariel Capital has cross-moved for summary judgment.

Ariel Capital argues first that Ariel Investments has essentially waived its right to bring claims based on seven of the nine Ariel Marks, leaving only the claims based on the ARIEL mark and the ARIEL INVESTMENTS mark. Ariel Capital then argues that it

is entitled to summary judgment on counts 1 and 2 for two reasons: the ARIEL mark's registration must be cancelled due to fraud by Ariel Investments, and there is no likelihood of confusion between the ARIEL INVESTMENTS mark and Ariel Capital's name. Ariel Capital further argues that, because claims under Illinois law rely on the same standard as the Lanham Act, the Court should grant summary judgment in favor of Ariel Capital on counts 3 and 4. Finally, Ariel Capital argues that it is entitled to summary judgment on count 5 because Ariel Investments cannot establish the elements of cybersquatting.

Summary judgment is appropriate when the evidence provided shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). Facts are viewed in the light most favorable to the non-moving party. *See Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). Summary judgment is appropriate where no reasonable juror could return a verdict in favor of the non-moving party. *Sorensen*, 792 F.3d at 722.

## I. Waiver of claims based on certain marks

Ariel Investments' complaint charges Ariel Capital with infringing all nine of the trademarks referred to as the Ariel Marks. Ariel Capital argues that Ariel Investments, through its own admissions, has since narrowed its case to only two trademarks: the ARIEL mark and the ARIEL INVESTMENTS mark. Def.'s Mem. in Supp. of Mot. for Summ. J. at 5–6.

In making this argument, Ariel Capital points to two statements by Ariel Investments. In response to a discovery request, Ariel Investments stated, "Ariel

8

Capital insists on discovery relating to Ariel Investments' use of animal illustrations not at issue in this case. Only the ARIEL and ARIEL INVESTMENTS marks are at issue in this case." Pl.'s Resp. to Def.'s Mot. to Compel Produc. of Docs. at 6. This statement, however, was made in response to Ariel Capital's request for discovery of animal imagery. Ariel Investments was only indicating that the images themselves are not at issue. Ariel Investments was not attempting to limit the scope of its claims.

Ariel Capital also points to Ariel Investments' motion to dismiss Ariel Capital's counterclaims. In the background section of that brief, Ariel Investments referred only to the ARIEL and ARIEL INVESTMENTS marks, indicating that those two marks have become incontestable under the Lanham Act. Pl.'s Mem. in Supp. of Mot. to Dismiss Def.'s Countercls. at 1–2. But Ariel Investments did not thereby disclaim its allegations based on the other seven marks. The fact that Ariel Investments, at times, chose to refer to one or two marks does not amount to a relinquishment of claims brought based on the other marks.

Ariel Capital relies on *Green v. Travis*, No. 00 C 2230, 2000 WL 1409828 (N.D. Ill. Sept. 26, 2000), a case in which this Court found that plaintiffs were estopped from bringing a claim of fiduciary duty. *Id.* at *2. In *Green*, however, the Court noted that plaintiffs had "said they were making no such claim and disavowed any intention to raise such a claim in the future." *Id.* That is not the case here.

In sum, the Court overrules Ariel Capital's contention that Ariel Investments' claims are limited to only the ARIEL and ARIEL INVESTMENTS marks.

## II.    Counts 1 and 2

In count 1, Ariel Investments alleges that Ariel Capital has infringed all nine of the

Ariel Marks in violation of Section 32 of the Lanham Act.  In count 2, Ariel Investments alleges that Ariel Capital has engaged in unfair competition in relation to the Ariel Marks in violation of Section 43 of the Lanham Act.  The Lanham Act creates "a federal right of action for trademark infringement to protect both consumer confidence in the quality and source of goods and businesses' goodwill in their products."  *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).  Section 32 provides a cause of action for the unauthorized use of a registered trademark and imposes liability when an individual "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(a); *see Phoenix*, 829 F.3d at 822.  Section 43 creates a cause of action against anyone who engages in unfair competition by falsely designating the origin of a product.  *Phoenix*, 829 F.3d at 822.  Section 43 imposes liability on

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, . . . which is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

The standard under both provisions is the same.  To prevail, a plaintiff must show "(1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers."  *Phoenix*, 829 F.3d at 822.

