# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case Number: 15-cv-3717 |
| ARIEL CAPITAL ADVISORS LLC, | ) |
| | ) Hon. Judge Matthew F. Kennelly |
| Defendant. | ) |
| | ) |

## DEFENDANT ARIEL CAPITAL ADVISORS LLC'S
## RESPONSE TO PLAINTIFF'S MOTION TO STRIKE JURY DEMAND

The timing of Plaintiff's motion to strike is a transparent attempt to game the trial system. Plaintiff saw the Court's summary judgment ruling, ACA's trial strategy, and how little time was left to change it, and believed it had a better chance of winning with a bench trial, so it moved to change the plan to disadvantage ACA. To be sure, ACA would be severely prejudiced by this late change as it based its whole trial strategy, objections, motions *in limine*, exhibits, demonstrative exhibits, and witnesses for a jury trial. And even if it was not prejudiced, ACA is entitled to a jury as Plaintiff still claims damages, which it has admitted numerous times were legal remedies.

**1.     Games & Prejudice**

Plaintiff waited until less than two weeks before trial, waited until *after* it reviewed ACA's pretrial order, objections, motions *in limine*, trial exhibits, demonstrative exhibits and witness list, and waited until after this Court's Summary Judgment Ruling, to waive its jury demand and file a motion to strike Defendant ACA's jury demand. This timing was not for any equitable reason, but because Plaintiff wanted to see ACA's "poker hand" first, and because it thinks it has a better chance at winning with a bench trial. Indeed, it admitted as much during a call where Plaintiff's

1

counsel stated:

> "Given how Judge Kennelly ruled mainly in our favor on the summary judgment motion, we'd rather have a bench trial, and you'll see we'll be asking the Court for that soon." Arthur Gollwitzer, Teleconf., Jan. 23, 2017, *approx.* 12:46 PM CST.

Plaintiff believes that the Court's prior likelihood of confusion analysis would benefit it, so it prefers that to an unknown. If Plaintiff's intentions were pure – which it admitted were self-serving – it would have made this request previously, and not waited until *immediately after* the Court's summary judgment ruling. Indeed, the Court made no evidentiary ruling that would affect the right to a jury. The right to a jury trial should not be based on a barometer reading from a summary judgment ruling.

ACA would also be prejudiced by this proposed last minute change because it prepared its case strategy for a jury trial, which is a different strategy than a bench trial, and would significantly alter many of its strategic decisions that were made with its exhibits and witness lists. Indeed, ACA had already based its trial strategy, objections, motions *in limine*, exhibits, demonstrative exhibits, and witnesses to call for a jury trial, including already ordering its demonstrative exhibits and sending out trial subpoenas. Ex. A; *see also Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 351 (7th Cir. 2007) (noting "preparation for a trial often depends critically on whether it will be a jury trial or a bench trial."); *Kirsch v. Brightstar Corp.*, No. 12 C 6966, 2014 WL 5166527, at *3 (N.D. Ill. Oct. 10, 2014) (finding that it would be unduly prejudicial to forego a jury because "[the defendant] designed its litigation tactics and discovery strategies with a jury trial in mind."). ACA similarly designed its discovery strategies with a jury in mind, including decisions on fact discovery and depositions taken, so would be prejudiced by the late request. And given that neither ACA nor many of its potential witnesses are local to Chicagoland, its strategy selections also included which witnesses to call based on an expectation of a jury trial. Further,

while Plaintiff argues that a bench trial would be less time intensive and simpler, ACA disagrees as its trial strategy was directed to a simpler presentation for a jury, rather than a sophisticated presentation for a Court. *See Olympia Exp. v. Linee Aeree Italiane*, 509 F.3d at 351 ("[P]reparation for a trial often depends critically on whether it will be a jury trial or a bench trial. Lay jurors have different levels of comprehension from professional judges..."). It would be inequitable to force ACA to abandon its strategy at this late stage.

ACA would further be prejudiced because Plaintiff waited until after it saw ACA's pretrial order, motions *in limine*, trial exhibit list, demonstrative exhibits, and which witnesses ACA was planning to call, to file a motion to strike the jury demand. All of this pretrial information was submitted to Plaintiff ***before*** it filed its motion, so Plaintiff got to see ACA's strategy, and then chose which forum it wanted. *See Olympia Exp.*, 509 F.3d 351 (parties develop different trial strategies based on the trial arbiter). Because Plaintiff first saw ACA's "hand," and saw that ACA's trial strategy and exhibits favored a presentation for a jury and not a bench trial, it filed its motion.

