UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ARIEL CAPITAL ADVISORS LLC, )<br>)<br>Defendant. )<br>) | Case Number: 15-cv-3717<br><br>Hon. Judge Matthew F. Kennelly |

**ARIEL CAPITAL ADVISORS LLC'S
RESPONSE TO ARIEL INVESTMENTS, LLC'S MOTION TO QUASH[1]**

Plaintiff's arguments regarding the timing and relevance of Mr. John Rogers' trial subpoena are not only disingenuous, but self-inflicted. The trial strategy and preparation required for a jury trial versus a bench trial are significantly different, primarily based on the substantially higher level of sophistication of judges relative to the lay juror. While Plaintiff makes much of the "11th hour" timing of the subpoena, but for Plaintiff's own request to waive a jury demand, there would have been no subpoena. Ariel Capital Advisors LLC ("ACA") respectfully requests that this Court deny Plaintiff's Motion to Quash because: (a) its timing argument is irrelevant and self-inflicted; (b) ACA was forced to drastically overhaul its trial strategy, and intends to provide a more nuanced defense intended for a sophisticated fact-finder if its motion to strike the jury demand is granted; and, (c) Mr. Rogers' testimony is critical to the validity of the trademark and any fraud on the Trademark Office.

---

[1] If Court denies Plaintiff's Motion to Waive Jury Demand, (Dkt. 172), or grants Plaintiff's Motion *In Limine* Number 1 (Dkt. 165 at 3.), ACA withdraws its trial subpoena for Mr. Rogers.

**Facts**

ACA served a notice of deposition of Mr. Rogers on May 2, 2016. (*See* Dkt. 182-1 at 2-4, 5/2/16 Notice of Deposition.) Not long afterward, Plaintiff refused to produce Mr. Rogers for a deposition. (*See* Dkt. 182-1 at 6-8, 5/9/16 E-mail from A. Gollwitzer to A. Wolek.) ACA moved to compel Mr. Rogers's deposition on May 19, 2016. (Dkt. 83.) This Court denied ACA's motion to compel on June 23, 2016. (Dkt. 96.)

On January 21, 2017, this Court denied Plaintiff's Motion for Partial Summary Judgment and denied in part ACA's Motion for Summary Judgment. (Dkt. 170.) Two days later and a mere two weeks before trial, Plaintiff filed a Motion to Strike Jury Demand. (Dkt. 172.) Other than a call earlier that same day, ACA was unaware that Plaintiff was considering striking the jury demand. In particular, ACA had exchanged multiple drafts of the Pretrial Order and had nearly completed a final draft with no mention of this proposed change.

After evaluating the strengths of its case in relation to the potential for a bench trial, ACA issued a subpoena for Mr. Rogers immediately upon deciding his testimony would be necessary, on January 30, 2017. (Dkt. 182-1 at 10-14, 1/30/2017 Subpoena and E-mail from A. Wolek to A. Gollwitzer.) On January 31, 2017, counsel for Plaintiff accepted service of the subpoena. Later that day, and without speaking to ACA, Plaintiff filed a Motion to Quash. (Dkt. 182.)

**Argument**

Plaintiff repeatedly complains that the timing for calling Mr. Rogers is improper and even prejudicial. However, its argument is moot as the timing of the subpoena, and indeed, the fact of the subpoena at all, are a direct result of the strategically late filing of its Motion to Strike Jury Demand. Plaintiff had originally planned on a simplified defense, but now must pivot to a more

complex defense geared towards a sophisticated factfinder if the Court grants Plaintiff's motion to strike.

      ACA has spent months planning for a jury trial, a strategy markedly different from that of a bench trial. *See Olympia Exp., Inc. v. LineeAeree Italiane, S.P.A.*, 509 F.3d 347, 351 (7th Cir. 2007) (noting "preparation for a trial often depends critically on whether it will be a jury trial or bench trial."); *and see also Kirsch v. Brightstar Corp.*, No. 12-cv-6966, 2014 WL 5166527, at *3 (N.D. Ill. Oct. 10, 2014) (finding that it would be unduly prejudicial to forego a jury because "[the defendant] designed its litigation tactics and discovery strategies with a jury trial in mind."). Indeed, the Seventh Circuit has even stated that "[l]ay jurors have different levels of comprehension from professional judges…." *Olympia Exp. V. Linee Aeree Italiane*, 509 F.3d at 351. ACA planned its entire trial strategy, including objections, motions *in limine*, exhibits, demonstrative exhibits, and witnesses, based on Plaintiff's repeated assertions that there would be a jury trial. Yet, with less than two weeks until trial, and with no notice other than a same-day phone-call, Plaintiff filed a motion to strike its jury demand and switch to a bench trial.

