# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 3717 |
| ) | |
| ARIEL CAPITAL ADVISORS LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION TO STAY PENDING APPEAL

After a bench trial, the Court found in favor of plaintiff Ariel Investments, LLC on its trademark infringement claims. The Court denied Ariel Investments' request for disgorgement of defendant Ariel Capital Advisors LLC's alleged profits but issued an injunction that, among other things, requires Ariel Capital to cease using the infringing term "Ariel" within 30 days of entry of the order and required it to use a disclaimer of association in the interim. Ariel Capital has filed a notice of appeal and has moved for a stay of the injunction pending appeal.

The purpose of a stay pending appeal is to minimize the costs of error and mitigate the damage that may be done before a legal issue is finally resolved. *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). But a stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). In determining whether to grant a stay, a court considers the moving party's likelihood of success on appeal, any irreparable harm that will result to either side if a stay is granted or denied in error, and whether the public interest favors one side or the

other.  *In re A&F Enters.*, 742 F.3d at 766.  The court applies a sliding scale under which "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa."  *Id.*  As the party requesting a stay, Ariel Capital has the burden to show that the circumstances justify the Court's exercise of its discretion to grant a stay.

**1.    Likelihood of success**

Ariel Capital's contention that it is likely to succeed on appeal focuses on three points.  The first concerns the Court's finding that Ariel Investments established a likelihood of confusion.  Ariel Capital notes that the Court did not find that each of the seven factors considered in determining this issue were in Ariel Investments' favor.  That may be so, but it does not mean the evidence was close.  Starting with the seven factors, the Court concluded that five of them weighed in Ariel Investments' favor and that one was neutral.  There was just one factor that weighed in Ariel Capital's favor—intent to pass off one's product as that of another—and even there, the evidence was somewhat equivocal.  Specifically, the Court found that Ariel Capital's founder Christopher Bray did not adopt the name Ariel to try to lure customers from Ariel Investments but rather that he named the firm after his daughter and a ministry in which he had been involved.  But the Court also found that, contrary to Bray's contention, he "knew of Ariel Investments prior to founding Ariel Capital" and "was aware that he was adopting a name similar to the one Ariel Investments was already using in the same general field." Decision at 28.  Thus the single factor among the seven that weighed in Ariel Capital's favor did so "only weakly."  *Id.*

More generally, the evidence on the question of likelihood of confusion was not

2

close.[1]  The summary in the Court's decision illustrates this:

> [T]he two marks are similar, using the same identifying term to refer to financial services and products.  Both companies offer individualized investment services to individuals, with a wide range in the total dollars invested per client.  Further, Ariel Investments has been operating in the financial market for over thirty years and has repeatedly policed use of its marks by other financial companies.  Finally, there is evidence of actual confusion: at least one client of Ariel Capital as well as two others in the financial industry have shown confusion as to the relationship between the two companies.

*Id.* at 29.  The requirements for issuance of a permanent injunction were also clearly established; the evidence was not close on this either.  *See id.* at 31-32.

The second point raised by Ariel Capital on the question of likelihood of success concerns the denial of its motion to dismiss for lack of personal jurisdiction.  The motion likewise did not present a close question in the Court's view.  And as noted above, the Court found, after considering the evidence at trial (including Bray's testimony) that Bray was aware of Ariel Investments and its business before he named Ariel Capital and knew he was adopting a mark similar to the one Ariel Investments had long used.  Ariel Capital's knowing adoption of a mark confusingly similar to the one long used by an Illinois entity in the same field is more than sufficient to establish the minimum contacts with Illinois needed to make personal jurisdiction appropriate.  Again, this is not a close question in the Court's view.

Ariel Capital's third point concerns the Court's decision to allow Ariel Investments to withdraw its jury demand shortly before trial and to overrule Ariel Capital's ensuing request for a jury trial.  Ariel Investments dropped its claim for damages and pursued

---

[1] The Court notes that its denial of summary judgment does not suggest otherwise but rather meant only that there was a genuine factual dispute to be determined at trial.

3

only its request for an injunction and for disgorgement. The Court, relying on established authority (albeit not from this circuit), concluded that the request for disgorgement of profits in a Lanham Act case is a claim for equitable relief that did not entitle Ariel Capital to a jury trial. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991); *see also, e.g., Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015). The Supreme Court "ha[s] characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'" *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (quoting *Tull v. United States*, 421 U.S. 412, 424 (1987)). This legal issue likewise is not close.

