UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL INVESTMENTS, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-3717 |
| ) | |
| ARIEL CAPITAL ADVISORS LLC ) | |
| ) | |
| Defendant. ) | |

**Memorandum in Support of Ariel's Bill of Costs**

This Court should award costs and expenses to Plaintiff Ariel Investments, LLC ("Ariel"), which, after a three-day bench trial, prevailed on its claims against Defendant Ariel Capital Advisors LLC ("Ariel Capital"). *See* Local Rule 54.1; Fed. R. Civ. P. 54(d); 28 U.S.C. § 1920. The costs and expenses sought by Ariel are both necessary and reasonable, and have been itemized in attached charts and supporting invoices.

*Legal Standard*

Rule 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Recoverable costs include (i) fees of the clerk and marshal; (ii) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (iii) fees and disbursements for printing and witnesses; (iv) fees for exemplification and necessary copying costs; (v) docket fees under 28 U.S.C. § 1923; and (vi) compensation of court-appointed experts, interpreters, and salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1920.

"There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v.*

*Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). When reviewing a bill of costs, a court "simply needs to determine that expenses are allowable cost items, and that the amounts are reasonable and necessary." *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995).

*Argument*

**I.     Costs Relating to Depositions**

Ariel requests taxation of costs totaling $11,194.28 for deposition-related expenses. These expenses are composed of transcript costs, video costs, and witness fees, as explained below.

**A.     Deposition Transcripts**

Ariel is entitled to recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" pursuant to Section 1920(2). Accordingly, the Court should award the costs and expenses Ariel incurred deposing the following witnesses:

***Christopher Bray:*** Mr. Bray is Ariel Capital's sole owner and the central witness in this dispute as the person who founded Ariel Capital, selected its name, and presides over its business. Mr. Bray was deposed three times and each deposition was necessary. Ariel first deposed Mr. Bray in July 2015 when Ariel Capital designated him as its Rule 30(b)(6) witness during jurisdictional discovery arising from Ariel Capital's motion to dismiss.[1] In May 2016, Ariel deposed Mr. Bray again during fact discovery both in his personal capacity under Rule 30(b)(1) and because Ariel Capital again designated him as its Rule 30(b)(6) designee on all topics. Both parties called Mr. Bray as a witness at trial. Finally, Mr. Bray's testimony was ubiquitous in this Court's Findings of Fact and Conclusions of Law. (*See generally* Dkt. 192.)

---

[1] This first deposition was limited to 90 minutes and specific topics by Court order. (Dkts. 20, 20-3, & 23.)

***David Boone:*** Mr. Boone is the owner of a digital publication that covers the financial trading industry who mistakenly placed a telephone call to Ariel Capital intended for Ariel. Mr. Boone lives and works outside the subpoena range of this Court, so a deposition was required to secure this evidence. Portions of Mr. Boone's deposition testimony were introduced at trial and the Court cited this testimony as evidence of actual confusion. (*See id.* at 27.)

***Marcie Rebardo:*** Ms. Rebardo is the Ariel Capital employee who received the telephone call from Mr. Boone described above. Ms. Rebardo lives and works outside of the subpoena range of this Court, so a deposition was required to secure this evidence. Portions of Ms. Rebardo's deposition testimony were introduced at trial and the Court cited her testimony as evidence of actual confusion. (*See id.*)

***Kimberly Wilmore:*** Ms. Wilmore is an Ariel Capital employee who testified regarding the firm's services and business. She also testified that Mr. Bray did not ask her to search her computer for documents or to look for paper documents relating to this case. Ms. Rebardo lives and works outside of the subpoena range of this Court, so a deposition was required to secure this evidence. Portions of Ms. Wilmore's deposition testimony were introduced at trial as relevant to Ariel's claims to similarity of services and intent.

***Monica Schandel:*** Ms. Schandel is the owner of a financial planning services firm and an Ariel Capital client who confused Ariel and Ariel Capital via e-mail and during her deposition. Ms. Schandel lives and works outside the subpoena range of this Court, so a deposition was required to secure this evidence. Portions of Ms. Schandel's deposition testimony were introduced at trial and the Court cited her testimony as evidence of actual confusion. (*See id.* at 26-27.)