Ariel Investments has moved for summary judgment on counts 1 and 2, arguing that all nine of its marks are protectable and that there is a likelihood of confusion

between its marks and Ariel Capital's name. Ariel Capital also moved for summary judgment on counts 1 and 2. Ariel Capital has argued only that (1) the ARIEL mark is not protectable due to fraud; and (2) there is no likelihood of confusion with the ARIEL INVESTMENTS mark.

### A. Protectable

#### 1. Registered marks

Registering a trademark with the USPTO creates a rebuttable presumption of the mark's validity. 15 U.S.C. § 1115(a); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). Marks that have been in continuous use in commerce for five consecutive years following registration become incontestable and are further insulated from challenge. 15 U.S.C. § 1065; *see also Am. Soc'y of Plumbing Eng'rs v. TMB Pub., Inc.*, 109 F. App'x 781, 788 (7th Cir. 2004). Incontestable marks are subject to a limited number of defenses, including that the registration or the incontestable right to use the mark was obtained by fraud. *See* 15 U.S.C. § 1115(b)(1).

All nine of the Ariel Marks are registered with the USPTO and therefore carry a rebuttable presumption of validity. Five of the Ariel Marks have also become incontestable under section 1065: ARIEL, ARIEL INVESTMENTS, ARIEL FUND, ARIEL FOCUS FUND, and ARIEL APPRECIATION FUND. Ariel Capital does not challenge whether eight of the nine Ariel Marks are protectable. It argues only that the registration for the ARIEL mark should be cancelled on the ground that Ariel Investments procured the registration by fraud.

Once a registered mark has become incontestable, "the registration shall be conclusive evidence" of the mark's validity and the registrant's exclusive right to use it in

11

commerce. 15 U.S.C. § 1115(b). The same statute, however, permits certain defenses to an incontestable mark, including "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently." *Id.* § 1115(b)(1). A party seeking to invalidate a registered mark bears the burden of proof. *Georgia-Pacific*, 647 F.3d at 727. That party must show fraud by clear and convincing evidence. *Cf. Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982) (addressing an affirmative claim seeking cancellation). Fraud exists only "when there is a deliberate attempt to mislead the Patent Office into registering the mark." *Id.*

Ariel Capital argues that Ariel Investments misrepresented in its application for registration the date that it first used the ARIEL mark in commerce. Def.'s Mem. in Support of Mot. for Summ. J. at 10–11. The Lanham Act requires a mark to be used in commerce before it is registered. 15 U.S.C. § 1051(a)(3)(C). Ariel Investments applied to register the ARIEL mark in June 1983. In its application, Ariel Investments stated that it had first used the mark on January 10, 1983 and had first used it in interstate commerce on March 23, 1983. Pl.'s Stat. of Material Facts, Ex. I. In contending this was a deliberate attempt to mislead, Ariel Capital points to deposition testimony from Rogers, who stated that Ariel Investments' public-facing investment accounts began in September 1983. Def.'s Stat. of Material Facts, Ex. 9 at 340:1–342:8. Ariel Capital argues that Ariel Investments did not use the mark in commerce until this date and, because Ariel Investments was a closely-run company, Rogers must have known this when the company applied to the USPTO to register the ARIEL mark in June 1983. As a result, Ariel Capital contends, the registration was obtained fraudulently.

The Court rejects Ariel Capital's contention that the relevant date of first

12

use in commerce is the date when Ariel Investments offered its first investment

fund to the public in September 1983. "Use in commerce" is defined in the

Lanham Act as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
>> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>>
>> (B) the goods are sold or transported in commerce, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127. Nothing about this definition required Ariel Investments to offer an

investment fund to the public in order to be considered to have used the term Ariel "in

commerce."