ACA would also be prejudiced because of the large size of Plaintiff and its law firm, they would disproportionately benefit from this tactic as they would be less affected by the additional and last second work to modify their strategy for a bench trial. And where it also may not affect Plaintiff due its greater capacity and resources, the time and money ACA spent on its jury instructions, verdict forms, and trial preparation could have instead been used for other trial preparation, rather than be diluted by them.

Finally, ACA would be disproportionately prejudiced because of the needless expenses it incurred drafting jury instructions and verdict forms that could have been avoided but for Plaintiff's delay in filing this motion, a motion it could have filed at any time throughout the

3

litigation.

For these reasons alone, Plaintiff should not be allowed to withdraw its consent at this late stage and strike ACA's jury demand.

### 2. ACA Has a Right to a Jury as Plaintiff Still Seeks Damages in Its Suit

ACA is nevertheless entitled to a jury because Plaintiff still seeks damages, which are a legal remedy for a jury to decide. In essence, Plaintiff wants it both ways: no jury, but keep its damages claims. Indeed, Plaintiff still claims damages in its Complaint, Response to ACA's Motions *in Limine*, and in the Final Pretrial Order. It has not waived its rights to any of these.

#### a. *Plaintiff still seeks Damages in its Complaint*

Plaintiff alleges, and still seeks, damages. For instance, its Complaint seeks:

- "**an award of damages <u>and</u>** disgorgement of **Ariel Advisors' profits** and unjust enrichment to Ariel Investments in an amount to be determined at trial" (Dkt. 1, at 14 ¶ C (emphasis added);

- "an award of statutory damages to Ariel Investments" (*Id.* at E);

- "an award to Ariel Investments of increased damages to fully compensate Ariel Investments and punitive damages for the willful and wanton nature of Ariel Advisors' wrongful acts and because this is an "exceptional" case." *Id.* at J[1].

Because this Complaint has not been amended, nor have the damages requests been dismissed with prejudice, ACA has a right to a jury and to defend against them.

#### b. *The Final Pretrial Order, and Plaintiff's Draft, Both Seek Damages*

In the **Final** Pretrial Order filed with this Court days ago, Plaintiff again stated that "[t]his is an action **seeking damages** and injunctive relief under the Lanham Act…" Dkt. 177, at ¶ 1 (emphasis added). Furthermore, Plaintiff stated in its "Relief Sought" that "Ariel Investments is

---

[1] Plaintiff in each count similarly claimed to have been damaged too: "Ariel Advisors' actions complained of in this Complaint have caused Ariel Investments damage and injury…" Dkt. 1 ¶¶ 32, 36, 43 & 48.

4

requesting both injunctive relief **and damages**." *Id.* at 3 (emphasis added). And it seeks "disgorgement of Ariel Capital Advisors' profits and unjust enrichment," an "accounting of Ariel Capital Advisors' profits and unjust enrichment," "enhanced damages to fully compensate Ariel Investments," and "punitive damages."

Plaintiff also requested a jury trial and damages in its Draft Pretrial Order served on January 5, 2017. For instance, it stated: "This is an action **seeking damages** and injunctive relief under the Lanham Act…" Ex. B, at 1 (emphasis added); *and see* Ex. B, at 2 ¶ 3 ("Relief Sought"), *and* Pl's Instructions Nos. 27 & 29. Indeed, all of the above mentioned damages claims were also present in this "Draft Pretrial Order" Plaintiff sent ACA.

Accordingly, because Plaintiff seeks damages, and because ACA has a right to demand a jury trial on those issues, its rights should not be disturbed.

### c. *Plaintiff's Damages Claims Are Not Exempt From a Jury*

Plaintiff's argument that its damages claims and demand of ACA's profits are merely equitable and not legal are contradicted by its own position, and are unavailing as the right to a jury trial could not be lost by merging a claim for money with a claim for injunctive relief, or by characterizing a "legal" claim as "merely incidental to" an equitable claim. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11 (1959) ("In the federal court, [the right to a jury] cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief"); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477-78 (1962) ("the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings"). Indeed, Plaintiff admitted that it seeks "damages to fully *compensate Ariel Investments*." Dkt. 177, at 3 (emphasis added). However, compensation is a *legal* remedy, not an equitable one. *Morgan v. Ameritech*, 26 F. Supp. 2d 1087,

1092 (C.D. Ill. 1998) ("if a plaintiff seeks a legal remedy such as compensatory damages, the suit is characterized as a suit in 'law.'"); *see also Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998) ("an award of profits [under the Lanham Act] is intended to be compensatory and is therefore akin to a legal damages remedy.").