      Aside from the blatant gamesmanship evidenced by this last second move, ACA was left scrambling to overhaul its entire strategy from scratch while simultaneously continuing to meet deadlines. Given the amount of work that goes into trial preparation and complying with all pre-trial requirements, five business days from notification of Plaintiff's Motion is well within a reasonable response time for identifying new witnesses. Had Plaintiff filed this Motion in a timely manner, ACA would have served its subpoena earlier, however, it was severely limited by Plaintiff's last-minute maneuvering. In short, Plaintiff created the timeliness issue and should not be permitted to hide behind these same tactics to avoid producing a witness.

As to relevance, ACA respectfully requests that this Court reconsider allowing evidence of fraud on the Trademark Office. As more fully briefed in its Response to Plaintiff's Motion *in Limine* No. 1, (Dkt. 177, at 1-4), whether the ARIEL trademark is valid is a required element of trademark infringement and a threshold question directly relevant to ACA's affirmative defense that it is void *ab initio*. *See Platinum Home Mortg. Corp. v. Platinum Fin. Grp.*, 149 F.3d 722, 726 (7th Cir. 1998) (To recover under a trademark infringement claim, "the plaintiff must demonstrate: (1) **validity of its trademark**; and (2) the infringement of that mark.") (emphasis added). If Plaintiff did not use the trademark in commerce at the time of the application, then it has no federal registration for the ARIEL mark, and ACA could not have infringed the registered ARIEL mark. *See Couture v. Playdom*, 778 F.3d 1379, 1381 (Fed. Cir. 2015) (the "use in commerce must be as of the application filing date" and occurs on services when [1] it is used or displayed in the sale or advertising of services and **[2] the services are rendered in commerce**") (emphasis added); *and see also Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (trademark application is void *ab initio* unless the mark was used in commerce when it was filed).

Throughout this litigation, Plaintiff has submitted evidence that a reasonable fact finder could find that the ARIEL trademark is void *ab initio*. It has repeatedly answered Interrogatories and Requests for Production showing that it did not use the mark in commerce prior to its June 29, 1983 trademark application.[2] Despite extensive discovery and a 30(b)(6) deposition, Plaintiff

---

[2] For example, in its Answers to ACA's First Set of Interrogatories, Plaintiff stated that its first account was known as Ariel Small Cap and it launched on September 30, 1983. Ex. A at 3. Plaintiff repeated this assertion in its Supplemental Response to ACA's First Set of Interrogatories. Ex. B at 3. And also in its Third Supplemental Answers to ACA's First Set of Interrogatories. Ex. C at 2-3. This is consistent with Plaintiff's launching its first public-facing fund on September 30, 1983, enabling it to accept assets for management for the first time, over six months after its alleged first date of use in commerce. (Dkt. 130 ¶ 12.) Finally, in ACA's first requests for production, ACA requested documents "relating to [Plaintiff's]

has still not submitted any evidence that it used the ARIEL mark any earlier than September 30, 1983, over six months after its alleged first date of use in commerce.

Mr. Rogers has relevant knowledge about the validity of the marks, their use, their specimens, the signed declarations submitted with the application, and in particular has first hand knowledge of any misrepresentations made during the application of the ARIEL to the Trademark Office. Indeed, Plaintiff made Mr. Rogers' testimony relevant by identifying him as having knowledge in its Answers to Interrogatories Nos. 1, 11, 14, 15, 16, 17, and 18. *See* Ex. A, C. Specifically, Interrogatories 1, 11, and 14 bear on the use, adoption, and USPTO filings related to the asserted marks, which are relevant to Plaintiff's ability to enforce the mark, the scope of its protection, and the mark's validity. *Id.* In short, Mr. Rogers is the only witness that has first hand knowledge showing whether Plaintiff committed fraud on the Trademark Office and his testimony would provide more evidence, in combination with prior testimony, that there was no first use in commerce prior to the trademark application . Accordingly, ACA respectfully requests that this Court deny Plaintiff's Motion to Quash.

## Conclusion

For these reasons, ACA respectfully asks the Court to deny Plaintiff's Motion to Quash.

---

selection, adoption, or first use of the word 'Ariel,'" "the 'Ariel' mark's first use on January 10, 1983," and, "the 'ariel' mark's first use in interstate commerce on March 23, 1983." Ex. D at 3, 5.

Dated: January 31, 2017                                  RESPECTFULLY SUBMITTED,


By: _s/     Brian T. Noack_____
Adam Wolek
Brian Noack
WOLEK & NOACK
333 S Wabash Ave., Suite 2700
Chicago, IL 60604
P: 312.860.9006
F: 708.843.0509
*Local Counsel for Defendant Ariel Capital Advisors LLC*


Christopher P. Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Ste. 200
Naples, FL 34109
P: 239.651.6008
F: 239.431.3914
cpbray@cpbrayassociates.com
*Lead Counsel for Defendant Ariel Capital Advisors LLC*

## CERTIFICATE OF SERVICE

      The undersigned certifies that, on January 31, 2017, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: January 31, 2017                            WOLEK & NOACK

                                                           By: /s/ Brian T. Noack
                                                                 Brian T. Noack