Ariel Capital also contends that it was unfairly prejudiced by the timing of the withdrawal of Ariel Investments' damages claim and jury demand shortly before trial. The claim of prejudice was and is completely conclusory and unsupported. Even now, Ariel Capital does not identify anything it would have done differently if it had had more time to adjust. And as virtually any experienced trial lawyer will tell you, a bench trial is far simpler than a jury trial—all else being equal, as in this situation—largely due to the absence of the need to educate laypersons on matters that are outside their usual frame of reference.

In conclusion, though Ariel, like any appellant, has some likelihood of success on appeal, this cannot fairly be characterized as a significant likelihood of success or even a reasonable likelihood of success.

## 2. Irreparable injury

Ariel Capital has also failed to establish any irreparable harm. First of all, it did

4

not do so at trial, as the Court concluded in its decision granting Ariel Investments'

request for an injunction:

> Ariel Capital offered no evidence regarding any hardship an injunction would impose. And an appropriate injunction in this case would require only that Ariel Capital change its name, a process that, though perhaps not simple, will not drive the company out of business. This is particularly true given that most of Ariel Capital's clients have been with Bray through at least two firms and likely will be unaffected by a change in the company's name.

Decision at 32.

In its motion for a stay, Ariel Capital contends that the timing of the injunction is unfair because it comes during tax season, a busy time for the company. But as with Ariel Capital's contentions about irreparable harm at trial, the claim that this will cause hardship, let alone irreparable harm, is entirely unsupported. To be sure, the injunction requires Ariel to, among other things, adopt a new name (along with stationery, business cards, and so on), transfer its current domain ([www.arielcapitaladvisors.com](www.arielcapitaladvisors.com)) to Ariel Investments, and thus, presumably, establish a new domain name and website. But on the record before the Court, the amount of time, effort, and money this would require is entirely speculative, and Ariel Capital offers no *evidence* that doing this work—or, more likely, engaging the services of others to do it—would detract from its ability to perform whatever services it must perform for its clients during this period (which Ariel Capital likewise does not describe or detail). In short, Ariel Capital has offered no evidence that transitioning the business to operation under a different name will pose significant difficulty, let alone irreparable harm. Ariel Capital has effectively forfeited the point by failing to support it with any evidence.

Furthermore, the evidence at trial undermines any contention that Ariel Capital

will lose any business advantage from giving up the name Ariel. Bray testified that all of Ariel Capital's clients followed him from when he left his previous firm, Willow Street Advisors. There is no evidence, and Ariel Capital does not claim, that any of them did so because of the new firm's name. And if Bray is to be believed, Ariel Capital has not and does not advertise but instead relies on word of mouth. Thus there is no basis to believe that the name change will adversely impact Ariel Capital's marketing.

The harm to Ariel Investments if Ariel Capital is permitted to continue to use the name Ariel is intangible but real nonetheless. Indeed, "trademark violations are irreparable, primarily because injuries to reputation and goodwill are nearly impossible to measure." *In re A&F Enters.*, 742 F.3d at 769. Ariel Investments may not have suffered any quantifiable harm to date, but its reputation is at risk as long as Ariel Capital is operating under that name.

The Court concludes that the balance of harms does not favor granting a stay.

**3.     Public interest**

The public interest is not a terribly significant factor in this particular case. That said, as Ariel Investments argues, the public interest is served by preventing trademark infringement. Thus to the extent it is a factor, it does not favor granting a stay.

## Conclusion

The Court is cognizant that the purpose of a stay pending appeal is to minimize the costs of an error in a district court's ruling. But in this case Ariel Capital has not offered—either at trial or in connection with its motion for stay—any evidence supporting a claim of irreparable harm absent a stay. Thus on the record before the Court, though Ariel Capital will no doubt incur some costs based on compliance with an injunction, it

will incur no irreparable harm. On the other hand, the harm to Ariel Investments from continued infringement of its trademark is the type of injury that the law defines as irreparable. Finally, Ariel Capital has shown only a minimal likelihood of success on the merits. The Court concludes that Ariel Capital has failed to carry its burden of showing that a stay is appropriate. The Court therefore denies Ariel Capital's motion but, at its own instance, extends the date for compliance with the injunction (aside from the disclaimer requirement) to April 18, 2017 to take account of the period the Court had the motion for stay under advisement.

Date: March 20, 2017

_____
MATTHEW F. KENNELLY
United States District Judge