***Merrilyn Kosier:*** Ms. Kosier is Ariel's chief marketing officer who testified as Ariel's corporate representative in response to Ariel Capital's Rule 30(b)(6) deposition request. Ms. Kosier was one of the two witnesses called by Ariel Capital at trial.

Under this Court's Local Rules, the cost of a deposition transcript "shall not exceed the regular copy rate as established by the Judicial Conference of the United States . . . ." Local Rule 54.1(b). Accordingly, Ariel requests recovery at the Judicial Conference's rate of $3.65 per page for the depositions of Mr. Boone, Mr. Bray, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel, totaling $2,744.95. Notably, the amount requested is considerably lower than the actual amount incurred by Ariel, as reflected in Exhibit A and its attached invoices.

As for the deposition of Ms. Kosier, the Court should award Ariel $3,594.41, which reflects the amount spent by Ariel at the rate charged by the court reporter selected by Ariel Capital. (*See* Ex. A.) Under Seventh Circuit precedent, the Standard Judicial Conference rate does not apply "when the party who must bear the costs selected the court reporter—in other words, whoever picked the reporter can't later object to that reporter's rates." *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014). As such, Ariel is entitled to the full cost of obtaining copies of Ms. Kosier's deposition transcripts. *See Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 2016 U.S. Dist. LEXIS 8970, at *8-9 (N.D. Ill. Jan. 26, 2016) (Kennelly, J.) (taxing the full cost of the deposition transcripts for court reporters chosen by opposing party); *Merix Pharm. Corp. v. Clinical Supplies Mgmt.*, 106 F. Supp. 3d 927, 942 (N.D. Ill. 2015) (Kennelly, J.) (same).

The Court should also award Ariel the attendance fees charged by the court reporters for the depositions of Mr. Boone, Mr. Bray, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel, totaling $968.00. *See Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998) ("As for the deposition

attendance fees charged by the court reporter, we have previously held that even though these fees are not specifically mentioned in the statute, the district court may award them in its discretion pursuant to 28 U.S.C. § 1920(2)."); *see also Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 2016 U.S. Dist. LEXIS 18324, at *13 (N.D. Ill. Feb. 16, 2016) (Kennelly, J.) (court reporter attendance fees are recoverable costs of deposition transcripts).

Accordingly, Ariel seeks a total of $7,307.36 for deposition transcripts and court reporter appearance fees. (*See* Ex. A.)

### B. Deposition Videos

The Court should also award Ariel the costs associated with videotaping the depositions of Mr. Boone, Mr. Bray, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel. "A prevailing party may recover costs for both a paper transcript and a video recording of a deposition, but only when it was 'reasonable and necessary' for counsel to obtain both." *Cascades*, 2016 U.S. Dist. LEXIS 18324, at *11 (citing *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008)). Because Mr. Boone, Mr. Bray, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel are each located beyond the subpoena power of this Court, they could not be compelled to testify at trial. As such, Ariel reasonably requested both transcripts and video recordings of these five depositions. *Cascades*, 2016 U.S. Dist. LEXIS 18324, at *12 ("Both deponents were beyond the subpoena power of the Court and therefore could not have been compelled to testify at trial. It was accordingly reasonable to request both printed transcripts and video recordings of their depositions."); *see also Intercontinental*, 2016 U.S. Dist. LEXIS 8970, at *5-8 (taxing costs to obtain deposition videos where witnesses resided outside the Court's subpoena power); *Merix*, 106 F. Supp. 3d at 943 (stating it was reasonably necessary to videotape a witness's deposition because he was outside of the subpoena power of the Court).