Ariel Capital's contention that the relevant date is when Ariel Investments offered

its first fund to the public is the only affirmative evidence it offers regarding the falsity of

the registration application. The remainder of Ariel Capital's argument on the fraudulent

application issue consists of attacks on the sufficiency of the contrary evidence that

Ariel Investments has offered. But because the issue of fraud is a point on which Ariel

Capital bears the burden of proof, it is not enough for it to argue that Ariel Investments'

contrary evidence is not to be believed. When a party bears the burden of proof on a

13

point, it cannot satisfy that burden by arguing that the opposing party's evidence is inadequate to establish the contrary proposition. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see generally*, A. Miller, 9B Federal Practice and Procedure § 2527 (Supp. 2016). And even were this not the case, the evidence offered by Ariel Investments, though it is arguably less than conclusive, is sufficient to preclude any reasonable jury from finding that there was any deliberate intent to mislead the USPTO on the "first use in commerce" point. Ariel Investments was offering services, so the question under section 1127, quoted earlier, is whether it had used or displayed the term Ariel in selling or advertising investment management services and the services were rendered in commerce. It has offered as evidence a newsletter and informational brochures dated prior to the trademark registration application that use the name Ariel Capital Management, Inc. In addition, Merrillyn Kosier, Ariel Investments' chief marketing officer, testified that Rogers founded the company in January 1983 with a number of clients for whom he was investing money. Pl.'s Stat. of Add'l Facts, Ex. RR (Kosier Dep.) at 75:11–76:8. This evidence, though it is less than crystal clear, is sufficient to prevent any reasonable jury from finding by clear and convincing evidence that Ariel Investments *deliberately* attempted to mislead the USPTO in claiming a first-use-in-commerce date predating the application. The Court concludes that Ariel Capital has not offered evidence sufficient to support a defense to the incontestability of the registered mark.[1]

---

[1] The Court also rejects Ariel Capital's contention that the registration can be invalidated simply by a showing of the absence of use of the mark in commerce before the registration date even if the registration was not obtained fraudulently. The statute makes it clear that once a mark is incontestable—as this one is—that is conclusive proof of the mark's validity and the owner's exclusive right to use it, subject to the limited

## 2. Unregistered marks

Even if none of the Ariel Marks were registered with the USPTO, they might still receive protection under section 43 of the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (indicating that section 32 only protects registered marks whereas section 43 can protect both registered and unregistered marks). A trademark can be enforced under section 43 regardless of whether the mark has been registered. *See Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 728 (7th Cir. 2010). The purpose of section 43 is to prevent unfair competition that leads to "mistaking a junior user's product as originating from a senior user." *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700–01 (7th Cir. 2014) (defining a "senior user" as the first, and protected, user of the mark).

This distinction is irrelevant for eight of the nine marks, for which Ariel Capital has not raised a challenge to the registrations. But had Ariel Capital offered evidence sufficient to permit a finding that Ariel Investments committed fraud in registering the ARIEL mark—requiring cancellation of the registration and thereby defeating the section 32 claim based on this mark—it might try to defeat the section 43 claim brought in count 2 with regard to that particular mark, based on the argument that Ariel Investments was not in fact the "senior user" of the mark. Having concluded that there is no genuine factual dispute on the fraudulent registration issue, the Court mentions this point only for

---

defenses listed in section 15 U.S.C. § 1115(b). *See generally Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985). Absence of use in commerce is not one of those defenses. Ariel Capital's argument that the mark was "void *ab initio*" therefore lacks merit. To the extent that *NetJets Inc. v. Intellijet Grp., LLC*, No. 2:12C59, 2013 WL 5675464, at *2-3 (S.D. Ohio Oct. 17, 2013), concludes otherwise, the Court respectfully finds the analysis in that case unpersuasive.

the sake of completeness of the record.  Ariel Capital argued in its reply brief that Ariel Investments "failed to produce any evidence that it used its ARIEL *common law* mark in the Naples or Cleveland areas *prior to*" Ariel Capital.  Def.'s Reply at 6.  Because Ariel Capital first raised this point in its reply brief, Ariel Investments had no fair opportunity to respond.  Though Ariel Capital made a brief mention of the point in its opening motion, *see* Def.'s Mem. in Supp. of Mot. for Summ. J. at 4–5, it was only a passing reference that was insufficient to put Ariel Investments on notice that it was seeking entry of judgment on this basis.