Plaintiff even distinguished the relief it was seeking by including damages explicitly: "Ariel Investments is requesting **both** injunctive relief ***and*** **damages**." Dkt. 177, at 3 (emphasis added); *Rogers v. Loether*, 467 F.2d 1110, 1118 (7th Cir. 1972) ("juries historically have been required where the remedy sought was damages, either compensatory or punitive"), *aff'd sub nom. Curtis v. Loether*, 415 U.S. 189 (1974). It further stated it seeks "disgorgement of Ariel Capital Advisors' **profits *and*** **unjust enrichment**," and an "accounting of Ariel Capital Advisors' **profits *and*** **unjust enrichment**." Dkt. 177, at 3 (emphasis added); *Grove Fresh Distribs., Inc. v. New England Apple Prods. Co.*, 1991 WL 3928, at *3 (N.D.Ill. Jan. 11, 1991) ("an accounting is a legal claim for damages" to be tried by a jury); *Oxford Indus*., 1990 WL 65792, at *5-8 (little practical difference between profits premised on damages versus unjust enrichment; reasoning that, either way, "a claim for a trademark infringer's profits is more analogous to a suit for damages than one for restitution"; and finding that an infringement action for profits created a right to a jury); *see also Kennedy v. Lakso Co.*, 414 F.2d 1249, 1252-54 (3d Cir. 1969) (regardless of whether a plaintiff requests an infringer's damages or profits, a jury right exists unless the determination will be too complicated for a jury). And it also treated them separate when it stated "**an award of damages and** disgorgement of **Ariel Advisors' profits and** unjust enrichment to Ariel Investments in an amount to be determined at trial." Dkt. 1, at 14 ¶ C (emphasis added).

Plaintiffs suggestion that its other damages theory is based on unjust enrichment is thus explicitly contradicted by its own differentiation of the damages it seeks, and by its admission that

it seeks compensation. *See, e.g.*, Dkt. 177, at 3 (asking for "profits ***and*** unjust enrichment"; and, "to fully *compensate*" Plaintiff) (emphasis added). Its argument thus runs counter to its own positions, and would nevertheless make no practical difference.

### 3. Rights & Consent

Plaintiff demanded, and consented to a jury trial, as did Defendant ACA. Dkt 1, 64, 91 & 98 (Complaint, Answer, Amended Answer & Second Amended Answer). While Plaintiff requests a withdrawal of its consent to a jury, ACA did not do so, and still demands a jury. Construing Plaintiff's waiver request as anything but gamesmanship would be dubious because the facts seeking a jury trial never changed until the 11th hour, nor was there any palpable reason for the change. *See LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993) (cautioning against giving effect to dubious waivers of rights to jury trial); *see also Beacon Theatres, Inc.*, 359 U.S. at 510 ("In the Federal courts this [jury] right cannot be dispensed with, except by the assent of the parties entitled to it…") (citation omitted). Where a party timely and consistently seeks a jury trial, which was available from the beginning as a matter of right, the District Court's discretion is limited. Such discretion "must, wherever possible, be exercised to preserve jury trial." *Beacon Theatres*, 359 U.S. at 510.

Denying the right to a jury is serious business, deserving of "the most exacting scrutiny" and according the court very narrowly limited discretion in doing so. *See LaMarca*, 995 F.2d at 1544; *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S. Ct. 296 (1935) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."). Moreover, due to both parties consenting to a jury, ACA based its trial strategy, all of its discovery, draft pretrial order, motions *in limine*, witness list, exhibit list, and objections

7

to Plaintiff's exhibits on having a jury trial, and changing that at this late stage would be unfairly prejudicial to ACA.

Plaintiff cites two cases to state it can withdraw its consent: *FN Herstal SA v. Clyde Armory, Inc.*[2] and *Kramer v. Banc of Am. Sec., LLC*. Both are distinguishable and do not apply here.

In *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071 (11th Cir. 2016), both parties waived their right to a jury trial, but the defendant/counterclaim-plaintiff later sought to regain a right to a jury trial after both parties had already submitted their pretrial orders, and after the pretrial conference. For instance, during its Pretrial Conference, the defendant there stated that the only relief it sought was injunctive, and that the court would grant such relief, ***not a jury***:

> THE COURT: Obviously the request here is for injunctive relief…. I mean, I see this as a matter of law as opposed to something the jury needs to do.
>
> DEFENDANT'S COUNSEL: That is the Defendant's position.