Ariel also asks the Court to tax the costs of synchronizing the deposition videos and deposition text for use at trial. "Synchronizing" refers to the process of taking the digital video of the deposition and precisely aligning the video with the court reporter's written transcript. This process improves the ability to use the deposition videos at trial, since a party or the Court can quickly locate a specific piece of testimony and watch the corresponding video clip. Ariel obtained synchronized videos for the depositions of Mr. Boone, Ms. Rebardo, Ms. Wilmore, Ms. Schandel, and Mr. Bray. These synchronized videos were meant to assist the Court and opposing counsel in ensuring that Ariel presented at trial only the portions of each deposition authorized by the Court after the parties exchanged deposition designations and objections. These costs are recoverable. *See Olivarius v. Tharaldson Prop. Mgmt.*, 2012 U.S. Dist. LEXIS 46497, at *10 (N.D. Ill. Apr. 3, 2012) (allowing taxation of synchronization fees); *Specht v. Google, Inc.*, 2011 U.S. Dist. LEXIS 68968, at *7-8 (N.D. Ill. June 27, 2011) (same).

The synchronized videos of Mr. Boone, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel's depositions were used during trial. While Mr. Bray's depositions were not played at trial, the synchronized videos of these depositions were obtained in light of the possibility that Mr. Bray would stray from his prior testimony and need to be impeached during trial. *Cf. Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 455 (7th Cir. 1998) ("The proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court."). Additionally, Ariel prepared these videos because it was not certain that Mr. Bray would attend trial as he was not named individually as a defendant in this lawsuit and he resided in Florida, beyond the subpoena power of this Court. Accordingly, Ariel requests a total of $3,777.50 for deposition videos and synchronization. (*See* Ex. A.)

### C. Deposition Witness Fees

Finally, Ariel may recover the deposition attendance fees it paid witnesses under 28 U.S.C. § 1821(b). The cost is limited to $40 per day per witness, plus reasonable travel expenses. *See Merix*, 106 F. Supp. 3d at 945 ("Witnesses may be paid $40 per day for attendance at trial or deposition . . . . Witnesses are also compensated for actual travel expenses . . . ."). Ariel paid Mr. Boone and Ms. Schandel an appearance fee and reasonable mileage reimbursement for their deposition attendance in the amount of $109.42. Accordingly, Ariel requests witness fees for attendance at depositions in that amount. (*See* Ex. A.)

## II. Costs of Court Transcripts

Ariel is also entitled to recover the costs of court transcripts under 28 U.S.C. § 1920(2). *See Majaske v. City of Chi.*, 218 F.3d 816, 825 (7th Cir. 2000) ("We have long recognized that [§ 1920(2)] includes trial transcripts and transcripts from other court proceedings necessarily obtained for use in the case."). Ariel obtained transcripts of the pretrial conference, which were necessary to ensure that Ariel adduced evidence at trial in accordance with the Court's evidentiary and other rulings. Ariel also ordered and obtained daily trial transcripts, which were necessary for its remaining trial preparation as well as potential post-trial motions (such as Ariel Capital's unsuccessful motions to stay the permanent injunction pending appeal). *See Merix*, 106 F. Supp. 3d at 944 (trial transcripts reasonably necessary for prevailing party to respond to post-trial motions). Therefore, Ariel requests a total of $1,313.70 for those court transcripts. Ariel has documented these costs in Exhibit B, with the relevant invoices attached.

## III. E-Discovery Costs

The Seventh Circuit also permits recovery of certain electronic discovery costs under 28 U.S.C. § 1920(4). *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (allowing

recovery for "converting computer data into readable format in response to [opponent's] discovery request"). Because the Seventh Circuit has not provided particularized guidance regarding the permissible scope of recovery, this Court has adopted the Third Circuit's treatment of electronic discovery as set forth in *Race Tires of Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012). Under *Race Tires*, a prevailing party may recover e-discovery costs akin to "making copies," including "scanning and file format conversion." *See Intercontinental*, 2016 U.S. Dist. LEXIS 8970, at *17 (applying *Race Tires*).