### 3.    Counterclaims

Ariel Capital's counterclaim includes three claims that challenge whether the Ariel Marks are protectable or incontestable:  it contends that one or more of the marks are merely descriptive, are generic, or have been abandoned.  Neither party has moved for summary judgment on any of these claims, nor has either party made arguments regarding the case law relevant to the claims.  The Court therefore does not address their merits at this time.

### B.    Likelihood of confusion

Ariel Capital argues that there is no likelihood of confusion as between its name and the ARIEL INVESTMENTS mark.  (It makes no argument along these lines regarding the other marks that are at issue.)  Ariel Investments argues that there is a likelihood of confusion as between Ariel Capital's name and all of the Ariel Marks.  Courts consider seven factors in determining whether consumers are likely to be confused by a defendant's use of certain marks:

(1)    the similarity between the marks;

(2)    the similarity of the products;

(3)    the area and manner of concurrent use;

(4)    the degree of care likely to be exercised by consumers;

(5)    the strength of the plaintiff's mark;

(6)    any evidence of actual confusion; and

(7)    the intent of the defendant.

*Sorensen*, 792 F.3d at 726. No single factor is dispositive, but three are particularly important: the similarity of the marks, the intent of the defendant, and evidence of actual confusion. *Id*.

### 1.    Similarity between the marks

In assessing the similarity of the marks, "[t]he test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id*. The marks are sufficiently similar that a consumer might reasonably believe that Ariel Capital and its services are associated with Ariel Investments. Both use the word Ariel as an identifier in combination with more general financial terms such as "investments" and "capital advisors." Further, Ariel Investments has trademarked various terms relating to financial services, all of which begin with the word Ariel. Ariel Investments has therefore provided sufficient evidence from which a reasonable juror could conclude that the marks are similar.

Ariel Capital argues that the two companies' logos are markedly different, defeating a conclusion that the marks are similar. In particular, Ariel Capital points to

the fact that logos use different fonts, different colors, and different animals to promote the two companies. But the Seventh Circuit has indicated that if one word or feature of a trademark is deemed to be the "salient portion of the mark," it may be given greater weight than surrounding elements. *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004). In this type of situation, it is "inappropriate to focus on minor stylistic differences to determine if confusion is likely." *Id.* Ariel Investments trademarked ARIEL, as well as eight other marks beginning with the word Ariel, not a particular logo containing the image of a turtle. The term Ariel is the salient portion of all of the Ariel Marks and thus entitled to greater weight when determining similarity. Because Ariel Capital has used the term Ariel in much the same way Ariel Investments uses it throughout the Ariel Marks, this first factor weighs in favor of finding a likelihood of confusion.

### 2. Similarity of products

The next factor is the similarity of the products or services offered by the plaintiff and the defendant. Similarity does not require the products or services to be identical. *See CAE*, 267 F.3d at 679. Trademark rights extend to any goods "that might be, in the minds of consumers, 'related'" and therefore the appropriate inquiry is "whether the public is likely to attribute the products and services to a single source." *Id.* Closely related products are those that consumers would reasonably expect to be affiliated with or sponsored by the trademark owner. *Id.* Both Ariel Investments and Ariel Capital offer services related to wealth management and financial planning. Although Ariel Capital focuses on personalized services such as tax and estate planning whereas Ariel Investments focuses on mutual funds, a consumer might reasonably believe that one company offered all of these services or that a single company sponsors or endorses

18

both ventures.

Ariel Capital argues that there is little similarity because it offers services—personalized financial planning—whereas Ariel Investments offers products—"off-the-rack mutual funds."  Def.'s Resp. at 8–9.  This distinction, however, is insufficient to prevent a finding of similarity, because one company might offer or sponsor both products *and* services, particularly when the products and services fall within the same industry.  Further, courts have recognized that trademark law is also meant to protect the ability of a trademark owner to enter product markets "in which it does not now trade but into which it might reasonably be expected to expand in the future."  *CAE*, 267 F.3d at 681.  A reasonable factfinder could find a reasonable likelihood that Ariel Investments would wish to expand into personalized financial services in the future.