*FN Herstal SA v. Clyde Armory, Inc.*, 15-14040, Appellee's Br. at 48 (11th Cir. Jan. 14, 2016) (citing to Pretrial Conf. Tr. 6:24-7:6). The defendant there further did not mention damages or profits claims in its drafts of the Proposed Pretrial Order or in the parties' pretrial discussions (*Id.*), and also later confirmed "[t]here's not [a] damages issue here anyway." *Id.* (citing to Pretrial Conference Tr. 30:4). And nothing in the remainder of the pretrial submissions related to damages or profits. *Id*. The court there further said that it would be easier to have a bench trial to protect the highly confidential nature of the technologies, and to address the complicated legal questions. *FN Herstal SA v. Cylde Armory, Inc.*, 3:12-cv-00102, Dkt. 127, at 7 (M.D. Ga. July 6, 2015). The court thus did not allow defendant to amend the pretrial order. *Id*. In contrast, Ariel Investments

---

[2] *FN Herstal SA v. Clyde Armory, Inc* is still pending *certiorari*.

sought damages in its pretrial order drafts (Ex. B), and is still explicitly seeking damages <u>and</u> defendant's profits and damages in the Final Pretrial Order. Dkt. 177, at 1 & 3; Dkt. 177-9, at Pl.'s Instructions Nos. 27 & 29. And unlike in *FN Herstal SA v. Cylde Armory,* the defendant here – ACA – *is* demanding a jury, and ***does not*** withdraw its right to a jury. Nor does the case here involve technology of a highly confidential nature or is highly complicated.

And *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004) is also distinguishable because the trial there would not involve damages, and because the court noted that the plaintiff did not provide *any* reasons why it would be prejudiced by the late change to a bench trial. Here, Plaintiff seeks "damages," and "Ariel Capital Advisors' profits" "to fully compensate Ariel Investments." *See* Dkt. 1 ¶¶ 32, 36, 43 & 48. *and* Dkt. 177, at 1, 3. And unlike in *Kramer*, ACA *would be* prejudiced by the late change because ACA prepared its case strategy for a jury trial, including its trial strategy (including all discovery leading up to trial), objections, motions *in limine*, exhibits, demonstrative exhibits, and which witnesses to call. *See* Ex. A. And because Plaintiff waited until it had already seen ACA's "poker hand" before asking to strike the jury demand, ACA would further be prejudiced because Plaintiff was able to choose its trial arbiter based on the trial exhibits, witnesses and trial strategy ACA selected without giving ACA time to adapt a new strategy.

**4. Defendant Proceeded With the Settlement Conference Intending a Different Fact-finder**

Finally, if the Court should agree with Plaintiff on its motion, ACA respectfully requests assignment to a different arbiter for the trial. ACA proceeded in a settlement conference before this Court in part because the trial was slated to be held by a different arbiter: a jury. ACA respectfully would not have partaken in a settlement conference had it known the same arbiter would decide the ultimate questions of fact and the case, and would have instead opted for no

9

conference or a third-party neutral. To avoid prejudice, and because any trial would necessarily rely on facts discussed during the settlement conference, Defendant ACA respectfully requests reassignment for trial if the Court should grant Plaintiff's motion.

Furthermore, if the Court should agree with Plaintiff on its motion, ACA respectfully requests additional time to adjust its trial strategy.

Dated: January 30, 2017                                  RESPECTFULLY SUBMITTED,


By:s/_Adam Wolek_____
Adam Wolek
Brian Noack
WOLEK & NOACK
333 S Wabash Ave., Suite 2700
Chicago, IL 60604
P: 312.860.9006
F: 708.843.0509
*Local Counsel for Defendant Ariel Capital Advisors LLC*


Christopher P. Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Ste. 200
Naples, FL 34109
P: 239.651.6008
F: 239.431.3914
cpbray@cpbrayassociates.com
*Lead Counsel for Defendant Ariel Capital Advisors LLC*

# CERTIFICATE OF SERVICE

The undersigned certifies that, on January 30, 2017, he caused this document to be served upon the following counsel of record via electronic mail delivery:

Arthur Gollwitzer III
agollwitzer@michaelbest.com
Luke W. DeMarte
lwdemarte@michaelbest.com
Larry L. Saret
llsaret@michaelbest.com
Zachary J. Watters
zjwatters@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, Illinois 60601

Mareile Bayard Cusack
mcusack@arielinvestments.com
David Allyn Miley
dmiley@arielinvestments.com
Ariel Investments, LLC
200 East Randolph Street, Ste 2900
Chicago, Illinois 60601-6505

By:/s/ Adam Wolek
Adam Wolek