In light of the complex and voluminous nature of the document production requests propounded by Ariel Capital, Ariel was forced to produce more than **75,000** pages of documents (mostly electronic records) in this case, and incurred $144,442.23 in fees from an outside e-discovery vendor in order to make that production. Ariel Capital propounded a total of 45 Requests for Production throughout this case. Many of Ariel Capital's requests were very broad, necessitating production of large numbers of documents. For example, Ariel Capital propounded multiple Requests for Production seeking "[a]ll documents referring or relating" to promotional materials or advertising over multiyear periods. (*See e.g.*, Ex. G, p. 4, Request for Production Nos. 33-34.) And despite Ariel's diligent efforts to locate, copy, and produce the large number of documents requested, Ariel Capital nevertheless demanded additional searches and even moved to compel the production of more documents. (Dkt. 77.)

Ariel has documented these costs in Exhibit C, with the relevant invoices attached. Ariel, however, only requests a total of $85,666.51 of those e-discovery fees as taxable costs. These costs solely reflect the process of scanning documents, converting various native electronic document file types to reviewable file types while preserving their metadata, applying Bates number to the electronic files, and copying the electronic files for production to Ariel Capital. In

short, these costs were incurred in order to create a readable electronic document production in response to Ariel Capital's voluminous requests and follow-up demands. These services were necessary and are properly categorized as taxable costs. *See Intercontinental*, 2016 U.S. Dist. LEXIS 8970, at *19-20 (allowing recovery of costs associated with file conversion).

### IV.     Exemplification

Exemplification costs may be recovered when exemplification "was necessarily obtained for use in the case." 28 U.S.C. § 1920(4). "To determine whether an exemplification was necessarily produced, the Court considers 'whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed.'" *Cascades*, 2016 U.S. Dist. LEXIS 18324, at *21-22 (quoting *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000)). Ariel has documented its exemplification costs in Exhibit D, with the relevant invoices attached.

Specifically, Ariel employed a vendor to create seven demonstratives for use by Ariel during trial, at a cost of $7,969.50. Ultimately, Ariel utilized only three demonstratives during trial: (i) a summary chart of all of the ARIEL marks, including their respective filing dates, registration numbers, and whether or not the marks are incontestable; (ii) a graphic representation of the STAR awards Ariel received for excellence in advertising from 2000-2015, including the categories of each award; and (iii) a visual aid displaying the entire family of ARIEL marks that helped demonstrate how "Ariel Capital Advisors" is likely to be confused with Ariel's family of marks. Accordingly, Ariel seeks a total of $3,415.50, or three-sevenths of the total bill for demonstrative preparation, reflecting the portion of Ariel's demonstrative costs associated with the demonstratives actually used at trial.

Moreover, "courts in this district have specifically permitted recovery for amounts paid to vendors for the preparation of trial exhibits." *Neuros Co. v. KTurbo, Inc.*, 2011 U.S. Dist. LEXIS 97063, at *14 (N.D. Ill. Aug. 25, 2011); *see also Cefalu*, 211 F.3d at 428-29 ("Enlarging a crucial document, for example, may be the only practical means of permitting a witness to point out the forensic features of that document . . . ."); *Interclaim Holdings, Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, 2003 U.S. Dist. LEXIS 4470, at *11-12 (N.D. Ill. Mar. 23, 2004) (taxing costs for exhibit preparation); *Chemetall GmbH v. ZR Energy Inc.*, 2001 U.S. Dist. LEXIS 23716, at *97 (N.D. Ill. Sept. 18, 2001) ("[P]ointing to a single page in a large trial notebook with multiple pages of exhibits would not have effectively shown to the jurors the most important features . . . .").

Here, Ariel's use of its vendor to prepare trial exhibits was reasonable and necessary. Specifically, the vendor isolated the documents identified by both Ariel and Ariel Capital as potential trial exhibits, labeled each document according to its trial exhibit identification number, and prepared the labeled documents to be uploaded to an iPad for presentation to witnesses, the Court, and opposing counsel during trial. This service cost $795 and, accordingly, Ariel requests that amount for trial exhibit preparation. (*See* Ex. D.)