### 3. Area and manner of concurrent use

The next factor is concurrent use, which involves an assessment of "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties."  *Id.*  Although Ariel Capital only has offices in Florida and Ohio, Ariel Investments is a national firm and therefore advertises to potential clients in Florida and Ohio.  Further, Ariel Capital has clients in at least ten states, indicating that its customer base has significant overlap with that of Ariel Investments.  Ariel Capital argues that the two companies target different audiences and therefore the marks do not have concurrent use.  Specifically, it argues that it focuses on wealthy individual clients, whereas Ariel Investments focuses on institutional investors.  But Ariel Investments provides services to individual investors as well, and the fact that Ariel Capital may attract clients with a larger portfolio does not mean that the areas and

manners of use do not overlap. A reasonable factfinder could find that this factor weighs in favor of finding a likelihood of confusion.

### 4. Degree of care

The next factor is the degree of care exercised by consumers. In considering the degree of care, courts assume that "the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Sorensen*, 792 F.3d at 730. As Ariel Capital argues, consumers likely exercise a high degree of care when making large financial decisions or when deciding where to invest their money. Further, Ariel Investments' customers are typically large institutions, which are more likely to be sophisticated consumers. But "customers' technical sophistication about their particular industry does not equate to trademark sophistication." *CAE*, 267 F.3d at 683. The fact that consumers are especially careful in selecting a financial services provider does not mean that they would not be confused as to the affiliation between two financial companies whose names contain the word Ariel. As discussed below, there is evidence that some persons with knowledge of the financial industry were confused as to the relationship between the two companies. A reasonable factfinder could find this factor tilts somewhat in Ariel Capital's favor but would not be required to do so.

### 5. Strength of mark

The next factor is the strength of the mark. The strength of a trademark "refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *Sorensen*, 792 F.3d at 731. Ariel Investments argues that the Ariel Marks are strong because Ariel Investments has been

using them for thirty years; it spends a substantial amount of money on advertising each year; its officers contribute to magazines and television programs, thereby increasing brand awareness; and it has earned many industry awards. Ariel Investments does not offer, however, any consumer surveys or testimony reflecting public recognition of the Ariel Marks.

Ariel Capital argues that the Ariel Marks are weak because over 150 companies have the word Ariel in their name; other such companies have existed in the financial sector without confusion; and consumers associate Ariel Investments with its turtle image and "slow and steady" motto and not with the Ariel Marks. Def.'s Resp. at 12–13. But the fact that the term Ariel may be used in connection with other businesses and products is irrelevant, as uses of the name outside the financial services field "could not possibly cause confusion" with Ariel Investments' marks. *Tisch Hotels, Inc. v. Am. Inn, Inc.*, 350 F.2d 609, 614 (7th Cir. 1965). The question of whether other financial services firms, such as Ariel Wealth Advisors, are also infringing on the Ariel Marks is equally irrelevant. *See id.*

A reasonable factfinder could find this to be a neutral factor or as tilting slightly in either side's favor.

### 6. Actual confusion

The sixth factor, evidence of actual confusion, weighs slightly in favor of Ariel Investments. Courts considering this factor must look to whether "reasonable and prudent consumers" would identify the infringing mark as coming from a company affiliated with Ariel Investments. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 729 (7th Cir. 1998). Evidence of actual confusion is not required to

21

prove that a likelihood of confusion exists, but when available it is entitled to substantial weight. *CAE*, 267 F.3d at 685. Ariel Investments offers five instances of alleged actual confusion. Ariel Capital raises evidentiary objections against each of them and also argues that they are insufficient to show actual confusion.

Ariel Investments first points to a telephone call made to Phyllis Brady, a human resources representative for Ariel Investments. The unidentified caller was attempting to check a job reference and stated that someone at Ariel Capital had told her that Ariel Investments and Ariel Capital were related companies. Pl.'s Stat. of Material Facts, Ex. CC (Pl.'s Ans. to Def.'s Interrogs.). Ariel Investments also points to a phone call to Mareilé Cusack, Ariel Investments' general counsel. A female caller asked Cusack whether Ariel Investments was associated with a specific parcel of real estate located in Florida and listed under the name "Ariel." Pl.'s Stat. of Material Facts, Ex. D (Cusack Decl.). The caller allegedly indicated that she performed a Google search for Ariel and found Ariel Investments' contact information. Ariel Capital argues that evidence of both of these calls is inadmissible hearsay. The Court disagrees. Ariel Investments is offering these statements not to prove the truth of the matter asserted, but rather to prove the state of mind of the callers, i.e., that both were confused as to the relationship between Ariel Capital and Ariel Investments. Thus the statement is not hearsay at all or is at least admissible under the state of mind exception in Federal Rule of Evidence 803(3). *See, e.g., Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 931 (7th Cir. 1984); Fed. R. Evid. 803(3).