Finally, Ariel's vendor edited the synchronized video depositions of Mr. Boone, Ms. Rebardo, Ms. Wilmore, and Ms. Schandel according to Ariel's deposition designations. These edits were made in order to facilitate the Court's viewing of these deposition clips at trial and to comply with the Court's rulings regarding what portions of the video depositions could be admitted at trial. (Dkt. 186.) During the Pretrial Conference, the Court indicated that it would prefer to watch the deposition clips, rather than receive the deposition transcripts, during trial. (*See* Pretrial Conference Tr. at 75:12-22.) Therefore, this editing of the deposition videos was

reasonably necessary to accurately present the authorized portions of the depositions to the Court. These costs totaled $2,890.61. (*See* Ex. D.)

Accordingly, Ariel requests a total of $7,101.11 in exemplification costs.

**V.     Service Costs**

The Court should also award Ariel a portion of the costs paid to private process servers for service of subpoenas for discovery and for service of summons and the complaint. Although § 1920 does not expressly contemplate an award of costs associated with private process servers, the Seventh Circuit has allowed taxation of costs under § 1920(1) for private process servers to the extent their fees do not exceed what the marshal would charge. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *Merix*, 106 F. Supp. 3d at 946. The current cost for personal service by the U.S. Marshals is $65 per hour, plus travel and out-of-pocket expenses. 28 C.F.R. § 0.1141(a)(3) (2013). Ariel served discovery and trial subpoenas on WGCU Public Media, Mr. Boone, Ms. Schandel, Blue Oceans Financial Planning, and Mr. Bray. Ariel therefore requests a total of $325.00 for service of process, reflecting the appropriate deductions. Ariel has documented these costs in Exhibit E, with the relevant invoices attached.

**VI.    Court Filing Fees**

Finally, Ariel requests reimbursement of the fee paid for filing its Complaint. *See* 28 U.S.C. § 1920(1) (allowing taxation of "[f]ees of the clerk and marshal"); *see also Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv.*, 2015 U.S. Dist. LEXIS 33691, at *39 (N.D. Ill. Mar. 18, 2015); *Golden v. World Sec. Agency, Inc.*, 2014 U.S. Dist. LEXIS 712, at *29-30 (N.D. Ill. Jan. 6, 2014) (Kennelly, J.). Exhibit F contains the receipt for Ariel's $400 filing fee.

*Conclusion*

For the foregoing reasons, the Court should award Ariel its bill of costs in the amount of $106,000.60.

| | |
|---|---|
| Dated: April 10, 2017 | By: /s/ Zachary J. Watters |
| | Arthur Gollwitzer III (6225038) |
| | agollwitzer@michaelbest.com |
| | Luke W. DeMarte (6269621) |
| | lwdemarte@michaelbest.com |
| | Larry L. Saret (2459337) |
| | llsaret@michaelbest.com |
| | Zachary J. Watters (6310675) |
| | zjwatters@michaelbest.com |
| | Michael Best & Friedrich LLP |
| | River Point |
| | 444 W. Lake Street, Suite 3200 |
| | Chicago, Illinois 60606 |
| | |
| | ***Attorneys for Plaintiff Ariel Investments, LLC*** |

**Certificate of Service**

  I, Zachary J. Watters, an attorney of record in this matter, certify that on April 10, 2017, I caused a copy of Plaintiff's ***Memorandum in Support of Bill of Costs*** to be filed with the Clerk of Court of the United States District Court for the Northern District of Illinois by electronic (ECF) filing, which provides service for the following counsel of record by e-mail delivery:

Adam Wolek
Brian Noack
Wolek and Noack
333 South Wabash Avenue
Suite 2700
Chicago, IL 60604
adamw@wonoip.com
briann@wonoip.com

Christopher Paul Bray
Christopher P. Bray Associates, LLC
9115 Corsea Del Fontana Way, Suite 200
Naples, FL 34109
cpbray@cpbrayassociates.com

              */s/* Zachary J. Watters
              Zachary J. Watters