Ariel Investments next points to deposition testimony by Bray in which he relayed a statement by another employee, Squittieri. Squittieri told Bray that Justin Land,

another CFA, approached Squittieri at a CFA meeting and asked him whether there was any affiliation between Ariel Capital and Ariel Investments. Pl.'s Stat. of Material Facts, Ex. Q at 47:12–50:20. Ariel Capital again argues that this testimony is hearsay and thus must be excluded. Again, the Court disagrees. Under Federal Rule of Evidence 805, each statement embedded in this evidence must be admissible either as non-hearsay or under an exception to the hearsay rule. This requirement is met here. Bray's deposition testimony and the statement by Squittieri that Bray related are not hearsay; they are offered by Ariel Investments as statements by an agent of an opposing party and are admissible under Federal Rule of Evidence 801(d)(2)(D). And as discussed earlier, Land's statement to Squittieri is admissible to show Land's state of mind.

Ariel Investments also points to an incident in February 2016. Marcie Rebardo, an employee at Ariel Capital, received a phone call from an unidentified caller asking to speak with Cheryl Hagen. The caller also asked, "Isn't this Ariel Investments?" The phone number was later connected to Daniel Boone, the owner of a digital publication. During his deposition, Boone testified that he was attempting to call Cheryl Cargie of Ariel Investments in order to discuss advertising in his publication. Pl.'s Stat. of Material Facts, Ex. Z at 22:11–24:14. Ariel Capital argues that Boone's testimony is inadmissible because it is unreliable, pointing to his testimony that he does not remember the call "per se" because he makes numerous calls. *See id.* at 25:9–16. But Boone is able to recall significant details, including the purpose for the call, making his testimony sufficiently reliable to be admitted into evidence. Ariel Capital's argument therefore goes to the testimony's weight and not its admissibility. *See United States v. Irby*, 240

F.3d 597, 601 (7th Cir. 2001).

Finally, Ariel Investments points to statements by Schandel, a client of Ariel Capital. In a May 2016 letter to counsel for Ariel Investments, Schandel referred to "Ariel Investments" when she meant to refer to Ariel Capital. Pl.'s Stat. of Material Facts, Ex. BB (Schandel e-mail). Further, during Schandel's deposition, she repeatedly answered questions about Ariel Investments with information about Ariel Capital. Pl.'s Stat. of Material Facts, Ex. AA (Schandel Dep.) at 33:4–7, 29:1–8. Ariel Capital argues that this information is irrelevant because Schandel merely misspoke and was not confused between the two companies. Again, this affects only the evidence's weight, not its admissibility.

Ariel Capital next argues that none of these instances of alleged confusion is relevant or material because they did not involve confusion by an actual consumer of either Ariel Capital's or Ariel Investments' services. Def.'s Resp. at 3–6. The Seventh Circuit has previously suggested that persons who are not attempting to purchase goods or services from either party are not relevant consumers when considering the likelihood of confusion under the Lanham Act. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001). And it is true that Schandel is the only person in the cited examples who was an actual client of either party. The Seventh Circuit has also indicated, however, that misattribution in media articles can be indicative of confusion, *see Piper Aircraft Corp.*, 741 F.2d at 929, making Boone's testimony relevant as evidence of actual confusion. Further, both Ariel Capital and Ariel Investments have indicated that they often gain clients through referrals. Therefore confusion by others in the industry, such as CFA Justin Land, is relevant in considering whether referrals might

24

be misdirected between the two companies. Finally, both Ariel Investments and Ariel Capital use their websites to spread awareness of their products and services. Ariel Investments even permits clients to sign up through its website. Therefore any confusion as between the two companies that results from a Google search may have an impact on consumers. Thus, this factor weighs in favor of Ariel Investments. But it is not conclusive on the issue of likelihood of confusion; its weight is fairly debatable.

### 7. Intent

In assessing the factor of intent, courts look at whether the "defendant is attempting to pass off its product as having come from the plaintiff." *Sorensen*, 792 F.3d at 731. And generally it is the "second user's responsibility to avoid confusion in its choice of a trademark," a responsibility that includes "choosing a mark whose salient portion would not likely be confused with a first user's mark." *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 440 (7th Cir. 1990) (discussing similarity of the marks). Ariel Investments points to evidence indicating that Bray knew of Ariel Investments founder Rogers before Bray founded his company, he regularly read a magazine in which Ariel Investments advertised, and he had received promotional e-mails from Ariel Investments before founding Ariel Capital. Pl.'s Mem. in Supp. of Mot. for Summ. J. at 13. A reasonable factfinder could conclude from the evidence that Bray realized or deliberately ignored that he was adopting a name that was confusingly similar to Ariel Investments' mark.

But knowledge of a competitor or its mark does not always demonstrate the requisite intent. *Packman*, 267 F.3d at 644–45 (citing *Ziebart Int'l Corp. v. After Market Assoc.*, 802 F.2d 220, 227 (7th Cir. 1986)). In addition, Bray has provided a plausible

25

explanation for his use of the term Ariel that a jury reasonably could accept: he says he chose the term to reference his daughter and the ministry at which he and his wife serve.

In sum, a reasonable factfinder could find the intent factor to be neutral, or to favor Ariel Capital, or to favor Ariel Investments (though perhaps not all that strongly).

### 8. Conclusion

This is not a case in which likelihood of confusion can be determined in either party's favor on summary judgment. Some of the factors arguably favor Ariel Investments, some arguably favor Ariel Capital, and several could be assessed either way or as neutral. The Court concludes that a reasonable juror could find a likelihood of confusion but would not be required to do so. The Court therefore denies both sides' motions for summary judgment on counts 1 and 2.

## III. Counts 3 and 4

Where a plaintiff's factual allegations under the IDTPA also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004). "Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Id* (citing *Gimix, Inc. v. JS & A Grp., Inc.*, 699 F.2d 901, 908 (7th Cir. 1983). Ariel Capital argues that because it is entitled to summary judgment on the Lanham Act claims, it is entitled to summary judgment on the state law claims as well. Def.'s Mem. in Supp. of Mot. for Summ. J. at 17. Because this Court has denied Ariel Capital's motion for summary judgment on counts 1 and 2, it also denies the motion on counts 3 and 4.

**IV.     Count 5**

In count 5, Ariel Investments alleges that Ariel Capital's use of the domain name, www.arielcapitaladvisors.com, constitutes cybersquatting in violation of 15 U.S.C. § 1125(d)(1)(A).  Ariel Capital argues that it is entitled to summary judgment because no reasonable juror could find that Ariel Capital had the requisite intent.

Under the Lanham Act, an individual shall be liable to the owner of a mark if he or she "has a bad faith intent to profit from that mark . . . and registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark."  15 U.S.C. § 1125(d)(1)(A)(i)–(ii).  Cybersquatting typically occurs when a person registers a domain name of a well-known trademark and then attempts to profit from this either by "ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004).  Ariel Investments cites its evidence that Bray was aware of Ariel Investments and its marks when he established Ariel Capital, *see* Pl.'s Combined Reply and Opp'n at 28-29 n.17, but in the Court's view this falls short of evidence from which a reasonable jury could infer a "bad faith intent to profit from" Ariel Investments' marks.  Ariel Capital is entitled to summary judgment on count 5.

**Conclusion**

For the foregoing reasons, the Court denies plaintiff Ariel Investments' motion for summary judgment on counts 1 and 2 [dkt. no. 113].   The Court grants defendant Ariel Capital's motion for summary judgment on count 5 but denies the motion on counts 1, 2,

27

3, and 4 [dkt. no. 128].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 21, 2017